1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8
9
10

DISH NETWORK L.L.C.,                    )    No. 2:24-cv-01683-GJL
                                        )
11                          Plaintiff,  )    **PLAINTIFF'S STATUS REPORT ON**
                                        )    **SERVICE OF PROCESS**
12        v.                            )
                                        )
13   VIRTUAL SYSTEMS, LLC and           )
     VYACHESLAV SMYRNOV,                 )
14                                       )
                                        )
15                          Defendants. )

16        Plaintiff DISH Network L.L.C. ("DISH") files this second report that concerns the status

17   of serving process on the Ukraine-based Defendants, Virtual Systems, LLC ("Virtual Systems")

18   and Vyacheslav Smyrnov ("Smyrnov").[1] Service has now been completed pursuant to the Hague

19   Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial

20   Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 ("Hague Convention").

21   **Service of Process**

22        1.    DISH initiated service of process on Defendants pursuant to Federal Rule of Civil

23   Procedure 4(f)(1), which authorizes service under the Hague Convention. The Hague Convention

24   provides for service of court documents through a member country's Central Authority. *See* Hague

25

26   _____
     [1]Plaintiffs' prior status report advised that an update on service would be filed by May 14, 2025. (Doc. 10.)

Plaintiff's Status Report                          1                    Preg O'Donnell & Gillett PLLC
                                                                            401 Union Street, Suite 1900
                                                                            Seattle, Washington 98101
                                                                            (206) 287-1775

Convention, Art. 5. Ukraine's Central Authority, which is the Ukraine Ministry of Justice, advises that it carries out requests for service under the Hague Convention through its local courts. *See* https://www.hcch.net/en/states/authorities/details3/?aid=251 (last visited May 7, 2025).

2.      DISH received documents from the Ukraine Central Authority on April 15, 2025, establishing that Defendants were served with the Court's summons and DISH's complaint in court proceedings in Ukraine. (Doc. 11-12.) After certain documents were translated from Ukrainian to English, proofs of service were filed in this Court on May 12, 2025. (*Id.*)

3.      Virtual Systems was served in the Commercial Court of Kyiv City on December 17, 2024, Case No. 910/14408/24. (Doc. 12.) Virtual Systems failed to comply with the Ukraine court's order requiring it to appear in court to accept the pleadings in this case, and acknowledged reviewing them in the court's electronic system, resulting in a second order finding the request "to serve court documents on [Virtual Systems] . . . is deemed to have been executed." (*Id.*)

4.      Smyrnov was served in the Solomyaskyi District Court of Kyiv City on February 6, 2025, Case No. 760/30143/24. (Doc. 11.) The Ukraine court held a hearing at which it delivered the pleadings in this case to Smyrnov's Ukraine counsel, who acknowledged receiving them. (*Id.*)

5.      Defendants were served in accordance with Federal Rule of Civil Procedure 4(f)(1).

**Proof of Service**

6.      Federal Rule of Civil Procedure 4(l)(2)(A) refers to the Hague Convention for the proper method of proving service, which is a "certificate in the form of the model annexed to the . . . Convention" that is completed by "[t]he Central Authority . . . or any authority which it may have designated for that purpose." Hague Convention, Art. 6.

7.      The Ukraine Central Authority issued a certificate that tracks the Hague Convention model form and states Smyrnov was served. (Doc. 11, Ex. 3.) The Ukraine Central Authority also provided a similar certificate for Virtual Systems, reciting the Ukraine court's findings that Virtual Systems failed to appear at the hearing to accept the pleadings in this case, acknowledged having reviewed them in the court's electronic system, and therefore the request "to serve court documents

on Virtual Systems LLC in [this case] shall be deemed to have been executed." (Doc. 12, Ex. 3.) The Ukraine Central Authority inserted this information concerning service on Virtual Systems in the section of the certificate intended for instances where the documents were not served. (*Id.*)

8. The Ukraine Central Authority should have completed the section of the certificate stating that the documents were served in accordance with Article 5 of the Hague Convention. (*Id.*) The Ukraine court's orders make clear that Virtual Systems was served with the pleadings in this case pursuant to Ukraine law. (*Id.*, Ex. 1, Nov. 27, 2024 Order ¶ 5 [stating that if Virtual Systems refused to receive the pleadings "the documents to be served . . . are considered to be served"]; Dec. 17, 2024 Order ¶ 1 [stating Virtual Systems "did not appear in court" to receive the pleadings (but reviewed them electronically), and the request "to serve court documents on Virtual Systems . . . shall be considered executed"). Indeed, the Ukraine court concluded that the Ukraine Central Authority should notify this Court "of the execution of the [service request] and send confirmation of the execution." (*Id.*, Ex. 1, Dec. 17, 2024 Order ¶ 2.)

9. The Ukraine Central Authority's error in completing the certificate does not prevent DISH from establishing that Virtual Systems was served. The Ukraine court's orders are sufficient to prove that Virtual Systems was served and contain the information that would otherwise be set forth in a corrected certificate – the place of service (the Ukraine court), date of service (December 17, 2024), and the person served (Virtual Systems, pursuant to the Ukraine law and facts set forth in the court's orders). (*Id.*, Ex. 1.) These orders were received from the Ukraine Central Authority in conjunction with its certificate and are sufficient to prove that service was effected on Virtual Systems pursuant to the Hague Convention. (*Id.*) *See Burda Media, Inc. v. Viertel*, 417 F.3d 292, 301, (2d Cir. 2005) (finding French police report an adequate substitute for the Central Authority's certificate because it had the necessary information to prove service; "[t]o hold that only the exact form must be used would not only elevate form over substance, but would impose an unreasonably strict degree of compliance with the Hague Convention").[2]

---

[2] DISH attempted to obtain a corrected certificate by sending emails to the Ukraine Central Authority but the emails

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

10.     Service on Defendants is proven under Federal Rule of Civil Procedure 4(l)(2)(A).

**Entry of Default**

11.     Federal Rule of Civil Procedure 55(a) authorizes entry of default where a defendant "has failed to plead or otherwise defend." Defendants have neither appeared in this case nor filed an answer or other response to DISH's complaint, despite being served several months ago. (Doc. 11-12.) The twenty-one day period for Defendants to respond to DISH's complaint under Federal Rule of Civil Procedure 12(a)(1)(A)(i) has long passed.

12.     Defendants appear to have provided the Ukraine Central Authority a document that purports to be a response to DISH's complaint using the Unites States Courts' form answer entitled Pro Se 3. The document was included in a larger packet of Hague Convention documents received from the Ukraine Central Authority on April 15, 2025, attached to this status report as <u>Exhibit 1</u>. Defendants did not serve the document on DISH and Defendants did not otherwise communicate to DISH any intent to participate in this case. The document itself is unsigned and does not identify licensed counsel for Virtual Systems, which is a requirement for this corporate entity to appear in this case. *See Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02 (1993) ("It has been the law for the better part of two centuries . . . that a corporation may appear in federal courts only through licensed counsel.").

13.     The unsigned and unfiled document that purports to be Defendants' pro se answer should not preclude the Clerk from entering default against Defendants (or prevent the Court from granting default judgment against them when that time comes). *See United States v. High Country Broad. Co.*, 3 F.3d 1244, 1245 (9th Cir. 1993) (granting default judgment against corporate entity because it failed to retain counsel "perfectly appropriate"); *Amazon.com, Inc. v. White*, No. 2:20-cv-01773-JHC, 2022 WL 1641423, at *1 (W.D. Wash. May 24, 2022) (striking answer because it was not signed and then entering default followed by default judgment).

---

were undeliverable. DISH previously sent five emails and mailed one letter to the Ukraine Central Authority inquiring about the status of service, which appear to have been delivered, but received no response.

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

14.    Accordingly, unless the Court instructs otherwise in response to this status report, DISH intends to move for the Clerk's entry of default against Defendants. If default is considered premature, the Court should order Defendants to show cause why default should not be entered, to include Defendants filing with this Court a signed response to Plaintiffs' complaint and, in the case of Virtual Systems, the appearance of licensed counsel.

Dated: May 13, 2025

**PREG O'DONNELL & GILLETT PLLC**

By: s/ Gregory Latendresse
Gregory Latendresse, WSBA # 32787
401 Union Street, Suite 1900
Seattle, Washington 98164
Tel: (206) 287-1775
Fax: (206) 287-9113
glatendresse@pregodonnell.com

**HAGAN NOLL & BOYLE LLC**
Joseph H. Boyle (*pro hac vice*)
Timothy M. Frank (*pro hac vice*)
Stephen M. Ferguson (*pro hac vice*)
820 Gessner, Suite 940
Houston, Texas 77024
Tel: (713) 343-0478
Fax: (713) 758-0146
joseph.boyle@hnbllc.com
timothy.frank@hnbllc.com
stephen.ferguson@hnbllc.com

Attorneys for Plaintiff DISH Network L.L.C.

# EXHIBIT 1



паперова копія оригіналу
електронного документа

## МІНІСТЕРСТВО ЮСТИЦІЇ УКРАЇНИ
### Мін'юст

вул. Архітектора Городецького, 13, м. Київ, 01001
тел.: (044) 364-23-93, факс: (044) 271-17-83
E-mail: callcentre@minjust.gov.ua,
themis@minjust.gov.ua,
Web: http://www.minjust.gov.ua,
код згідно з ЄДРПОУ 00015622

**Hagan Noll & Boyle, LLC**
**820 Gessner, Suite 940**
**Houston, Texas 77024**
**USA**

*RE: Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters of 15 November, 1965.*

The Ministry of Justice of Ukraine forwards the documents drawn up during the execution of the court request concerning the **Virtual Systems, LLC** and **Mr. Vyacheslav Smyrnov.**

This letter is performed in e-form and signed with the qualified electronic signature, which by its legal validity is equivalent to the handwritten signature according to the Law of Ukraine «On Electronic Trust Services».

Enclosure on: packages of documents.

**Deputy Head of the**
**International Legal Assistance**
**in Civil Matters Unit of the**
**International Law and**
**Representation Department**



**Tetyana RYABETS**

згідно з оригіналом

головний спеціаліст



СЕД АСКОД
Міністерство юстиції України
№ 27898/27631-32-25/12.1.3 від 25.02.2025
Підписувач Рябець Тетяна Володимирівна



## CERTIFICATE
## ПІДТВЕРДЖЕННЯ

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,

**Орган, що підписався нижче, має честь підтвердити відповідно до положень статті 6 Конвенції,**

   1)   that the document has been served *

   що документ був вручений*

(date)

**(дата)** _____

at (place, street, number)

**(місце, вулиця, номер)** _____

   - in one of the following methods authorised by article 5:

   **- одним із способів, передбачених в статті 5:**

   a) in accordance with the provisions of sub-paragraph a) of the first paragraph of article 5 of the Convention *

   **відповідно до положень підпункту (а) частини першої статті 5 Конвенції*;**

   b) in accordance with the following particular method *

   **відповідно до наступного спеціального способу*** _____

   c) by delivery to the addressee, who accepted it voluntarily *

   **шляхом безпосередньої доставки адресату, який прийняв його добровільно***

The documents referred to in the request have been delivered to:

**Документи, зазначені в проханні, були вручені:**

(identity and description of person)

**(прізвище, ім'я та дані про особу)**

relationship to the addressee (family, business or other) _____

   2) that the document has not been served, by reason of the following facts *

   **що документ не був вручений з таких причин***: У судове засідання представник ТОВ «Віртуальні системи» не з'явився, проте, через систему «Електронний суд» 17.12.2024 надійшли додаткові пояснення, в яких представник повідомив суд про ознайомлення в електронному кабінеті з судовим дорученням та доданими до нього документами, просив провести судове засідання без його участі, а також направити до Окружного суду Сполучених штатів Західного округу Штату Вашингтон у Сієтлі долучені ним документи. Судове доручення Окружного суду Сполучених штатів Західного округу Штату Вашингтон у Сієтлі про вручення судових документів ТОВ «Віртуальні системи» у справі № 2:24-cv-01683, вважати виконаним.

In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement *

**Відповідно до частини другої статті 12 Конвенції, прохання до запитуючого органу сплатити або відшкодувати витрати, викладені в додатку***

   Annexes

   **Додатки**

Documents returned:

**Документи, що повертаються:** _____

In appropriate cases, documents establishing the service:

**У разі необхідності, документи, які підтверджують вручення:** _____

Done at/**Складено в м. Києві, the/дата** *10. 02. 2025*

                           Signature and/or stamp
                           **Підпис та/або печатка**

**Перший заступник начальника**
**Центрального міжрегіонального управління**
**Міністерства юстиції (м. Київ)**                           **Дмитро СТРУЦЬ**

| | |
|---|---|
| | Khmelnytskoho Street, 01054, City of Kyiv, |
| Підпис отримувача чи повідомлення про причини невручення | У судове засідання 17.12.2024 представник не з'явився, просив розглядати без його участі. Повідомив про ознайомлення з судовим дорученням та доданими до нього документами в електронному кабінеті системи «Електронний суд». |
| The recipient's signature or a message about the reasons for non-delivery | At the court session on 17.12.2024, the representative did not appear, he asked to consider without his participation. Notified about the review of the court order and the documents attached to it in the electronic cabinet of the "Electronic Court" system. |
| Посада, прізвище й ініціали та підпис особи, яка вручила документ або склала повідомлення про причини його невручення<br><br>Position, surname and initials and signature of the person who served<br><br>the document or made a notification about the reasons for its non-delivery | Суддя Т.Ю.Кирилюк<br><br>Judge T.Yu. Kyryliuk |

**ПІДТВЕРДЖЕННЯ**
**про вручення документа**
**CONFIRMATION of delivery of the document**

Господарський суд міста Києва

COMMERCIAL COURT OF THE City OF KYIV

(найменування органу, який виконує вручення документа/
name of the institution that serves the document)

| | |
|---|---|
| № справи / case number | 910/14408/24 <br><br> (2:24-cv-01683) |
| Назва документа, що підлягає вруч에нню, кількість аркушів, на українській мові - | Позов у громадській справі з додатками українською та англійською мовами – 117 аркушів |
| The name of the document to be delivered, the number of sheets, in english language - | Claim in a public case with annexes in Ukrainian and English - 117 sheets |
| Прізвище, ім'я, по батькові та адреса отримувача | Товариство з обмеженою відповідальністю «Віртуальні системи» 03150, місто Київ, вулиця Лабораторна, будинок 33/37; ідентифікаційний номер 41872207 |
| Surname, first name, middle name and address of the recipient | ТОВ Virtual systems 03150, city of Kyiv, Laboratorna street, building 33/37; identification number 41872207 |
| Дата та місце вручення | 17.12.2024 Господарський суд міста Києва м. Київ, вул. Богдана Хмельницького, 44-В ; |
| Date and place of delivery | 17/12/2024 COMMERCIAL COURT OF THE City OF KYIV/ 44-В B. |



# ГОСПОДАРСЬКИЙ СУД міста КИЄВА

вул. Б.Хмельницького, 44-В, м.Київ, 01054, тел. (044) 334 68 95
e-mail: inbox@ki.arbitr.gov.ua, web: ki.arbitr.gov.ua
Код ЄДРПОУ 05379487

## ПРОТОКОЛ

### судового засідання

### від 17.12.24 по справі № 910/14408/24.

**Зал судового засідання № 9.**
**Склад суду:**
**Суддя: Кирилюк Т.Ю.**
**Секретар судового засідання: Шадура М.Ю.**

Судове засідання призначене для виконання судового доручення Окружного суду Сполучених штатів Західного округу Штату Вашингтон у Сієтлі для вручення представнику Товариства з обмеженою відповідальністю «Віртуальні системи» судових документів у справі за позовом № 2:24-cv-01683.

**Представники сторін:**
**від відповідача: не з`явився;**

Час початку судового засідання - 10:18.
Відкриття судового засідання щодо виконання судового доручення про вручення документів у справі № 2:24-cv-01683 представнику Товариству з обмеженою відповідальністю «Віртуальні системи».
Перевірка явки представників Товариства з обмеженою відповідальністю «Віртуальні системи». Представники Товариства з обмеженою відповідальністю «Віртуальні системи» у судове засідання не з'явились. Дата вручення повідомлення 03.12.2024. Дата повернення повідомлення про вручення до суду 09.12.2024.

Відповідно до статті 222 Господарського процесуального кодексу України, у разі неявки в судове засідання всіх учасників справи, фіксування судового процесу за допомогою технічного засобу не здійснюється.

17.12.2024 через систему електронний суд представник ТОВ «Віртуальні системи» надіслав додаткові пояснення у справі, в яких просив справу розглядати без його участі.

Суд досліджує матеріали справи 910/14408/24. Суд видаляється до нарадчої кімнати. Після виходу з нарадчої кімнати суд оголошує ухвалу про виконання судового доручення.

Час закінчення судового засідання -10:25.

відмовилися від їх отримання або якщо така особа чи її представник, яких належним чином повідомлено про день, час та місце судового засідання, на якому має бути вручено виклик до суду чи інші документи, без поважних причин не з`явилися до суду - у день такого судового засідання (частина 7 статті 370 Господарського процесуального кодексу України).

Враховуючи вищевикладене та керуючись статтями 120, 121, 234, 369, 370 Господарського процесуального кодексу України, Господарський суд міста Києва, -

### УХВАЛИВ:

1. Прийняти судове доручення Окружного суду Сполучених штатів Західного округу Штату Вашингтон у Сієтлі про вручення документів до виконання.

2. Призначити судове засідання **17.12.24  о 09:50** год.

Засідання відбудеться у приміщенні Господарського суду міста Києва за адресою: м. Київ, вул. Богдана Хмельницького, 44- Б, зал № 9.

3.Викликати для участі у засіданні та отримання документів представника Товариства з обмеженою відповідальністю «Віртуальні системи» (03150, місто Київ, вулиця Лабораторна, будинок 33/37; ідентифікаційний код 41872207), повноваження якого оформити  відповідно до вимог статей 60, 61 Господарського процесуального кодексу України, а також надати належним чином засвідчені копії документів, що підтверджують повноваження представника.

4.Явку представника Товариства з обмеженою відповідальністю «Віртуальні системи» визнати обов'язковою.

5. Роз'яснити Товариству з обмеженою відповідальністю «Віртуальні системи», що у разі відмови отримати виклик до суду чи інші документи, що підлягають вручению за дорученням іноземного суду, суддя, уповноважений працівник суду робить відповідну позначку на документах, що підлягають вручению. У такому разі документи, що підлягають вручению за дорученням іноземного суду, вважаються врученими.

6. Ухвала набирає законної сили з моменту підписання та оскарженню не підлягає.


Суддя                                                                                          Т.Ю. Кирилюк

Господарський суд міста Києва
Вихідний № 23
відправлено 1 при
до 11. 12.



# ГОСПОДАРСЬКИЙ СУД міста КИЄВА

вул. Б.Хмельницького, 44-В, м.Київ, 01054, тел. (044) 334 68 95
e-mail: inbox@ki.arbitr.gov.ua, web: ki.arbitr.gov.ua
Код ЄДРПОУ 05379487

## ПРОТОКОЛ

### судового засідання

### від 17.12.24 по справі № 910/14408/24.

**Зал судового засідання № 9.**
**Склад суду:**
**Суддя: Кирилюк Т.Ю.**
**Секретар судового засідання: Шадура М.Ю.**

Судове засідання призначене для виконання судового доручення Окружного суду Сполучених штатів Західного округу Штату Вашингтон у Сієтлі для вручення представнику Товариства з обмеженою відповідальністю «Віртуальні системи» судових документів у справі за позовом № 2:24-cv-01683.

**Представники сторін:**
**від відповідача: не з`явився;**

Час початку судового засідання - 10:18.
Відкриття судового засідання щодо виконання судового доручення про вручення документів у справі № 2:24-cv-01683 представнику Товариству з обмеженою відповідальністю «Віртуальні системи».
Перевірка явки представників Товариства з обмеженою відповідальністю «Віртуальні системи». Представники Товариства з обмеженою відповідальністю «Віртуальні системи» у судове засідання не з'явились. Дата вручення повідомлення 03.12.2024. Дата повернення повідомлення про вручення до суду 09.12.2024.

Відповідно до статті 222 Господарського процесуального кодексу України, у разі неявки в судове засідання всіх учасників справи, фіксування судового процесу за допомогою технічного засобу не здійснюється.

17.12.2024 через систему електронний суд представник ТОВ «Віртуальні системи» надіслав додаткові пояснення у справі, в яких просив справу розглядати без його участі.

Суд досліджує матеріали справи 910/14408/24. Суд видаляється до нарадчої кімнати. Після виходу з нарадчої кімнати суд оголошує ухвалу про виконання судового доручення.

Час закінчення судового засідання -10:25.

*1*11590640*1*0*

*1*11590640*1*0*

документи, без поважних причин не з`явилися до суду - у день такого судового засідання.

Виконання доручення іноземного суду про вручення виклику до суду чи інших документів підтверджується протоколом судового засідання, у якому зазначаються заяви чи повідомлення, зроблені особами у зв`язку з отриманням документів, а також підтвердженням про повідомлення особи про необхідність явки до суду для отримання документів та іншими документами, складеними чи отриманими в ході виконання доручення, які засвідчуються підписом судді та скріплюються гербовою печаткою.

Враховуючи вищенаведене, а також те, що належним чином повідомлений представник Товариства з обмеженою відповідальністю «Віртуальні системи» до суду не з`явився, проте надіслав пояснення, в яких повідомив суд, що він ознайомився з матеріалами справи № 2:24-cv-01683, судове доручення Окружного суду Сполучених штатів Західного округу Штату Вашингтон у Сієтлі про вручення документів Товариству з обмеженою відповідальністю «Віртуальні системи» (03150, місто Київ, вулиця Лабораторна, будинок 33/37, ідентифікаційний код юридичної особи 41872207) у справі № 2:24-cv-01683 вважається виконаним, що підтверджується протоколом судового засідання від 17.12.2024.

Керуючись статтями 233, 234, 235, 369, 370 Господарського процесуального кодексу України, Господарський суд міста Києва, -

## УХВАЛИВ:

1. Судове доручення Окружного суду Сполучених штатів Західного округу Штату Вашингтон у Сієтлі про вручення судових документів Товариству з обмеженою відповідальністю «Віртуальні системи» (03150, місто Київ, ВУЛИЦЯ ЛАБОРАТОРНА, будинок 33/37, ідентифікаційний код юридичної особи 41872207) у справі №2:24-cv-01683 вважати виконаним.

2. Повідомити Окружний суд Сполучених штатів Західного округу Штату Вашингтон у Сієтлі про виконання судового доручення та направити підтвердження про виконання судового доручення через органи Міністерства юстиції України.

3. Дану ухвалу разом з документами, визначеними частиною 8 статті 370 Господарського процесуального кодексу України, направити Окружному суду Сполучених штатів Західного округу Штату Вашингтон у Сієтлі, через Центральне міжрегіональне управління Міністерства юстиції України (м. Київ) (01001, місто Київ, провулок Музейний, 2-Д; ідентифікаційний код: 43315602).

4. Ухвала набирає законної сили з моменту її підписання та оскарженню не підлягає.

Суддя   Т.Ю. Кирилюк



ГОСПОДАРСЬКИЙ СУД міста КИЄВА

01054, м.Київ, вул.Б.Хмельницького,44-В, тел. (044) 334-68-95, E-mail: inbox@ki.arbitr.gov.ua

## УХВАЛА
м. Київ

**17.12.2024**                                                                    **Справа № 910/14408/24**

**Господарський суд міста Києва у складі судді Кирилюк Т.Ю.**,за участю секретаря судового засідання Шадури М.Ю., розглянувши
**судове доручення** (запит) Окружного суду Сполучених штатів Західного округу Штату Вашингтон у Сієтлі від 22.10.2024
**про вручення судових документів у справі № 2:24-cv-01683**

за участю представників сторін згідно з протоколом судового засідання.

### ВСТАНОВИВ:

До Господарського суду міста Києва через Центральне міжрегіональне управління Міністерства юстиції (м. Київ) надійшло судове доручення (запит) Окружного суду Сполучених штатів Західного округу Штату Вашингтон у Сієтлі від 22.10.2024 про вручення документів у справі представнику Товариству з обмеженою відповідальністю «Віртуальні системи», місцезнаходженням якого є: 03150, місто Київ, вулиця Лабораторна, будинок 33/37.

Зокрема, врученню підлягають судовий виклик від 18.10.2024 та матеріали скарги позивача з додатками.

Ухвалою Господарського суду міста Києва від 27.11.2024 прийнято судове доручення Окружного суду Сполучених штатів Західного округу Штату Вашингтон у Сієтлі про вручення документів до виконання, призначено судове засідання - 17.12.2024.

У судове засідання 17.12.2024 уповноважений представник Товариства з обмеженою відповідальністю "Віртуальні Системи" не з'явився.

Через систему «Електронний суд» 17.12.2024 до суду від Товариства з обмеженою відповідальністю «Віртуальні системи» надійшли додаткові пояснення, в яких представник повідомив суд про ознайомлення  в електронному кабінеті з судовим дорученням та доданими до нього документами, просив провести судове засідання без його участі, а також, направити до Окружного суду Сполучених штатів Західного округу Штату Вашингтон у Сієтлі долучені ним документи.

Відповідно до частин 1, 2 статті 370 Господарського процесуального кодексу України, доручення іноземного суду про вручення виклику до суду чи інших документів виконується у судовому засіданні або уповноваженим працівником суду за місцем проживання (перебування, місцем роботи) фізичної особи чи місцезнаходженням юридичної особи. Виклик до суду чи інші документи, що підлягають врученню за дорученням іноземного суду, вручаються особисто фізичній особі чи її представникові або представникові юридичної особи під розписку.

Згідно з частин 7, 8 статті 370 Господарського процесуального кодексу України, доручення іноземного суду про вручення виклику до суду чи інших документів вважається виконаним у день, коли особа або її представник отримали такі документи чи відмовилися від їх отримання або якщо така особа чи її представник, яких належним чином повідомлено



Згідно з оригіналом
прошито, пронумеровано та скріплено печаткою.
Всього: ___ арк.
Суддя
Гнилюк Т.Ю.

**Господарський суд міста Києва**
01054, м. Київ, вул. Б. Хмельницького, 44-в

**Заявник**
Товариство з обмеженою відповідальністю "Віртуальні системи"
адреса 03150, м. Київ, вул. Лабораторна, буд. 33/37
(електронний кабінет відсутній)
ЄДРПОУ 41872207

**Представник заявника**
Дементьєв Тарас Михайлович (адвокат)
ел. пошта
█████████@mail.gov.ua
тел. 380936024422
адреса 01010, м. Київ, а/с 147
РНОКПП █████████

Справа № **910/14408/24**
Провадження № **б/н**
Суддя

**Додаткові пояснення у справі**

*«Boni justicis est ampliare justitiam»*

*(обов'язок доброчесного судді - приймати рішення,*

*які сприяють розвитку правосуддя)*

Судді Кирилюк Т.Ю.

Я є представником ТОВ «Віртуальні системи». Відомості про мене, як адвоката, містяться у ЄРАУ: https://erau.unba.org.ua/profile/46862. Належним чином посвідчені копії документів, що підтверджують мої повноваження *(у т.ч., англійською мовою)* додаю.

На розгляді Шановного суду перебуває судове доручення (запит) Окружного суду США Західного округу Штату Вашингтон у Сієтлі від 22.10.2024р. про вручення

ГОСПОДАРСЬКИЙ СУД міста КИЄВА
**ОДЕРЖАНО**
підпис ___ дата __ Гру
вх. номер документа __

документів у справі представнику ТОВ «Віртуальні системи»

Засідання Шановного суду призначене на 17.12.2024р. на 09:50.

Зі змістом вказаного судового доручення та доданих до нього копій документів (у т.ч., позовом Dish Network L.L.C.) я ознайомився в порядку п.11.1.8. Інструкції Користувача підсистеми «Електронний суд» ЄСІТС, затвердженої Наказом ДП «ЦСС» № 74-ОД від 22.08.2021р., п.24 Положення про порядок функціонування окремих підсистем (модулів) ЄСІТС, затвердженого Рішенням ВРП від 17.08.2021р. №1845/0/15-21, у Електронному кабінеті системи «Електронний суд», надав вказане ТОВ «Віртуальні системи».

Ст.131-2 Конституції України встановлює, що для надання професійної правничої допомоги в Україні діє адвокатура.

Згідно положень ст.16 ГПК України, учасники справи мають право користуватися правничою допомогою. Представництво у суді, як вид правничої допомоги, здійснюється виключно адвокатом (професійна правнича допомога), крім випадків, встановлених законом.

Згідно ст.27 Правил адвокатської етики, при виконанні доручення адвокат зобов'язаний використати всі розумію необхідні і доступні йому законні засоби для надання ефективної професійної правничої (правової) допомоги клієнту, здійснення його захисту або представництва.

Невід'ємне право учасника справи надавати пояснення суду встановлене положеннями ч.4 ст.10, п.3 ч.1, п.5 ч.2 ст.42, ч.1, 5 ст.161, ч.1 ст.169, ч.1 ст.200, ч.1 ст.210 ГПК України.

Згідно ч.5 ст.369 ГПК України, виконання судового доручення підтверджується протоколом судового засідання, іншими документами, складеними чи отриманими в ході виконання доручення, які засвідчуються підписом судді та скріплюються гербовою печаткою.

Згідно ч.8 ст.370 ГПК України, виконання доручення іноземного суду про вручення виклику до суду чи інших документів підтверджується протоколом судового засідання, у якому зазначаються заяви чи повідомлення, зроблені особами у зв'язку з отриманням документів, а також підтвердженням про повідомлення особи про необхідність явки до суду для отримання документів та іншими документами, складеними чи отриманими в ході виконання доручення, які засвідчуються підписом судді та скріплюються гербовою печаткою.

Тому, для забезпечення врахування правової позиції ТОВ «Віртуальні системи» при розгляді даної справи подаю Шановному суду дані Додаткові пояснення у справі, до яких додаю надану ТОВ «Віртуальні системи» Відповідь відповідача на скаргу, українською мовою а також з перекладом на англійську мову, у якій ТОВ «Віртуальні системи» детально і аргументовано виклала свою позицію щодо заявлених вимог.

Згідно п.26, 27 ст.1 Розділу III Положення про порядок функціонування окремих підсистем (модулів) ЄСІТС, затвердженого Рішенням ВРП від 17.08.2021р. №1845/0/15-21, електронні документи створюються із застосуванням вбудованого текстового редактора шляхом заповнення форм документів, передбачених Інструкцією користувача Електронного суду, підписуються кваліфікованим електронним підписом (підписами) його підписувача (підписувачів) та надсилаються

засобами електронного документообігу. До розміщених у вказаному суді документів користувачі можуть додавати інші файли (зображення, відеофайли тощо). Відповідні додані файли (додатки) підписуються кваліфікованим електронним підписом користувачів разом зі створеними в Електронному суді документами, до яких вони додаються.

Згідно положень п.4 ч.5 ст.13 ГПК України, суд, зберігаючи об'єктивність і неупередженість, сприяє учасникам судового процесу в реалізації ними прав, передбачених цим Кодексом.

Відповідно до ч.2 ст.9 Закону України «Про судоустрій і статус суддів», суд створює такі умови, за яких кожному учаснику судового процесу гарантується рівність у реалізації наданих процесуальних прав та у виконанні процесуальних обов'язків, визначених процесуальним законом.

**Враховуючи вищевикладене, керуючись також Конвенцією про вручення за кордоном судових та позасудових документів у цивільних або комерційних справах, з урахуванням положень ст.6 Конвенції про захист прав людини і основоположних свобод (Європейська конвенція з прав людини) щодо права кожного на справедливий суд, вимог Положення про порядок функціонування окремих підсистем (модулів) ЄСІТС, затвердженого Рішенням ВРП від 17.08.2021р. №1845/0/15-21, прошу Шановний суд:**

- розглянути вказане питання за відсутності нашої сторони, наше нез'явлення вважати таким, що не перешкоджає розгляду вказаного питання;

- для забезпечення повного, всебічного та об'єктивного з'ясування обставин даної справи і прийняття законного і обґрунтованого судового рішення за результатом її розгляду:

1. долучити до матеріалів справи та вказаного судового доручення дані Додаткові пояснення у справі з додатками;

2. відобразити вказане в протоколі судового засідання та інших документах, складених в ході виконання доручення;

3. забезпечити надсилання даних Додаткових пояснень у справі з додатками запитуючій стороні.

**Додатки** *(електронні копії, посвідчені адвокатом за допомогою електронного підпису)*:

- Витягу з ЄРАУ, Свідоцтва про право на заняття адвокатською діяльністю № 3012 *(дублікат)*, Посвідчення, Договору про надання правової допомоги, Ордера *(згенерованого згідно п.6 та заповненого згідно п.12 Положення про ордер на надання правничої (правової) допомоги, затвердженого Рішенням РАУ від 12.04.2019р. № 41)*;

- Відповіді відповідача на скаргу, українською мовою а також з перекладом на англійську мову.

**З повагою,**

**Адвокат**

Додатки:
1. Certificate of Good Standing.pdf.
2. ID card of Advocate of Ukraine.pdf.
3. Переклад the defendants answer to the complaint DISH VSYS.pdf.
4. The defendants answer to the complaint DISH VSYS.pdf.

17.12.2024, **Дементьєв Тарас Михайлович**

СЕРІЯ ІІ                                                                    № 1012563




## НАЦІОНАЛЬНА АСОЦІАЦІЯ АДВОКАТІВ УКРАЇНИ

### РАДА АДВОКАТІВ УКРАЇНИ

04070, м.Київ, вул. Борисоглібська, буд 3, 5 поверх, тел.: +38(044)392-73-71 факс: +38(044)392-73-70
info@unba.org.ua

## Витяг з Єдиного реєстру адвокатів України
Цей витяг сформовано відповідно до
Розділу ІІ, Статті 17 Закону України «Про адвокатуру та адвокатську діяльність» від 05.07.2012 № 5076–VI.



### Дементьєв Тарас Михайлович

| Обліковується у: | | **Рада адвокатів міста Києва** |
|---|---|---|
| № Свідоцтва: | Дата видачі свідоцтва: | Орган, що видав свідоцтво: |
| **3012** | **11.03.2019** | **Рада адвокатів міста Києва** |
| Номер рішення: | Дата прийняття рішення: | Загальний стаж адвоката: |
| **12-12-12** | **27.09.2007** | **З 2007 року** |

**Адреса робочого місця та номери засобів зв'язку**

| Адреса основна: | **03143, Київ, м. Київ, р-н Голосіївський, вул. Метрологічна, буд. 14, корп. 3, кв. 204** |
|---|---|
| Мобільний: | **+38(095)157-35-97** |
| E-mail: | **kmkdka.3012@gmail.com** |

**Форми адвокатської діяльності.**    Індивідуальна адвокатська діяльність

**Найменування, адреса, номери засобів зв'язку**

| Адреса: | **03143, Київ, м. Київ, р-н Голосіївський, вул. Метрологічна, буд. 14, корп. 3, кв. 204** |
|---|---|
| Мобільний: | **+38(095)157-35-97** |

**Інші відомості, передбачені Законом України «Про адвокатуру та адвокатську діяльність» та "Порядком ведення Єдиного реєстру адвокатів України"**    Адреса для листування: 01010, м. Київ, а/с 147

| Підвищення кваліфікації | 2019 рік | Виконано |
|---|---|---|
| | 2020 рік | Виконано |
| | 2022 рік | Виконано |
| | 2024 рік | Виконано |

Голова Ради адвокатів України, Національної
асоціації адвокатів України



Ізовітова Л.П.





НАЦІОНАЛЬНА АСОЦІАЦІЯ
АДВОКАТІВ УКРАЇНИ

# СВІДОЦТВО
ПРО ПРАВО НА ЗАНЯТТЯ АДВОКАТСЬКОЮ ДІЯЛЬНІСТЮ

## Серія КВ № 3012

Відповідно до Закону України "Про адвокатуру та адвокатську діяльність"

гр. **Дементьєв Тарас Михайлович**

має право на заняття адвокатською діяльністю

Підстава: рішення Київської міської кваліфікаційно-дисциплінарної комісії адвокатури від 27.09.2007 року № 12-12-12

Підстава заміни/видачі дублікату: рішення Ради адвокатів міста Києва від 04.02.2019 року № 95

Голова Ради адвокатів міста Києва

11.03.2019 року                                    П.К. Рябенко

---

ПОСВІДЧЕННЯ АДВОКАТА УКРАЇНИ
НАЦІОНАЛЬНА АСОЦІАЦІЯ АДВОКАТІВ УКРАЇНИ

Прізвище
**ДЕМЕНТЬЄВ**
Ім'я
**ТАРАС**
По батькові
**МИХАЙЛОВИЧ**
Дата народження
1981
№ посвідчення
3012
Дата видачі посвідчення
27.09.2007
Підпис адвоката

Свідоцтво про право на заняття адвокатською діяльністю № 3012 від 27.09.2007
Видано на підставі рішення Київської міської КДКА № 12-12-12 від 27.09.2007

Голова Національної асоціації адвокатів України Ізовітова

Договір про надання правової допомоги
№ 02/05/21

м. Київ                                                                 "20" травня 2021 р.

████████████████████████████████████████████████████████████████████

**1. Предмет Договору.**

1. Адвокат надає Клієнту правову допомогу, а саме: зобов'язується здійснити захист, представництво та надати будь-які інші види правової допомоги, не заборонені законом, на умовах і в порядку, що визначені Договором, а Клієнт зобов'язується оплатити Адвокату гонорар та фактичні витрати Адвоката, узгоджені з Клієнтом, необхідні для виконання Договору.

Захист, зокрема (але не виключно), полягає в забезпеченні захисту прав, свобод і законних інтересів Клієнта, як затриманого, підозрюваного, обвинуваченого, підсудного, засудженого, виправданого, особи, стосовно якої передбачається застосування примусових заходів медичного чи виховного характеру, або вирішується питання про їх застосування у кримінальному провадженні, особи, стосовно якої розглядається питання про видачу іноземній державі (екстрадицію), а також особи, яка притягається до адміністративної відповідальності під час розгляду справи про адміністративне правопорушення тощо.

Представництво, зокрема (але не виключно), полягає в забезпеченні реалізації прав і обов'язків Клієнта в цивільному, господарському, адміністративному та конституційному судочинстві, виконавчому провадженні, в усіх без винятку органах державної влади та місцевого самоврядування, перед фізичними особами та юридичними особами усіх форм власності, прав і обов'язків потерпілого, свідка, заявника під час розгляду справи про адміністративне правопорушення, прав і обов'язків понятого, свідка, заявника, потерпілого, заставодавця, поручителя цивільного позивача, цивільного відповідача, юридичної особи, щодо якої здійснюється провадження, третьої особи, щодо майна якої вирішується питання про арешт, іншої особи, права чи законні інтереси якої обмежуються під час досудового розслідування у кримінальному провадженні тощо.

Інші види правової допомоги включають будь-які види адвокатської діяльності, не заборонені законом, у т.ч., з надання правової інформації, консультацій і роз'яснень з правових питань, правового супроводу діяльності Клієнта, складення заяв, скарг, процесуальних та інших документів правового характеру, спрямованих на забезпечення реалізації прав, свобод і законних інтересів Клієнта, недопущення їх порушень, а також на сприяння їх відновленню в разі порушення тощо.

**2. Права і обов'язки Адвоката.**

2.1. Адвокат надає Клієнту правову допомогу відповідно до вимог чинного законодавства України, міжнародних договорів, та Договору, на вимогу (за дорученням) Клієнта. При цьому, Адвокат керується також чинними Правилами адвокатської етики.

**3. Права і обов'язки Клієнта.**

3.1. Клієнт, для отримання належної правової допомоги, зобов'язаний надати Адвокату на його вимогу всю необхідну інформацію, яка йому відома, необхідні для захисту документи, їх копії, речі, інші матеріали тощо, підписувати Договір – надає згоду на здійснення в установленому порядку усіх дій, не заборонених законодавством, та спрямованих на виконання Договору, помічнику Адвоката, а також надає згоду на обробку і використання персональних даних та іншої інформації з обмеженим доступом, банківської, лікарської таємниці тощо.

3.2. Клієнт зобов'язується оплатити Адвокату гонорар та фактичні витрати, необхідні для виконання Договору.

3.3. Клієнт погоджує позицію Адвоката в справі залежно від обставин, та відповідно до норм законодавства. Клієнт не вправі вимагати від Адвоката засобів, способів і методів захисту та представництва інтересів, які заборонені законодавством.

**4. Повноваження Адвоката.**

4.1. Договором права Адвоката не обмежуються. Адвокат, на виконання Договору, має право вчиняти в інтересах Клієнта на всій території України та за її межами будь-які дії, не заборонені законом та Правилами адвокатської етики, здійснює свою професійну діяльність та представляє інтереси Клієнта, згідно Договору, чинного законодавства України, міжнародних договорів (у т.ч., законодавства відповідної країни), у всіх без винятку питаннях, В УСІХ БЕЗ ВИНЯТКУ – ОРГАНАХ ДЕРЖАВНОЇ ВЛАДИ ТА МІСЦЕВОГО САМОВРЯДУВАННЯ, їх структурних, територіальних та інших утвореннях, УСТАНОВАХ, ПІДПРИЄМСТВАХ, ОРГАНІЗАЦІЯХ, ОБ'ЄДНАННЯХ, НЕЗАЛЕЖНО ВІД ФОРМИ ВЛАСНОСТІ ТА ПІДПОРЯДКУВАННЯ, СУДАХ (в усіх інстанціях), ПРАВООХОРОННИХ ОРГАНАХ, органах нотаріату, перед органами та особами, які здійснюють примусове виконання судових рішень і рішень інших органів, у т.ч. ДВС та приватними виконавцями, закладах охорони здоров'я, банках, посольствах, консульствах, дипломатичних установах, перед фізичними особами тощо, зокрема, має право складати, підписувати, подавати, отримувати і використовувати в інтересах Клієнта та/або належні Клієнту будь-які документи, речі, кошти, інформацію тощо, здійснювати будь-які інші види адвокатської діяльності, не заборонені законом.

**5. Виплата гонорару та компенсація витрат Адвоката.**

5.1. Розмір та порядок оплати гонорару (фіксована сума за певну дію або стадію) визначається за попереднім погодженням Адвоката з Клієнтом. Адвокат визначає розмір гонорару, виходячи із власних міркувань. При цьому, враховуються складність справи, кваліфікація, досвід і завантаженість Адвоката та інші обставини. В разі виникнення особливих по складності доручень Клієнта або у випадку об'єктивного збільшення затрат часу і обсягу роботи Адвоката на фактичне виконання доручення (підготовки до виконання), розмір гонорару може бути збільшено за домовленістю Сторін, і не погодження Клієнтом збільшення розміру гонорару є підставою для відмови Адвоката від прийняття доручення або розірвання Договору на вимогу Адвоката. Адвокат має право вимагати від Клієнта попередньої виплати гонорару та/або компенсації можливих витрат. З вказаних та з усіх інших питань, Сторони можуть укладати додаткові угоди до Договору, які є його невід'ємними частинами.

**6. Конфіденційність.**

6.1. Адвокат зберігає адвокатську таємницю. Клієнт, в свою чергу, зобов'язаний не розголошувати відомості, які йому стали відомі від Адвоката та інформацію, яка забезпечує безпеку самого Адвоката.

**7. Дія Договору.**

7.1. Цей Договір набирає чинності з моменту його підписання Сторонами (у т.ч., за допомогою електронного засобу зв'язку) та діє протягом одного року. Якщо жодна Сторона не повідомить письмово іншу Сторону про своє бажання розірвати Договір, у строк не пізніше, ніж 10 календарних днів до його закінчення, Договір вважається продовженим на такий самий строк.

7.2. Договір може бути достроково розірвано за взаємною згодою Сторін або розірваний на вимогу однієї зі Сторін за умови повідомлення про це іншої Сторони не пізніше, ніж за 3 календарних дні. Зокрема, як Адвокат так і Клієнт мають право односторонньо розірвати Договір у випадках, передбачених законом та чинними Правилами адвокатської етики. При цьому Клієнт зобов'язаний оплатити Адвокату гонорар (винагороду) та всю роботу, що була виконана чи підготовлена до виконання, а Адвокат зобов'язаний повідомити Клієнта про можливі наслідки та ризики, пов'язані з достроковим розірванням Договору.

7.3. Адвокат, у т.ч., після використання всіх національних засобів правового характеру, в разі необхідності, здійснює захист прав та інтересів Клієнта в Європейському суді з прав Людини та у усіх інших відповідних міжнародних установах (органах) в установленому порядку.

7.4. Договір укладено українською мовою у двох примірниках, що мають однакову юридичну силу, по одному для кожної із Сторін.

**8. Підписи Сторін.**

| АДВОКАТ | КЛІЄНТ |
|---|---|
| Дементьєв Т.М. | Смірнов В.В. (директор) |

**СЕРІЯ АА**



№ 1109285



### НАЦІОНАЛЬНА АСОЦІАЦІЯ АДВОКАТІВ УКРАЇНИ

# ОРДЕР

#### НА НАДАННЯ ПРАВНИЧОЇ (ПРАВОВОЇ) ДОПОМОГИ

### Товариство з обмеженою відповідальністю
### "Віртуальні системи"

(прізвище, ім'я, по батькові або найменування особи, якій надається правова допомога)

на підставі:

договору про надання правової допомоги/
доручення органу (установи), уповноваженого законом на надання безоплатної
правової допомоги № ___02/05/21___ від " _20_ " ___травня___ ___2021___ р.

У судах, правоохоронних органах, органах держ.влади та місц.самоврид., підприємст., устан., організаї
позалежно від форм.власн., громадськ. формуваннях, ДВС та приватн.виконавц., перед фіз.особами
(назва органу, у якому надається правова допомога)

#### Адвокат

### Дементьєв Тарас Михайлович

(прізвище, ім'я, по батькові адвоката який надає правову допомогу)

Свідоцтво про право на заняття адвокатською діяльністю № 5012 від 11 березня 2019 р.
копію Рішення адвокатів міста Києва на підставі
Рішення № 13-12-02 від 27 вересня 2007 р.

Посвідчення адвоката № ___5012___ р. видане ___вересня___ ___2007___ р.
Радою адвокатів, міста Києва (№№ОЯ: АА 617274)

Виданий адвокатом, що здійснює адвокатську діяльність індивідуально:

03143, Київ обл., Київ, р-н Голосіївський, пул. Метрологічна, буд. 14, корп. 3, кв. 204
(адреса робочого місця адвоката)

### Договором про надання правової (правничої) допомоги
### права адвоката не обмежуються.

" _18_ "  ___червня___   20 _21_ р.          Адвокат:

**1 8 ЧЕР 2021**



**НАЦІОНАЛЬНА АСОЦІАЦІЯ АДВОКАТІВ УКРАЇНИ**

**UKRAINIAN NATIONAL BAR ASSOCIATION**

0407, (м. Київ, вул. Борисоглібська, буд. 3, 5-й поверх,
тел. +38 (044) 392-73-71
email: info@unba.org.ua, веб-сайт: www.unba.org.ua

5th floor, 3 Borysoglibska st., Kyiv, 04070, Ukraine
phone: +38 (044) 392-73-71
email: info@unba.org.ua, web-site: www.unba.org.ua

Attention to:

До уваги:

### CERTIFICATE

#### of Good Standing

### ДОВІДКА

#### про належний правовий статус

Dear Mr. or Ms.,

Hereby we would like to confirm that Mr. Taras Dementiev admitted to the Bar as an advocate in Ukraine on September 27, 2007, certificate of right to practice law No. 3012.

Mr. Dementiev is of good character and repute. There have been no proceedings, and there are no proceedings pending against Mr. Dementiev for any professional or other misconduct.

Mr. Dementiev is currently entitled to practice law as an attorney in Ukraine.

Шановний пан/пані,

Цим підтверджуємо, що пан Тарас Дементьєв став адвокатом в Україні 27 вересня 2007 року, свідоцтво № 3012.

Пан Дементьєв має добру репутацію. Проти пана Дементьєва не було відкрито і не має жодних призупинених дисциплінарних проваджень за професійні чи інші проступки.

Пан Дементьєв зараз має право практикувати як адвокат в Україні.

Sincerely,

Vadym Krasnyk

Head of the Secretariat of
Ukrainian National Bar Association,
Bar Council of Ukraine

З повагою,

Вадим Красник

Керівник секретаріату
Національної асоціації адвокатів України,
Ради адвокатів України

Копія.
Згідно з оригіналом.
Дата: 14.11.2023р.
Адвокат Дементьєв Т.М
(посвідчено за допомогою
електронного підпису)



**ID CARD OF ADVOCATE OF UKRAINE**
UKRAINIAN NATIONAL BAR ASSOCIATION

First name
**TARAS**
Last name
**DEMENTIEV**
Date of birth
1981
ID card №
**3012**
ID card date of issue
**27.09.2007**

Certificate of right to practice law
№    3012    dated   27.09.2007
issued pursuant to decision of
QDCB of Kyiv City
№ 12-12-12  dated  27.09.2007

President of Ukrainian National
Bar Association Lidiya Izoritov

Копія.
Згідно з оригіналом.
Дата: 14.11.2023р.
Адвокат Дементьєв Т.М.
(посвідчено за допомогою
електронного підпису)

Pro Se 3 (Rev. 12/16) Відповідь відповідача на скаргу

# ОКРУЖНИЙ СУД США

Західний округ Вашингтона

Сієтл

|  | | Номер справи | 2:24-cv-01683. |
|---|---|---|---|

DISH NETWORK L. L. C.

*Позивач(i)*
*(Напишіть повне ім'я кожного позивача, який подає цю*
*скаргу. Якщо імена всіх позивачів не вміщуються в полі вище,*
*будь ласка, напишіть у цьому місці «див. вкладене» та*
*прикріпіть додаткову сторінку з повним списком імен.)*

**-v-**

ТОВ «ВІРТУАЛЬНІ СИСТЕМИ» та В'ЯЧЕСЛАВ СМИРНОВ.

*Відповідач(i)*
*(Напишіть повне ім'я кожного відповідача, проти якого*
*порушується позов. Якщо імена всіх відповідачів не*
*вміщуються в полі вище, будь ласка, напишіть у цьому місці*
*«див. вкладене» та додайте додаткову сторінку з повним*
*списком імен.)*

Номер справи    2:24-cv-01683.

*(заповнюється в діловодстві)*

Суд присяжних :    ☐ так    ☒ ні
*(позначте один)*

## ВІДПОВІДЬ ВІДПОВІДАЧА НА СКАРГУ

I.    **Сторони, що подають цю відповідь на скаргу**

Надайте інформацію нижче для кожного відповідача, який подає цю відповідь або іншу відповідь на твердження у скарзі позивача. За потреби додайте додаткові сторінки.

| Відповідач | ВІРТУАЛЬНІ СИСТЕМИ, ТОВ |
|---|---|
| Адреса вулиці | Лабораторна 33/37 |
| Місто та округ | Київ, Україна |
| Штат і поштовий індекс | 03150 |
| Номер телефону | +380 (44) 591-5679 |
| Адреса електронної пошти | +380 (44) 591-5679 |

| Відповідач | В'ячеслав Смирнов |
|---|---|

Pro Se 3 (Rev. 12/16) Відповідь відповідача на скаргу

| | |
|---|---|
| Адреса вулиці | Вадима Гетьмана 1в, пов.46 |
| Місто та округ | Київ, Україна |
| Штат і поштовий індекс | 03057 |
| Номер телефону | +3800674428258 |
| Адреса електронної пошти | +3800674428258 |

II.    Відповідь та захист  відповідача щодо скарги

3. юрисдикція, де знаходиться суд, є невідповідним для розгляду цієї справи, оскільки *(коротко пояснити)*

2

Місце розташування суду є невідповідним для розгляду даної справи через :

1. **Відсутність відповідних контактів з Юрисдикцією:** передбачувані дії, включаючи розміщення та передачу спірного контенту, відбувалися повністю за межами Сполучених Штатів, зокрема на серверах, розташованих в Україні. Відповідачі ТОВ «Віртуальні системи» та В'ячеслав Смирнов не мають офісів, приміщень чи співробітників у штаті Вашингтон чи будь-де в Сполучених Штатах, які були залучені до ймовірних дій. Між діяльністю відповідачів і юрисдикцією немає суттєвого зв'язку, як того вимагає стандарт «мінімальних контактів» у справі *International Shoe Co. проти Вашингтона* , 326 US 310, 316 (1945). Повісткою не було вказувало на будь-який зв'язок між передбачуваною правопорушною діяльністю та серверами, розташованими в Сполучених Штатах, а також не було продемонстровано, наскільки діяльність відповідачів щодо центра обробки даних у Сіетлі мали відношення до позовів, поданих DISH Network. Дії відповідачів, обмежені наданням послуг хостингу за межами США, не демонструють цілеспрямованої користі чи спрямованості на Вашингтонський округ. Отже, стверджувані дії не встановлюють достатніх контактів, щоб виправдати юрисдикцію цього Суду щодо відповідачів.

2. **Відсутність цілеспрямованого спрямування діяльності на Юрисдикцію:** Відповідачі, компанія ТОВ «Віртуальні системи»(VSYS) і В'ячеслав Смирнов не цілеспрямовано спрямовували свою діяльність на Вашингтон чи будь-яку частину Сполучених Штатів. Стандарт «цілеспрямованого керівництва», як роз'яснено у справі «*Calder v. Jones*» , 465 US 783 (1984), вимагає, щоб дії відповідача були чітко спрямовані на державу суду, усвідомлюючи, що шкода, ймовірно, буде заподіяна там. Однак послуги хостингу VSYS доступні в усьому світі й не націлені конкретно на клієнтів із США чи жителів Вашингтона. Ці послуги є нейтральними та глобальними та обслуговують свою клієнтів без націлювання на певний географічний регіон. VSYS не рекламує свої послуги спеціально для споживачів у США та не активно залучає бізнес у Вашингтоні. Отже, немає доказів поведінки, прямо спрямованої проти Вашингтонської юрисдикції. Передбачувана правопорушна діяльність приписується стороннім клієнтам VSYS, а не самому VSYS. Навіть якщо діяльність цих клієнтів мала випадковий зв'язок із Сполученими Штатами, така шкода не була передбачуваною або скерованою відповідачами. Діяльність відповідачів повністю базується в Україні, і їх участь обмежується наданням нейтральних послуг хостингу без контролю або участі в контенті, який транслюється клієнтами. У *Walden v. Fiore* , 571 US 277 (2014), Суд постановив, що юрисдикція не може ґрунтуватися на контактах позивача чи третьої сторони з юрисдикцією. Навпаки, власні дії відповідача повинні створювати суттєвий зв'язок із юрисдикцією. Тут поведінка VSYS не пов'язана з Вашингтоном, і ймовірна шкода є виключно результатом дій третіх сторін. У справі *Pebble Beach Co, проти Caddy* , 453 F.3d 1151 (9th Cir. 2006), дев'ятий округ не виявив персональної юрисдикції над іноземним відповідачем, якщо веб-сайт був доступний у всьому світі, але не був спрямований конкретно на Каліфорнію. Так само веб-сайт і послуги VSYS доступні в усьому світі, але не націлені на клієнтів у Вашингтоні чи США.

3. **Невідповідність вимогам до місця проведення суду:** Відповідно до 28 USC § 1391(b), місце проведення суду є належним, лише якщо:

   • Штат, де проживає будь-який відповідач, якщо всі відповідачі проживають в одному штаті: Відповідачі Virtual Systems, LLC, і В'ячеслав Смирнов є іноземними особами, які проживають в Україні. Жоден з відповідачів не проживає в штаті Вашингтон чи будь-де в Сполучених Штатах.

   • Штат, де відбулася значна частина подій або порушень, що стали підставою для претензій: Жодна з подій, що стали підставою для претензій DISH, не відбулася у Вашингтоні чи в Сполучених Штатах. Передбачувані правопорушні дії – розміщення та передача контенту – відбувалися

Pro Se 3 (Rev. 12/16) Відповідь відповідача на скаргу

повністю на серверах, розташованих в Україні. Операції, інфраструктура та діяльність відповідачів обмежуються Україною та не мають істотного зв'язку з Вашингтоном.

- Якщо такого округу не існує, будь-який округ, де відповідач підпадає під особисту юрисдикцію: для застосування цього резервного положення відповідачі повинні підпадати під особисту юрисдикцію у Вашингтоні. Відповідно до стандарту «мінімальних контактів» у справі *International Shoe Co. проти Вашингтона*, 326 US 310 (1945) і підкріпленого у *Walden v. Fiore*, 571 US 277 (2014), відповідачі не мають достатніх контактів із Вашингтоном для надання особистої юрисдикції. Таким чином, це положення не застосовується, а місце проведення у Вашингтоні є неналежним.

4. **«Forum Non Conveniens»:** доктрина «forum non conveniens» застосовується, коли суд з юрисдикцією та відповідним місцем все одно відхиляє справу, оскільки інший форум є більш доцільним і зручним для вирішення спору. У цьому випадку Україна є більш доречним форумом з наступних причин:

- Відповідачі ТОВ «Віртуальні системи» та В'ячеслав Смирнов проживають в Україні. Усі їхні операції, сервери, інфраструктура та відповідний персонал базуються в Україні. Передбачувана правопорушна діяльність відбувалася повністю на серверах, розташованих в Україні, і ключові докази, такі як записи серверів, угоди з клієнтами та свідчення співробітників, також знаходяться там.

- Вимога відповідачів вести судовий процес у Вашингтоні накладає значний і невиправданий тягар. Відповідачі зіткнуться з матеріально-технічними проблемами під час транспортування доказів, захисту свідків і орієнтування в іноземній правовій системі.

- Ця суперечка стосується іноземних відповідачів, іноземних серверів і передбачуваних дій, які мали місце повністю за межами Сполучених Штатів. Немає суттєвого зв'язку між заявами та Вашингтоном. Простий факт того, що певна передбачувана шкода могла бути заподіяна у Вашингтоні, не створює достатнього зв'язку для виправдання судового розгляду там, як роз'яснено у *Walden v. Fiore*, 571 US 277 (2014).

- Україна дуже зацікавлена у вирішенні спорів, пов'язаних із зареєстрованими компаніями та діяльністю, що відбувається в її межах. Суди США повинні поважати юрисдикцію українських судів відповідно до принципів міжнародної ввічливості. Крім того, українське законодавство регулює багато аспектів цієї справи, включаючи угоди про хостинг і дотримання місцевих нормативних актів, що робить українські суди більш придатними для вирішення цього питання.

- Українські суди є адекватним і доступним форумом для розгляду цього спору. Правова система України здатна вирішувати позови та забезпечувати засоби правового захисту, включаючи вирішення питань інтелектуальної власності згідно з її законодавством.

4.    Відповідачу було вручено повістку, але процес - форма виклику - був недостатнім, оскільки *(коротко пояснити)*

Відповідачу було вручено повістку, але процес - форма виклику - був недостатнім через:

1. **Недостатня конкретика щодо юрисдикційної основи.** У повістці не було належним чином визначено юридичну чи фактичну підставу для здійснення судом персональної юрисдикції щодо відповідачів, ТОВ «Віртуальні системи» (VSYS) та В'ячеслава Смирнова, які є іноземними особами, які працюють переважно в Україні. Хоча визнається, що VSYS обслуговує сервери в Сполучених Штатах, ці сервери не брали участі в імовірних правопорушних діях, про які йдеться в цій справі. Щоб задовольнити вимоги щодо належної правової процедури згідно з рішенням *International Shoe Co. проти Вашингтона*, 326 US 310 (1945), суд повинен встановити, що відповідачі мають «мінімальні контакти» з державою суду та що претензії випливають із цих контактів або пов'язані з ними. Повістка не вказувала на будь-який зв'язок між передбачуваною правопорушною діяльністю та серверами, розташованими в Сполучених Штатах, а також не демонструвала, наскільки операції відповідачів у центрі обробки даних у Сіетлі мали відношення до позовів, поданих DISH Network. Відсутність зв'язку між претензіями та американською інфраструктурою має вирішальне значення, оскільки особиста юрисдикція вимагає, щоб позов «виникав або стосувався» контактів відповідача з форумом (*Ford Motor Co. v. Montana Eighth Judicial Dist. Суд*, 141 S. Ct. 1017 (2021). Щодо іноземних організацій, таких як VSYS, суд повинен спиратися на докладні та конкретні твердження, які показують, що діяльність, яка стала причиною позовів, відбувалася на території відповідної юрисдикції або була прямо спрямована на таку. Просте обслуговування серверів у Сполучених Штатах, які не були залучені до імовірної поведінки, не задовольняє цю вимогу (*Walden v. Fiore*, 571 US 277 (2014)). У повістці не сформульовано, як зв'язок відповідачів з центром обробки даних у Сіетлі пов'язаний з імовірним порушенням авторських прав. Це упущення позбавляє відповідачів справедливого повідомлення про юрисдикційну основу та можливості належним чином захищатися від позовів, порушуючи їхні належні процесуальні права (*World-Wide Volkswagen Corp. v. Woodson*, 444 US 286 (1980)).

2. **Недолік обґрунтування місця проведення.** У повістці не було належним чином пояснено, чому Західний округ Вашингтона є відповідним місцем для розгляду цієї справи. Відповідачі проживають в Україні, а імовірні дії відбувалися за межами території, на серверах, розташованих в Україні. Щоб відповідати 28 USC § 1391, повістка повинна продемонструвати, що значна частина подій або упущень, які стали підставою для позову, відбулася в районі форуму або що відповідачі там проживають. Такого зв'язку не встановлено. Простих заяв про шкоду, завдану позивачеві, який проживає в США, наприклад DISH Network, недостатньо, щоб виправдати місце проведення судового засідання у Вашингтоні. Процесуальна справедливість вимагає більш чіткого пояснення того, чому форум є належним за обставин цієї справи.

3. **Неоднозначність у термінах відповіді.** Повістка не враховує правильний графік відповіді, застосований до відповідачів як іноземних організацій, які працюють за межами Сполучених Штатів. Правило 12(a)(1)(A)(ii) Федеральних правил цивільного судочинства чітко передбачає, що відповідачі, які перебувають за межами Сполучених Штатів, мають право на 90 днів для відповіді на скаргу. Однак повістка неоднозначно посилається на 21-денний термін і включає 60-денний термін, застосовний лише до Сполучених Штатів або їхніх установ, посадових осіб або службовців. Це упущення створює плутанину та не інформує відповідачів, ТОВ «Віртуальні системи» та В'ячеслава Смирнова, про їхні процесуальні права. Відсутність ясності може завдати шкоди відповідачам, не надавши їм достатньо часу для оцінки претензій, звернення за юридичною допомогою та підготовки адекватної відповіді, як того вимагає правило 4(a)(1)(A) і правило 12(a)(1)(A)(ii).

4. **Відсутність чіткого опису судового захисту.** Повісткою не було чітко сформульовано конкретний захист, якого шукав позивач, таким чином залишивши

Pro Se 3 (Rev. 12/16) Відповідь відповідача на скаргу

відповідачів без належного повідомлення про претензії, які вони повинні розглянути. Згідно з правилом 4(a)(1)(C) Федеральних правил цивільного судочинства, повістка повинна «зазначати час, протягом якого відповідач повинен з'явитися та захиститися», і повинна містити достатню кількість деталей, щоб проінформувати відповідачів про обсяг і характер шуканої допомоги. Упущення конкретної інформації щодо затребуваного судового захисту – наприклад, суми збитків, характеру будь-якої судової заборони, що вимагається, або інших засобів правового захисту – змушує відповідачів спекулювати щодо повного обсягу вимог позивача. Ця відсутність ясності підриває процесуальну справедливість і позбавляє відповідачів можливості: оцінити правові та фінансові ризики, пов'язані з позовами; Підготувати обґрунтовану відповідь на звинувачення; Оцінити потребу в потенційних дискусіях щодо врегулювання чи оборонних стратегіях.

5. Спосіб вручення відповідачу повістки та скарги був недостатнім, оскільки
*(коротко пояснити)*

Порядок вручення відповідачу повістки та скарги був недостатнім через Невідповідність Гаазькій конвенції про вручення: Україна є учасником Гаазької конвенції про вручення за кордоном судових та позасудових документів у цивільних або комерційних справах, яка встановлює офіційні процедури обслуговування процесу на міжнародному рівні. Згідно зі статтею 5 Конвенції, вручення має здійснюватися через Центральний орган, призначений країною-одержувачем, яким у даному випадку є Міністерство юстиції України. Пряма передача документів пану Смирнову через FedEx обходить обов'язкову процедуру, передбачену Гаазькою конвенцією про вручення, і не відповідає формальним вимогам для дійсного міжнародного процесуального вручення. Це недотримання підриває процесуальну справедливість і гарантії, встановлені для забезпечення належного сповіщення та достатнього часу для відповіді іноземного відповідача. Крім того, правило 12(a)(1)(A)(ii) Федеральних правил цивільного судочинства вимагає, щоб іноземні відповідачі, які знаходяться за межами Сполучених Штатів, мали **90 днів** для відповіді на скаргу. Якщо цей подовжений час відповіді не було чітко повідомлено або не було дотримано в поєднанні з неналежним методом надання послуг, права відповідача на належні процесуальні процедури ще більше порушуються.

6. У скарзі не вказано вимогу, на підставі якої може бути надано судовий захист, тому що *(коротко поясніть, чому стверджувані факти, навіть якщо вони правдиві, недостатні, щоб продемонструвати право позивача на відшкодування)*

6

Скарга позивача є неповноцінною, оскільки стверджувані факти, навіть якщо вони є правдивими, недостатні для створення життєздатної правової основи для стягнення з відповідачів. Зокрема:

1. **Відсутність конкретних звинувачень щодо неправомірних дій відповідачів** : скарга базується на узагальнених твердженнях про те, що Virtual Systems, LLC і В'ячеслав Смирнов надавали послуги хостингу, які нібито використовувалися сторонніми Піратськими Сервісами для порушення авторських прав DISH. Однак вторинна відповідальність за порушення авторських прав вимагає більше, ніж просто надання нейтральної інфраструктури чи послуг. Співучасть у порушенні вимагає фактичних знань про конкретну правопорушну діяльність і істотної допомоги в такому порушенні ( *Sony Corp. of Am. проти Universal City Studios, Inc.* , 464 US 417, 439 (1984)). У скарзі не наводяться факти, які б доводили, що відповідачі свідомо сприяли порушенню або брали активну участь у правопорушних діях. Спонукання вимагає позитивних дій для заохочення до порушення ( *MGM Studios Inc. проти Grokster, Ltd.* , 545 US 913, 930 (2005)). Покладання на маркетингові фрази, такі як «DMCA ігнорується», не доводить наміру чи причинного зв'язку порушення. Ця формулювання, ймовірно, відображає правову природу українського законодавства, а не намір спонукати до порушення авторських прав. Побічна відповідальність вимагає права та здатності контролювати правопорушну діяльність та отримання прямої фінансової вигоди від неї ( *Ellison v. Robertson* , 357 F.3d 1072, 1078 (9th Cir. 2004)). Скарга не встановлює, що відповідачі здійснювали контроль над діями Піратських Сервісів або що їхні доходи були конкретно пов'язані з порушенням.

2. **Нездатність встановити обізнаність або намір** : у скарзі не наводиться достатніх фактів, які б показали, що відповідачі мали фактичні чи конструктивні знання про конкретні випадки порушення або навмисно сприяли такому порушенню. Відповідно до *Sony Corp. Am. проти Universal City Studios, Inc.* , відповідальність за участь вимагає: 1. Фактичних знань про конкретну правопорушну діяльність ; 2. Матеріальний внесок у правопорушну діяльність. В Україні повідомлення про захист авторських прав у цифрову епоху ( особливо автоматизовані ) не мають правової чи процедурної ваги. Такі повідомлення не підлягають виконанню відповідно до законодавства України, яке регулює діяльність відповідачів. Як наслідок, вони не встановлюють знання чи умислів. *Perfect 10, Inc. проти Amazon.com, Inc.* , 508 F.3d 1146, 1171 (9th Cir. 2007), встановлює, що загальна обізнаність про потенційне порушення є недостатньою. Позивач не продемонстрував конкретних знань про правопорушний вміст або навмисне сприяння.

3. **Недостатність тверджень про контроль або фінансову вигоду:** у скарзі не встановлено необхідні елементи для суб'єктивної відповідальності згідно із законодавством США про авторське право, яке вимагає: 1. Право та можливість контролювати: практичний контроль над порушною діяльністю ; 2. Пряма фінансова вигода: дохід, безпосередньо пов'язаний із правопорушною діяльністю. Хостинг-провайдери зазначали надають нейтральні платформи та зазначай не контролюють певний вміст. У скарзі не стверджується, що відповідачі активно відстежували або контролювали вміст Піратських Сервісів. Договірні права на відключення облікових записів або видалення вмісту є недостатніми без доказів активного примусового виконання чи нагляду ( *Perfect 10, Inc. проти Cybernet Ventures, Inc* , 213 F. Supp. 2d 1146, 1173 (CD Cal. 2002)). Немає жодних доказів того, що відповідачі отримували пряму вигоду від порушення або що порушення було суттєвим «просуванням» їхніх послуг ( *Fonovisa, Inc. проти Cherry Auction, Inc.* , 76 F.3d 259, 263-64 (9th Cir. 1996)). Плата за хостинг, яку стягують відповідачі, є стандартною та не прив'язана до конкретної правопорушної діяльності ( *Ellison v. Robertson* , 357 F.3d 1072, 1079 (9th Cir. 2004)).

4. **Екстериторіальний характер передбачуваної поведінки:** Передбачувані правопорушні дії відбувалися повністю на серверах, розташованих в Україні. Закон США про авторське право не поширюється на дії, що відбуваються за межами Сполучених Штатів. Закон про авторське право не застосовується екстериторіально ( *Subafilms, Ltd проти MGM-Pathe Commc'ns Co.* , 24 F.3d 1088, 1095-96 (9th Cir. 1994)). Щоб посилатися на закон США про авторське право, Позивач має довести, що

правопорушні дії мали місце на території Сполучених Штатів ( *LA News Serv. проти Reuters Television Int'l, Ltd.* , 149 F.3d 987, 990 (9th Cir. 1998)). У скарзі визнається, що ймовірна діяльність відбувалася на серверах, розташованих в Україні. Він не надає доказів того, що сервери відповідачів у США використовувалися для ймовірного порушення. У скарзі не вказано конкретних користувачів або клієнтів із США, які отримали доступ до правопорушного вмісту через служби відповідачів.

5. **Неможливість встановити особисту відповідальність пана Смирнова** : Позивач не надав достатніх фактів для встановлення індивідуальної відповідальності пана Смирнова. Щоб притягнути особу до відповідальності, Позивач повинен довести, що ця особа особисто дозволяла, керувала або брала участь у діях, що порушують авторські права ( *ALS Scan, Inc. проти Steadfast Networks, LLC* , 819 F. App'x 522, 524 (9th Cir. 2020); *Perfect 10, Inc. проти Giganews, Inc.* , 847 F.3d 657, 677 (9-е коло 2017)). Твердження Позивача не свідчать про те, що пан Смирнов особисто брав участь або знав про конкретну правопорушну діяльність. Повідомлення, надіслані компанії, не встановлюють особисту відповідальність, якщо відповідач безпосередньо не брав участі в діях, що порушують права, або керував ними. У скарзі не йдеться про будь-яку поведінку пана Смирнова в США. Закон США про авторське право не поширюється на екстериторіальні дії ( *Subafilms, Ltd. проти MGM-Pathe Commc'ns Co.* , 24 F.3d 1088, 1095-96 (9th Cir. 1994)).

7. Інша сторона *(ім'я)*          сторонні оператори т. зв          потрібно приєднатися
                                   «Піратські Сервіси»                (додати)

у справі. Причина *(коротко поясніть, чому потрібно приєднатися до іншої партії)*

Передбачувана правопорушна діяльність, згадана в скарзі , стосується сторонніх операторів так званих «Піратських Сервісів», які є юридичними або фізичними особами, безпосередньо відповідальними за завантаження, передачу та розповсюдження захищеного авторським правом вмісту. Відповідно до Федерального правила цивільного судочинства 19(а), ці сторони є незамінними, оскільки їхня відсутність погіршує здатність суду винести справедливе та повне рішення у справі.

1. Повнота: Не приєднуючи Піратських Сервісів до справи, суд не може повністю розглянути позов, оскільки вони є безпосередніми порушниками, відповідальними за ймовірне несанкціоноване використання та розповсюдження захищених авторським правом матеріалів DISH. Притягнення до відповідальності виключно хостинг-провайдерів, таких як ТОВ «Віртуальні системи» та її директора В'ячеслава Смирнова, призведе до неповного вирішення та може призвести до несправедливої відповідальності відповідачів за дії незалежних третіх сторін.

2. Інтереси відсутніх сторін: оператори Піратських Сервісів мають істотний інтерес у захисті від позовів про порушення авторських прав. Якщо їх не приєднати, їхня відсутність може зашкодити або перешкодити їхній здатності захищати свої інтереси. Їх виключення загрожує існуючим відповідачам отримати непослідовні зобов'язання та потенційно перешкоджає вирішенню претензій через покладання відповідальності на постачальників хостингу без розгляду дій прямих порушників.

Pro Se 3 (Rev. 12/16) Відповідь відповідача на скаргу

     a.  Якщо підставою для предметної юрисдикції є різноманітність громадянства, вкажіть наслідки додавання іншої сторони:

        Друга сторона є громадянином держави *(ім'я)* n/a        .

        Або є громадянином *(іноземної країни)* чужі народи

*(вказати суму)*        Сума відшкодування збитків , яку вимагає ця інша сторона, становить  невизначено

    b. Якщо позов цієї іншої сторони ґрунтується на ймовірному порушенні федерального конституційного чи законного права, вкажіть підставу:

        Претензії проти цих третіх сторін будуть ґрунтуватися на ймовірних порушеннях закону про авторське право США (17 USC § 501 і далі), зокрема, несанкціонованого публічного виконання та розповсюдження матеріалів, захищених авторським правом. Приєднання є необхідним для того, щоб гарантувати, що відповідальність за будь-яке порушення покладено на відповідні сторони.

### C. Застосування позитивних засобів захисту до позовів про судовий захист

    Визначте ствердний захист або відмову, які дають підставу для уникнення відповідачу відповідальності за    однією або декількома претензіями позивача, навіть якщо підстави для позову є. Будь-який позитивний захист або    уникнення має бути визначено у відповіді. Включіть будь-яке з наступного, що стосується, а також будь-які    інші, які можуть бути застосовані.

    Позовні вимоги позивача про *(вказати вимоги)*

    порушення авторських прав відповідно до 17 USC § 501 і далі.

    заборонено *(визначте одне або декілька з наступного, що стосується)* :

    1. Згода та задоволення *(коротко пояснити)*

      n/a

    2. Арбітраж і рішення *(коротко пояснити)*

      n/a

    3. Прийняття ризику *(коротко пояснити)*

      n/a

    4. Спільна або порівняльна недбалість позивача *(коротко поясніть)*

9

Pro Se 3 (Rev. 12/16) Відповідь відповідача на скаргу

n/a

5. Примус *(коротко пояснити)*

n/a

6. Естопель *(коротко пояснити)*

Позивачу заборонено пред'являти претензії до Відповідачів, оскільки він не вжив розумних заходів для усунення ймовірної порушницької поведінки сторонніх операторів Піратських Сервісів перед поданням позовів до Відповідачів. Неодноразове використання позивачем загальних повідомлень, а не прямих примусових дій проти основних порушників, створює несправедливу ситуацію, яка несправедливо перекладає відповідальність на нейтрального хостинг-провайдера.

7. Нерозгляд *(коротко пояснити)*

n/a

8. Шахрайство *(коротко пояснити)*

n/a

9. Незаконність *(коротко пояснити)*

Претензії позивача неправомірно намагаються покласти відповідальність у США на дії, які регулюються іноземним законодавством, у тому числі українським. Оскільки передбачувані дії не є незаконними в межах юрисдикції, де вони сталися, Позивач не може отримати відшкодування відповідно до законодавства США .

10. Травма співробітником *(коротко пояснити)*

n/a

11.Laches (затримка) *(коротко пояснити)*

Позивач безпідставно затримував подання претензій, незважаючи на те, що йому було відомо про ймовірне порушення протягом тривалого періоду часу. Ця затримка завдала шкоди Відповідачам, оскільки вони не змогли вирішити проблеми раніше та знайти сторонніх операторів, відповідальних за ймовірне порушення.

12. Ліцензія *(коротко пояснити)*

10

Pro Se 3 (Rev 12/16) Відповідь відповідача на скаргу

У тій мірі, в якій будь-який вміст, розміщений на серверах Відповідачів, було завантажено або передано уповноваженими сторонами, претензії Позивача забороняються фактичними або неявними ліцензіями, наданими третім особам. Відповідачі, як хостинг-провайдери, не мають засобів визначити статус ліцензування конкретного вмісту без чіткого повідомлення та доказів.

13. Оплата *(коротко пояснити)*

n/a

14. Відпустіть *(коротко пояснити)*

n/a

15. Res judicata *(коротко пояснити)*

n/a

16. Положення про шахрайство *(коротко пояснити)*

n/a

17. Позовна давність *(коротко пояснити)*

n/a

18. Відмова *(коротко пояснити)*

Нездатність Позивача вжити своєчасних і рішучих заходів проти сторонніх операторів Піратських Сервісів, незважаючи на те, що він знав про передбачувану правопорушну діяльність, означає відмову від позовів до Відповідачів. Покладаючись на непрямі та процесуально недостатні повідомлення, Позивач продемонстрував мовчазне погодження з поведінкою третьої сторони. Ця неспроможність застосувати прямі примусові заходи проти фактичних порушників не дозволяє Позивачу заднім числом покласти відповідальність на Відповідачів, які просто надавали нейтральні послуги хостингу, не знаючи або не контролюючи ймовірну діяльність.

19. Інше *(коротко пояснити)*

11

У скарзі не вказано претензій, на підставі якої може бути надано захист, оскільки Відповідачі, як нейтральні хостинг-провайдери, не володіли необхідними знаннями, ані навмисно сприяли чи контролювали передбачувану правопорушну діяльність. У законодавстві США про авторське право явно відсутнє екстериторіальне застосування до дій, які відбуваються виключно на іноземних серверах, що працюють під іноземною юрисдикцією, наприклад, в Україні. Відповідно, Позивач не може встановити відповідальність відповідно до 17 USC § 501 за поведінку поза межами юрисдикції США, як роз'яснено у *справі Subafilms, Ltd. проти MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1095-96 (9th Cir 1994).

**D.    Заявлення претензій до позивача (зустрічний позов) або до іншого відповідача (перехресний позов)**

Щодо зустрічного позову проти позивача чи зустрічного позову проти іншого відповідача, коротко вкажіть факти, які показують, чому відповідач, який заявляє зустрічний позов або зустрічний позов, має право на відшкодування збитків або інше відшкодування. Не наводьте юридичних аргументів. Вкажіть, як була залучена кожна протилежна сторона та що кожна з них зробила, що завдало відповідачу шкоди або порушило права відповідача, включаючи дати та місця цієї участі або поведінки. Якщо висунуто більше одного зустрічного або перехресного позову, пронумеруйте кожну вимогу та напишіть короткий і зрозумілий виклад кожної позову в окремому абзаці. За потреби додайте додаткові сторінки.

1. Відповідач має такі претензії до позивача *(конкретизуйте претензію та поясніть її; за потреби додайте додаткову заяву про юрисдикцію)* :

Позов: Зустрічний позов про декларативне рішення про відсутність відповідальності
Факти: Відповідачі, ТОВ «Віртуальні системи» та В'ячеслав Смирнов, вимагають винести декларативне рішення, в якому стверджується, що вони не несуть відповідальності за ймовірне порушення авторських прав, як стверджує Позивач, DISH Networks. Сервери, причетні до ймовірного порушення, розташовані в Україні та регулюються законодавством України. Претензії Позивача мають на меті неправомірне покладання відповідальності на Відповідачів за ймовірні дії сторонніх Піратських Сервісів, над якими Відповідачі не мають контролю. Ці сторонні оператори відповідають за завантаження, керування та розповсюдження вмісту. Позивач не надав належного повідомлення про конкретну правопорушну діяльність або не продемонстрував будь-якого активного сприяння або заохочення до порушення і боку Відповідачів. Відповідачі не брали свідомо чи навмисно участі в будь-якому ймовірному порушенні авторських прав і не несуть відповідальності за дії незалежних сторонніх операторів, які використовують їхні послуги хостингу.
Юрисдикція : цей зустрічний позов подано відповідно до: 28 USC § 2201 (Закон про декларативне рішення) з метою роз'яснення законних прав і обов'язків сторін ; 28 USC § 1331 (федеральна юрисдикція), оскільки спір включає претензії, що виникають відповідно до Закону США про авторське право (17 USC § 501 і далі). Декларативне судове рішення має важливе значення для вирішення поточних спорів щодо відповідальності та запобігання невиправданій шкоді бізнес-операціям та репутації Відповідачів.

2. Відповідач має таку претензію до одного чи кількох інших відповідачів *(вкажіть вимогу та поясніть її; за потреби додайте додаткову заяву про юрисдикцію)* :

n/a

      3.    Коротко й точно вкажіть, які збитки чи інше відшкодування сторона, яка заявляє зустрічний або перехресний позов, просить суд винести. Не наводьте юридичних аргументів. Включіть будь-які підстави для твердження про те, що ймовірні порушення тривають на даний момент. Включіть суми будь-яких фактичних збитків, які вимагаються за стверджувані дії, і підстави для цих сум. Включіть будь-які заявлені штрафні або типові збитки, суми та причини, які ймовірно дають право стороні на фактичні або штрафні грошові збитки.

      a.    Відповідач, який заявляє зустрічний або перехресний позов проти *(вказати хто позов*

*проти)*    **DISH NETWORK L.L.C.** _____ стверджує наступне

отримані травми або збитки *(вказати)* :

      Неправомірними діями Позивача відповідачам завдано наступних збитків:

      1.    **Шкода репутації:** Твердження Позивача завдали суттєвої шкоди професійній репутації Відповідачів як нейтрального та законного хостинг-провайдера. Ці звинувачення, незважаючи на те, що вони безпідставні, зображують Відповідачів як співучасників незаконної діяльності, підриваючи їхній авторитет у бізнес-спільноті та підриваючи довіру між клієнтами та галузевими партнерами.

      2.    **Юридичні та адміністративні витрати:** Захищаючись від необґрунтованих претензій Позивача, відповідачі несуть значні витрати на судові збори, адміністративні ресурси та збої в роботі. Ці витрати продовжують накопичуватися через тривалочий характер судового процесу

      3.    **Економічна шкода:** Твердження Позивача порушили регулярні ділові операції Відповідачів, що призвело до втрати наявних клієнтів і стримування потенційних клієнтів від взаємодії з Відповідачами. Необґрунтовані судові процеси та негативний розголос призвели до фінансових втрат і завадили розвитку бізнесу.

    b. Відповідач вимагає відшкодування наступних збитків або іншого відшкодування

*(зазначте)* :

13

Pro Se 3 (Rev. 12/16) Відповідь відповідача на скаргу

1. **Декларанійна компенсація:**

Рішення про те, що:

- Відповідачі не несуть відповідальності за сприяння, спонукання чи побічне порушення авторських прав.
- Відповідачі, як хостинг-провайдери, не підпадають під дію законодавства США про авторське право щодо дій, які відбуваються за межами юрисдикції США.

2. **Грошові збитки:**

- Відшкодування шкоди, заподіяної репутації Відповідачів.
- Відшкодування судових та адміністративних витрат, понесених при захисті від позовів.
- Компенсація економічної шкоди внаслідок зриву діяльності та втрати клієнтів.

3. **Штрафні санкції:**

Відповідачі вимагають відшкодування штрафних збитків у розмірі, достатньому для того, щоб утримати позивача від подання подібних безпідставних позовів до нейтральних хостинг-провайдерів у майбутньому.

4. **Судова заборона :**

Розпорядження, яке перешкоджає позивачу робити подальші безпідставні звинувачення або подавати претензії без достовірних і обґрунтованих доказів.

---

## III.   Атестація та закриття

Згідно з Федеральним правилом цивільного судочинства 11, підписавшись нижче, я підтверджую, наскільки мені відомо, інформації та переконання, що ця відповідь: (1) не надається з неналежною метою, наприклад для переслідування, спричинення     непотрібної затримки, або без потреби збільшити витрати на судовий процес; (2) підтверджується чинним законодавством або       несерйозним     аргументом     щодо розширення, зміни чи скасування чинного законодавства; (3) фактичні твердження мають доказову підтримку або, якщо це спеціально визначено, ймовірно матимуть доказову підтримку після розумної можливості для подальшого розслідування чи відкриття; і (4) відповідь іншим чином відповідає вимогам Правила 11.

### A. Для сторін без адвоката

Я погоджуюся повідомляти канцелярії про будь-які зміни моєї адреси, куди можуть надсилатися документи, пов'язані зі справою. Я розумію, що моя нездатність зберегти поточну адресу у файлі канцелярії може призвести до закриття моєї справи.

Дата підписання:        12 грудня 2024 р

Підпис відповідача

Ім'я відповідача                В'ячеслав Смирнов

друкованими

14

Pro Se 3 (Rev. 12/16) Відповідь відповідача на скаргу

### Б. Для адвокатів

Дата підписання:                   n/a

Підпис повіреного              n/a

Ім'я адвоката друкованими      n/a

Номер бару                     n/a

Назва юридичної компанії       n/a

Адреса вулиці                  n/a

Штат і поштовий індекс         n/a

Номер телефону                 n/a

Адреса електронної пошти       n/a

Pro Se 3 (Rev. 12/16) The Defendant's Answer to the Complaint

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

Seattle Division

|  |  |
|---|---|
| DISH NETWORK L.L.C. | Case No.   2:24-cv-01683. |
| *Plaintiff(s)* | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | Jury Trial: *(check one)*   ☐ Yes   ☒ No |
| -v- | |
| VIRTUAL SYSTEMS, LLC and VYACHESLAV SMYRNOV. | |
| *Defendant(s)* | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | |

## THE DEFENDANT'S ANSWER TO THE COMPLAINT

I.   **The Parties Filing This Answer to the Complaint**

Provide the information below for each defendant filing this answer or other response to the allegations in the plaintiff's complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | VIRTUAL SYSTEMS, LLC |
| Street Address | Laboratorna 33/37 |
| City and County | Kyiv, Ukraine |
| State and Zip Code | 03150 |
| Telephone Number | +380 (44) 591-5679 |
| E-mail Address | +380 (44) 591-5679 |

| | |
|---|---|
| Name | Vyacheslav Smyrnov |
| Street Address | Vadyma Hetmana 1v street, fl.46 |

Pro Se 3 (Rev. 12/16) The Defendant's Answer to the Complaint

| | |
|---|---|
| City and County | Kyiv, Ukraine |
| State and Zip Code | 03057 |
| Telephone Number | +3800674428258 |
| E-mail Address | +3800674428258 |

## II.    The Answer and Defenses to the Complaint

3.    The venue where the court is located is improper for this case because *(briefly explain)*

2

The venue where the court is located is improper for this case because of:

1. **Lack of Relevant Contacts with the Forum:** The alleged acts, including hosting and transmission of the disputed content, occurred entirely outside the United States, specifically on servers located in Ukraine. Defendants Virtual Systems, LLC, and Vyacheslav Smyrnov do not maintain offices, facilities, or employees within Washington State or anywhere in the United States that were engaged in the alleged acts. There is no substantial connection between the defendants' activities and the forum, as required by the "minimum contacts" standard under *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The summons did not specify any connection between the alleged infringing activity and the servers located in the United States, nor did it demonstrate how the defendants' operations at the Seattle data center were relevant to the claims brought by DISH Network. Defendants' actions, limited to providing hosting services outside the U.S., do not demonstrate purposeful availment or direction toward the Washington forum. Consequently, the alleged acts fail to establish sufficient contacts to justify this Court's jurisdiction over the defendants.

2. **Absence of Purposeful Direction Toward the Forum:** Defendants, Virtual Systems, LLC (VSYS), and Vyacheslav Smyrnov, have not purposefully directed their activities toward Washington or any part of the United States. The "purposeful direction" standard, as clarified in *Calder v. Jones*, 465 U.S. 783 (1984), requires that the defendant's actions be expressly aimed at the forum state, with the knowledge that harm would likely be suffered there. VSYS's hosting services, however, are globally accessible and not targeted specifically at U.S. customers or Washington residents. These services are neutral and global, catering to a wide range of clients without targeting any specific geographic region. VSYS does not market its services specifically to U.S. consumers or actively solicit business in Washington. Consequently, there is no evidence of conduct expressly aimed at the Washington forum. The alleged infringing activity is attributed to third-party customers of VSYS, not VSYS itself. Even if those customers' activities had some incidental connection to the United States, such harm was not foreseeable or directed by the defendants. The defendants' operations are based entirely in Ukraine, and their involvement is limited to providing neutral hosting services with no control over or participation in the content streamed by customers. In *Walden v. Fiore*, 571 U.S. 277 (2014), the Court held that jurisdiction cannot be based on a plaintiff's or third party's contacts with the forum. Rather, the defendant's own activities must create a substantial connection to the forum. Here, VSYS's conduct is disconnected from Washington, and the alleged harm is solely the result of third-party actions. In *Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006), the Ninth Circuit found no personal jurisdiction over a foreign defendant where a website was globally accessible but not specifically directed at California. Similarly, VSYS's website and services are globally available but not aimed at Washington or U.S. customers.

3. **Failure to Meet Venue Requirements:** Under 28 U.S.C. § 1391(b), venue is proper only if:

   - A district where any defendant resides, if all defendants reside in the same state: Defendants Virtual Systems, LLC, and Vyacheslav Smyrnov are foreign entities residing in Ukraine. Neither defendant resides in Washington State or anywhere in the United States.

   - A district where a substantial part of the events or omissions giving rise to the claim occurred: None of the events giving rise to DISH's claims occurred in Washington or within the United States. The alleged infringing acts - hosting and transmission of content - took place entirely on servers located in Ukraine. Defendants' operations, infrastructure, and activities are confined to Ukraine and do not have any substantial connection to Washington.

   - If no such district exists, any district where a defendant is subject to personal jurisdiction: For this fallback provision to apply, defendants must be subject to personal jurisdiction in Washington. As established under the "minimum

Pro Se 3 (Rev. 12/16) The Defendant's Answer to the Complaint

contacts" standard in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and reinforced in *Walden v. Fiore*, 571 U.S. 277 (2014), defendants lack sufficient contacts with Washington to confer personal jurisdiction. Therefore, this provision does not apply, and venue in Washington is improper.

4. **Forum Non Conveniens:** The doctrine of forum non conveniens applies when a court with jurisdiction and proper venue nonetheless dismisses a case because another forum is more appropriate and convenient for resolving the dispute. In this case, Ukraine is a more appropriate forum for the following reasons:

- Defendants Virtual Systems, LLC, and Vyacheslav Smyrnov are domiciled in Ukraine. All of their operations, servers, infrastructure, and relevant personnel are based in Ukraine. The alleged infringing activity occurred entirely on servers located in Ukraine, and key evidence, such as server records, customer agreements, and employee testimony, is also located there.

- Requiring defendants to litigate in Washington imposes a substantial and unreasonable burden. Defendants would face logistical challenges in transporting evidence, securing witnesses, and navigating a foreign legal system.

- The dispute involves foreign defendants, foreign servers, and alleged actions that took place entirely outside the United States. There is no substantial connection between the claims and Washington. The mere fact that some alleged harm may have been felt in Washington does not create a sufficient nexus to justify litigating there, as clarified in *Walden v. Fiore*, 571 U.S. 277 (2014).

- Ukraine has a strong interest in adjudicating disputes involving its domiciled companies and activities occurring within its borders. U.S. courts should respect the jurisdiction of Ukrainian courts under principles of international comity. Moreover, Ukrainian law governs many aspects of this case, including hosting agreements and compliance with local regulations, making Ukrainian courts better suited to resolve the matter.

- Ukrainian courts provide an adequate and available forum for this dispute. Ukraine's legal system is capable of adjudicating claims and providing remedies, including addressing intellectual property issues under its laws.

4. The defendant was served but the process—the form of the summons—was insufficient because *(briefly explain)*

4

The defendant was served but the process - the form of the summons - was insufficient because of:

1. **Insufficient Specificity in Jurisdictional Basis.** The summons failed to adequately specify the legal or factual basis for the court's exercise of personal jurisdiction over the defendants, Virtual Systems, LLC (VSYS) and Vyacheslav Smyrnov, who are foreign entities operating primarily in Ukraine. While it is acknowledged that VSYS maintains servers in the United States, these servers were not engaged in the alleged infringing activities at issue in this case. To satisfy due process requirements under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the court must establish that the defendants have "minimum contacts" with the forum state and that the claims arise out of or relate to those contacts. The summons did not specify any connection between the alleged infringing activity and the servers located in the United States, nor did it demonstrate how the defendants' operations at the Seattle data center were relevant to the claims brought by DISH Network. The absence of a connection between the claims and the U.S.-based infrastructure is critical, as personal jurisdiction requires that the claim "arise out of or relate to" the defendant's contacts with the forum (*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021)). For foreign entities like VSYS, the court must rely on detailed and specific allegations showing that the activity giving rise to the claims occurred within or was expressly directed at the forum. Merely maintaining servers in the United States, which were not involved in the alleged conduct, does not satisfy this requirement (*Walden v. Fiore*, 571 U.S. 277 (2014)). The summons fails to articulate how the defendants' connections to the Seattle data center relate to the alleged copyright infringement. This omission deprives the defendants of fair notice of the jurisdictional basis and the opportunity to adequately defend against the claims, violating their due process rights (*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)).

2. **Deficiency in Stating Venue Justification.** The summons failed to adequately explain why the Western District of Washington is an appropriate venue for this case. Defendants are domiciled in Ukraine, and the alleged conduct occurred extraterritorially, primarily on servers located in Ukraine. To comply with 28 U.S.C. § 1391, the summons must demonstrate that a substantial part of the events or omissions giving rise to the claim occurred in the forum district or that defendants reside there. No such connection has been established. Merely alleging harm to a U.S.-based plaintiff, such as DISH Network, is insufficient to justify venue in Washington. Procedural fairness demands a clearer explanation of why the forum is proper under the circumstances of this case.

3. **Ambiguity in Timeline for Responding.** The summons fails to account for the correct response timeline applicable to the defendants as foreign entities served outside the United States. Rule 12(a)(1)(A)(ii) of the Federal Rules of Civil Procedure clearly provides that defendants served outside the United States are entitled to 90 days to respond to a complaint. However, the summons ambiguously references a 21-day deadline and includes a 60-day timeline applicable only to the United States or its agencies, officers, or employees. This omission creates confusion and fails to properly inform the defendants, Virtual Systems, LLC, and Vyacheslav Smyrnov, of their procedural rights. The lack of clarity risks prejudicing the defendants by not granting them sufficient time to assess the claims, seek legal counsel, and prepare an adequate response, as required under Rule 4(a)(1)(A) and Rule 12(a)(1)(A)(ii).

4. **Lack of Clear Description of Relief Sought.** The summons failed to clearly articulate the specific relief sought by the plaintiff, thereby leaving the defendants without adequate notice of the claims they must address. Under Rule 4(a)(1)(C) of the Federal Rules of Civil Procedure, a summons must "state the time within which the defendant must appear and defend," and must include sufficient detail to inform the defendants of the scope and nature of the relief sought. The omission of specific information regarding the relief sought - such as the amount of damages, the nature of any injunctive relief requested, or other remedies - forces the defendants to speculate about the full extent of the plaintiff's demands. This lack of clarity undermines procedural fairness and deprives the defendants

Pro Se 3 (Rev. 12/16) The Defendant's Answer to the Complaint

of the ability to: Assess the legal and financial risks associated with the claims; Prepare a well-informed response to the allegations; Evaluate the need for potential settlement discussions or defense strategies.

5.    The manner of serving the defendant with the summons and complaint was insufficient because *(briefly explain)*

The manner of serving the defendant with the summons and complaint was insufficient because of Non-Compliance with the Hague Service Convention: Ukraine is a signatory to the Hague Service Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, which establishes formal procedures for serving process internationally. Under Article 5 of the Convention, service of process must be completed through the Central Authority designated by the recipient country, which in this case is the Ukrainian Ministry of Justice. The direct transmission of documents to Mr. Smyrnov via FedEx bypasses the mandatory procedure required under the Hague Service Convention and fails to meet the formal requirements for valid international service of process. This non-compliance undermines procedural fairness and the safeguards established to ensure proper notice and sufficient time for a foreign defendant to respond. Moreover, the Federal Rules of Civil Procedure Rule 12(a)(1)(A)(ii) require that foreign defendants served outside the United States be afforded **90 days** to respond to a complaint. If this extended response time was not clearly communicated or respected in conjunction with the improper service method, the defendant's due process rights are further compromised.

6.    The complaint fails to state a claim upon which relief can be granted because *(briefly explain why the facts alleged, even if true, are not enough to show the plaintiff's right to recover)*

The Plaintiff's complaint is deficient because the facts alleged, even if true, are insufficient to establish a viable legal basis for recovery against the defendants. Specifically:

1. **Lack of Specific Allegations of Defendants' Wrongdoing:** The complaint relies on generalized assertions that Virtual Systems, LLC and Vyacheslav Smyrnov provided hosting services that were allegedly used by third-party Pirate Services to infringe on DISH's copyrights. However, secondary liability for copyright infringement requires more than merely providing neutral infrastructure or services. Contributory Infringement requires actual knowledge of specific infringing activity and substantial assistance in that infringement (*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 439 (1984)). The complaint does not allege facts demonstrating that the defendants knowingly facilitated infringement or actively participated in infringing acts. Inducement requires affirmative acts to encourage infringement (*MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)). The reliance on marketing phrases such as "DMCA Ignored" does not prove intent or causation of infringement. This language likely reflects Ukrainian legal norms rather than an intent to induce copyright violations. Vicarious Liability requires the right and ability to control the infringing activity and a direct financial benefit from it (*Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004)). The complaint does not establish that defendants exercised control over the Pirate Services' actions or that their revenue was specifically tied to infringement.

2. **Failure to Establish Knowledge or Intent:** The complaint fails to allege sufficient facts to show that the defendants had actual or constructive knowledge of specific instances of infringement or intentionally facilitated such infringement. Under *Sony Corp. of Am. v. Universal City Studios, Inc.*, contributory liability requires: 1. Actual or constructive knowledge of specific infringing activity; 2. Material contribution to the infringement. In Ukraine, DMCA notices - especially automated ones - lack legal or procedural weight. Such notices are unenforceable under Ukrainian law, which governs the defendants' operations. As a result, they do not establish knowledge or intent. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007), establishes that generalized awareness of potential infringement is insufficient. The Plaintiff has not demonstrated specific knowledge of infringing content or intentional facilitation.

3. **Insufficient Allegations of Control or Financial Benefit:** The complaint fails to establish the necessary elements for vicarious liability under U.S. copyright law, which requires: 1. Right and Ability to Control: Practical control over the infringing activity; 2. Direct Financial Benefit: Revenue directly tied to infringing activity. Hosting providers generally provide neutral platforms and do not typically oversee specific content. The complaint fails to allege that the defendants actively monitored or controlled the Pirate Services' content. Contractual rights to disable accounts or remove content are insufficient without evidence of active enforcement or oversight (*Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1173 (C.D. Cal. 2002)). There is no evidence that the defendants profited directly from infringement or that infringement acted as a significant "draw" for their services (*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263-64 (9th Cir. 1996)). Hosting fees collected by the defendants are standard and not tied to specific infringing activity (*Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)).

4. **Extraterritorial Nature of the Alleged Conduct:** The alleged infringing acts occurred entirely on servers located in Ukraine. U.S. copyright law does not extend to acts occurring outside the United States. The Copyright Act does not apply extraterritorially (*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1095-96 (9th Cir. 1994)). To invoke U.S. copyright law, the Plaintiff must establish that infringing acts occurred within the United States (*L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 990 (9th Cir. 1998)). The complaint acknowledges that the alleged activities occurred on servers located in Ukraine. It does not provide evidence that the defendants' U.S.-based servers were used for the alleged infringement. The complaint fails to identify specific U.S. users or customers who accessed the infringing content via defendants' services.

5. **Failure to Establish Personal Liability for Mr. Smyrnov:** The Plaintiff has failed to allege sufficient facts to establish individual liability for Mr. Smyrnov. To hold an individual liable, the Plaintiff must show that the individual personally authorized, directed, or participated in the infringing acts (*ALS Scan, Inc. v. Steadfast Networks, LLC*, 819 F. App'x 522, 524 (9th

Pro Se 3 (Rev. 12/16) The Defendant's Answer to the Complaint

Cir. 2020); *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677 (9th Cir. 2017)). The Plaintiff's allegations do not show that Mr. Smyrnov personally engaged in or had knowledge of specific infringing activities. Notices sent to the company do not establish personal liability unless the defendant directly participated in or directed the infringing acts. The complaint does not allege any U.S.-based conduct by Mr. Smyrnov. U.S. copyright law does not apply to extraterritorial acts (*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1095-96 (9th Cir. 1994)).

7.    Another party *(name)*      third-party operators of the so-called      needs to be joined (added)
                                  "Pirate Services"

in the case. The reason is *(briefly explain why joining another party is required)*

The alleged infringing activities referenced in the complaint involve third-party operators of the so-called "Pirate Services," which are the entities or individuals directly responsible for uploading, transmitting, and distributing the copyrighted content at issue. Under Federal Rule of Civil Procedure 19(a), these parties are indispensable because their absence impairs the court's ability to deliver fair and complete adjudication of the case.

1.    Completeness of Relief: without joining the operators of the Pirate Services, the court cannot fully adjudicate the claims since they are the direct infringers responsible for the alleged unauthorized use and distribution of DISH's copyrighted materials. Adjudicating liability solely against hosting providers like Virtual Systems, LLC and its CEO, Vyacheslav Smyrnov, would result in an incomplete resolution and may expose the defendants to unfair liability for the actions of independent third parties.

2.    Interest of Absent Parties: The Pirate Services' operators have a substantial interest in defending themselves against claims of copyright infringement. If not joined, their absence could impair or impede their ability to protect their interests. Excluding them leaves the existing defendants at risk of inconsistent obligations and potentially prejudices the resolution of claims by attributing liability to hosting providers without addressing the actions of the direct infringers.

a.    If the basis for subject—matter jurisdiction is diversity of citizenship, state the effect of adding the other party:

The other party is a citizen of the State of *(name)*    n/a

Or is a citizen of *(foreign nation)*    forein nations

The amount of damages sought from this other party is *(specify the amount)*    undetermined

b.    If the claim by this other party is based on an alleged violation of a federal constitutional or statutory right, state the basis:

8

The claims against these third parties would be grounded in alleged violations of U.S. copyright law (17 U.S.C. § 501 et seq.), specifically unauthorized public performance and distribution of copyrighted materials. Joinder is necessary to ensure that liability for any infringement is attributed to the correct parties.

## C.    Asserting Affirmative Defenses to the Claims for Relief

Identify an affirmative defense or avoidance that provides a basis for the defendant to avoid liability for one or more of the plaintiff's claims even if the basis for the claim is met.  Any affirmative defense or avoidance must be identified in the answer.  Include any of the following that apply, as well as any others that may apply.

The plaintiff's claim for *(specify the claim)*

copyright infringement under 17 U.S.C. § 501 et seq.

is barred by *(identify one or more of the following that apply)*:

1.    Accord and satisfaction *(briefly explain)*
      n/a

2.    Arbitration and award *(briefly explain)*
      n/a

3.    Assumption of risk *(briefly explain)*
      n/a

4.    Contributory or comparative negligence of the plaintiff *(briefly explain)*
      n/a

5.    Duress *(briefly explain)*
      n/a

6.    Estoppel *(briefly explain)*

9

Pro Se 3 (Rev. 12/16) The Defendant's Answer to the Complaint

Plaintiff is estopped from asserting claims against Defendants because it failed to take reasonable steps to address the alleged infringing conduct by the third-party operators of the Pirate Services before pursuing claims against Defendants. Plaintiff's repeated reliance on general notices, rather than direct enforcement actions against primary infringers, creates an inequitable situation that unfairly shifts liability to a neutral hosting provider.

7.      Failure of consideration *(briefly explain)*

n/a

8.      Fraud *(briefly explain)*

n/a

9.      Illegality *(briefly explain)*

Plaintiff's claims improperly attempt to impose U.S. copyright liability on actions governed by foreign laws, including Ukrainian law. Since the alleged acts are not unlawful under the jurisdiction where they occurred, Plaintiff cannot recover under U.S. law.

10.     Injury by fellow employee *(briefly explain)*

n/a

11.     Laches (Delay) *(briefly explain)*

Plaintiff unreasonably delayed filing its claims despite having knowledge of the alleged infringement for an extended period. This delay has prejudiced Defendants by impairing their ability to address the issues earlier and locate third-party operators responsible for the alleged infringement.

12.     License *(briefly explain)*

To the extent that any content hosted on Defendants' servers was uploaded or streamed by authorized parties, Plaintiff's claims are barred by actual or implied licenses granted to third parties. Defendants, as hosting providers, have no means to determine the licensing status of specific content without clear notice and evidence.

13.     Payment *(briefly explain)*

n/a

14.     Release *(briefly explain)*

10

n/a

15.   Res judicata *(briefly explain)*
       n/a

16.   Statute of frauds *(briefly explain)*
       n/a

17.   Statute of limitations *(briefly explain)*
       n/a

18.   Waiver *(briefly explain)*

      Plaintiff's failure to take timely and decisive action against the third-party operators of the Pirate
      Services, despite being aware of the alleged infringing activities, constitutes a waiver of its claims
      against Defendants. By relying on indirect and procedurally insufficient notices, Plaintiff has
      demonstrated a tacit acceptance of third-party conduct. This failure to pursue direct enforcement
      measures against the actual infringers prevents Plaintiff from now retroactively attributing liability to
      Defendants, who merely provided neutral hosting services without knowledge or control over the
      alleged activities.

19.   Other *(briefly explain)*

      The Complaint fails to state a claim upon which relief can be granted because Defendants, as neutral
      hosting providers, neither possessed the requisite knowledge of nor intentionally facilitated or
      controlled the alleged infringing activities. U.S. copyright law explicitly lacks extraterritorial
      application to acts occurring entirely on foreign servers operated under foreign legal jurisdictions, such
      as those managed in Ukraine. Accordingly, Plaintiff cannot establish liability under 17 U.S.C. § 501
      for conduct outside the scope of U.S. jurisdiction, as clarified in *Subafilms, Ltd. v. MGM-Pathe
      Commc'ns Co.*, 24 F.3d 1088, 1095-96 (9th Cir. 1994).

Pro Se 3 (Rev. 12/16) The Defendant's Answer to the Complaint

**D.    Asserting Claims Against the Plaintiff (Counterclaim) or Against Another Defendant (Cross−Claim)**

For either a counterclaim against the plaintiff or a cross−claim against another defendant, state briefly the facts showing why the defendant asserting the counterclaim or cross−claim is entitled to the damages or other relief sought. Do not make legal arguments. State how each opposing party was involved and what each did that caused the defendant harm or violated the defendant's rights, including the dates and places of that involvement or conduct. If more than one counterclaim or cross−claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

1.    The defendant has the following claim against the plaintiff *(specify the claim and explain it; include a further statement of jurisdiction, if needed)*:

   **Claim: Counterclaim for Declaratory Judgment of Non-Liability**
   Facts: Defendants, Virtual Systems, LLC, and Vyacheslav Smyrnov, request a declaratory judgment asserting that they are not liable for the alleged copyright infringement as claimed by Plaintiff, DISH Network L.L.C. Defendants operate as neutral hosting providers offering lawful and content-neutral hosting services globally. The servers implicated in the alleged infringement are located in Ukraine and governed by Ukrainian law. Plaintiff's claims seek to improperly impose liability on Defendants for alleged actions of third-party "Pirate Services," over which Defendants have no control. These third-party operators are responsible for uploading, managing, and distributing content. Plaintiff has failed to provide adequate notice of specific infringing activities or demonstrate any active facilitation or encouragement of infringement by Defendants. Defendants did not knowingly or intentionally participate in any alleged copyright infringement and are not responsible for the actions of independent third-party operators utilizing their hosting services.
   Jurisdiction: this counterclaim is brought pursuant to: 28 U.S.C. § 2201 (Declaratory Judgment Act) for the purpose of clarifying the legal rights and responsibilities of the parties; 28 U.S.C. § 1331 (federal question jurisdiction), as the dispute involves claims arising under the U.S. Copyright Act (17 U.S.C. § 501 et seq.). The declaratory judgment is essential to resolve ongoing disputes regarding liability and prevent unwarranted harm to Defendants' business operations and reputation.

2.    The defendant has the following claim against one or more of the other defendants *(specify the claim and explain it; include a further statement of jurisdiction, if needed)*:

   n/a

3.    State briefly and precisely what damages or other relief the party asserting a counterclaim or cross−claim asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons that are alleged to entitle the party to actual or punitive money damages.

   a.    The defendant asserting the counterclaim or cross−claim against *(specify who the claim is*

      *against)*    **DISH Network L.L.C.**                        alleges that the following

      injury or damages resulted *(specify)*:

Pro Se 3 (Rev. 12/16) The Defendant's Answer to the Complaint

Defendants have incurred the following damages due to Plaintiff's wrongful actions:

1.    **Damage to Reputation:** Plaintiff's allegations have significantly harmed Defendants' professional reputation as a neutral and lawful hosting provider. These allegations, despite being baseless, portray Defendants as complicit in illegal activities, undermining their standing in the business community and eroding trust among clients and industry partners.

2.    **Legal and Administrative Costs:** Defendants have incurred substantial expenses in legal fees, administrative resources, and operational disruptions while defending themselves against Plaintiff's unsubstantiated claims. These costs continue to accrue due to the ongoing nature of the litigation.

3.    **Economic Harm:** Plaintiff's allegations have disrupted Defendants' regular business operations, leading to loss of existing clients and deterring prospective clients from engaging with Defendants. The unwarranted legal proceedings and adverse publicity have created financial losses and hindered business growth.

b.    The defendant seeks the following damages or other relief *(specify)*:

1.  **Declaratory Relief:**

A judgment declaring that:

- Defendants are not liable for contributory, inducement, or vicarious copyright infringement.
- Defendants, as hosting providers, are not subject to U.S. copyright law for actions occurring outside U.S. jurisdiction.

2.  **Monetary Damages:**
- Compensation for harm caused to Defendants' reputation.
- Reimbursement of legal and administrative expenses incurred in defending against the claims.
- Compensation for economic harm resulting from disruption of operations and loss of clients.

3.  **Punitive Damages:**
Defendants seek punitive damages in an amount sufficient to deter Plaintiff from pursuing similar baseless claims against neutral hosting providers in the future.

4.  **Injunctive Relief:**
An order preventing Plaintiff from making further baseless allegations or pursuing claims without credible and substantiated evidence.

13

Pro Se 3 (Rev. 12/16) The Defendant's Answer to the Complaint

III.    **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this answer: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the answer otherwise complies with the requirements of Rule 11.

A.    **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          December 12, 2024

Signature of Defendant

Printed Name of Defendant    Vyacheslav Smyrnov

B.    **For Attorneys**

Date of signing:          n/a

Signature of Attorney       n/a

Printed Name of Attorney    n/a

Bar Number              n/a

Name of Law Firm         n/a

Street Address            n/a

State and Zip Code         n/a

Telephone Number         n/a

E-mail Address            n/a

14

## ПРОХАННЯ
### про вручення за кордоном судових або позасудових документів
REQUEST / DEMANDE

for service abroad of judicial or extrajudicial documents / aux fins de signification ou de notification à l'étranger d'un acte judiciaire ou extrajudiciaire

**відповідно до Гаазької Конвенції про вручення за кордоном судових або позасудових документів у цивільних або комерційних справах 1965 року**

Hague Service Convention of 1965 / Convention Notification de La Haye de 1965

| | |
|---|---|
| Назва і адреса запитуючого органу:<br>Identity and address of the applicant / Identité et adresse du requérant:<br><br>DISH Network L.L.C.<br>c/o counsel, Timothy Frank, Hagan Noll & Boyle, LLC<br>820 Gessner, Suite 940, Houston, Texas 77024<br>Email: timothy.frank@hnbllc.com<br>Phone: +1 713-343-0478 | Адреса запитуваного органу:<br>Address of receiving authority / Adresse de l'autorité destinataire:<br><br>Ministry of Justice of Ukraine<br>Directorate on International Law and Co-operation<br>Department on International Law<br>13, Horodetskogo St.<br>Kyiv 01001, Ukraine |

Запитуючий орган, що підписався нижче, має честь передати – у двох примірниках – перераховані нижче документи та відповідно до статті 5 зазначеної Конвенції просить забезпечити без відкладне вручення одного примірника одержувачу:

The undersigned applicant has the honour to transmit – in duplicate – the documents listed below and, in conformity with Article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.:

Le requérant soussigné a l'honneur de faire parvenir – en double exemplaire – à l'autorité destinataire les documents ci-dessous énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, à savoir :

*(дані про особу і адреса)* / identity and address / identité et adresse

Vyacheslav Smyrnov
33/37 Laboratorna St., Kyiv 03150, Ukraine (work)
1V Vadyma Hetmana St., Apt. 46, Kyiv 03057, Ukraine (home)

- ⦿ a)  відповідно до підпункту (а) частини першої статті 5 Конвенції. *
    in accordance with the provisions of sub-paragraph (a) of the first paragraph of Article 5 of the Convention. *
    selon les formes légales (article 5, alinéa premier, lettre a). *

- ◯ b)  відповідно до наступного спеціального способу (підпункт (b) частини першої ст.5): *
    in accordance with the following particular method (sub-paragraph (b) of the first paragraph of Article 5): *
    selon la forme particulière suivante (article 5, alinéa premier, lettre b): *

- ◯ c)  шляхом безпосередньо доставки адресату, якщо він приймає його добровільно (друга частина статті 5). *
    by delivery to the addressee, if the addressee accepts it voluntarily (second paragraph of Article 5) *
    le cas échéant, par remise simple (article 5, alinéa 2). *

Прохання до запитуваного органу повертати або повернути запитуючому органу один примірник документів і його додатків * із підтвердженням на зворотному боці.

The authority is requested to return or to have returned to the applicant a copy of the documents – and of the annexes * – with a certificate as provided on the next page. / Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte – et de ses annexes * – avec l'attestation figurant à la page 2.

Перелік документів: / List of documents: / Enumeration des pièces :

Court Issued Summons for Vyacheslav Smyrnov
DISH Network L.L.C.'s Complaint with Exhibits 1-3

Складено у м./ Done at / Fait à  Houston, TX, United States  , дата / the / le  October 22, 2024

Підпис та/або печатка.
Signature and/or stamp
Signature et/ou cachet

## ПІДТВЕРДЖЕННЯ
### CERTIFICATE / ATTESTATION

Орган, що підписався нижче, має честь підтвердити відповідно до статті 6 Конвенції,
The undersigned authority has the honour to certify, in conformity with Article 6 of the Convention,
L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,

1)  *  що документ був вручений / that the document has been served/ que la demande a été exécutée

   -  *(дата)* / the (date)/ le (date)

   -  у *(місце, вулиця, номер)* / at (place, street, number)/ á (localité, rue, numéro)

   -  одним із способів, передбачених у статті 5:
      in one of the following methods authorised by Article 5:
      dans une des formes suivantes prévues à l'article 5:

      a)  відповідно до підпункту (а) частини першої статті 5 Конвенції. *
          in accordance with the provisions of sub-paragraph (a) of the first paragraph of Article 5 of the Convention. *
          selon les formes légales (article 5, alinéa premier, lettre a) *
      b)  відповідно до наступного спеціального способу: *
          in accordance with the following particular method: *
          selon la forme particulière suivante: *

      c)  шляхом безпосередньої доставки адресату, який прийняв його добровільно. *
          by delivery to the addressee, who accepted it voluntarily. *
          par remise simple. *

   Документи, зазначені у проханні, були вручені особі:
   The documents referred to in the request have been delivered to:
   Les documents mentionnés dans la demande ont été remis à:
   -  *(ім'я та дані про особу)*/ (identity and description of person) (identité et qualité de la personne)

   -  стосунки з одержувачем (родинні, ділові або інші):
      relationship to the addressee (family, business or other):
      liens de parenté, de subordination ou autres, avec le destinataire de l'acte:

2)  *  що документ не був вручений з таких причин:
       that the document has not been served, by reason of the following facts:
       que la demande n'a pas été exécutée, en raison des faits suivants:

Відповідно до частини другої статті 12 Конвенції, прохання запитуючого органу сплатити або
відшкодувати витрати, викладені у додатку. *
In conformity with the second paragraph of Article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the
attached statement. *
Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-
joint. *

### Додатки
#### Annexes / Annexes

Документи, що повертаються: / Documents returned: / Pièces renvoyées:

У разі необхідності, документи, які підтверджують вручення:
In appropriate cases, documents establishing the service: / Le cas échéant, les documents justificatifs de l'exécution:

Складено у м./ Done at / Fait à                    , дата / the / le

Підпис та/або печатка.
Signature and/or stamp.
Signature et/ou cachet.

**Короткий виклад документа, що підлягає врученню**
Summary of the document to be served / Eléments essentiels de l'acte

**відповідно до Гаазької Конвенції про вручення за кордоном судових або позасудових документів у цивільних або комерційних 1965 року**
Hague Service Convention of 1965 / Convention Notification de La Haye de 1965

**(Частина четверта статті 5)**
(Article 5, fourth paragraph) / (article 5, alinéa 4)

**Ім'я і адреса одержувача** / Identity and address of the addressee / Identité et adresse du destinataire/ ——:

Vyacheslav Smyrnov
33/37 Laboralorna St., Kyiv 03150, Ukraine (work)
1V Vadyma Hetmana St., Apt. 46, Kyiv 03057, Ukraine (home)

**ВАЖЛИВО**

Документ, що додається, має юридичний характер і може вплинути на Ваші права і обов'язки. „Короткий виклад документа, що підлягає врученню" надає Вам деяку інформацію щодо виду і предмету документа. Однак, Вам обов'язково слід уважно ознайомитись безпосередньо з текстом документу. Можливо, буде необхідно отримати юридичну консультацію.

Якщо Ви не маєте достатніх фінансових засобів, зверніться за інформацією про одержання безплатної правової допомоги у державі свого проживання або у державі, звідки надійшов документ.

Інформацію щодо можливості одержання безплатної правової допомоги у державі, звідки надійшов документ, можна одержати за адресою:

IMPORTANT

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS. LES «ELEMENTS ESSENTIELS DE L'ACTE» VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET. IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MEME DU DOCUMENT. IL PEUT ETRE NECESSAIRE DE DEMANDER UN AVIS JURIDIQUE.

SI VOS RESSOURCES SONT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSSIBILITE D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE SOIT DANS VOTRE PAYS SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT.

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITES D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSULTATION JURIDIQUE DANS LE PAYS D'ORIGINE PEUVENT ETRE ADRESSEES A :

IMPORTANT

THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE 'SUMMARY OF THE DOCUMENT TO BE SERVED' WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE. YOU SHOULD HOWEVER READ THE DOCUMENT ITSELF CAREFULLY. IT MAY BE NECESSARY TO SEEK LEGAL ADVICE.

IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED.

ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO:

При заповненні цієї форми рекомендується викладати стандартні положення англійською та французькою, а також у відповідних випадках також офіційною мовою або однією з офіційних мов держави, звідки надійшов документ. Заповнювати цей бланк можна мовою держави, у яку надсилається документ, або англійською чи французькою мовою.

Il est recommandé que les mentions imprimées dans cette note soient rédigées en langue française et en langue anglaise et le cas échéant, en outre, dans la langue ou l'une des langues officielles de l'Etat d'origine de l'acte. Les blancs pourraient être remplis soit dans la langue de l'Etat où le document doit être adressé, soit en langue française, soit en langue anglaise

It is recommended that the standard terms in the notice be written in English and French and where appropriate also in the official language, or one of the official languages of the State in which the document originated. The blanks could be completed either in the language of the State to which the documents is to be sent, or in English or French.

Назва та адреса запитуючого органу:
Name and address of the requesting authority:
Nom et adresse de l'autorité requérante:

DISH Network L.L.C.
c/o counsel, Timothy Frank, Hagan Noll & Boyle, LLC
820 Gessner, Suite 940, Houston, Texas 77024, United States

Інформація щодо сторін: *
Particulars of the parties:  *
Identité des parties:  *

Plaintiff: DISH Network L.L.C.
Defendants: Virtual Systems, LLC and Vycheslav Smyrnov

## СУДОВИЙ ДОКУМЕНТ **
### JUDICIAL DOCUMENT / ACTE JUDICIAIRE

Вид і предмет документа:
Nature and purpose of the document:
Nature et objet de l'acte :

To notify Virtual Systems, LLC and Vycheslav Smyrnov that a legal action was filed against them and to summon them to respond.

Вид і предмет судового провадження та, у разі необхідності, сума спору:
Nature and purpose of the proceeding and, where appropriate, the amount in dispute:
Nature et objet de l'instance, le cas échéant, le montant du litige:

Virtual Systems, LLC and Vycheslav Smyrnov are named as defendants in a civil lawsuit for copyright infringement.

Дата і місце постання перед судом: **
Date and place for entering appearance:  **
Date et lieu de la comparition  **

Virtual Systems, LLC and Vycheslav Smyrnov are required to respond to the complaint within 21 days of being served.

Суд, що постановив рішення: **
Court which has given judgment :  **
Juridiction qui a rendu la décision  **

Judgment has not yet been entered.

Дата рішення: **
Date of judgment : **
Date de la décision :   **

Judgment has not yet been entered.

Строки, визначені у документі: **
Time limits stated in the document: **
Indication des délais figurant dans l'acte: **

Virtual Systems, LLC and Vycheslav Smyrnov are required to respond to the complaint within 21 days of being served.

## ПОЗАСУДОВИЙ ДОКУМЕНТ **
### EXTRAJUDICIAL DOCUMENT / ACTE EXTRAJUDICIAIRE

Вид і предмет документа:
Nature and purpose of the document:
Nature et objet de l'acte:

Строки, визначені у документі: **
Time limits stated in the document:  **
Indication des délais figurant dans l'acte:   **

reset form     print form



Засвідчений Переклад

# Підтвердження вірності перекладу

Ковальова Екатерина
Перекладач

Перекладені документи:  Complaint with Exhibits 1-3; Summons as to Virtual Systems LLC;
Summons as to Vyacheslav Smyrnov.

Я, Ковальова Екатрина, як перекладач Day Translations, Inc., підтверджую, що я —
двомовний перекладач, який володіє українською і англійською мовами на належному
професійному рівні. Я переклала вкладені документи з англійської мови на українську мову
у найкращий відомий мені спосіб, і український текст є точним і вірним перекладом
оригінальних документів, відтворених у найкращий відомий мені спосіб.

Підписано 20-го жовтня 2024  року

Ковальова Екатерина

*Професійний перекладач компанії Day Translations, Inc.*










477 Madison Ave., 6th Floor New York, NY 10017 | Toll Free: 1-800-969-6853  Fax: 1-800-856-2759
E-mail: contact@daytranslations.com | www.daytranslations.com

### Короткий виклад документа, що підлягає врученню
Summary of the document to be served / Éléments essentiels de l'acte

### відповідно до Гаазької Конвенції про вручення за кордоном судових або позасудових документів у цивільних або комерційних 1965 року
Hague Service Convention of 1965 / Convention Notification de La Haye de 1965

### (Частина четверта статті 5)
(Article 5, fourth paragraph) / (article 5, alinéa 4)

**Ім'я і адреса одержувача** / Identity and address of the addressee / Identité et adresse du destinataire/ -----:

Virtual Systems, LLC
33/37 Laboratorna St., Kyiv 03150, Ukraine

## ВАЖЛИВО

Документ, що додається, має юридичний характер і може вплинути на Ваші права і обов'язки. „Короткий виклад документа, що підлягає врученню" надає Вам деяку інформацію щодо виду і предмету документа. Однак, Вам обов'язково слід уважно ознайомитись безпосередньо з текстом документу. Можливо, буде необхідно отримати юридичну консультацію.

Якщо Ви не маєте достатніх фінансових засобів, зверніться за інформацією про одержання безплатної правової допомоги у державі свого проживання або у державі, звідки надійшов документ.

Інформацію щодо можливості одержання безплатної правової допомоги у державі, звідки надійшов документ, можна одержати за адресою:

### IMPORTANT

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS. LES «ELEMENTS ESSENTIELS DE L'ACTE» VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET. IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MEME DU DOCUMENT. IL PEUT ETRE NECESSAIRE DE DEMANDER UN AVIS JURIDIQUE.

SI VOS RESSOURCES SONT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSSIBILITE D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE SOIT DANS VOTRE PAYS SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT.

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITES D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSULTATION JURIDIQUE DANS LE PAYS D'ORIGINE PEUVENT ETRE ADRESSEES A :

### IMPORTANT

THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE 'SUMMARY OF THE DOCUMENT TO BE SERVED' WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE. YOU SHOULD HOWEVER READ THE DOCUMENT ITSELF CAREFULLY. IT MAY BE NECESSARY TO SEEK LEGAL ADVICE.

IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED.

ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO:

При заповненні цієї форми рекомендується викладати стандартні положення англійською та французькою, а також у відповідних випадках також офіційною мовою або однією з офіційних мов держави, звідки надійшов документ. Заповнювати цей бланк можна мовою держави, у яку надсилається документ, або англійською чи французькою мовою.

Il est recommandé que les mentions imprimées dans cette note soient rédigées en langue française et en langue anglaise et le cas échéant, en outre, dans la langue en l'une des langues officielles de l'Etat d'origine de l'acte. Les blancs pourraient être remplis soit dans la langue de l'Etat où le document doit être adressé, soit en langue française, soit en langue anglaise.

It is recommended that the standard terms in the notice be written in English and French and where appropriate also in the official language, or one of the official languages of the State in which the documents originated. The blanks could be completed either in the language of the State to which the documents is to be sent, or in English or French.

Назва та адреса запитуючого органу:
Name and address of the requesting authority:
Nom et adresse de l'autorité requérante:

DISH Network L.L.C.

c/o counsel, Timothy Frank, Hagan Noll & Boyle, LLC

820 Gessner, Suite 940, Houston, Texas 77024, United States

Інформація щодо сторін: *
Particulars of the parties: *
Identité des parties: *

Plaintiff: DISH Network L.L.C.

Defendants: Virtual Systems, LLC and Vycheslav Smyrnov

## СУДОВИЙ ДОКУМЕНТ **
### JUDICIAL DOCUMENT / ACTE JUDICIAIRE

Вид і предмет документа:
Nature and purpose of the document:
Nature et objet de l'acte :

To notify Virtual Systems, LLC and Vycheslav Smyrnov that a legal action was filed against them and to summon them to respond.

Вид і предмет судового провадження та, у разі необхідності, сума спору:
Nature and purpose of the proceeding and, where appropriate, the amount in dispute:
Nature et objet de l'instance, le cas échéant, le montant du litige:

Virtual Systems, LLC and Vycheslav Smyrnov are named as defendants in a civil lawsuit for copyright infringement.

Дата і місце постання перед судом: **
Date and place for entering appearance: **
Date et lieu de la comparution : **

Virtual Systems, LLC and Vycheslav Smyrnov are required to respond to the complaint within 21 days of being served.

Суд, що постановив рішення: **
Court which has given judgment : **
Juridiction qui a rendu la décision : **

Judgment has not yet been entered.

Дата рішення: **
Date of judgment : **
Date de la décision : **

Judgment has not yet been entered.

Строки, визначені у документі: **

Time limits stated in the document: **
Indication des délais figurant dans l'acte: **

Virtual Systems, LLC and Vycheslav Smyrnov are required to respond to the complaint within 21 days of being served.

## ПОЗАСУДОВИЙ ДОКУМЕНТ **
### EXTRAJUDICIAL DOCUMENT / ACTE EXTRAJUDICIAIRE

Вид і предмет документа:
Nature and purpose of the document:
Nature et objet de l'acte:

Строки, визначені у документі: **

Time limits stated in the document: **
Indication des délais figurant dans l'acte **

АО 440 (Пер. 12.06) Позов у громадській справі

ОКРУЖНИЙ СУД СПОЛУЧЕНИХ ШТАТІВ

ДЛЯ

Західного округу штату Вашингтон

| | | |
|---|---|---|
| ТОВ DISH NETWORK | ) | |
| | ) | |
| | ) | |
| | ) | |
| Позивач(і) | ) | |
| проти | ) | Громадська справа № 2:24-cv-01683 |
| | ) | |
| ТОВ VIRTUAL SYSTEMS та В'ЯЧЕСЛАВ СМИРНОВ | ) | |
| | ) | |
| | ) | |
| Відповідач(і) | ) | |

ПОЗОВ У ГРОМАДСЬКІЙ СПРАВІ

До: (ім'я та адреса відповідача) ТОВ Virtual Systems, вул. Лабораторна, б.33/37, м. Київ, Україна, 03150

Проти вас складений судовий позов.

Протягом 21 дня від вручення вам цього виклику (не враховуючи день вручення) - або 60 днів, якщо ви є агентом Сполучених Штатів або офіційною особою, або працівником Сполучених Штатів, описаних у Фед. Р. Цив. С. 12 (a)(2) або (3) — ви маєте відправити позивачу відповідь на додану скаргу або клопотання згідно Правила 12 Федеральних Правил Громадського Процесу. Відповідь має бути спрямована позивачу або адвокату позивача, ім'я та адреса якого:

Грегорі Латендрес
ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101

Якщо ви не надасте відповідь, рішення буде винесене проти вас за умовчанням для задоволення вимог за скаргою. Ви маєте скласти свою відповідь або клопотання в суді.

СУДОВИЙ КЛЕРК

Дата: 18 жовтня 2024 р.

Підпис судового клерка або помічника клерка

АО 440 (Пер. 12.06) Позов у громадській справі (Сторінка 2).

Громадська справа № 2:24-cv-01683

## ПІДТВЕРДЖЕННЯ ВРУЧЕННЯ
(Цю частину не потрібно заповнювати в суді, якщо не передбачено Фед. Р. Цив. С. 4 (I))

Цей позов до (ім'я та посада особи, якщо існує) отриманий мною (дата)

☐    Мною особисто був вручений позов до особи у (місце) (дата)                                      ; або

☐    Я залишив цей позов у місці проживання або знаходження особи з (ім'я), довірчою особою придатного віку, що

проживає там (дата)              , а також вислано копію за останньою відомою адресою особи; або

☐    Мною вручений позов до (ім'я особи)                                                        , що

є законним представником вповноваженим отримувати процедурні позови від особи (назва організації)

**No table of contents entries found.**

Під загрозою відповідальності за лжесвідчення я стверджую, що ця інформація є вірною.

Дата:

Підпис особи, що вручила позов

Ім'я та посада печатними буквами

Адреса особи, що вручила позов

Додаткова інформація стосовно спроб вручення і т.д.:

ОКРУЖНИЙ СУД СПОЛУЧЕНИХ ШТАТІВ
ЗАХІДНИЙ ОКРУГ ШТАТУ ВАШИНГТОН
У СІЄТЛІ

| | | |
|---|---|---|
| ТОВ DISH NETWORK, | ) | № 2:24-cv-01683 |
| | ) | |
| Позивач, | ) | **СКАРГА ПОЗИВАЧА** |
| | ) | |
| проти | ) | |
| | ) | |
| ТОВ VIRTUAL SYSTEMS та | ) | |
| В'ЯЧЕСЛАВ СМИРНОВ, | ) | |
| | ) | |
| Відповідачі. | ) | |

**Тип справи**

1.      Позивач, ТОВ DISH Network ("DISH") є одним з найбільших провайдерів платного телебачення в Сполучених Штатах, та має мільйони споживачів по всій країні. Ця справа стосується порушення авторського права DISH у програмі ("Робота"), що вийшла на 23 міжнародних каналах, ексклюзивно ліцензованих DISH на передачу у Сполучених Штатах ("Канали").

2.      Авторське право DISH в Роботі було прямо порушено, тому що Роботи передавалися без авторизації DISH за допомогою піратських сервісів стримінгу ("Піратські сервіси") споживачам на території Сполучених Штатів ("Споживачі"). Піратські сервіси залежать від надання провайдерами хостингу послуг та мережі, потрібної для передачі Роботи за допомогою мережі інтернет Споживачам.

3.      Відповідач, ТОВ Virtual Systems (Віртуальні системи) матеріально запобігли та викликали пряме порушення авторського права Робіт Піратськими сервісами тим, що надали послуги та мережу  ПТОВ Preg O'Donnell & Gillett, вул. Юніон Стріт, б

СКАРГА ПОЗИВАЧА
401, оф. 1900, Сієтл, Вашингтон, 98101 (206) 287-1775, що були використані

Піратськими сервісами для передачі Робіт, включно з серверами дата центру Віртуальних систем у Сіетлі. Віртуальні системі відкрито рекламують, що не дотримуються законів щодо авторського права Сполучених Штатів, а також не вимагають своїх клієнтів, як Піратські сервіси, дотримуватися таких законів.

4.      Віртуальні системи знали, що Піратські сервіси порушують авторське право Робіт, тому що за сотнями випадків DISH просили Віртуальні системи припинити це специфічне порушення, що відбувалося на цих серверах та у цій мережі. Віртуальні системи мали можливість прийняти прості міри для припинення порушення – за допомогою видалення або виключення стримів, що порушують права, або закрити рахунки Піратських сервісів через їх повторні порушення, – але Віртуальні системи відмовилися прийняти такі міри, та вирішили продовжити отримувати доходи від прямого порушення Піратськими сервісами.

5.      Віртуальні системи є відповідальними за допоміжне та опосередковане порушення авторського права. Їх власник та Голова, відповідач В'ячеслав Смирнов ("Смирнов"), також несе особисту відповідальність через те, що він авторизував, керував та приймав участь у порушенні Віртуальними системами, включно з управлінням серверами та мережею Піратських сервісів, що були використані для порушення прав Робіт, а також, незважаючи на повідомлення DISH про це порушення, нездатністю припинити його.

## Сторони

6.      Позивач DISH є товариством з обмеженою відповідальністю, зареєстрованим за законом штату Колорадо з основною адресою ведення бізнесу на бульварі Саус Мерідіан, б. 9601, Енгельвуд, штат Колорадо, 80112.

7.      Відповідач Віртуальні системі є товариством з обмеженою відповідальністю, зареєстрованим за законом України з основною адресою ведення бізнесу на вул. Лабораторній, б. 33/37, м. Київ, Україна.

8.      Відповідач Смирнов є приватною особою, адреса якої відома на вул. Вадима Гетьмана, б. 1В, кв. 46, м. Київ, Україна.

## Юрисдикція та місце проведення

9.      Суд має юрисдикцію суб'єкту за статтею 28 U.S.C. §§ 1331, 1338 та 1400 (коду

США), тому що DISH надає скаргу за законом про захист Авторського права, статті 17 U.S.C. § 101 *та наступні.*

    10.    Суд має особисту юрисдикцію над Віртуальними системами згідно Федерального закону про Громадський процес 4(k)(1)(A), тому що Віртуальні системи здійснили правопорушення у штаті Вашингтон, Скарга позивача 2  ПТОВ        PREG O'DONNELL & GILLETT

вул. Юніон Стріт, б. 401,
оф. 1900, м. Сієтл, штат
Вашингтон, 98101 (206)
287-1775

включно з роботою їх центру даних та серверів в районі м. Сієтл, що приймають або приймали участь у порушенні прав Робіт Піратськими сервісами.[1] Віртуальні системі не припинили правопорушення, що відбувалося з їх центру даних та серверів у м. Сієтл, після того, як були повідомлені про це порушення. DISH понесли збитки у штаті Вашингтон, тому що принаймні частина правопорушення Віртуальними системами відбувалося в цьому штаті, що пошкоджує цінність ексклюзивного авторського права DISH, а також, тому що за інформацією та переконанням, Роботи передавалися Споживачам в штаті Вашингтон, що уникали плати за підписку на DISH.

ПОКРИТТЯ ВСИС

ВСИС Хост - це провайдер хостингу, що має інфраструктуру в м. Київ, м. Амстердам та м. Сієтл, які з яких є центрами даних III Ступеня. Ці ЦД з приводом високошвидкісної мережі, що включає дійсна висхідних ліній зв'язку та гарує більш ніж 2 ГБ/с. Ми продовжуємо розширяти географію нашого покриття.

ВСИС ХОСТ ПРАЦЮЄ З ЦЕНТРАМИ ДАНИХ III СТУПЕНІ:

М. КИЇВ, УКРАЇНА
АМСТЕРДАМ, НІДЕРЛАНДИ
М. СІЄТЛ, США



11.    Суд, альтернативно, має особисту юрисдикцію над Віртуальними системами за Федеральним законом про Громадський процес 4(k)(2) у обсязі, що не є достатнім базисом для юрисдикції в штаті Вашингтон 4(k)(1)(A). Віртуальні системі визнають штат Вашингтон

[1] https://vsys.host/ (зображення мапи центру даних нижче). За інформацією та переконанням, центр даних Віртуальних систем знаходиться на вул. Саус 120 Плейс, б. 3355, Тукула, штат Вашингтон. Посилання, вказані в цій скарзі, відвідувалися останній раз 6 серпня 2024 року.

СКАРГА ПОЗИВАЧА                    3                    ПТОВ PREG O'DONNELL &
GILLETT

вул. Юніон Стріт, б. 401, оф.
1900, м. Сієтл, штат
Вашингтон, 98101 (206) 287-
1775

єдиною місцевістю, де вони функціонують в Сполучених Штатах, і тому, за інформацією та переконанням, не є суб'єктом юрисдикції у суді будь-якого іншого штату, або загальної юрисдикції.

      12.     Віртуальні системи мають достатні контакти в Сполучених Штатах для підтримання особистої юрисдикції за законом 4(k)(2), що включає додатково до центрів даних та серверів в м. Сіетл, маркетингову кампанію, спрямовану на сервіси стримінгу, що бажають надавати контент з правопорушеннями для аудиторії Сполучених Штатів, уникаючи відповідальності за законом про захист авторського права Сполучених Штатів; таких, як Піратські сервіси. DISH понесли збитки у Сполучених Штатах згідно з викладеними вище причинами, а також

ця шкода посилена тим, що, за інформацією та переконанням, порушення щодо Робіт відбувалося в Сполучених Штатах та Споживачами по всій країні, що уникали сплати за підписки на DISH. DISH також понесли збитки в Сполучених Штатах, тому що це компанія, зареєстрована в Сполучених Штатах, та має авторське право, що поширюється тільки на Сполучені Штати.

13.     Суд має особисту юрисдикцію над Смирновим за законом 4(k)(1)(A), або альтернативно за законом 4(k)(2), тому що Смирнов є основним учасником правопорушень Віртуальними системами, або має контроль та щонайменше приймав пряму участь в таких діях. Смирнов є власником, директором та головою Віртуальних систем. Смирнов ідентифікує свої основні обов'язки у Віртуальних системах, як "управління мережею та обладнанням серверів" і "відділом з 10 людей."[2] Смирнов отримав особисте повідомлення про порушення авторського права Робіт, що відбувалося у цій мережі та серверах, якими він керував, але він не припинив це правопорушення. Смирнов отримав фінансову вигоду від цього правопорушення в якості власника, директора та голови Віртуальних систем.

14.     Суди виконують особисту юрисдикцію над Віртуальним системами та Смирновим, згідно з тим, де закон 4(k)(1)(A) або 4(k)(2) є раціональними та сумісними з Конституцією Сполучених Штатів та Законом Сполучених Штатів, тому що їх спрямована дія в штаті Вашингтон та Сполучених Штатах є істотною, тяжкість необхідності захисту у цьому суді є мінімальною, а цей Суд є найвідповіднішим форумом для винесення рішення за цією справою. У додаток до знаходження центрів даних та серверів у м. Сієтл, Віртуальні системі використовують компанії Сполучених Штатів для підтримки та реклами свого бізнесу та послуг, включно з Facebook, Twitter/X, LinkedIn, Reddit, YouTube, GitHub та Публічним Реєстром Доменів, де зареєстровано їх вебсайт. Віртуальні системи - це відома компанія, що генерує прибуток у десятки мільйонів доларів США щороку. Сполучені Штати мають інтерес у захисті своїх законів про авторське право у федеральних судах, а DISH має

---

[2] https://www.linkedin.com/in/slavikbutch/?originalSubdomain=ua Скарга позивача

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

інтерес у захисті себе у федеральному суді Сполучених Штатів, мабуть єдиному форумі, де

DISH може примушувати виконання захисту свого авторського права в Сполучених Штатах.

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

15.    Місце проведення є належним в цьому Суді згідно статті 28 U.S.C. § 1391(b)(2) (коду США), тому що основна частина подій, що спричинили скаргу DISH відбулася в цьому окрузі; § 1391(b)(3), тому що Віртуальні системі та Смирнов є суб'єктами особистої юрисдикції в цьому окрузі; а також згідно § 1391(c)(3), тому що нерезиденти Сполучених Штатів можуть бути осуджені у будь-якому окрузі. Місце проведення також є належним згідно статті 28 U.S.C. § 1400(a) (коду США), тому що ця справа стосується порушення Закону про захист авторського права.

## Авторське право DISH

16.    DISH надає доступ на Канали своїм підписникам згідно договорів, що були складені з власниками цих Каналів, або їх агентами ("Мережі"). Мережі та Канали включають: B4U U.S., Inc. (*B4U Movies*); Bennett, Coleman та Company Limited (*Times Now* та *Zoom*); GloboSat Entertainment LLC (*Sahara One* та *Sahara Samay*); International Media Distribution (Luxembourg) S.A.R.L. (*Al Hayah 1, ART Aflam 1, ART Aflam 2, ART Cima, Hekayat, LBC, LBCI,* та *Rotana America*); MSM Asia Limited (*SET, SET MAX,* та *SAB*); Soundview ATN LLC (*ATN Bangla*); Soundview Broadcasting, L.L.C. (*ATN News* та *NTV Bangla*); та World Span Media Consulting, Inc. (*CBC, CBC Drama, Melody Aflam,* та *Melody Classic*).

17.    Ця Мережа отримує авторські права на Роботи, що виходять на її відповідних Каналах, включно з виготовленням Робіт та за призначенням. Матеріали з авторським правом включають Роботи, зареєстровані у Відділі Авторського Права Сполучених Штатів, а також додаткові незареєстровані Роботи.[3] Декілька Робіт включають серіали, кожний епізод яких складає окреме авторське право на Роботу.

18.    DISH склали підписаний, письмовий договір ліцензування з Мережами, гарантуючи ексклюзивне право на поширення та публічне виконання Робіт у ефірі та на Каналах в Сполучених Штатах, засобами, що включають супутникове, over-the-top (OTT) та

---

[3] Приклад 1 (ілюстрований список Робіт, що були зареєстровані) та Приклад 2 (ілюстрований список незареєстрованих Робіт).

СКАРГА ПОЗИВАЧА                              5                    ПТОВ PREG O'DONNELL &
GILLETT

вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

інтернет протокольне телебачення (IPTV), а також інтернет.

19.    Ексклюзивні права DISH на поширення та публічне виконання Робіт мали дію під час передачі Піратськими сервісами за допомогою серверів та мережі Віртуальних систем. Ексклюзивні права на поширення та публічне виконання Робіт DISH залишаються дійсними стосовно Робіт, що вийшли у ефір на багатьох Каналах.

### Правопорушення Піратськими сервісами

20.    Електронне відео піратство визнане причиною втрати економікою Сполучених Штатів щонайменше $29.2 мільярдів прибутку щороку, а більш ніж 80% такого піратства приходиться на незаконні сервіси стримінгу, як Піратські сервіси.[4] Піратські сервіси мали змогу надавати Споживачам тисячі каналів та десятки тисяч відео програм за вимогою (ВЗВ) за меншу частину коштів ніж офіційні провайдери, як DISH, щонайменше частково, тому що Піратські сервіси не сплачували збори на ліцензування контенту, який вони надавали.

21.    Піратські сервіси передавали Роботи Споживачам за допомогою мережі інтернет, використовуючи сервери та мережу Віртуальних систем, як основну частину їх лінійних стримів Каналів або ВЗВ. Споживачі отримували доступ до Робіт через накладний прилад (СТП) або веб-сайт, що зв'язує з Роботами або надає плейлист для доступу до Робіт. Споживачі часто мали придбати підписку для перегляду контенту Піратських сервісів додатково до придбання СТП. DISH не надавали Піратським сервісам дозволу на поширення або публічне виконання Робіт, та не отримували ніякої компенсації від них.

22.    Піратські сервіси загалом спричиняли правопорушення за допомогою мережі інтернет, так вживали заходи для приховання дійсних осіб їх операторів. За інформацією та переконанням, більшість Піратських сервісів виконувалася правопорушниками поза Сполученими Штатами. У цій скарзі Піратські сервіси ідентифіковані за одним або більше IP адресами, що пов'язані з серверами та мережею Віртуальних систем, з яких йшла передача Робіт, сумісно із будь-якою назвою домену, включеною до URL, що використовувався у

---

[4]Центр глобальної інтелектуальної власності. Вплив електронного піратства на економіку Сполучених Штатів (червень 2019) доступна за
https://www.uschamber.com/assets/documents/Digital_Video_Piracy_June_2019.pdf

передачі Робіт, а також будь-яким СТП, що було використано для доступу до них; все це формує ілюстративний список Піратських сервісів, що використовували сервери та мережу Віртуальних систем для прямого порушення авторського права DISH.[5]

23.   Масштаб прямого правопорушення Піратськими сервісами щодо Робіт є обширним. Піратські сервіси, що передавали лінійні стріми Каналів, що передавали у ефірі Роботи, часто функціонували 24 години на день та 7 днів на тиждень, а в деяких випадках - декілька років, що означає, що тільки Піратські сервіси здійснили порушення прав великої кількості Робіт. Піратські сервіси, що передавали Роботи за допомогою ВЗВ також додають до великого обсягу правопорушень.

24.   Піратські сервіси були повідомлені про правопорушення багато раз, але не припинили здійснення порушення авторського права DISH. DISH отримали вирішення суду та постійну заборону сторонам, що знаходяться за кордоном, що приймали участь в роботі щонайменше трьох Піратських сервісів, але і ці міри виявилися недійсними у припиненні ними правопорушень. Після винесення заборони, один Піратський сервіс переніс свої передачі Каналів, що передавали у ефірі Роботи, до серверів та мережі Віртуальних систем, де порушення авторського права DISH не лише допускається, але і заохочується.[6] Інші два Піратські сервіси використовували сервери та мережу Віртуальних систем для порушення авторського права DISH під час, коли судові позови були складені проти них, та продовжували робити це, незважаючи на заборону.[7] Через знаходження поза Сполученими Штатами, та через те, що Піратські сервіси не володіють майном на території Сполучених Штатів, вони не мають жодної мотивації дотримуватися повідомлень про виклик до суду у Сполучених Штатах.

---

[5]Приклад 3 (ілюстративний список Піратських сервісів).

СКАРГА ПОЗИВАЧА                         6                    ПІТОВ PREG O'DONNELL &
GILLETT

вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

[6]TOB DISH Network проти компаній Lool Tech  № 4:16-cv-01771 (S.D. Tex.).

[7]TOB DISH Network проти Alghafir  № 4:20-cv-01678 (S.D. Tex.); TOB DISH Network проти корпорації 786 Wireless World №21-cv-05730 (E.D.N.Y.).

Справа 2:24-cv-01683 Документ 1 Внесений 15.10.2024 Сторінка 11 з

### Вирішення для потокового стримінгу Віртуальних систем

25.    Віртуальні системи використовують сервери у м. Сієтл, в Україні, Нідерландах та Сінгапурі, за допомогою "тільки їх особистої техніки та мережевого обладнання."[8] Віртуальні системи надають значення контролю, коли описують свій центр даних у м. Сієтл, заявляючи: "Ми не перепродаємо виділені сервери у США, - ми використовуємо свою особисту техніку та мережеве обладнання."[9]

26.    Віртуальні системи надають своїм клієнтам різноманітні типи виділених серверів та частково виділених серверів (що вказуються як віртуальні приватні сервери або ВПС) для передачі контенту за допомогою мережі інтернет. Віртуальні системі стверджують, що "їх успіх у бізнесі стримінгу залежить від їх можливості надавати медіа-інтенсивні послуги разом з мінімальними затримками", а також, що "сервери Віртуальних систем надають достатню пропускну можливість, пам'ять та ресурси сховища для досягнення вашої мети."[10] Віртуальні системи отримують сплату за використання їх серверів та мережі на основі обраних клієнтом опцій, включно із особистостями серверів та центрів даних, де такі сервери знаходяться.

27.    Віртуальні системи також надають своїм клієнтам за додаткову сплату сервери сховищ ("найліпше рішення для збереження великого обсягу відео"), [11]сервери ПГ ("найкращий інструмент кодування та де-кодування відео файлів та стримів в режимі реального часу"), [12] та допоміжне обладнання Xtream-UI (послуга програмного забезпечення, що надає клієнту можливість "налагоджувати їх послуги IPTV та ВЗВ, а також

---

[8]https://vsys.host/
[9]https://vsys.host/dedicated-servers-usa

СКАРГА ПОЗИВАЧА            7            ПТОВ PREG O'DONNELL &
GILLETT

ПТОВ PREG O'DONNELL &
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

[10] https://vsys.host/streaming-servers
[11]Id.
[12]Id.

клієнтську базу").[13] Віртуальні системи заохочують своїх клієнтів поєднувати ці пропозиції та використовувати вигідні вирішення для поточного стримінгу, тому що "це зручно[,] вигідно", а також "бистру передачу даних", тому що "всі ваші сервери є частиною швидкісної мережі."[14]

28.    Віртуальні системи мають прикладний підхід до керування серверами та мережею, стверджуючи, що    "наші команди розробляють, встановлюють та керують нашими виділеними серверами в США" та "ми постійно перевіряємо виділені сервери у США на функціональність та середу."[15] Віртуальні системи також стверджують, що "лише спеціалісти з високим рівнем кваліфікації можуть отримати доступ до обладнання серверів та мережі в США" та пропонують дозволити їх "ввічливим та освіченим командам . . . допомогти вам із будь-якими питаннями щодо хостингу у США."[16] Віртуальні системи роблять схожі ствердження щодо їх активної ролі у керуванні серверами в їх центрах даних поза Сполученими Штатами.[17]

29.    Віртуальні системи позиціонують свої послуги у м. Сієтл як "найкращий вибір для будь-кого . . . з аудиторією у Північній Америці," стверджуючи, що "їх центри даних поєднані із найбільшими каналами інтернету у Сполучених Штатах, що сприяє швидкій передачі даних."[18] Центр даних Віртуальних систем в

Україні рекламуються таким самим чином, як провайдер "відмінного зв'язку зі Східним узбережжям США, . . . встановленим для отримання найменшої затримки та безперебійних каналів мережі."[19] Стверджується також, що центри даних Віртуальних систем у Нідерландах пропонують "безпрецедентну швидкість зв'язку зі Східним узбережжям

---

[13]https://vsys.host/xtreme-codes-panel-saas
[14]https://vsys.host/streaming-servers
[15]https://vsys.host/dedicated-servers-usa
[16]*Id.*
[17]https://vsys.host/dedicated-server-hosting; https://vsys.host/dedicated-servers-netherlands
[18]https://vsys.host/dedicated-servers-usa

СКАРГА ПОЗИВАЧА                                    8                          ПITOB PREG O'DONNELL &
GILLETT

вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

[19]https://vsys.host/streaming-servers; https://vsys.host/dmca-ignored-dedicated-server

США."[20] Віртуальні системи рекламують свої сервери та мережу як "смачну для сервісів стримінгу", та стверджують, що "великі проекти IPTV та сайти з контентом для дорослих більш ніж бажані тут."[21]

30.    Віртуальні системи надали Піратським сервісам сервери та мережу, що були використані для передачі Робіт Споживачам, включно із серверами центрів даних Віртуальних систем, розташованими у м. Сієтл, Україні та Нідерландах. Віртуальні системи також могли надавати Піратським сервісам додаткові сервери та послуги, що використовувалися в передачі Робіт, як сервери сховищ, сервери кодування відео та допоміжне обладнання Xtream-UI, зазначені вище.

### Політика "ігнорування DMCA" Віртуальних систем

31.    Віртуальні системи є цікавими для сервісів стримінгу, що порушують Закон про авторське право США, таких, як Піратські сервіси, завдяки їх політиці "ігнорування DMCA", за якою Віртуальні системі стверджують, що "ми ігноруємо повідомлення про видалення DMCA" у зв'язку із центрами даних в Україні, а тому клієнти "користуються повним захистом від повідомлень про видалення DMCA."[22] Віртуальні системі рекламують свої сервери у м. Сієтл та Нідерландах таким самим чином, стверджуючи, що "всі повідомлення про видалення DMCA обробляються нашими юристами, але ми ставимося привітливо до наших цінних клієнтів, що можуть мати випадкові проблеми з авторським правом."[23]

---

[20]https://vsys.host/10gbps-servers
[21]https://vsys.host/20gbps-servers; https://vsys.host/streaming-servers
[22]https://vsys.host/dmca-ignored-dedicated-server (часткове зображення веб-сторінки нижче).
[23]https://vsys.host/10gbps-servers

СКАРГА ПОЗИВАЧА                                    9                          ПТОВ PREG O'DONNELL &
GILLETT

вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

1
2
3
4
5
6
7
8
9
10



11

12  32. Віртуальні системи рекламують, що їх політика "ігнорування DMCA" також покриває закриття

13  повідомлення щодо їх серверів сховищ ("Ми ігноруємо закриття DMCA, за виключенням

14  випадків, коли умови ситуації примушують нас до цього")[24] та допоміжне обладнання

15  Xtream-UI ("Ми не реагуємо на повідомлення про закриття DMCA, та не перенаправляємо

16  такі повідомлення клієнту, за виключенням випадків, коли умови ситуації примушують нас

17
18
19
20
21
22
23
24
25

---

[24]https://vsys.host/storage-servers

ПІТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

до цього").[25]

33.    Віртуальні системи та Смирнов отримували такі письмові повідомлення із закликом видалити або виключити доступ до Робіт, що передавалися Піратськими сервісами з серверів та мережі Віртуальних систем, що порушувало авторське право DISH ("Повідомлення про правопорушення"). За інформацією та переконанням, Повідомлення про правопорушення були доставлені електронною поштою та поштою за дійсною адресою, що використовувалася Віртуальними системами та Смирновим. Віртуальні системи та Смирнов разом отримали більше ніж 512 Повідомлень про правопорушення. Віртуальні системи та Смирнов отримували додаткові повідомлення про правопорушення щодо Робіт іншими клієнтами, не тільки Піратськими сервісами.

34.    Повідомлення про правопорушення відповідали Закону про авторське право міленіуму, 17 U.S.C. § 512 (коду США). Повідомлення про правопорушення включали, сумісно з іншими пунктами, інформацію достатню для того, щоб Віртуальні системи могли виявити правопорушуючі матеріали, включно з IP адресами, пов'язаними з сервером Віртуальних систем, з якого передавалися ці матеріали, або URL правопорушуючої передачі. Віртуальним система направлялися повідомлення про Канали, які виводили в ефір Роботи, до моменту передачі Робіт Піратськими сервісами.

35.    Віртуальні системи не відповіли на Повідомлення про правопорушення та не прийняли ніяких мір для припинення правопорушення Піратськими сервісами на своїх серверах та мережі. Піратські сервіси продовжили порушення авторського права DISH щодо Робіт, що виходили в ефір на Каналах, і навіть використовували такі ж самі IP адресу та URL, що були попередньо зазначені у повідомленнях до Віртуальних систем. Віртуальні системи дійсно придержувалися їх політики "ігнорування DMCA" шляхом зневажання Повідомлень про правопорушення та закриваючи очі на порушення авторського права DISH Піратськими сервісами.

---

[25]https://vsys.host/xtreme-codes-panel-saas

СКАРГА ПОЗИВАЧА

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієта, Вашингтон, 98101
(206) 287-1775

36.     Віртуальні системи також не дотримувалися наказів судів Сполучених Штатів, викладених у трьох судових позивах до Піратських систем, що забороняли Віртуальним системам на постійній основі надавати свої сервери та мережу таким Піратським сервісам, тому що вони використовували їх для порушення авторського права DISH.[26] Два вирішення суду специфічно включають заборону Віртуальним системам, а третє приєднує Віртуальні системи до заборони через їх роль у наданні серверів та мережі, що використовувалися у цьому правопорушенні. Віртуальні системи було повідомлено про постійну заборону, але вони не припинили надання своїх серверів та мережі Піратським сервісам, що продовжило порушення авторського права DISH, включно з авторським правом на Роботи.

37.     Віртуальні системи не можуть стверджувати про ніякий захист від DMCA, тому що не впроваджують та не виконують розумно політику, що потребує припинення надання послуг повторним правопорушникам. Віртуальні системи також не мають права на будь-який захист від DMCA, тому що не має особливого агента з DMCA, що приймав би повідомлення про правопорушення; тому що, коли такі повідомлення отримані, або іншим чином визнається правопорушення, Віртуальні системи не відкликаються на них у якнайкоротший термін шляхом видалення або припинення доступу до матеріалів, що порушують авторське право; а також, тому що Віртуальні системи отримують фінансову вигоду, що прямо пов'язана з правопорушенням, що контролюється ними.

---

[26]Помітки 6-7 (ідентифікуючі справи). СКАРГА ПОЗИВАЧА

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документ 1 Внесений 15.10.2024 Сторінка 17 з 20

### Політика "Непримітності" Віртуальних систем

38.    Віртуальні системи також заохочують Піратські сервіси до порушення авторського права DISH шляхом підтримки анонімності осіб правопорушників. Віртуальні системи повідомляють своїх клієнтів, що "ваша сторінка завжди зберігається непримітно" та "тому що ми про вас маємо мінімальну інформацію, ваша анонімність гарантована."[27] Віртуальні системи вихваляється тим, що не дотримуються потреб політики ЗСК (Знай Свого Клієнта), стверджуючи, що "не потребують внесення особистої інформації для купівлі."[28] Також Віртуальні системи стверджують, що вони спілкуватимуться зі своїми клієнтами за допомогою "анонімної електронної пошти" і "не зберігатимуть ніяких записів."[29]

39.    Віртуальні системи також заохочують клієнтів тримати свої особи скритими шляхом сплати крипто валютою, стверджуючи, що "ми любимо та приймаємо крипто валюту" та що такі платежі "можуть здійснюватися анонімно."[30] Віртуальні системи радять своїм клієнтам "знаходити спокій у тому факті, що ви є повністю захищеними тут, і що ваша особиста приватність є найбільшим пріоритетом."[31]

---

[27] https://vsys.host/

[28] https://vsys.host/10gbps-servers

[29] https://www.linkedin.com/company/vsyshost; https://vsys.host/vps-usa

[30] https://vsys.host/dedicated-servers-usa (часткове зображення веб-сторінки нижче); https://vsys.host/vps-usa

[31] https://vsys.host/vps-usa

СКАРГА ПОЗИВАЧА                    12                    ПІТОВ PREG O'DONNELL &
GILLETT

вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775



### Контроль Віртуальних систем за правопорушенням

40.    Віртуальні системи могли б прийняти прості міри для припинення правопорушень щодо Робіт Піратськими сервісами, але відмовилися їх прийняти. Віртуальні системи могли б визначити, чи мають Піратські сервіси законний дозвіл на передачу Робіт, шляхом вимоги до них про підтвердження їх прав на Каналах. Віртуальні системи також могли б видаляти або припиняти доступ до визначених у Повідомленнях про правопорушення матеріалів, що передавалися через їх сервери та мережу. Віртуальні системи могли б запровадити політику багатьох порушень, таку як тимчасове припинення дії рахунку Піратських сервісів, після отримання одного повідомлення про правопорушення проти такого рахунку, і після того назавжди припиняти дію такого рахунку, якщо отримали б додаткові повідомлення про правопорушення.

41.    Віртуальні системи також мають законне право на припинення порушення Піратськими сервісами авторського права Робіт. Договір про надання послуг Віртуальних систем з їх клієнтами надає право на "виключення будь-яких матеріалів" і "право блокувати та тимчасово припиняти дію" таких послуг, або "прийняття будь-яких мір . . . необхідних" у випадках, коли клієнт "порушує права на інтелектуальну власність будь-якої третьої сторони або іншою мірою є учасником спору."[32] Віртуальні системи мають право на виконання своєї можливості "за особистим переконанням, невідкладно та буз попередження" своїх клієнтів.[33] Замість того, щоб виконувати такі свої права та припиняти правопорушення Піратськими сервісами, Віртуальні системи закрили на це очі, роблячи свої сервери та мережу безпечним місцем для здійснення правопорушень Піратськими сервісами.

### Пряма фінансова заінтересованість Віртуальних систем у правопорушеннях

42.    Піратські сервіси притягнулися до серверів та мережі Віртуальних систем, тому що вони не припинили їх правопорушень та запропонували тримати їх анонімними.

---

[32] https://vsys.host/legal/term-of-service
[33] Id.

СКАРГА ПОЗИВАЧА                    13                    ПТОВ PREG O'DONNELL & GILLETT
                                                        вул. Юніон Стріт, б. 401, оф. 1900
                                                        Сієтл, Вашингтон, 98101
                                                        (206) 287-1775

Справа 2:24-cv-01683 Документ 1 Внесений 15.10.2024 Сторінка 20 з 20

Піратські сервіси розглядали сервери та мережу Віртуальних систем, як місце, де правопорушення щодо Робіт допускається, тому що Віртуальні сервіси рекламували їх таким чином, і багато інших Піратських сервісів робили так само. Постійний доступ до Робіт через відмову Віртуальних систем від прийняття мір проти Піратських сервісів притягувало такі Піратські сервіси залишатися клієнтами Віртуальних систем, а також притягнули інші Піратські сервіси стати клієнтами Віртуальних систем.

43.    Ціна на послуги Віртуальних систем частково основана на пропускній можливості, що обирає клієнт, типово пропонованій у гіга-бітах за секунду (Гб/с).[34] Наприклад, Віртуальні системи отримують більшу сплату за 20Гб/с сервер, що рекомендований для додатків "високої пропускної можливості", як "стримінг або ВЗВ", ніж сплата за 1Гб/с сервер, що надає меншу пропускну можливість. Віртуальні системи також надають можливість клієнтам, що використовують певні типи серверів та додаткове обладнання Xtream-UI, можливість посилювати пропускну можливість, ціна на яку складається за 1 додатковий Гб/с. Віртуальні системи стверджують, що "відео понукає потребу на високу пропускну можливість, і ми пропонуємо її за дуже вигідною ціною."[35]

44.    Віртуальні системи оповіщають своїх клієнтів, що належна пропускна можливість є "життєво необхідною для забезпечення швидкого, постійного постачання", а також заохочують їх "обирати обсяг пропускної можливості залежно від їх потреби."[36] За інформацією та переконанням, потреби Піратських сервісів у пропускній можливості зіграли роль у купівлі ними дорожчих серверів для здобуття підвищеної пропускної можливості, додаткової пропускної можливості за вимогою або додаткових серверів для передачі Робіт та іншого контенту. Віртуальні системи відмовилися прийняти міри для припинення правопорушень Робіт Піратськими сервісами, тому що це б вплинуло на потребу Піратських сервісів у пропускній можливості, тим самим - на потребу купувати її у

---

[34] https://vsys.host/streaming-servers
[35] https://vsys.host/xtreme-codes-panel-saas
[36] https://vsys.host/streaming-servers

СКАРГА ПОЗИВАЧА

14

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Віртуальних систем.

### Претензії для полегшення

#### <u>Пункт I</u>

#### (Матеріальне сприяння порушенню авторського права за 17 U.S.C. § 501 (коду США)

45.    DISH повторює та підтверджує всі звинувачення, викладені у параграфах 1-44.

46.    DISH є власником авторського права за 17 U.S.C. § 106 (коду США), тому що за весь описаний час, DISH володіли ексклюзивним правом на поширення та публічне виконання Робіт у Сполучених Штатах за допомогою супутників, OTT, IPTV та мережі інтернет.

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

47.     Роботи підлягають під авторське право, тому що вони є оригінальними аудіо-візуальними роботами, що зафіксовані у матеріальній формі вираження. Авторське право на Роботи DISH існує за законами націй поза Сполучених Штатів, що є учасниками угод про авторське право зі Сполученими Штатами, включно з Єгиптом, Ліваном, Саудівською Аравією, Індією та Бангладеш, де такі Роботи буле вперше створені та опубліковані.

48.     Роботи являються роботами не Сполучених Штатів за 17 U.S.C. §§ 101 та 411 (коду США), а тому реєстрація у Відділені Авторського права Сполучених Штатів не є попередньою вимогою для подачі скарги щодо порушення авторського права цих Робіт. Незважаючи на це, декілька Робіт зареєстровані у Відділені Авторського права Сполучених Штатів.

49.     Ексклюзивне право DISH публічно виконувати Роботи було прямо порушено Піратськими сервісами шляхом неавторизованої передачі Робіт Споживачам. Роботи передавалися Споживачам під час, коли ексклюзивне право на публічне виконання Робіт DISH мало силу.

50.     Віртуальні системі матеріально допомогли Піратським сервісам порушити ексклюзивне право DISH на публічне виконання шляхом надання Піратським сервісам серверів та мережі, що використовувалися для передачі Робіт. Віртуальні системи також пропонували сервери сховищ, сервери кодування відео та додаткове обладнання Xtream-UI, що рекламувалося та продавалося Піратським сервісам як рекомендовані додатки до пакетів серверів та мережі. За інформацією та переконанням, Віртуальні системи надавали ці додаткові типи серверів та обладнання щонайменше деяким з Піратських сервісів.

51.     Віртуальні системи знали, що передача Робіт Споживачам порушує ексклюзивне право DISH на публічне виконання, і що їх сервери та мережа використовуються для здійснення такого правопорушення у великому обсязі. Повідомлення про правопорушення інформували Віртуальні системи про специфічні правопорушення, включно з IP адресами та URL пов'язаними із серверами та мережею Віртуальних систем, що використовувалися для передачі Робіт.

52.     Віртуальні системи могли б прийняти прості міри запобігання порушення

Піратськими сервісами ексклюзивного права DISH на публічне виконання Робіт, включно з

видаленням або Скарга Позивача                    15                    ПТОВ PREG O'DONNELL &

GILLETT

вул. Юніон Стріт, б. 401, оф.
1900, м. Сіетл, штат
Вашингтон, 98101 (206) 287-
1775

Справа 2:24-cv-01683 Документ 1 Внесений 15.10.2024 Сторінка 24 з 20

виключенням доступу до Робіт або припиненням дії рахунків Піратських сервісів. Віртуальні системи відмовилися прийняти такі міри та продовжили надання доступу до Робіт.

53.    Смирнов надавав дозвіл, керував та приймав участь у правопорушеннях щодо Робіт Віртуальними системами. Смирнов керував серверами та мережею, що використовувалася Піратськими сервісами для правопорушень щодо Робіт. Смирнов був повідомлений про здійснення правопорушення на серверах та мережі, якими він керував, але відмовився припинити це правопорушення. Смирнов володіє Віртуальними системами, займає роль голови та директора, а також отримує фінансову вигоду від їх протиправних дій. Смирнов є керівним духом та центральною фігурою у правопорушеннях Віртуальних систем проти Робіт, і тим самим Смирнов несе особисту відповідальність за такі правопорушення.

54.    Дії Віртуальних систем та Смирнова були вольовими, злочинними, цілеспрямованими та навмисними, а також йшли проти та незважаючи на права DISH. Дії Віртуальних систем та Смирнова продовжуються стосовно багатьох Піратських сервісів.

55.    Без заборони суду Віртуальні системи та Смирнов продовжать брати участь у діях, що спричиняють велику та непоправну шкоду DISH, включно з втратами продаж, пошкодженню репутації, втратою доброї волі, що неможливо відшкодувати за допомогою закону.

### Пункт II

### (Спонукання порушення авторського права за 17 U.S.C. § 501 (коду США)

56.    DISH повторює та підтверджує всі звинувачення, викладені у параграфах 1-44, 46-49 та 53.

57.    Віртуальні системи надавали сервери та мережу, що були використані для порушення ексклюзивного права DISH на публічне виконання Робіт. Віртуальні системи рекламували свої сервери та мережу для таких правопорушень сумісно із їх політикою "ігнорування DMCA", згідно якої Віртуальні системи повідомляли Піратські сервіси, що вони не дотримуються закону про авторське право Сполучених Штатів, але не приймали

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

жодних мір по запобіганню порушенню ними прав Робіт.

58.     Віртуальні системи також рекламували свої сервери та мережу для правопорушень Робіт за допомогою своєї політики "непримітності", за якою Віртуальні системи повідомляли Піратські сервіси

Скарга      позивача    ,    що   їх   особи   не   16
поширюватимуться власникам авторських прав, як
DISH, і що ніякі записи щодо їх протиправного використання серверів та мережі Віртуальних систем не
зберігатимуться.

59.     Віртуальні системи не розвили інструментів фільтрування або інших механізмів для зниження правопорушень Піратськими сервісами щодо Робіт, але могли прийняти прості міри для припинення таких правопорушень, наприклад, шляхом видалення або припинення доступу до Робіт, або закриття рахунків Піратських сервісів. Віртуальні системи відмовилися припинити правопорушення щодо Робіт Піратськими сервісами, тому що ці правопорушення додавали до їх фінансового успіху.

60.     Смирнов давав дозвіл, керував та брав участь у порушенні прав Робіт Віртуальними системами, що викладено вище, а тому несе особисту відповідальність за такі правопорушення.

61.     Дії Віртуальних систем та Смирнова були вольовими, злочинними, цілеспрямованими та навмисними, а також йшли проти та незважаючи на права DISH. Дії Віртуальних систем та Смирнова продовжуються стосовно багатьох Піратських сервісів.

62.     Без заборони суду Віртуальні системи та Смирнов продовжать брати участь у діях, що спричиняють велику та непоправну шкоду DISH, включно з втратами продаж, пошкодженню репутації, втратою доброї волі, що неможливо відшкодувати за допомогою закону.

### Пункт III

### (Опосередковане порушення авторського права за 17 U.S.C. § 501 (коду США)

63.     DISH повторює та підтверджує всі звинувачення, викладені у параграфах 1-44, 46-49 та 53.

ПГОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

64.     Віртуальні системи мали законне право та практичну можливість припинити або обмежити правопорушення щодо Робіт Піратськими сервісами. Віртуальні системи могли б видалити або припинити доступ до Робіт, що передавалися через їхні сервери та мережу, або закрити рахунки Піратських сервісів та припинити їх дію зовсім. Віртуальні системи мали дозвіл на прийняття таких простих мір для припинення правопорушень щодо Робіт за умовами свого договору з Піратськими сервісами. Віртуальні системи відмовилися від виконання свого права та можливості контролювати правопорушення Піратських сервісів щодо Робіт.

СКАРГА ПОЗИВАЧА                    17

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сістл, Вашингтон, 98101
(206) 287-1775

65.    Віртуальні системи отримували прямий фінансовий інтерес від правопорушень Піратськими сервісами щодо Робіт, та отримали пряму фінансову вигоду від таких правопорушень. Піратські сервіси були мотивовані бути клієнтами Віртуальних систем, тому що знали, що можуть публічно виконувати Роботи без втручання Віртуальних систем. Відмова Віртуальних систем припинити правопорушення Робіт Піратськими сервісами притягувала такі Піратські сервіси залишатися клієнтами Віртуальних систем, а також притягувала інші Піратські сервіси до серверів та мережі Віртуальних систем. Нездатність видалити або припинити доступ до Робіт або закрити рахунки Піратських сервісів спричинила отримання Віртуальними системами прибутку, який іншим чином вони б не отримали.

66.    Віртуальні системи заохочували Піратські сервіси купувати достатню пропускну можливість для передачі контенту шляхом використання серверів та мережі Віртуальних систем. За інформацією та переконанням, Піратські сервіси придбали таку пропускну можливість у формі більш дорогих серверів, додаткових серверів або за вимогою. Передача Робіт Піратськими сервісами допомагала підтримувати їх потребу у підвищеній пропускній можливості, а Віртуальні системи могли продавати їм таку потрібну пропускну можливість. Віртуальні системи не припинили передачу Робіт Піратськими сервісами, тому що це б зменшило особисті прибутки Віртуальних систем.

67.    Смирнов давав дозвіл, керував та брав участь у порушенні прав Робіт Віртуальними системами, що викладено вище, а тому несе особисту відповідальність за такі правопорушення.

68.    Дії Віртуальних систем та Смирнова були вольовими, злочинними, цілеспрямованими та навмисними, а також йшли проти та незважаючи на права DISH. Дії Віртуальних систем та Смирнова продовжуються стосовно багатьох Піратських сервісів.

69.    Без заборони суду Віртуальні системи та Смирнов продовжать брати участь у діях, що спричиняють велику та непоправну шкоду DISH, включно з втратами продаж, пошкодженню репутації, втратою доброї волі, що неможливо відшкодувати за допомогою

ПІТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документ 1 Внесений 15.10.2024 Сторінка 28 з 20

закону.

## Прохання про задоволення

Рішення суду проти Віртуальних систем та Смирнова мають включати:

СКАРГА ПОЗИВАЧА                                        18

СКАРГА ПОЗИВАЧА                    19        ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документ 1 Внесений 15.10.2024 Сторінка 29 з 20

A.    Постійну заборону за 17 U.S.C. § 502 (коду США) Віртуальним системам, Смирнову та будь-яким офіційним особам, агентам, службовцям, співробітникам або будь-яким іншим особам, що діють сумісно або приймають участь у діях таких осіб, здійснювати порушення авторського права DISH щодо Робіт, що виходять у ефір на Каналах, включно з (1) поширенням або публічним виконанням цих матеріалів у Сполучених Штатах, що включає стримінг та передачу цих матеріалів; (2) допомагати, ініціювати та відмовлятися припиняти або обмежувати поширення або публічне виконання цих матеріалів, що включає заборону на надання будь-яких серверів та мережі, що використовувалася б у стримінгу або передачі матеріалів, а також потребує закриття будь-яких існуючих або майбутніх рахунків Піратських сервісів;

B.    Встановити законом збитки у 150 000 доларів США за кожне зареєстроване правопорушення (включно з 279 зареєстрованими Роботами, викладеними у Прикладі 1) за 17 U.S.C. § 504(c) (коду США), або у розмірі прибутків Віртуальних систем та Смирнова, пов'язаних з правопорушеннями щодо цих зареєстрованих Робіт за 17 U.S.C. § 504(b) (коду США);

C.    Прибутки Віртуальних систем та Смирнова, пов'язаних з правопорушеннями щодо кожної незареєстрованої Роботи за 17 U.S.C. § 504(b) (коду США);

D.    Сплату послуг та витрат адвоката DISH за 17 U.S.C. § 505 (коду США);

E.    Конфіскувати та позбутися усіх протиправних статей за 17 U.S.C. § 503 (коду США);

F.    Відсотки від грошових прибутків, отриманих до та після винесення рішення суду, з найпершої дати, дозволеної за законом і за максимальною ставкою, дозволеною законом;

G.    Інші додаткові вимоги, які Суд вважатиме справедливими та законними.

Дата: 15 жовтня 2024 р.

**ПТОВ PREG O'DONNELL & GILLETT**

Складено: Грегорі Латендрес
Грегорі Латендрес, WSBA # 32787
98101, штат Вашингтон, м. Сієтл, вул. Юніон
Стріт, б. 401, оф. 1900 Тел: (206) 287-1775 Факс:
(206) 287-9113 glatendresse@pregodonnell.com

26

СКАРГА ПОЗИВАЧА
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

19                  ПТОВ PREG O'DONNELL & GILLETT

**ТОВ HAGAN NOLL & BOYLE**
Джозеф Х. Бойл (*pro hac vice* (одноразово)
наближений)
Тимоти М. Френк (*pro hac vice* (одноразово)
наближений)
Стивен М. Фергюсон  (*pro hac vice* (одноразово)
наближений) вул. Гесснер, б. 820, оф. 940
Хьюстон, Техас, 77024
Тел: (713) 343-0478
Факс: (713) 758-0146
joseph.boyle@hnbllc.com
timothy.frank@hnbllc.com
stephen.ferguson@hnbllc.com

Адвокати позивача ТОВ DISH Network

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

СКАРГА
ПОЗИВАЧА

20

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сістл, Вашингтон, 98101
(206) 287-1775

Справа2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 1 з 16

ОКРУЖНИЙ СУД СПОЛУЧЕНИХ ШТАТІВ
ЗАПАДНИЙ ОКРУГ ШТАТУ ВАШИНГТОН
У)СІЄТЛІ

ТОВ DISH NETWORK,                         № 2:24-cv-01683
                                          )
    Позивач, ) ) проти                     )        **ПРИКЛАД 1 СКАРГИ**
                                          )        **ПОЗИВАЧА**
ТОВ VIRTUAL SYSTEMS та                     )
В'ЯЧЕСЛАВ СМИРНОВ,                          )
                                          )
                        Відповідачі. )

**РОБОТИ, ЩО ПІДЛЯГАЮТЬ РЕЄСТРАЦІЇ**

| Робота | Дата першої публікації | Канал | Реєстрація Номер | Дата набуття чинності реєстрації |
|---|---|---|---|---|
| Aangan Aapno Kaa, серія 18 | 30 грудня 2023 р. | SAB | PA0002452164 | 12 січня 2024 р. |
| Aangan Aapno Kaa, серія 43 | 29 січня 2024 р. | SAB | PA0002458039 | 2 лютого 2024 р. |
| Aangan Aapno Kaa, серія 69 | 28 лютого 2024 р. | SAB | PA0002460329 | 29 лютого 2024 р. |
| Aangan Aapno Kaa, серія 95 | 29 березня 2024 р. | SAB | PA0002467108 | 4 квітня 2024 р. |
| Ali Baba Dastaan E Kabul, серія 7 | 29 серпня 2022 р. | SAB | PA0002373613 | 2 вересня 2022 р. |
| Ali Baba Dastaan E | 28 жовтня 2022 р. | SAB | PA0002388793 | 29 листопада 2022 р. |

Приклад 1 до Скарги позивача                    1

ПІТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

| | | | | |
|---|---|---|---|---|
| Kabul, серія 59 | | | | |
| Ali Baba Dastaan E Kabul, серія 85 | 28 листопада 2022 р. | SAB | PA0002389478 | 6 грудня 2022 р. |
| Ali Baba Dastaan E Kabul, серія 111 | 28 грудня 2022 р. | SAB | PA0002394869 | 9 січня 2023 р. |
| Ali Baba Ek Andaaz Andekha, серія 185 | 27 березня 2023 р. | SAB | PA0002411326 | 28 березня 2023 р. |
| Ali Baba Ek Andaaz Andekha, серія 230 | 29 травня 2023 р. | SAB | PA0002421487 | 31 травня 2023 р. |
| Baalveer 3, серія 13 | 29 квітня 2023 р. | SAB | PA0002415647 | 3 травня 2023 р. |
| Dharam Yoddha Garud, серія 13 | 28 березня 2022 р. | SAB | PA0002350051 | 29 березня 2022 р. |
| Dharam Yoddha Garud, серія 39 | 27 квітня 2022 р. | SAB | PA0002357041 | 2 травня 2022 р. |
| Dharam Yoddha Garud, серія 64 | 26 травня 2022 р. | SAB | PA0002361309 | 1 червня 2022 р. |
| Dharam Yoddha Garud, серія 91 | 27 червня 2022 р. | SAB | PA0002365385 | 29 червня 2022 р. |
| Dharam Yoddha Garud, серія 145 | 29 серпня 2022 р. | SAB | PA0002373616 | 2 вересня 2022 р. |
| Dharam Yoddha Garud, серія 197 | 28 жовтня 2022 р. | SAB | PA0002388777 | 29 листопада 2022 р. |
| Dharam Yoddha Garud, серія 223 | 28 листопада 2022 р. | SAB | PA0002389274 | 6 грудня 2022 р. |
| Dhruv Tara, серія 25 | 27 березня 2023 р. | SAB | PA0002409092 | 28 березня 2023 р. |
| Dhruv Tara, серія 54 | 29 квітня 2023 р. | SAB | PA0002416206 | 3 травня 2023 р. |
| Dhruv Tara, серія 79 | 29 травня 2023 р. | SAB | PA0002420330 | 31 травня 2023 р. |
| Dhruv Tara, серія 103 | 26 червня 2023 р. | SAB | PA0002426466 | 29 червня 2023 р. |
| Dhruv Tara, серія 133 | 31 липня 2023 р. | SAB | PA0002430266 | 2 серпня 2023 р. |
| Dhruv Tara, серія 159 | 30 серпня 2023 р. | SAB | PA0002436068 | 5 вересня 2023 р. |
| Dhruv Tara, серія 165 | 6 вересня 2023 р. | SAB | PA0002439053 | 21 вересня 2023 р. |
| Dhruv Tara, серія 167 | 8 вересня 2023 р. | SAB | PA0002437946 | 21 вересня 2023 р. |
| Dhruv Tara, серія 211 | 30 жовтня 2023 р. | SAB | PA0002443591 | 2 листопада 2023 р. |
| Dhruv Tara, серія 236 | 28 листопада 2023 р. | SAB | PA0002448235 | 30 листопада 2023 р. |
| Dhruv Tara, серія 264 | 30 грудня 2023 р. | SAB | PA0002452737 | 8 січня 2024 р. |
| Dhruv Tara, серія 289 | 29 січня 2024 р. | SAB | PA0002458067 | 2 лютого 2024 р. |
| Dhruv Tara, серія 315 | 28 лютого 2024 р. | SAB | PA0002460331 | 29 лютого 2024 р. |
| Dhruv Tara, серія 341 | 29 березня 2024 р. | SAB | PA0002467683 | 4 квітня 2024 р. |

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 37 of 16

| | | | | | |
|---|---|---|---|---|---|
| 1 | Dil Diyaan Gallan, серія 15 | 28 грудня 2022 р. | SAB | PA0002395076 | 9 січня 2023 р. |
| 2 3 | Dil Diyaan Gallan, серія 43 | 30 січня 2023 р. | SAB | PA0002401201 | 3 лютого 2023 р. |
| 4 | Dil Diyaan Gallan, серія 91 | 27 березня 2023 р. | SAB | PA0002409093 | 28 березня 2023 р. |
| 5 | Dil Diyaan Gallan, серія 120 | 29 квітня 2023 р. | SAB | PA0002416207 | 3 травня 2023 р. |
| 6 7 | Dil Diyaan Gallan, серія 145 | 29 травня 2023 р. | SAB | PA0002420331 | 31 травня 2023 р. |
| 8 | Dil Diyaan Gallan, серія 169 | 26 червня 2023 р. | SAB | PA0002426597 | 29 червня 2023 р. |
| 9 | Dil Diyaan Gallan, серія 199 | 31 липня 2023 р. | SAB | PA0002430268 | 2 серпня 2023 р. |
| 10 | Dil Diyaan Gallan, серія 225 | 30 серпня 2023 р. | SAB | PA0002436070 | 5 вересня 2023 р. |
| 11 12 | Dil Diyaan Gallan, серія 231 | 6 вересня 2023 р. | SAB | PA0002440119 | 21 вересня 2023 р. |
| 13 14 | Good Night India-Raatwala Сімейне Шоу, серія 21 | 23 лютого 2022 р. | SAB | PA0002344848 | 24 лютого 2022 р. |
| 15 16 | Good Night India-Raatwala Сімейне Шоу, серія 49 | 28 березня 2022 р. | SAB | PA0002350038 | 29 березня 2022 р. |
| 17 18 | Good Night India-Raatwala Сімейне Шоу, серія 75 | 27 квітня 2022 р. | SAB | PA0002357043 | 2 травня 2022 р. |
| 19 | Good Night India-Raatwala Сімейне Шоу, серія 100 | 26 травня 2022 р. | SAB | PA0002360259 | 1 червня 2022 р. |
| 20 21 | Hero-Gayab Mode On, серія 231 | 25 жовтня 2021 р. | SAB | PA0002324878 | 27 жовтня 2021 р. |
| 22 | Pashminna, серія 5 | 30 жовтня 2023 р. | SAB | PA0002443544 | 2 листопада 2023 р. |
| | Pashminna, серія 30 | 28 листопада 2023 р. | SAB | PA0002448168 | 30 листопада 2023 р. |
| 23 | Pashminna, серія 58 | 30 грудня 2023 р. | SAB | PA0002452333 | 8 січня 2024 р. |
| 24 | Pashminna, серія 83 | 29 січня 2024 р. | SAB | PA0002458074 | 2 лютого 2024 р. |
| | Pashminna, серія 109 | 28 лютого 2024 р. | SAB | PA0002461439 | 29 лютого 2024 р. |
| 25 | Pushpa Impossible, | 27 червня 2022 р. | SAB | PA0002364309 | 29 червня 2022 р. |

Приклад 1 до Скарги позивача      3

26

ПГОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 38 of 16

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 39 of 16

| | | | | | |
|---|---|---|---|---|---|
| 1 | серія 19 | | | | |
| 2 | Pushpa серія 45 | Impossible, | 27 липня 2022 р. | SAB | PA0002368227 | 28 липня 2022 р. |
| 3 | Pushpa серія 73 | Impossible, | 29 серпня 2022 р. | SAB | PA0002373619 | 2 вересня 2022 р. |
| 4 | Pushpa серія 123 | Impossible, | 28 жовтня 2022 р. | SAB | PA0002388792 | 29 листопада 2022 р. |
| 5 | | | | | | |
| 6 | Pushpa серія 149 | Impossible, | 28 листопада 2022 р. | SAB | PA0002389281 | 6 грудня 2022 р. |
| 7 | Pushpa серія 175 | Impossible, | 28 грудня 2022 р. | SAB | PA0002395074 | 9 січня 2023 р. |
| 8 | Pushpa серія 203 | Impossible, | 30 січня 2023 р. | SAB | PA0002401206 | 3 лютого 2023 р. |
| 9 | Pushpa серія 251 | Impossible, | 27 березня 2023 р. | SAB | PA0002409099 | 28 березня 2023 р. |
| 10 | | | | | | |
| 11 | Pushpa серія 280 | Impossible, | 29 квітня 2023 р. | SAB | PA0002418961 | 3 травня 2023 р. |
| 12 | Pushpa серія 305 | Impossible, | 29 травня 2023 р. | SAB | PA0002420334 | 31 травня 2023 р. |
| 13 | Pushpa серія 329 | Impossible, | 26 червня 2023 р. | SAB | PA0002426605 | 29 червня 2023 р. |
| 14 | | | | | | |
| 15 | Pushpa серія 359 | Impossible, | 31 липня 2023 р. | SAB | PA0002430275 | 2 серпня 2023 р. |
| 16 | Pushpa серія 385 | Impossible, | 30 серпня 2023 р. | SAB | PA0002436137 | 5 вересня 2023 р. |
| 17 | Pushpa серія 437 | Impossible, | 30 жовтня 2023 р. | SAB | PA0002443545 | 2 листопада 2023 р. |
| 18 | | | | | | |
| 19 | Pushpa серія 462 | Impossible, | 28 листопада 2023 р. | SAB | PA0002448254 | 30 листопада 2023 р. |
| 20 | Pushpa серія 490 | Impossible, | 30 грудня 2023 р. | SAB | PA0002452337 | 8 січня 2024 р. |
| 21 | Pushpa серія 519 | Impossible, | 29 січня 2024 р. | SAB | PA0002458072 | 2 лютого 2024 р. |
| 22 | Pushpa серія 541 | Impossible, | 28 лютого 2024 р. | SAB | PA0002461440 | 29 лютого 2024 р. |
| 23 | | | | | | |
| 24 | Pushpa серія 567 | Impossible, | 29 березня 2024 р. | SAB | PA0002468763 | 4 квітня 2024 р. |
| 25 | Sab Satrangi, серія 15 | | 23 лютого 2024 р. | SAB | PA0002345141 | 24 лютого 2024 р. |

Приклад 1 до Скарги позивача

26

ПГОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сістл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. ІОніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 41 of 16

| | | | | | |
|---|---|---|---|---|---|
| Sab Satrangi, серія 43 | 28 березня 2022 р. | SAB | PA0002350057 | 29 березня 2022 р. |
| Sab Satrangi, серія 69 | 27 квітня 2022 р. | SAB | PA0002357053 | 2 травня 2022 р. |
| Sab Satrangi, серія 94 | 26 травня 2022 р. | SAB | PA0002360924 | 1 червня 2022 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 34 | 25 жовтня 2021 р. | SAB | PA0002324869 | 27 жовтня 2021 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 64 | 29 листопада 2021 р. | SAB | PA0002330984 | 30 листопада 2021 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 80 | 17 грудня 2021 р. | SAB | PA0002336978 | 3 січня 2022 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 111 | 24 січня 2022 р. | SAB | PA0002340108 | 26 січня 2022 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 137 | 23 лютого 2022 р. | SAB | PA0002345407 | 24 лютого 2022 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 165 | 28 березня 2022 р. | SAB | PA0002350069 | 29 березня 2022 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 191 | 27 квітня 2022 р. | SAB | PA0002357047 | 2 травня 2022 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 216 | 26 травня 2022 р. | SAB | PA0002360937 | 1 червня 2022 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 243 | 27 червня 2022 р. | SAB | PA0002364315 | 29 червня 2022 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 269 | 27 липня 2022 р. | SAB | PA0002368196 | 28 липня 2022 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3285 | 25 жовтня 2021 р. | SAB | PA0002324875 | 27 жовтня 2021 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3315 | 29 листопада 2021 р. | SAB | PA0002330983 | 30 листопада 2021 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3331 | 17 грудня 2021 р. | SAB | PA0002337300 | 3 січня 2022 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3363 | 24 січня 2022 р. | SAB | PA0002340102 | 26 січня 2022 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3389 | 23 лютого 2022 р. | SAB | PA0002345421 | 24 лютого 2022 р. |

Приклад 1 до Скарги позивача

5

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

| | | | | |
|---|---|---|---|---|
| Taraak Mehta Ka Ooltah Chashmah, серія 3417 | 28 березня 2022 р. | SAB | PA0002350030 | 29 березня 2022 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3443 | 27 квітня 2022 р. | SAB | PA0002357040 | 2 травня 2022 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3468 | 26 травня 2022 р. | SAB | PA0002361258 | 1 червня 2022 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3495 | 27 червня 2022 р. | SAB | PA0002364316 | 29 червня 2022 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3521 | 27 липня 2022 р. | SAB | PA0002368185 | 28 липня 2022 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3549 | 29 серпня 2022 р. | SAB | PA0002373620 | 2 вересня 2022 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3601 | 28 жовтня 2022 р. | SAB | PA0002388790 | 29 листопада 2022 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3627 | 28 листопада 2022 р. | SAB | PA0002389282 | 6 грудня 2022 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3653 | 28 грудня 2022 р. | SAB | PA0002395073 | 9 січня 2023 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3681 | 30 січня 2023 р. | SAB | PA0002401207 | 3 лютого 2023 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3869 | 6 вересня 2023 р. | SAB | PA0002437945 | 21 вересня 2023 р. |
| Tera Yaar Hoon Main, серія 326 | 29 листопада 2021 р. | SAB | PA0002330982 | 30 листопада 2021 р. |
| Tera Yaar Hoon Main, серія 342 | 17 грудня 2021 р. | SAB | PA0002337301 | 3 січня 2022 р. |
| Tera Yaar Hoon | 24 січня 2022 р. | SAB | PA0002340101 | 26 січня 2022 р. |

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 8 of 16

| Main, серія 373 | | | | |
|---|---|---|---|---|
| Vanshaj, серія 13 | 26 червня 2023 р. | SAB | PA0002426607 | 29 червня 2023 р. |
| Vanshaj, серія 43 | 31 липня 2023 р. | SAB | PA0002430277 | 2 серпня 2023 р. |
| Vanshaj, серія 69 | 30 серпня 2023 р. | SAB | PA0002436138 | 5 вересня 2023 р. |
| Vanshaj, серія 121 | 30 жовтня 2023 р. | SAB | PA0002443546 | 2 листопада 2023 р. |
| Vanshaj, серія 146 | 28 листопада 2023 р. | SAB | PA0002448219 | 30 листопада 2023 р. |
| Vanshaj, серія 174 | 30 грудня 2023 р. | SAB | PA0002452295 | 8 січня 2024 р. |
| Vanshaj, серія 199 | 29 січня 2024 р. | SAB | PA0002458070 | 2 лютого 2024 р. |
| Vanshaj, серія 225 | 28 лютого 2024 р. | SAB | PA0002461260 | 29 лютого 2024 р. |
| Vanshaj, серія 251 | 29 березня 2024 р. | SAB | PA0002467659 | 4 квітня 2024 р. |
| Wagle Ki Duniya, серія 178 | 25 жовтня 2021 р. | SAB | PA0002324866 | 27 жовтня 2021 р. |
| Wagle Ki Duniya, серія 208 | 29 листопада 2021 р. | SAB | PA0002330980 | 30 листопада 2021 р. |
| Wagle Ki Duniya, серія 224 | 17 грудня 2021 р. | SAB | PA0002336977 | 3 січня 2022 р. |
| Wagle Ki Duniya, серія 256 | 24 січня 2022 р. | SAB | PA0002340106 | 26 січня 2022 р. |
| Wagle Ki Duniya, серія 388 | 27 червня 2022 р. | SAB | PA0002364320 | 29 червня 2022 р. |
| Wagle Ki Duniya, серія 414 | 27 липня 2022 р. | SAB | PA0002368184 | 28 липня 2022 р. |
| Wagle Ki Duniya, серія 442 | 29 серпня 2022 р. | SAB | PA0002373623 | 2 вересня 2022 р. |
| Wagle Ki Duniya, серія 492 | 28 жовтня 2022 р. | SAB | PA0002388780 | 29 листопада 2022 р. |
| Wagle Ki Duniya, серія 518 | 28 листопада 2022 р. | SAB | PA0002389284 | 6 грудня 2022 р. |
| Wagle Ki Duniya, серія 544 | 28 грудня 2022 р. | SAB | PA0002394645 | 9 січня 2023 р. |
| Wagle Ki Duniya, серія 572 | 30 січня 2023 р. | SAB | PA0002401208 | 2 лютого 2023 р. |
| Wagle Ki Duniya, серія 620 | 27 березня 2023 р. | SAB | PA0002409100 | 28 березня 2023 р. |
| Wagle Ki Duniya, серія 649 | 29 квітня 2023 р. | SAB | PA0002416848 | 4 травня 2023 р. |
| Wagle Ki Duniya, серія 674 | 29 травня 2023 р. | SAB | PA0002420335 | 31 травня 2023 р. |

Приклад 1 до Скарги позивача

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 10 of 16

| | | | | |
|---|---|---|---|---|
| Wagle Ki Duniya, серія 698 | 26 червня 2023 р. | SAB | PA0002426467 | 29 червня 2023 р. |
| Wagle Ki Duniya, серія 727 | 31 липня 2023 р. | SAB | PA0002430278 | 2 серпня 2023 р. |
| Wagle Ki Duniya, серія 753 | 30 серпня 2023 р. | SAB | PA0002436140 | 5 вересня 2023 р. |
| Wagle Ki Duniya, серія 759 | 6 вересня 2023 р. | SAB | PA0002437944 | 21 вересня 2023 р. |
| Wagle Ki Duniya, серія 805 | 30 жовтня 2023 р. | SAB | PA0002443547 | 2 листопада 2023 р. |
| Wagle Ki Duniya, серія 830 | 28 листопада 2023 р. | SAB | PA0002448282 | 30 листопада 2023 р. |
| Wagle Ki Duniya, серія 935 | 29 березня 2024 р. | SAB | PA0002468765 | 4 квітня 2024 р. |
| Ziddi Dil Maane Na, серія 44 | 25 жовтня 2021 р. | SAB | PA0002324858 | 27 жовтня 2021 р. |
| Ziddi Dil Maane Na, серія 74 | 29 листопада 2021 р. | SAB | PA0002330430 | 30 листопада 2021 р. |
| Ziddi Dil Maane Na, серія 90 | 17 грудня 2021 р. | SAB | PA0002336975 | 3 січня 2022 р. |
| Ziddi Dil Maane Na, серія 122 | 24 січня 2022 р. | SAB | PA0002340107 | 26 січня 2022 р. |
| Ziddi Dil Maane Na, серія 148 | 23 лютого 2022 р. | SAB | PA0002345761 | 24 лютого 2022 р. |
| Appnapan, серія 9 | 27 червня 2022 р. | SAB | PA0002365357 | 29 червня 2022 р. |
| Appnapan, серія 31 | 27 липня 2022 р. | SAB | PA0002368295 | 28 липня 2022 р. |
| Appnapan, серія 54 | 29 серпня 2022 р. | SAB | PA0002373614 | 2 вересня 2022 р. |
| Appnapan, серія 98 | 28 жовтня 2022 р. | SAB | PA0002388796 | 29 листопада 2022 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 42 | 26 жовтня 2021 р. | SET | PA0002324859 | 27 жовтня 2021 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 66 | 29 листопада 2021 р. | SET | PA0002330901 | 30 листопада 2021 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye | 17 грудня 2021 р. | SET | PA0002336980 | 3 січня 2022 р. |

Приклад 1 до Скарги позивача

8

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

| | | | | | |
|---|---|---|---|---|---|
| 1 | Nadiya Ye Raina Aur Tum-2, серія 80 | | | | |
| 2, 3, 4 | Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 106 | 24 січня 2022 р. | SET | PA0002340103 | 26 січня 2022 р. |
| 5, 6 | Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 128 | 23 лютого 2022 р. | SET | PA0002344971 | 24 лютого 2022 р. |
| 7, 8, 9 | Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 151 | 28 березня 2022 р. | SET | PA0002350068 | 29 березня 2022 р. |
| 10, 11, 12 | Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 173 | 27 квітня 2022 р. | SET | PA0002357044 | 2 травня 2022 р. |
| 13, 14 | Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 194 | 26 травня 2022 р. | SET | PA0002361247 | 1 червня 2022 р. |
| 15, 16, 17 | Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 216 | 27 червня 2022 р. | SET | PA0002365365 | 29 червня 2022 р. |
| 18, 19 | Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 238 | 27 липня 2022 р. | SET | PA0002368284 | 28 липня 2022 р. |
| 20, 21, 22 | Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 261 | 29 серпня 2022 р. | SET | PA0002373615 | 2 вересня 2022 р. |
| 23, 24, 25 | Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 305 | 28 жовтня 2022 р. | SET | PA0002388789 | 29 листопада 2022 р. |

Приклад 1 до Скарги позивача                    9

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 14 of 16

| | | | |
|---|---|---|---|
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 326 | 28 листопада 2022 р. | SET | PA0002389736 | 6 грудня 2022 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 348 | 28 грудня 2022 р. | SET | PA0002394870 | 9 січня 2023 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 371 | 30 січня 2023 р. | SET | PA0002401200 | 3 лютого 2023 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 411 | 27 березня 2023 р. | SET | PA0002409091 | 28 березня 2023 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 435 | 28 квітня 2023 р. | SET | PA0002416210 | 3 травня 2023 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-3, серія 3 | 29 травня 2023 р. | SET | PA0002420333 | 31 травня 2023 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-3, серія 23 | 26 червня 2023 р. | SET | PA0002426465 | 29 червня 2023 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-3, серія 48 | 31 липня 2023 р. | SET | PA0002430263 | 2 серпня 2023 р. |
| Barsatein-Mausam Pyar Ka, серія 16 | 31 липня 2023 р. | SET | PA0002430264 | 2 серпня 2023 р. |
| Barsatein-Mausam Pyar Ka, серія 38 | 30 серпня 2023 р. | SET | PA0002436062 | 5 вересня 2023 р. |
| Barsatein-Mausam Pyar Ka, серія 81 | 30 жовтня 2023 р. | SET | PA0002443599 | 2 листопада 2023 р. |

Приклад 1 до Скарги позивача                    10

ПTOB PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. ІОніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 16 of 16

| | | | | |
|---|---|---|---|---|
| Barsatein-Mausam Pyar Ka, серія 102 | 28 листопада 2023 р. | SET | PA0002448204 | 30 листопада 2023 р. |
| Barsatein-Mausam Pyar Ka, серія 125 | 29 грудня 2023 р. | SET | PA0002452946 | 8 січня 2024 р. |
| Barsatein-Mausam Pyar Ka, серія 146 | 29 січня 2024 р. | SET | PA0002458076 | 2 лютого 2024 р. |
| Кримінальний патруль 2.0, серія 190 | 28 листопада 2022 р. | SET | PA0002393665 | 13 січня 2023 р. |
| Кримінальний патруль 2.0, серія 212 | 28 грудня 2022 р. | SET | PA0002399846 | 13 січня 2023 р. |
| Кримінальний патруль 48 | 30 серпня 2023 р. | SET | PA0002436064 | 5 вересня 2023 р. |
| Кримінальний патруль 48 | 6 вересня 2023 р. | SET | PA0002440134 | 11 жовтня 2023 р. |
| Кримінальний патруль Satark, серія | 26 жовтня 2021 р. | SET | PA0002324860 | 28 жовтня 2021 р. |
| Кримінальний патруль Satark, серія | 29 листопада 2021 р. | SET | PA0002330902 | 30 листопада 2021 р. |
| Dabangi, серія 1 | 30 жовтня 2023 р. | SET | PA0002443592 | 2 листопада 2023 р. |
| Dabangi, серія 22 | 28 листопада 2023 р. | SET | PA0002447516 | 30 листопада 2023 р. |
| Dabangi, серія 45 | 29 грудня 2023 р. | SET | PA0002452735 | 8 січня 2024 р. |
| Dabangi, серія 66 | 29 січня 2024 р. | SET | PA0002458056 | 2 лютого 2024 р. |
| Dabangi, серія 88 | 28 лютого 2024 р. | SET | PA0002460330 | 29 лютого 2024 р. |
| Dabangi, серія 110 | 29 березня 2024 р. | SET | PA0002468759 | 4 квітня 2024 р. |
| Dhadkan Zindaggi Kii, серія 10 | 17 грудня 2021 р. | SET | PA0002337137 | 4 січня 2022 р. |
| Dhadkan Zindaggi Kii, серія 36 | 24 січня 2022 р. | SET | PA0002340109 | 26 січня 2022 р. |
| Dhadkan Zindaggi Kii, серія 60 | 23 лютого 2022 р. | SET | PA0002345046 | 24 лютого 2022 р. |
| Dhadkan Zindaggi Kii, серія 117 | 27 липня 2022 р. | SET | PA0002368252 | 28 липня 2022 р. |
| Hum Rahe Na Rahe Hum, серія 15 | 28 квітня 2023 р. | SET | PA0002416209 | 3 травня 2023 р. |
| Hum Rahe Na Rahe Hum, серія 36 | 29 травня 2023 р. | SET | PA0002421781 | 31 травня 2023 р. |

Приклад 1 до Скарги позивача                    11

ITTOB PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 17 of 16

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 18 of 16

| | | | | | |
|---|---|---|---|---|---|
| Hum Rahe Na Rahe Hum, серія 56 | 26 червня 2023 р. | SET | PA0002426599 | 29 червня 2023 р. | |
| Hum Rahe Na Rahe Hum, серія 81 | 31 липня 2023 р. | SET | PA0002430270 | 2 серпня 2023 р. | |
| Hum Rahe Na Rahe Hum, серія 103 | 30 серпня 2023 р. | SET | PA0002436128 | 5 вересня 2023 р. | |
| Hum Rahe Na Rahe Hum, серія 108 | 6 вересня 2023 р. | SET | PA0002440139 | 21 вересня 2023 р. | |
| Індія має талант, серія 4 | 24 січня 2022 р. | SET | PA0002340105 | 26 січня 2022 р. | |
| Індійській ідол, сезон 13, серія 42 | 29 січня 2023 р. | SET | PA0002401202 | 3 лютого 2023 р. | |
| Індійській ідол, сезон 13, серія 58 | 26 березня 2023 р. | SET | PA0002409094 | 28 березня 2023 р. | |
| Індійській ідол, сезон 14, серія 8 | 29 жовтня 2023 р. | SET | PA0002443590 | 2 листопада 2023 р. | |
| Індійській ідол, сезон 14, серія 25 | 30 грудня 2023 р. | SET | PA0002452711 | 8 січня 2024 р. | |
| Jagannath Aur Purvi Ki Dosti Anokhi, серія 13 | 23 лютого 2022 р. | SET | PA0002345048 | 24 лютого 2022 р. | |
| Jagannath Aur Purvi Ki Dosti Anokhi, серія 36 | 28 березня 2022 р. | SET | PA0002350061 | 29 березня 2022 р. | |
| Jagannath Aur Purvi Ki Dosti Anokhi, серія 58 | 27 квітня 2022 р. | SET | PA0002357045 | 2 травня 2022 р. | |
| Jagannath Aur Purvi Ki Dosti Anokhi, серія 79 | 26 травня 2022 р. | SET | PA0002360931 | 1 червня 2022 р. | |
| Kaamnaa, серія 11 | 29 листопада 2021 р. | SET | PA0002330746 | 30 листопада 2021 р. | |
| Kaamnaa, серія 25 | 17 грудня 2021 р. | SET | PA0002336982 | 3 січня 2022 р. | |
| Kaamnaa, серія 51 | 24 січня 2022 р. | SET | PA0002340100 | 26 січня 2022 р. | |
| Kaamnaa, серія 73 | 23 лютого 2022 р. | SET | PA0002345054 | 24 лютого 2022 р. | |
| Kaamnaa, серія 96 | 28 березня 2022 р. | SET | PA0002350065 | 29 березня 2022 р. | |
| Kaamnaa, серія 118 | 27 квітня 2022 р. | SET | PA0002357046 | 2 травня 2022 р. | |

Приклад 1 до Скарги позивача     12

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 20 of 16

| | | | | |
|---|---|---|---|---|
| Kaamnaa, серія 139 | 26 травня 2022 р. | SET | PA0002360943 | 1 червня 2022 р. |
| Kaamnaa, серія 161 | 27 червня 2022 р. | SET | PA0002364546 | 29 червня 2022 р. |
| Kaamnaa, серія 183 | 27 липня 2022 р. | SET | PA0002368265 | 28 липня 2022 р. |
| Katha Ankahee, серія 18 | 28 грудня 2022 р. | SET | PA0002395812 | 9 січня 2023 р. |
| Katha Ankahee, серія 41 | 30 січня 2023 р. | SET | PA0002401203 | 3 лютого 2023 р. |
| Katha Ankahee, серія 81 | 27 березня 2023 р. | SET | PA0002409095 | 28 березня 2023 р. |
| Katha Ankahee, серія 105 | 28 квітня 2023 р. | SET | PA0002415695 | 3 травня 2023 р. |
| Katha Ankahee, серія 126 | 29 травня 2023 р. | SET | PA0002421600 | 31 травня 2023 р. |
| Katha Ankahee, серія 146 | 26 червня 2023 р. | SET | PA0002426601 | 29 червня 2023 р. |
| Katha Ankahee, серія 171 | 31 липня 2023 р. | SET | PA0002430271 | 2 серпня 2023 р. |
| Katha Ankahee, серія 193 | 30 серпня 2023 р. | SET | PA0002436131 | 5 вересня 2023 р. |
| Katha Ankahee, серія 199 | 7 вересня 2023 р. | SET | PA0002440144 | 21 вересня 2023 р. |
| Katha Ankahee, серія 236 | 30 жовтня 2023 р. | SET | PA0002443586 | 2 листопада 2023 р. |
| Katha Ankahee, серія 257 | 28 листопада 2023 р. | SET | PA0002448227 | 30 листопада 2023 р. |
| Kavya, серія 26 | 30 жовтня 2023 р. | SET | PA0002443543 | 2 листопада 2023 р. |
| Kavya, серія 47 | 28 листопада 2023 р. | SET | PA0002448184 | 30 листопада 2023 р. |
| Kavya, серія 70 | 29 грудня 2023 р. | SET | PA0002452730 | 8 січня 2024 р. |
| Kavya, серія 91 | 29 січня 2024 р. | SET | PA0002458062 | 2 лютого 2024 р. |
| Kavya, серія 113 | 28 лютого 2024 р. | SET | PA0002460332 | 29 лютого 2024 р. |
| Kavya, серія 135 | 29 березня 2024 р. | SET | PA0002467684 | 4 квітня 2024 р. |
| Kaun Banega Crorepati, сезон 13, серія 85 | 17 грудня 2021 р. | SET | PA0002337136 | 3 січня 2022 р. |
| Kaun Banega Crorepati, сезон 14, серія 17 | 29 серпня 2022 р. | SET | PA0002373617 | 2 вересня 2022 р. |

Приклад 1 до Скарги позивача          13

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 22 of 16

| # | | | | | |
|---|---|---|---|---|---|
| 1 2 | Kaun Banega Crorepati, сезон 15, серія 17 | 6 вересня 2023 р. | SET | PA0002440114 | 21 вересня 2023 р. |
| 3 4 | Kaun Banega Crorepati, сезон 15, серія 19 | 9 вересня 2023 р. | SET | PA0002440154 | 21 вересня 2023 р. |
| 5 6 | Kaun Banega Crorepati, сезон 15, серія 77 | 28 листопада 2023 р. | SET | PA0002447517 | 30 листопада 2023 р. |
| 7 8 | Kaun Banega Crorepati, сезон 15, серія 99 | 28 грудня 2023 р. | SET | PA0002452725 | 8 січня 2024 р. |
| 9 10 | Kuch Rang Pyaar Ke Aise Bhi-Nayi Kahaani, серія 77 | 26 жовтня 2021 р. | SET | PA0002324876 | 27 жовтня 2021 р. |
| 11 | Kuch Reet Jagat Ki Aisi Hai, серія 8 | 28 лютого 2024 р. | SET | PA0002460333 | 29 лютого 2024 р. |
| 12 | Kuch Reet Jagat Ki Aisi Hai, серія 30 | 29 березня 2024 р. | SET | PA0002468748 | 4 квітня 2024 р. |
| 13 14 | Mehndi Wala Ghar, серія 5 | 29 січня 2024 р. | SET | PA0002458066 | 2 лютого 2024 р. |
| 15 | Mehndi Wala Ghar, серія 27 | 28 лютого 2024 р. | SET | PA0002461256 | 29 лютого 2024 р. |
| 16 | Mehndi Wala Ghar, серія 48 | 29 березня 2024 р. | SET | PA0002468762 | 4 квітня 2024 р. |
| 17 | Mere Sai, серія 989 | 26 жовтня 2021 р. | SET | PA0002324879 | 27 жовтня 2021 р. |
| 18 | Mere Sai, серія 1013 | 29 листопада 2021 р. | SET | PA0002330745 | 30 листопада 2021 р. |
| | Mere Sai, серія 1252 | 28 жовтня 2022 р. | SET | PA0002388798 | 29 листопада 2022 р. |
| 19 | Mere Sai, серія 1273 | 28 листопада 2022 р. | SET | PA0002389277 | 6 грудня 2022 р. |
| 20 | Mere Sai, серія 1295 | 28 грудня 2022 р. | SET | PA0002395809 | 9 січня 2023 р. |
| | Mere Sai, серія 1318 | 30 січня 2023 р. | SET | PA0002401204 | 3 лютого 2023 р. |
| 21 | Mere Sai, серія 1358 | 27 березня 2023 р. | SET | PA0002409097 | 28 березня 2023 р. |
| 22 | Mose Chhal Kiye Jaaye, серія 13 | 23 лютого 2022 р. | SET | PA0002345363 | 24 лютого 2022 р. |
| 23 | Mose Chhal Kiye Jaaye, серія 36 | 28 березня 2022 р. | SET | PA0002350066 | 29 березня 2022 р. |
| 24 25 | Mose Chhal Kiye Jaaye, серія 58 | 27 квітня 2022 р. | SET | PA0002357050 | 2 травня 2022 р. |

Приклад 1 до Скарги позивача                    14

26

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 23 of 16

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 24 of 16

| | | | | |
|---|---|---|---|---|
| Mose Chhal Kiye Jaaye, серія 79 | 26 травня 2022 р. | SET | PA0002360934 | 1 червня 2022 р. |
| Mose Chhal Kiye Jaaye, серія 98 | 27 червня 2022 р. | SET | PA0002364308 | 29 червня 2022 р. |
| Mose Chhal Kiye Jaaye, серія 120 | 27 липня 2022 р. | SET | PA0002368261 | 28 липня 2022 р. |
| Punyashlok Ahilyabaii, серія 212 | 26 жовтня 2021 р. | SET | PA0002324864 | 27 жовтня 2021 р. |
| Punyashlok Ahilyabaii, серія 236 | 29 листопада 2023 р. | SET | PA0002330985 | 30 листопада 2023 р. |
| Punyashlok Ahilyabaii, серія 250 | 17 грудня 2021 р. | SET | PA0002336979 | 3 січня 2022 р. |
| Punyashlok Ahilyabaii, серія 276 | 24 січня 2022 р. | SET | PA0002340104 | 26 січня 2022 р. |
| Punyashlok Ahilyabaii, серія 321 | 28 березня 2022 р. | SET | PA0002350067 | 29 березня 2022 р. |
| Punyashlok Ahilyabaii, серія 343 | 27 квітня 2022 р. | SET | PA0002357049 | 2 травня 2022 р. |
| Punyashlok Ahilyabaii, серія 364 | 26 травня 2022 р. | SET | PA0002360932 | 1 червня 2022 р. |
| Punyashlok Ahilyabaii, серія 431 | 29 серпня 2022 р. | SET | PA0002373618 | 2 вересня 2022 р. |
| Punyashlok Ahilyabaii, серія 475 | 28 жовтня 2022 р. | SET | PA0002388797 | 29 листопада 2022 р. |
| Punyashlok Ahilyabaii, серія 496 | 28 листопада 2022 р. | SET | PA0002389279 | 6 грудня 2022 р. |
| Punyashlok Ahilyabaii, серія 518 | 28 грудня 2022 р. | SET | PA0002395091 | 9 січня 2023 р. |
| Punyashlok Ahilyabaii, серія 541 | 30 січня 2023 р. | SET | PA0002401205 | 3 лютого 2023 р. |
| Punyashlok Ahilyabaii, серія 581 | 27 березня 2023 р. | SET | PA0002409098 | 28 березня 2023 р. |
| Punyashlok Ahilyabaii, серія 605 | 28 квітня 2023 р. | SET | PA0002418960 | 3 травня 2023 р. |
| Punyashlok Ahilyabaii, серія 626 | 29 травня 2023 р. | SET | PA0002421593 | 31 травня 2023 р. |
| Punyashlok Ahilyabaii, серія 646 | 26 червня 2023 р. | SET | PA0002426603 | 29 червня 2023 р. |

Приклад 1 до Скарги позивача                    15

ТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. ІOnіon Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 26 of 16

| | | | | |
|---|---|---|---|---|
| Punyashlok Ahilyabaii, серія 693 | 30 серпня 2023 р. | SET | PA0002436134 | 5 вересня 2023 р. |
| Sapno Ki Chhalaang, серія 15 | 28 квітня 2023 р. | SET | PA0002418964 | 3 травня 2023 р. |
| Sapno Ki Chhalaang, серія 36 | 29 травня 2023 р. | SET | PA0002420332 | 31 травня 2023 р. |
| Sapno Ki Chhalaang, серія 56 | 26 червня 2023 р. | SET | PA0002426606 | 29 червня 2023 р. |
| Sapno Ki Chhalaang, серія 81 | 31 липня 2023 р. | SET | PA0002430276 | 2 серпня 2023 р. |
| Shrimad Ramayan, серія 37 | 29 січня 2024 р. | SET | PA0002458696 | 7 лютого 2024 р. |
| Shrimad Ramayan, серія 59 | 28 лютого 2024 р. | SET | PA0002461442 | 29 лютого 2024 р. |
| Shrimad Ramayan, серія 82 | 29 березня 2024 р. | SET | PA0002467682 | 4 квітня 2024 р. |
| Yashomati Maiyya Ke Nandlala, серія 14 | 27 червня 2022 р. | SET | PA0002364321 | 29 червня 2022 р. |
| Yashomati Maiyya Ke Nandlala, серія 36 | 27 липня 2022 р. | SET | PA0002368182 | 28 липня 2022 р. |
| Yashomati Maiyya Ke Nandlala, серія 59 | 29 серпня 2022 р. | SET | PA0002373625 | 2 вересня 2022 р. |
| Yashomati Maiyya Ke Nandlala, серія 103 | 28 жовтня 2022 р. | SET | PA0002388794 | 29 листопада 2022 р. |
| Yashomati Maiyya Ke Nandlala, серія 1124 | 28 листопада 2022 р. | SET | PA0002389285 | 6 грудня 2022 р. |

Приклад 1 до Скарги позивача                16

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

ОКРУЖНИЙ СУД СПОЛУЧЕНИХ ШТАТІВ
ЗАПАДНИЙ ОКРУГ ШТАТУ ВАШИНГТОН
У СІЄТЛІ

| | | |
|---|---|---|
| ТОВ DISH NETWORK, | ) | № 2:24-cv-01683 |
| | ) | |
| Позивач, | ) | **ПРИКЛАД 2 СКАРГИ** |
| | ) | **ПОЗИВАЧА** |
| проти | ) | |
| | ) ) | |
| ТОВ VIRTUAL SYSTEMS та | ) | |
| В'ЯЧЕСЛАВ СМИРНОВ, | ) | |
| | ) | |
| Відповідачі. | ) | |

**РОБОТИ З ЕПІЗОДАМИ, ЩО НЕ ПІДЛЯГАЮТЬ РЕЄСТРАЦІЇ**

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-3 Складені 15.10.24 Сторінка2 of 2

| Робота | Канал |
|---|---|
| El Hayah el Yom | Al Hayah 1 |
| Вставки/Новини | ART Aflam 1 |
| Вставки/Новини | ART Aflam 2 |
| Вставки/Новини | ART Cima |
| ATN Business & Finance | ATN Bangla |
| News Hour Xtra | ATN News |
| Flash | B4U Movies |
| Bollywood Minute | B4U Movies |
| Hadret El Omda | CBC |
| Hadret El Omda | Драма на CBC |
| El Kebir | Hekayat |
| Maktoub Alaya | Hekayat |
| Arabwood | LBC |
| Aswad | LBCI |

Приклад 2 до Скарги позивача

Справа 2:24-cv-01683 Документи 1-3 Складені 15.10.24 Сторінка3 of 2

| | |
|---|---|
| El Nar Bel Nar | LBCI |
| Al Arbaji | LBCI |
| Laylet Soqot Baghdad | Melody Aflam |
| Вставки/Новини | Класичні мелодії |
| Apnar Jiggasha | NTV Bangsha |
| Ei Somoy | NTV Bangla |
| Ek Shobday Quran | NTV Bangla |
| Гламурний світ | NTV Bangla |
| Moddh Rater Khabor | NTV Bangla |
| NTV Вечірні новини | NTV Bangla |
| Rater Khabor | NTV Bangla |
| Shashtho Protidin | NTV Bangla |
| Shironam | NTV Bangla |
| Shondhar Khabor | NTV Bangla |
| Al Rahel | Rotana America |
| Laylat Al Soqooq | Rotana America |
| Мадам Сер | SAB |
| Ghar ek Sapnaa | Sahara One |
| Ночі з привідами | Sahara One |
| Бюлетень новин | Sahara Samay |
| Prime 9 | Sahara Samay |
| Heroine Zindagi Ke Panno Se | SET |
| Найкращій танцівник Індії | SET |
| Extraa Shots Special | SET MAX |
| Breaking Ground | Times Now |
| India Upfront | Times Now |
| The Newshour | Times Now |
| The Newshour First | Times Now |
| Times Now Live | Times Now |
| Planet Bollywood News | Zoom |

2    ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

ОКРУЖНИЙ СУД СПОЛУЧЕНИХ ШТАТІВ
ЗАПАДНИЙ ОКРУГ ШТАТУ ВАШИНГТОН
У СІЄТЛІ

| | | |
|---|---|---|
| ТОВ DISH NETWORK, | ) | № 2:24-cv-01683 |
| | ) | |
| Позивач, | ) | **ПРИКЛАД 3 ДО СКАРГИ** |
| | ) | **ПОЗИВАЧА** |
| проти | ) | |
| | ) | |
| ТОВ VIRTUAL SYSTEMS та | ) | |
| В'ЯЧЕСЛАВ СМИРНОВ, | ) | |
| | ) | |
| Відповідачі. | ) | |

## ПІРАТСЬКІ СЕРВІСИ

| IP адреса Віртуальних систем | Назва домену URL [2] |
|---|---|
| 31.42.184.159 | mtsiptv.com, sharkytv.com |
| 31.42.184.163 | dominoiptv.com |
| 31.42.185.54 | mohdtv.com |
| 31.42.187.33 | pro-ott.com |
| 31.42.187.97 | xviptv.com |
| 31.42.187.100 | viponetv.com |
| 31.42.187.118 | sansat.net |

[1] IP адреса відповідає серверам та мережі Віртуальних систем, що використовувалися Піратськими сервісами для передачі Робіт. Така IP адреса іноді маскувалася шляхом використання послуг не учасника Cloudflare.
[2] URL відповідають передачам Робіт Піратськими сервісами з серверів та мережі Віртуальних систем. Назва будь-якого домену за URL виявлена, разом із будь-яким STB, що використовувалися для доступу до Робіт.

Приклад 3 до Скарги позивача       1       ПТОВ PREG O'DONNELL &
GILLETT

вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-4 Складені 15.10.24 Сторінка 2 of 4

| | |
|---|---|
| 31.42.187.234 | bestott.net (atlas) |
| 45.11.57.127 | herogayab.net |
| 45.11.58.181 | tektv.co (iptv sam) |
| 45.11.58.199 | procajaiptv.com (dima) |
| 45.12.3.119 | symphonycdn.me (zumm) |
| 45.89.245.65 | ----(great bee, super arab) |
| 45.89.245.66 | ----(great bee, super arab) |
| 45.89.245.67 | ----(great bee, joytv, lool, super arab) |
| 45.89.245.68 | ----(great bee, joytv, lool, super arab) |
| 45.89.245.69 | ----(lool, super arab) |
| 45.89.245.71 | ----(great bee, joytv, super arab) |
| 45.95.235.118 | videoapne.co |
| 62.182.83.71 | vkcdn5.com |
| 62.182.83.91 | l1iptv.xyz; lionboxiptv.xyz |
| 62.182.85.20 | ---- (eagle) |
| 62.182.85.148 | pro-ott.com |
| 62.182.85.153 | itvdom.com |
| 62.182.85.155 | webvps.de |
| 62.182.85.159 | xviptv.com |
| 62.182.86.80 | imlie.net |
| 62.182.86.121 | snipemedia.net (snipe) |
| 79.124.41.28 | ----(great bee, joytv, super arab) |
| 79.124.41.29 | ----(great bee, joytv, super arab) |
| 79.124.41.30 | ----(great bee, joytv, lool) |
| 79.124.41.32 | ---- (lool) |
| 79.124.41.39 | ----(great bee, joytv, super arab) |
| 91.208.115.151 | rktv-ott.com (dima) |
| 91.208.115.170 | sansat.net |
| 91.235.143.17 | procajaiptv.com (dima) |
| 95.214.232.234 | tptv.cz (iptv sam) |
| 95.214.234.7 | atg100.xyz (atlas) |
| 95.214.234.104 | videoapne.co |
| 95.214.234.243 | ---- (zumm) |

Приклад 3 до Скарги позивача

2

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-4 Складені 15.10.24 Сторінка 3 of 4

| | |
|---|---|
| 95.214.235.1 | viponetv.com |
| 95.214.235.96 | wanicelife.com |
| 103.211.101.124 | mmastertv.xyz (atlas) |
| 103.211.101.131 | mmastertv.xyz (atlas), msuperab.xyz (digitalizard) |
| 103.211.101.137 | msuperab.xyz (digitalizard) |
| 103.211.101.166 | msuperab.xyz (digitalizard) |
| 103.211.101.174 | msuperab.xyz (digitalizard) |
| 103.211.101.175 | msuperab.xyz (digitalizard) |
| 152.89.61.127 | sansat.net |
| 152.89.61.130 | tektv.co (iptv sam) |
| 152.89.61.137 | tvsertop.com (atlas) |
| 152.89.61.141 | sansat.net |
| 152.89.61.181 | getmax.cx (woob) |
| 152.89.62.34 | tvlogy.to |
| 152.89.62.76 | wanicelife.com |
| 152.89.63.69 | saturne.one (iptv sam) |
| 152.89.63.177 | procajaiptv.com (dima) |
| 176.119.29.14 | livebypass.com (gogo) |
| 176.119.29.17 | ---- (gogo) |
| 176.119.29.35 | ---- (gogo) |
| 176.119.29.42 | ---- (gogo) |
| 176.119.29.47 | ---- (gogo) |
| 176.119.29.78 | ---- (gogo) |
| 185.66.89.216 | atg100.xyz (atlas) |
| 185.66.90.155 | viponetv.com |
| 185.66.90.205 | xviptv.com |
| 185.66.90.247 | pro-ott.com |
| 185.233.186.33 | 3mlive.com (desi) |
| 185.254.196.8 | netmos.ovh |
| 185.254.196.31 | vkcdn5.com |
| 185.254.197.141 | atg100.xyz (atlas) |
| 185.254.197.149 | atg100.xyz (atlas) |
| 185.254.197.154 | atg100.xyz (atlas) |

ПІТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401. оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-4 Складені 15.10.24 Сторінка 5 of 4

| | |
|---|---|
| 185.254.197.156 | atg100.xyz (atlas) |
| 185.254.197.164 | atg100.xyz (atlas) |
| 185.254.197.166 | atg100.xyz (atlas) |
| 185.254.197.221 | mtsiptv.com |
| 185.254.197.223 | dominoiptv.com |
| 185.255.122.88 | 3mlive.com, realtv-hd.com (desi) |
| ---- | driptvs.com |

Приклад 3 до Скарги позивача

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

AO 440 (Rev 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

|  |  |
|---|---|
| DISH NETWORK L.L.C. | ) |
| | ) |
| | ) |
| | ) |
| *Plaintiff(s)* | ) |
| v. | ) Civil Action No.  2:24-cv-01683 -GJL |
| | ) |
| VIRTUAL SYSTEMS, LLC and | ) |
| VYACHESLAV SMYRNOV | ) |
| | ) |
| | ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Virtual Systems, LLC
33/37 Laboratorna Street
Kyiv, Ukraine
03150

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Gregory Latendresse
> PREG O'DONNELL & GILLETT PLLC
> 401 Union Street, Suite 1900
> Seattle, Washington 98101

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:    10/18/2024

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  2:24-cv-01683-GJL

**PROOF OF SERVICE**
*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*

was received by me on *(date)* .

❐ I personally served the summons on the individual at *(place)*

on *(date)* ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)*

, a person of suitable age and discretion who resides there,

on *(date)* , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* , who is

designated by law to accept service of process on behalf of *(name of organization)*

on *(date)* ; or

❐ I returned the summons unexecuted because ; or

❐ Other *(specify):*

My fees are $ for travel and $ for services, for a total of $ 0.00

I declare under penalty of perjury that this information is true.

Date:

*Server's signature*

*Printed name and title*

*Server's address*

Additional information regarding attempted service, etc:

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| DISH NETWORK L.L.C., | ) | No. 2:24-cv-01683 |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF'S COMPLAINT** |
| | ) | |
| v. | ) | |
| | ) | |
| VIRTUAL SYSTEMS, LLC and | ) | |
| VYACHESLAV SMYRNOV, | ) | |
| | ) | |
| Defendants. | ) | |

**Nature of the Action**

1.    Plaintiff DISH Network L.L.C. ("DISH") is one of the largest pay-tv providers in the United States and has millions of subscribers nationwide. This case concerns the infringement of DISH's copyrights in programming ("Works") that aired on 23 international channels that DISH exclusively licensed for transmission in the United States ("Channels").

2.    DISH's copyrights in the Works were directly infringed because, without DISH's authorization, the Works were transmitted on pirate streaming services ("Pirate Services") to users of those services in the United States ("Users"). The Pirate Services depend on hosting providers to lease them the servers and network needed to transmit the Works over the internet to their Users.

3.    Defendant Virtual Systems, LLC ("Virtual Systems") materially contributed to and induced the Pirate Services' direct infringement of the Works by providing the servers and network

1  that the Pirate Services used to transmit the Works, including servers in Virtual Systems' Seattle

2  data center. Virtual Systems openly advertises that it does not comply with United States copyright

3  law and does not require its customers, such as the Pirate Services, to abide by such law.

4      4.    Virtual Systems knew that the Pirate Services were infringing the Works because,

5  on hundreds of occasions, DISH asked Virtual Systems to stop this specific infringement that was

6  taking place on its servers and network. Virtual Systems could have taken simple measures to stop

7  the infringement – such as removing or disabling the infringing streams or terminating the Pirate

8  Services' accounts because of their repeated infringement – but Virtual Systems refused to take

9  such measures and elected to continue profiting from the Pirate Services' direct infringement.

10     5.    Virtual Systems is liable for contributory and vicarious copyright infringement. Its

11 owner and CEO, Defendant Vyacheslav Smyrnov ("Smyrnov"), is also personally liable because

12 he authorized, directed, and participated in Virtual Systems' infringement, including by managing

13 the servers and network the Pirate Services used to infringe the Works and, despite DISH notifying

14 him of this infringement, failing to exercise his ability to stop it.

15                              **Parties**

16     6.    Plaintiff DISH is a limited liability company organized under Colorado law, with

17 its principal place of business at 9601 South Meridian Blvd., Englewood, Colorado 80112.

18     7.    Defendant Virtual Systems is a limited liability company organized under Ukraine

19 law, with its principal place of business at 33/37 Laboratorna St., Kyiv, Ukraine.

20     8.    Defendant Smyrnov is an individual believed to reside at 1V Vadyma Hetmana St.,

21 Apt. 46, Kyiv, Ukraine.

22                        **Jurisdiction and Venue**

23     9.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and

24 1400 because DISH asserts claims under the Copyright Act, 17 U.S.C. § 101 *et seq.*

25     10.   The Court has personal jurisdiction over Virtual Systems pursuant to Federal Rule

26 of Civil Procedure 4(k)(1)(A) because Virtual Systems committed infringing acts in Washington,

Plaintiff's Complaint                    2                Preg O'Donnell & Gillett PLLC
                                                          401 Union Street, Suite 1900
                                                          Seattle, Washington 98101
                                                          (206) 287-1775

1     including through its operation of a data center and servers in the Seattle area with which it

2     contributes or contributed to the Pirate Services' infringement of the Works.[1] Virtual Systems did

3     not stop the infringement taking place from its Seattle data center and servers when notified of that

4     infringement. DISH was harmed in Washington because at least part of Virtual Systems' infringing

5     conduct occurred there, damaging the value of DISH's exclusive copyrights, and because, on

6     information and belief, the Works were transmitted to Users in Washington that avoided paying

7     subscription fees to DISH.

8     **VSYS COVERAGE**

9     VSYS Host is a hosting services provider that hosts its infrastructure in
        Kyiv, Amsterdam, and Seattle, all of which are Tier III data center

10     facilities. These DCs are the embodiment of a high-performance
        network, including several uplinks and a capacity of more than 2 Tbps.

        We are continuing to expand our geographical coverage!

11 

12     VSYS HOST IS LOCATED IN THREE CITIES:

12     ‣ KYIV, UKRAINE

13     ‣ AMSTERDAM, THE NETHERLANDS

      ‣ SEATTLE, THE USA

14

15     11.     The Court, alternatively, has personal jurisdiction over Virtual Systems pursuant to

16     Federal Rule of Civil Procedure 4(k)(2), to the extent there is an insufficient basis to exercise

17     personal jurisdiction in Washington under Rule 4(k)(1)(A). Virtual Systems identifies Washington

18     as the only location from which it operates in the United States and therefore, on information and

19     belief, it is not subject to personal jurisdiction in any other state's courts of general jurisdiction.

20     12.     Virtual Systems has sufficient contacts with the United States to support personal

21     jurisdiction under Rule 4(k)(2) that include, in addition to its data center and servers in Seattle, a

22     marketing campaign directed towards streaming services seeking to provide infringing content to

23     a United States audience while avoiding the implications of United States copyright law, such as

24     the Pirate Services. DISH was harmed in the United States for the reasons identified above, and

25

26     [1]https://vsys.host/ (image of data center map below). On information and belief, Virtual Systems' Seattle-area data
      center is located at 3355 South 120th Place, Tukwila, Washington. Website URLs identified in this complaint were
      last visited on or after September 6, 2024.

Plaintiff's Complaint                3                Preg O'Donnell & Gillett PLLC
                                                             401 Union Street, Suite 1900
                                                            Seattle, Washington 98101
                                                               (206) 287-1775

that harm is amplified because, on information and belief, the Works were infringed throughout the United States and Users nationwide avoided paying subscription fees to DISH. DISH was also harmed in the United States because it is a United States company and holds the copyrights at issue only for the United States.

13.     The Court has personal jurisdiction over Smyrnov pursuant to Rule 4(k)(1)(A), or alternatively Rule 4(k)(2), because Smyrnov is a primary participant in Virtual Systems' infringing conduct or had control of and at least direct participation in such activities. Smyrnov is the owner, director, and CEO of Virtual Systems. Smyrnov identifies his primary responsibilities at Virtual Systems to include "[m]anaging network and server equipment" and a "department of 10 people."[2] Smyrnov was personally notified of the infringement of the Works taking place on the network and servers that he managed, but he failed to stop the infringement. Smyrnov financially benefitted from that infringement as owner, director, and CEO of Virtual Systems.

14.     The Court's exercise of personal jurisdiction over Virtual Systems and Smyrnov, whether pursuant to Rule 4(k)(1)(A) or 4(k)(2), is reasonable and consistent with the United States Constitution and United States law because their purposeful interjection into Washington and the United States is substantial, the burden of them having to defend in this Court is minimal, and this Court is the most appropriate forum to decide this case. Virtual Systems, in addition to its Seattle data center and advertising that targets the United States, uses United States companies to support its business and promote its services, including Facebook, Twitter/X, LinkedIn, Reddit, YouTube, GitHub, and Public Domain Registry through which its website is registered. Virtual Systems is an established company that generates tens of millions of dollars in revenues annually. The United States has an interest in having its copyright laws enforced in its federal courts, while DISH has an interest in protecting itself in a United States federal court, perhaps the only forum where DISH can enforce its United States copyrights for infringement that occurred in the United States.

---

[2] https://www.linkedin.com/in/slavikbutch/?originalSubdomain=ua

Plaintiff's Complaint                                        4

15.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to DISH's claims occurred in this district; under § 1391(b)(3) because Virtual Systems and Smyrnov are each subject to personal jurisdiction in this district; and under § 1391(c)(3) because as nonresidents of the United States they may be sued in any district. Venue is also proper under 28 U.S.C. § 1400(a) because the case involves Copyright Act violations.

### DISH's Copyrights

16.     DISH provides the Channels to its subscribers pursuant to agreements that it entered into with the Channels' owners or their agents ("Networks"). The Networks and Channels include: B4U U.S., Inc. (*B4U Movies*); Bennett, Coleman and Company Limited (*Times Now* and *Zoom*); GloboSat Entertainment LLC (*Sahara One* and *Sahara Samay*); International Media Distribution (Luxembourg) S.A.R.L. (*Al Hayah 1, ART Aflam 1, ART Aflam 2, ART Cima, Hekayat, LBC, LBCI,* and *Rotana America*); MSM Asia Limited (*SET, SET MAX,* and *SAB*); Soundview ATN LLC (*ATN Bangla*); Soundview Broadcasting, L.L.C. (*ATN News* and *NTV Bangla*); and World Span Media Consulting, Inc. (*CBC, CBC Drama, Melody Aflam,* and *Melody Classic*).

17.     The Networks acquire copyrights in the Works that air on their respective Channels, including by producing the Works and by assignment. The copyrighted material includes Works registered with the United States Copyright Office and additional unregistered Works.[3] Several of the Works involve series, for which each episode constitutes a separate copyrighted Work.

18.     DISH entered into signed, written licensing agreements with the Networks granting DISH the exclusive right to distribute and publicly perform the Works that air on the Channels in the United States, by means that include satellite, over-the-top (OTT), internet protocol television (IPTV), and internet.

19.     DISH's exclusive rights to distribute and publicly perform the Works were in effect when the Pirate Services transmitted them through Virtual Systems' servers and network. DISH's

---

[3]Exhibit 1 (illustrative list of Works subject to registration) and Exhibit 2 (illustrative list of unregistered Works).

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

1  exclusive distribution and public performance rights remain in effect with respect to Works aired

2  on many of the Channels.

3                    **The Pirate Services' Infringement**

4        20.     Digital video piracy was found to cause the United States economy to lose at least

5  $29.2 billion in revenue each year, with more than 80% of this piracy being attributable to illegal

6  streaming services such as the Pirate Services.[4] The Pirate Services were able to provide Users

7  thousands of channels, and tens of thousands of video-on-demand (VOD) programs, at a fraction

8  of the cost charged by legal providers such as DISH, at least in part, because the Pirate Services

9  did not pay fees to license the content they provide.

10       21.     The Pirate Services transmitted the Works to Users over the internet using Virtual

11  Systems' servers and network as part of linear streams of the Channels or on a VOD basis. Users

12  accessed the Works through a set-top box (STB) or a website that links to the Works or provides

13  a playlist used to access the Works. Users often had to purchase a subscription to view the Pirate

14  Services' content, in addition to purchasing any required STB. DISH did not authorize the Pirate

15  Services to distribute or publicly perform the Works and received no compensation from them.

16       22.     The Pirate Services largely conducted their infringing businesses over the internet

17  and engaged in efforts to disguise the true identities of their operators. On information and belief,

18  most of the Pirate Services were operated by infringers located outside the United States. For this

19  complaint, the Pirate Services are identified by one or more IP addresses associated with Virtual

20  Systems' servers and network from which the Works were transmitted, along with any domain

21  name incorporated in the URL that was used in transmitting the Works and any STB that was used

22  in accessing them, which forms an illustrative list of Pirate Services that used Virtual Systems'

23  servers and network to directly infringe DISH's copyrights.[5]

24

25

26  [4]Global Intellectual Property Center, Impacts of Digital Piracy on the United States Economy (June 2019), available
   at https://www.uschamber.com/assets/documents/Digital_Video_Piracy_June_2019.pdf.
   [5]Exhibit 3 (illustrative list of Pirate Services).

Plaintiff's Complaint                          6                     Preg O'Donnell & Gillett PLLC
                                                                         401 Union Street, Suite 1900
                                                                         Seattle, Washington 98101
                                                                         (206) 287-1775

23.    The scale of the Pirate Services' direct infringement of the Works is extensive. The Pirate Services that transmitted linear streams of the Channels that aired the Works often did so 24 hours per day and 7 days per week, in some cases for several years, meaning these Pirate Services alone infringed a substantial number of Works. The Pirate Services that transmitted the Works on a VOD basis add to this already significant amount of infringement.

24.    The Pirate Services were notified of their infringement multiple times but have not stopped infringing DISH's copyrights. DISH was awarded a judgment and permanent injunction against parties located abroad that were involved in operating at least three of the Pirate Services, but even that has proven ineffective in stopping their infringement. After being enjoined, one Pirate Service moved its transmissions of the Channels that aired the Works to Virtual Systems' servers and network, where the infringement of DISH's copyrights is not only tolerated but encouraged.[6] The other two Pirate Services were using Virtual Systems' servers and network to infringe DISH's copyrights around the time the lawsuits were filed and continued doing so, despite being enjoined.[7] Residing outside the United States, and having no assets in the United States, the Pirate Services have little incentive to comply with infringement notices or United States court orders.

**Virtual Systems' End-to-End Streaming Solutions**

25.    Virtual Systems operates data centers located in Seattle, Ukraine, the Netherlands, and Singapore, using "only its own hardware and network equipment."[8] Virtual Systems stresses this control when describing its Seattle data center, stating "we aren't reselling dedicated servers in the USA – we provide our own hardware and network equipment."[9]

26.    Virtual Systems provides its customers with various types of dedicated servers and partially dedicated servers (referred to as virtual private servers or VPS) to transmit content over the internet. Virtual Systems states "that the very success of streaming businesses depends on their

---

[6] *DISH Network L.L.C. v. Lool Tech Co.*, No. 4:16-cv-01771 (S.D. Tex.).
[7] *DISH Network L.L.C. v. Alghafir*, No. 4:20-cv-01678 (S.D. Tex.); *DISH Network L.L.C. v. 786 Wireless World, Inc.*, No. 21-cv-05730 (E.D.N.Y.).
[8] https://vsys.host/
[9] https://vsys.host/dedicated-servers-usa

Plaintiff's Complaint                                  7                      Preg O'Donnell & Gillett PLLC
                                                                                401 Union Street, Suite 1900
                                                                                Seattle, Washington 98101
                                                                                (206) 287-1775

1   ability to deliver media-intensive services paired with minimum latency" and that Virtual Systems'

2   "servers provide enough bandwidth, memory, and storage resources you need to meet that goal."[10]

3   Virtual Systems charges customers to use its servers and network based upon options the customer

4   selects, including the server features and the data center where the server is located.

5       27.     Virtual Systems also provides its customers, for an additional cost, storage servers

6   ("an excellent solution for stocking lots of videos"),[11] GPU servers ("a perfect tool for encoding

7   and decoding video files or streams in real time"),[12] and Xtream-UI middleware (a software service

8   that enables customers "to manage their IPTV and VOD service and customer database").[13] Virtual

9   Systems encourages customers to combine these offerings and take advantage of this end-to-end

10  streaming solution because "it's convenient[,] cost-effective," and "fast to transfer data" because

11  "all your servers are in the same super-fast network."[14]

12      28.     Virtual Systems takes a hands-on approach to operating its servers and network,

13  stating that "[o]ur teams develop, install, and manage our dedicated servers in the USA" and "we

14  continually check US dedicated servers['] health and the environment."[15] Virtual Systems also

15  states that "only highly qualified specialists can access US dedicated server hardware and network

16  equipment" and offers to have its "courteous and educated team . . . help you with any dedicated

17  hosting USA concerns."[16] Virtual Systems makes similar statements concerning its active role in

18  operating the servers located in its data centers outside the United States.[17]

19      29.     Virtual Systems markets its Seattle servers as "a perfect choice for anyone . . . with

20  a North American audience," stating that "[o]ur data center is directly linked to the major internet

21  routes in the United States, allowing for fast data transfers."[18] Virtual Systems' data center in

22

---

23  [10] https://vsys.host/streaming-servers
    [11] Id.
    [12] Id.
24  [13] https://vsys.host/xtreme-codes-panel-saas
    [14] https://vsys.host/streaming-servers
25  [15] https://vsys.host/dedicated-servers-usa
    [16] Id.
26  [17] https://vsys.host/dedicated-server-hosting; https://vsys.host/dedicated-servers-netherlands
    [18] https://vsys.host/dedicated-servers-usa

Plaintiff's Complaint                              8              Preg O'Donnell & Gillett PLLC
                                                                   401 Union Street, Suite 1900
                                                                   Seattle, Washington 98101
                                                                   (206) 287-1775

1    Ukraine is similarly advertised as providing "[e]xcellent connectivity to the East Coast of the US[,]

2    . . . built to get the lowest latency and zero-loss network routes."[19] Virtual Systems' data center in

3    the Netherlands is said to offer "an unprecedented rate of overall connectivity to the US."[20] Virtual

4    Systems promotes its servers and network as "tasty for streaming services" and states that "large

5    IPTV streaming projects and adult tube sites are more than welcome here."[21]

6          30.    Virtual Systems provided the Pirate Services the servers and network that were used

7    to transmit the Works to Users, which included servers in Virtual Systems' data centers located in

8    Seattle, Ukraine, and the Netherlands. Virtual Systems may have also provided the Pirate Services

9    additional servers and services used in transmitting the Works, such as the storage servers, video

10   encoding servers, and Xtream-UI middleware identified above.

11                        **Virtual Systems' "DMCA Ignored" Policy**

12         31.    Virtual Systems appeals to streaming services that violate United States copyright

13   law, such as the Pirates Services, with its "DMCA Ignored" policy, under which Virtual Systems

14   states that "we ignore DMCA takedown notices" concerning servers in its Ukraine data center and

15   therefore customers "[e]njoy full protection against DMCA takedown notices."[22] Virtual Systems

16   promotes its servers in Seattle and the Netherlands similarly, stating "all DMCA notices we receive

17   are processed by our legal team, but we do act courteously towards our valued clients, who might

18   be having occasional issues with copyrights."[23]

19

20

21

22

23

24

25   [19]https://vsys.host/streaming-servers; https://vsys.host/dmca-ignored-dedicated-server
     [20]https://vsys.host/10gbps-servers
26   [21]https://vsys.host/20gbps-servers; https://vsys.host/streaming-servers
     [22]https://vsys.host/dmca-ignored-dedicated-server (partial image of webpage below).
     [23]https://vsys.host/10gbps-servers

Plaintiff's Complaint                          9                    Preg O'Donnell & Gillett PLLC
                                                                    401 Union Street, Suite 1900
                                                                    Seattle, Washington 98101
                                                                    (206) 287-1775

32.    Virtual Systems advertises that its "DMCA Ignored" policy extends to take down notices concerning its storage servers ("We ignore DMCA dismissal unless the conditions of the situation force us to")[24] and Xtream-UI middleware ("We do not react to DMCA shutdown notices and redirect such notices to the client unless the situation conditions force us to").[25]

33.    Virtual Systems and Smyrnov were sent written notices asking that they remove or disable access to Works that the Pirate Services were transmitting from Virtual Systems' servers and network, thereby infringing DISH's copyrights ("Infringement Notices"). On information and belief, the Infringement Notices were received because they were delivered by mail and email to valid addresses used by Virtual Systems and Smyrnov. Virtual Systems and Smyrnov, collectively, were the recipients of at least 512 Infringement Notices. Virtual Systems and Smyrnov received additional notices concerning infringements of Works by customers other than the Pirate Services.

34.    The Infringement Notices complied with the Digital Millennium Copyright Act, 17 U.S.C. § 512. The Infringement Notices contained, among other things, information reasonably sufficient for Virtual Systems to locate the infringing material, including the IP address associated

---

[24]https://vsys.host/storage-servers
[25]https://vsys.host/xtreme-codes-panel-saas

Plaintiff's Complaint                    10                    Preg O'Donnell & Gillett PLLC
                                                               401 Union Street, Suite 1900
                                                               Seattle, Washington 98101
                                                               (206) 287-1775

1   with Virtual Systems' server from which the material was transmitted or the URL of the infringing

2   transmission. Virtual Systems was sent Infringement Notices regarding the Channels on which the

3   Works aired, prior to the Pirate Services transmitting the Works.

4          35.    Virtual Systems did not respond to the Infringement Notices and did not take any

5   measures to stop the Pirate Services' infringement occurring on its servers and network. The Pirate

6   Services kept infringing DISH's copyrights in Works aired on the Channels, even using the same

7   IP addresses and URLs previously reported to Virtual Systems. Virtual Systems acted true to its

8   "DMCA Ignored" policy by disregarding the Infringement Notices and turning a blind eye to the

9   Pirate Services' infringement of DISH's copyrights.

10         36.    Virtual Systems also did not comply with orders from United States courts, entered

11  in lawsuits involving three of the Pirate Services, that permanently enjoined Virtual Systems from

12  providing its servers and network to those Pirate Services because they were using them to infringe

13  DISH's copyrights.[26] Two court orders specifically identified Virtual Systems as being enjoined,

14  while a third court order enjoined Virtual Systems by virtue of its role in providing the servers and

15  network used in the infringement. Virtual Systems was notified of the permanent injunctions but

16  did not cease providing its servers and network to the Pirate Services, which continued infringing

17  DISH's copyrights, including its copyrights in the Works.

18         37.    Virtual Systems is not entitled to assert any DMCA safe harbor defense because it

19  does not adopt and reasonably implement a policy that provides for the termination of its services

20  to repeat infringers. Virtual Systems is also not entitled to assert most DMCA safe harbor defenses

21  because it does not have a designated DMCA agent to receive infringement notices; because when

22  such notices are received or it otherwise has knowledge of infringement, Virtual Systems does not

23  respond expeditiously to remove or disable access to the infringing material; and because Virtual

24  Systems receives financial benefits directly attributable to infringement that is under its control.

25

26
_____
[26]Footnotes 6-7 (identifying cases).
Plaintiff's Complaint

11

**Virtual Systems' "Under The Radar" Policy**

38.     Virtual Systems also encourages the Pirate Services to infringe DISH's copyrights by keeping their identities anonymous. Virtual Systems informs its customers that "[y]our profile is always kept under the radar" and "[s]ince our knowledge of you is kept to a minimum, your anonymity is guaranteed."[27] Virtual Systems touts that it does not comply with KYC (Know Your Customer) requirements, stating that "we do not require personal data to make a purchase."[28] And Virtual Systems states that it will communicate with its customers "via anonymous e-mail" and it "do[es] not save any records."[29]

39.     Virtual Systems also encourages customers to keep their identifies undiscoverable by paying with cryptocurrency, stating that "we do love and accept cryptocurrencies" and that such payments "may be made anonymously."[30] Virtual Systems advises customers to "[t]ake comfort in the fact that you are completely protected here if your personal privacy is a top priority."[31]



---

[27]https://vsys.host/
[28]https://vsys.host/10gbps-servers
[29]https://www.linkedin.com/company/vsyshost; https://vsys.host/vps-usa
[30]https://vsys.host/dedicated-servers-usa (partial image of webpage below); https://vsys.host/vps-usa
[31]https://vsys.host/vps-usa

Plaintiff's Complaint                                                        12                        Preg O'Donnell & Gillett PLLC
                                                                                                                      401 Union Street, Suite 1900
                                                                                                                      Seattle, Washington 98101
                                                                                                                      (206) 287-1775

1

**Virtual Systems' Control Over the Infringement**

2          40.     Virtual Systems could have taken simple measures to stop the Pirate Services from

3    infringing the Works but refused to take them. Virtual Systems could have determined whether

4    the Pirate Services were legally authorized to transmit the Works by first requiring them to verify

5    their rights in the Channels. Virtual Systems also could have removed or disabled access to the

6    particular material identified in the Infringement Notices that was transmitted from its servers and

7    network. Virtual Systems could have implemented a multi-strike policy, such as by temporarily

8    suspending a Pirate Services' account on receipt of one notice advising of infringement against

9    that account and then permanently terminating the account on receipt of additional notices.

10         41.     Virtual Systems also had the legal right to stop the Pirate Services from infringing

11   the Works. Virtual Systems' service agreement with its customers gives it the "right to disable any

12   materials" and the "right to block or suspend" its service or "take any other action . . . necessary"

13   where a customer "violates the intellectual property rights of any third party or is otherwise the

14   subject of a dispute."[32] Virtual Systems is entitled to exercise these rights "in [its] sole discretion,

15   immediately and without notice" to the customer.[33] Rather than exercise this right and ability to

16   stop the Pirate Services' infringement, Virtual Systems turned a blind eye, making its servers and

17   network a safe haven for the Pirate Services' infringement.

18

**Virtual Systems' Direct Financial Interest in the Infringement**

19         42.     The Pirate Services were drawn to Virtual Systems' servers and network because it

20   did not stop their infringement and offered to keep them anonymous. The Pirate Services perceived

21   Virtual Systems' servers and network as a place where infringement of the Works was tolerated

22   because Virtual Systems advertised them as such and many other Pirate Services did just that. The

23   ongoing availability of the Works resulting from Virtual Systems' failure to take any action against

24   the Pirate Services served as a draw for those Pirate Services to remain paying customers of Virtual

25

26   [32]https://vsys.host/legal/term-of-service
     [33]*Id.*

Plaintiff's Complaint                              13                        Preg O'Donnell & Gillett PLLC
                                                                             401 Union Street, Suite 1900
                                                                             Seattle, Washington 98101
                                                                             (206) 287-1775

1    Systems and attracted other Pirate Services to become paying customers of Virtual Systems.

2        43.    Virtual Systems' pricing is based in part on the bandwidth that the customer selects,

3    typically offered in gigabits per second (Gbps).[34] Virtual Systems, for example, charges more for

4    a 20 Gbps server, which it recommends for "high bandwidth" applications such as "streaming [or]

5    VOD," than it charges for a 1 Gbps server that provides less bandwidth. Virtual Systems also gives

6    customers using certain types of servers and Xtream-UI middleware the option to purchase more

7    bandwidth, priced per additional 1 Gbps. Virtual Systems states that "[v]ideo is driving demand

8    for bandwidth usage, and we have it at a very competitive price."[35]

9        44.    Virtual Systems informed customers that adequate bandwidth is "vital in ensuring

10    fast[,] constant delivery" and encouraged them to "choose the amount of bandwidth depending on

11    your needs."[36] On information and belief, the Pirate Services' bandwidth needs factored into their

12    purchases from Virtual Systems, in terms of purchasing more expensive servers to acquire greater

13    bandwidth, additional bandwidth al-a-carte, or additional servers to transmit the Works and other

14    content. Virtual Systems refused to take any measures to stop the Pirate Services from infringing

15    the Works because that would have worked to reduce the Pirate Services' bandwidth requirements

16    and in turn their need to purchase bandwidth from Virtual Systems.

17                              **Claims for Relief**

18                                  **Count I**

19        **(Materially Contributing to Copyright Infringement under 17 U.S.C. § 501)**

20        45.    DISH repeats and realleges the allegations in paragraphs 1-44.

21        46.    DISH is a copyright owner under 17 U.S.C. § 106 because, at all relevant times,

22    DISH held the exclusive rights to distribute and publicly perform the Works in the United States,

23    by means that include satellite, OTT, IPTV, and internet.

24

25

26    [34]https://vsys.host/streaming-servers
     [35]https://vsys.host/xtreme-codes-panel-saas
     [36]https://vsys.host/streaming-servers

Plaintiff's Complaint                        14              Preg O'Donnell & Gillett PLLC
                                                            401 Union Street, Suite 1900
                                                            Seattle, Washington 98101
                                                            (206) 287-1775

47.     The Works are copyrightable subject matter because they are original audiovisual works fixed in a tangible medium of expression. DISH's copyrights in the Works arise under laws of nations other than the United States that are parties to copyright treaties with the United States, including Egypt, Lebanon, Saudi Arabia, India, and Bangladesh, where the Works were authored and first published.

48.     The Works constitute non-United States works under 17 U.S.C. §§ 101 and 411, and therefore registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action for the Works. Nonetheless, several Works are registered with the United States Copyright Office.

49.     DISH's exclusive rights to publicly perform the Works were directly infringed by the Pirate Services' unauthorized transmission of the Works to Users. The Works were transmitted to Users when DISH's exclusive rights to publicly perform the Works were in effect.

50.     Virtual Systems materially contributed to the Pirate Services' direct infringement of DISH's exclusive public performance rights by providing the Pirate Services the servers and network used to transmit the Works. Virtual Systems also offered storage servers, video encoding servers, and Xtream-UI middleware, which it marketed and sold to streaming services such as the Pirate Services as a recommended add-on to its server and network packages. On information and belief, Virtual Systems provided these additional types of servers and middleware to at least some of the Pirate Services.

51.     Virtual Systems had actual knowledge that the transmission of the Works to Users infringes DISH's exclusive public performance rights and that its servers and network were being used to commit such infringement on a massive scale. The Infringement Notices informed Virtual Systems of this specific infringement, including the IP addresses and URLs that correspond with Virtual Systems' servers and network that were used to transmit the Works.

52.     Virtual Systems could have taken simple measures to prevent the Pirate Services from infringing DISH's exclusive rights to publicly perform the Works, including by removing or

Plaintiff's Complaint                    15                    Preg O'Donnell & Gillett PLLC
                                                              401 Union Street, Suite 1900
                                                              Seattle, Washington 98101
                                                              (206) 287-1775

1  disabling access to the Works or terminating the Pirate Services' accounts. Virtual Systems failed
2  to take such measures and continued to provide access to the Works.

3      53.    Smyrnov authorized, directed, and participated in Virtual Systems' infringement of
4  the Works. Smyrnov managed the servers and network that the Pirate Services used to infringe the
5  Works. Smyrnov was notified of the infringement taking place on the servers and network that he
6  managed and he failed to stop the infringement. Smyrnov owns Virtual Systems, serves as its CEO
7  and director, and receives direct financial benefits from its infringing acts. Smyrnov is a guiding
8  spirit and central figure in Virtual Systems' infringement of the Works and therefore Smyrnov is
9  personally liable for such infringement.

10      54.    The actions of Virtual Systems and Smyrnov were willful, malicious, intentional,
11  and purposeful, and in disregard of and with indifference to the rights of DISH. The actions of
12  Virtual Systems and Smyrnov are continuing with respect to many of the Pirate Services.

13      55.    Unless enjoined by the Court, Virtual Systems and Smyrnov will continue engaging
14  in acts that cause substantial and irreparable injury to DISH that includes lost sales, damage to its
15  reputation, and loss of goodwill, for which there is no adequate remedy at law.

16                                             **Count II**

17             **(Inducing Copyright Infringement under 17 U.S.C. § 501)**

18      56.    DISH repeats and realleges the allegations in paragraphs 1-44, 46-49, and 53.

19      57.    Virtual Systems provided the servers and network that the Pirate Services used to
20  infringe DISH's exclusive rights to publicly perform the Works. Virtual Systems promoted the use
21  of its servers and network for such infringement with its "DMCA Ignored" policy, under which
22  Virtual Systems informed the Pirate Services that it would not comply with United States copyright
23  law and would not take any measures to stop them from infringing the Works.

24      58.    Virtual Systems also promoted the use of its servers and network to infringe the
25  Works through its "Under the Radar" policy, where Virtual Systems informed the Pirate Services
26

Plaintiff's Complaint        16        Preg O'Donnell & Gillett PLLC
                                        401 Union Street, Suite 1900
                                        Seattle, Washington 98101
                                        (206) 287-1775

1   that their identities will not be disclosed to copyright holders such as DISH and that no records of

2   their infringing use of Virtual Systems' servers and networks will be kept.

3        59.    Virtual Systems did not develop filtering tools or any other mechanisms to diminish

4   the Pirate Services' infringement of the Works, but could have taken simple measures to stop that

5   infringement such as by removing or disabling access to the Works or by terminating the Pirate

6   Services' accounts. Virtual Systems failed to stop the Pirate Services' infringement of the Works

7   because that infringement contributed to its own financial success.

8        60.    Smyrnov authorized, directed, and participated in Virtual Systems' infringement of

9   the Works, as explained above, and therefore he is personally liable for such infringement.

10       61.    The actions of Virtual Systems and Smyrnov were willful, malicious, intentional,

11  and purposeful, and in disregard of and with indifference to the rights of DISH. The actions of

12  Virtual Systems and Smyrnov are continuing with respect to many of the Pirate Services.

13       62.    Unless enjoined by the Court, Virtual Systems and Smyrnov will continue engaging

14  in acts that cause substantial and irreparable injury to DISH that includes lost sales, damage to its

15  reputation, and loss of goodwill, for which there is no adequate remedy at law.

16                                    **Count III**

17             **(Vicarious Copyright Infringement under 17 U.S.C. § 501)**

18       63.    DISH repeats and realleges the allegations in paragraphs 1-44, 46-49, and 53.

19       64.    Virtual Systems had the legal right and practical ability to stop or limit the Pirate

20  Services' infringement of the Works. Virtual Systems could have removed or disabled access to

21  the Works transmitted from its servers and network or terminated the Pirate Services' accounts

22  and shut them down completely. Virtual Systems was authorized to take these simple measures to

23  stop the infringement of the Works under its service agreements with the Pirate Services. Virtual

24  Systems failed to exercise its right and ability to control the Pirate Services' infringement of the

25  Works.

26

Plaintiff's Complaint                    17              Preg O'Donnell & Gillett PLLC
                                                         401 Union Street, Suite 1900
                                                         Seattle, Washington 98101
                                                         (206) 287-1775

1     65.    Virtual Systems had a direct financial interest in the Pirate Services' infringement

2 of the Works and received direct financial benefits from such infringement. The Pirate Services

3 were motivated to become Virtual Systems' customers because they knew that they could publicly

4 perform the Works without interference from Virtual Systems. Virtual Systems' failure to stop the

5 Pirate Services' infringement of the Works served as a draw for those Pirate Services to remain

6 paying customers of Virtual Systems and attracted other Pirate Services to Virtual Systems' servers

7 and network. By failing to remove or disable access to the Works or terminate the Pirate Services'

8 accounts, Virtual Systems received illicit revenue that it would not otherwise have received.

9     66.    Virtual Systems encouraged the Pirate Services to purchase sufficient bandwidth to

10 transmit content using Virtual Systems' servers and network. On information and belief, the Pirate

11 Services purchased this bandwidth from Virtual Systems in the form of more expensive servers,

12 additional servers, or on an al-a-carte basis. The Pirate Services' transmission of the Works helped

13 to keep their bandwidth needs elevated and Virtual Systems was able to sell them that necessary

14 bandwidth. Virtual Systems did not stop the Pirate Services from transmitting the Works because

15 it would have worked to reduce Virtual Systems' own profits.

16     67.    Smyrnov authorized, directed, and participated in Virtual Systems' infringement of

17 the Works, as explained above, and therefore he is personally liable for such infringement.

18     68.    The actions of Virtual Systems and Smyrnov were willful, malicious, intentional,

19 and purposeful, and in disregard of and with indifference to the rights of DISH. The actions of

20 Virtual Systems and Smyrnov are continuing with respect to many of the Pirate Services.

21     69.    Unless enjoined by the Court, Virtual Systems and Smyrnov will continue engaging

22 in acts that cause substantial and irreparable injury to DISH that includes lost sales, damage to its

23 reputation, and loss of goodwill, for which there is no adequate remedy at law.

**Prayer for Relief**

Judgment against Virtual Systems and Smyrnov should include

Plaintiff's Complaint    18    Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

1    A.    A permanent injunction under 17 U.S.C. § 502 that prohibits Virtual Systems and

2    Smyrnov, and any officer, agent, servant, employee, attorney, or any other person acting in active

3    concert or participation with either of them, from infringing DISH's copyrights in the Works that

4    air the Channels, including by (1) distributing or publicly performing this material in the United

5    States, which includes streaming or transmitting the material; (2) contributing to, inducing, or

6    failing to stop or limit the distribution or public performance of this material, which includes a

7    prohibition on providing any servers or network used in streaming or transmitting the material and

8    requires termination of any current or future accounts of the Pirate Services;

9    B.    Statutory damages up to $150,000 for each registered Work infringed (including

10    the 279 registered Works identified by example in Exhibit 1) under 17 U.S.C. § 504(c), or Virtual

11    Systems' and Smyrnov's profits that are attributable to the infringement of those registered Works

12    under 17 U.S.C. § 504(b);

13    C.    Virtual Systems' and Smyrnov's profits that are attributable to the infringement of

14    each unregistered Work under 17 U.S.C. § 504(b);

15    D.    DISH's attorneys' fees and costs under 17 U.S.C. § 505;

16    E.    Impoundment and disposition of all infringing articles under 17 U.S.C. § 503;

17    F.    Pre-judgment and post-judgment interest on all monetary relief, from the earliest

18    date permitted by law at the maximum rate permitted by law;

19    G.    Such additional relief as the Court deems just and equitable.

20    Dated: October 15, 2024

21                              **PREG O'DONNELL & GILLETT PLLC**

22

23                              By: s/ Gregory Latendresse
                                Gregory Latendresse, WSBA # 32787
                                401 Union Street, Suite 1900
24                              Seattle, Washington 98101
                                Tel: (206) 287-1775
25                              Fax: (206) 287-9113
                                glatendresse@pregodonnell.com
26

Plaintiff's Complaint                    19                    Preg O'Donnell & Gillett PLLC
                                                               401 Union Street, Suite 1900
                                                               Seattle, Washington 98101
                                                               (206) 287-1775

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**HAGAN NOLL & BOYLE LLC**
Joseph H. Boyle (*pro hac vice* forthcoming)
Timothy M. Frank (*pro hac vice* forthcoming)
Stephen M. Ferguson (*pro hac vice* forthcoming)
820 Gessner, Suite 940
Houston, Texas 77024
Tel: (713) 343-0478
Fax: (713) 758-0146
joseph.boyle@hnbllc.com
timothy.frank@hnbllc.com
stephen.ferguson@hnbllc.com

Attorneys for Plaintiff DISH Network L.L.C.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DISH NETWORK L.L.C.,                )    No. 2:24-cv-01683
                                    )
                    Plaintiff,      )    **EXHIBIT 1 TO PLAINTIFF'S**
                                    )    **COMPLAINT**
        v.                          )
                                    )
VIRTUAL SYSTEMS, LLC and            )
VYACHESLAV SMYRNOV,                 )
                                    )
                    Defendants.     )

**WORKS SUBJECT TO REGISTRATION**

| Work | Date of First Publication | Channel | Registration Number | Effective Date of Registration |
|------|---------------------------|---------|---------------------|-------------------------------|
| Aangan Aapno Kaa, Ep. 18 | December 30, 2023 | SAB | PA0002452164 | January 12, 2024 |
| Aangan Aapno Kaa, Ep. 43 | January 29, 2024 | SAB | PA0002458039 | February 2, 2024 |
| Aangan Aapno Kaa, Ep. 69 | February 28, 2024 | SAB | PA0002460329 | February 29, 2024 |
| Aangan Aapno Kaa, Ep. 95 | March 29, 2024 | SAB | PA0002467108 | April 4, 2024 |
| Ali Baba Dastaan E Kabul, Ep. 7 | August 29, 2022 | SAB | PA0002373613 | September 2, 2022 |
| Ali Baba Dastaan E | October 28, 2022 | SAB | PA0002388793 | November 29, 2022 |

Exhibit 1 to Plaintiff's Complaint                              Preg O'Donnell & Gillett PLLC
                                                               401 Union Street, Suite 1900
                                                               Seattle, Washington 98101
                                                               (206) 287-1775

| | | | | |
|---|---|---|---|---|
| Kabul, Ep. 59 | | | | |
| Ali Baba Dastaan E Kabul, Ep. 85 | November 28, 2022 | SAB | PA0002389478 | December 6, 2022 |
| Ali Baba Dastaan E Kabul, Ep. 111 | December 28, 2022 | SAB | PA0002394869 | January 9, 2023 |
| Ali Baba Ek Andaaz Andekha, Ep. 185 | March 27, 2023 | SAB | PA0002411326 | March 28, 2023 |
| Ali Baba Ek Andaaz Andekha, Ep. 230 | May 29, 2023 | SAB | PA0002421487 | May 31, 2023 |
| Baalveer 3, Ep. 13 | April 29, 2023 | SAB | PA0002415647 | May 3, 2023 |
| Dharam Yoddha Garud, Ep. 13 | March 28, 2022 | SAB | PA0002350051 | March 29, 2022 |
| Dharam Yoddha Garud, Ep. 39 | April 27, 2022 | SAB | PA0002357041 | May 2, 2022 |
| Dharam Yoddha Garud, Ep. 64 | May 26, 2022 | SAB | PA0002361309 | June 1, 2022 |
| Dharam Yoddha Garud, Ep. 91 | June 27, 2022 | SAB | PA0002365385 | June 29, 2022 |
| Dharam Yoddha Garud, Ep. 145 | August 29, 2022 | SAB | PA0002373616 | September 2, 2022 |
| Dharam Yoddha Garud, Ep. 197 | October 28, 2022 | SAB | PA0002388777 | November 29, 2022 |
| Dharam Yoddha Garud, Ep. 223 | November 28, 2022 | SAB | PA0002389274 | December 6, 2022 |
| Dhruv Tara, Ep. 25 | March 27, 2023 | SAB | PA0002409092 | March 28, 2023 |
| Dhruv Tara, Ep. 54 | April 29, 2023 | SAB | PA0002416206 | May 3, 2023 |
| Dhruv Tara, Ep. 79 | May 29, 2023 | SAB | PA0002420330 | May 31, 2023 |
| Dhruv Tara, Ep. 103 | June 26, 2023 | SAB | PA0002426466 | June 29, 2023 |
| Dhruv Tara, Ep. 133 | July 31, 2023 | SAB | PA0002430266 | August 2, 2023 |
| Dhruv Tara, Ep. 159 | August 30, 2023 | SAB | PA0002436068 | September 5, 2023 |
| Dhruv Tara, Ep. 165 | September 6, 2023 | SAB | PA0002439053 | September 21, 2023 |
| Dhruv Tara, Ep. 167 | September 8, 2023 | SAB | PA0002437946 | September 21, 2023 |
| Dhruv Tara, Ep. 211 | October 30, 2023 | SAB | PA0002443591 | November 2, 2023 |
| Dhruv Tara, Ep. 236 | November 28, 2023 | SAB | PA0002448235 | November 30, 2023 |
| Dhruv Tara, Ep. 264 | December 30, 2023 | SAB | PA0002452737 | January 8, 2024 |
| Dhruv Tara, Ep. 289 | January 29, 2024 | SAB | PA0002458067 | February 2, 2024 |
| Dhruv Tara, Ep. 315 | February 28, 2024 | SAB | PA0002460331 | February 29, 2024 |
| Dhruv Tara, Ep. 341 | March 29, 2024 | SAB | PA0002467683 | April 4, 2024 |

| | | | | |
|---|---|---|---|---|
| Dil Diyaan Gallan, Ep. 15 | December 28, 2022 | SAB | PA0002395076 | January 9, 2023 |
| Dil Diyaan Gallan, Ep. 43 | January 30, 2023 | SAB | PA0002401201 | February 3, 2023 |
| Dil Diyaan Gallan, Ep. 91 | March 27, 2023 | SAB | PA0002409093 | March 28, 2023 |
| Dil Diyaan Gallan, Ep. 120 | April 29, 2023 | SAB | PA0002416207 | May 3, 2023 |
| Dil Diyaan Gallan, Ep. 145 | May 29, 2023 | SAB | PA0002420331 | May 31, 2023 |
| Dil Diyaan Gallan, Ep. 169 | June 26, 2023 | SAB | PA0002426597 | June 29, 2023 |
| Dil Diyaan Gallan, Ep. 199 | July 31, 2023 | SAB | PA0002430268 | August 2, 2023 |
| Dil Diyaan Gallan, Ep. 225 | August 30, 2023 | SAB | PA0002436070 | September 5, 2023 |
| Dil Diyaan Gallan, Ep. 231 | September 6, 2023 | SAB | PA0002440119 | September 21, 2023 |
| Good Night India-Raatwala Family Show, Ep. 21 | February 23, 2022 | SAB | PA0002344848 | February 24, 2022 |
| Good Night India-Raatwala Family Show, Ep. 49 | March 28, 2022 | SAB | PA0002350038 | March 29, 2022 |
| Good Night India-Raatwala Family Show, Ep. 75 | April 27, 2022 | SAB | PA0002357043 | May 2, 2022 |
| Good Night India-Raatwala Family Show, Ep. 100 | May 26, 2022 | SAB | PA0002360259 | June 1, 2022 |
| Hero-Gayab Mode On, Ep. 231 | October 25, 2021 | SAB | PA0002324878 | October 27, 2021 |
| Pashminna, Ep. 5 | October 30, 2023 | SAB | PA0002443544 | November 2, 2023 |
| Pashminna, Ep. 30 | November 28, 2023 | SAB | PA0002448168 | November 30, 2023 |
| Pashminna, Ep. 58 | December 30, 2023 | SAB | PA0002452333 | January 8, 2024 |
| Pashminna, Ep. 83 | January 29, 2024 | SAB | PA0002458074 | February 2, 2024 |
| Pashminna, Ep. 109 | February 28, 2024 | SAB | PA0002461439 | February 29, 2024 |
| Pushpa Impossible, | June 27, 2022 | SAB | PA0002364309 | June 29, 2022 |

Exhibit 1 to Plaintiff's Complaint

3

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

| Ep. 19 | | | | |
|---|---|---|---|---|
| Pushpa Impossible, Ep. 45 | July 27, 2022 | SAB | PA0002368227 | July 28, 2022 |
| Pushpa Impossible, Ep. 73 | August 29, 2022 | SAB | PA0002373619 | September 2, 2022 |
| Pushpa Impossible, Ep. 123 | October 28, 2022 | SAB | PA0002388792 | November 29, 2022 |
| Pushpa Impossible, Ep. 149 | November 28, 2022 | SAB | PA0002389281 | December 6, 2022 |
| Pushpa Impossible, Ep. 175 | December 28, 2022 | SAB | PA0002395074 | January 9, 2023 |
| Pushpa Impossible, Ep. 203 | January 30, 2023 | SAB | PA0002401206 | February 3, 2023 |
| Pushpa Impossible, Ep. 251 | March 27, 2023 | SAB | PA0002409099 | March 28, 2023 |
| Pushpa Impossible, Ep. 280 | April 29, 2023 | SAB | PA0002418961 | May 3, 2023 |
| Pushpa Impossible, Ep. 305 | May 29, 2023 | SAB | PA0002420334 | May 31, 2023 |
| Pushpa Impossible, Ep. 329 | June 26, 2023 | SAB | PA0002426605 | June 29, 2023 |
| Pushpa Impossible, Ep. 359 | July 31, 2023 | SAB | PA0002430275 | August 2, 2023 |
| Pushpa Impossible, Ep. 385 | August 30, 2023 | SAB | PA0002436137 | September 5, 2023 |
| Pushpa Impossible, Ep. 437 | October 30, 2023 | SAB | PA0002443545 | November 2, 2023 |
| Pushpa Impossible, Ep. 462 | November 28, 2023 | SAB | PA0002448254 | November 30, 2023 |
| Pushpa Impossible, Ep. 490 | December 30, 2023 | SAB | PA0002452337 | January 8, 2024 |
| Pushpa Impossible, Ep. 519 | January 29, 2024 | SAB | PA0002458072 | February 2, 2024 |
| Pushpa Impossible, Ep. 541 | February 28, 2024 | SAB | PA0002461440 | February 29, 2024 |
| Pushpa Impossible, Ep. 567 | March 29, 2024 | SAB | PA0002468763 | April 4, 2024 |
| Sab Satrangi, Ep. 15 | February 23, 2024 | SAB | PA0002345141 | February 24, 2024 |

Exhibit 1 to Plaintiff's Complaint

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

| | | | | |
|---|---|---|---|---|
| Sab Satrangi, Ep. 43 | March 28, 2022 | SAB | PA0002350057 | March 29, 2022 |
| Sab Satrangi, Ep. 69 | April 27, 2022 | SAB | PA0002357053 | May 2, 2022 |
| Sab Satrangi, Ep. 94 | May 26, 2022 | SAB | PA0002360924 | June 1, 2022 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 34 | October 25, 2021 | SAB | PA0002324869 | October 27, 2021 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 64 | November 29, 2021 | SAB | PA0002330984 | November 30, 2021 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 80 | December 17, 2021 | SAB | PA0002336978 | January 3, 2022 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 111 | January 24, 2022 | SAB | PA0002340108 | January 26, 2022 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 137 | February 23, 2022 | SAB | PA0002345407 | February 24, 2022 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 165 | March 28, 2022 | SAB | PA0002350069 | March 29, 2022 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 191 | April 27, 2022 | SAB | PA0002357047 | May 2, 2022 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 216 | May 26, 2022 | SAB | PA0002360937 | June 1, 2022 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 243 | June 27, 2022 | SAB | PA0002364315 | June 29, 2022 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 269 | July 27 2022 | SAB | PA0002368196 | July 28, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3285 | October 25, 2021 | SAB | PA0002324875 | October 27, 2021 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3315 | November 29, 2021 | SAB | PA0002330983 | November 30, 2021 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3331 | December 17, 2021 | SAB | PA0002337300 | January 3, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3363 | January 24, 2022 | SAB | PA0002340102 | January 26, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3389 | February 23, 2022 | SAB | PA0002345421 | February 24, 2022 |

Exhibit 1 to Plaintiff's Complaint                    5

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

| Taraak Mehta Ka Ooltah Chashmah, Ep. 3417 | March 28, 2022 | SAB | PA0002350030 | March 29, 2022 |
|---|---|---|---|---|
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3443 | April 27, 2022 | SAB | PA0002357040 | May 2, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3468 | May 26, 2022 | SAB | PA0002361258 | June 1, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3495 | June 27, 2022 | SAB | PA0002364316 | June 29, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3521 | July 27, 2022 | SAB | PA0002368185 | July 28, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3549 | August 29, 2022 | SAB | PA0002373620 | September 2, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3601 | October 28, 2022 | SAB | PA0002388790 | November 29, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3627 | November 28, 2022 | SAB | PA0002389282 | December 6, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3653 | December 28, 2022 | SAB | PA0002395073 | January 9, 2023 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3681 | January 30, 2023 | SAB | PA0002401207 | February 3, 2023 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3869 | September 6, 2023 | SAB | PA0002437945 | September 21, 2023 |
| Tera Yaar Hoon Main, Ep. 326 | November 29, 2021 | SAB | PA0002330982 | November 30, 2021 |
| Tera Yaar Hoon Main, Ep. 342 | December 17, 2021 | SAB | PA0002337301 | January 3, 2022 |
| Tera Yaar Hoon | January 24, 2022 | SAB | PA0002340101 | January 26, 2022 |

Exhibit 1 to Plaintiff's Complaint                    6

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

| Main, Ep. 373 | | | | |
|---|---|---|---|---|
| Vanshaj, Ep. 13 | June 26, 2023 | SAB | PA0002426607 | June 29, 2023 |
| Vanshaj, Ep. 43 | July 31, 2023 | SAB | PA0002430277 | August 2, 2023 |
| Vanshaj, Ep. 69 | August 30, 2023 | SAB | PA0002436138 | September 5, 2023 |
| Vanshaj, Ep. 121 | October 30, 2023 | SAB | PA0002443546 | November 2, 2023 |
| Vanshaj, Ep. 146 | November 28, 2023 | SAB | PA0002448219 | November 30, 2023 |
| Vanshaj, Ep. 174 | December 30, 2023 | SAB | PA0002452295 | January 8, 2024 |
| Vanshaj, Ep. 199 | January 29, 2024 | SAB | PA0002458070 | February 2, 2024 |
| Vanshaj, Ep. 225 | February 28, 2024 | SAB | PA0002461260 | February 29, 2024 |
| Vanshaj, Ep. 251 | March 29, 2024 | SAB | PA0002467659 | April 4, 2024 |
| Wagle Ki Duniya, Ep. 178 | October 25, 2021 | SAB | PA0002324866 | October 27, 2021 |
| Wagle Ki Duniya, Ep. 208 | November 29, 2021 | SAB | PA0002330980 | November 30, 2021 |
| Wagle Ki Duniya, Ep. 224 | December 17, 2021 | SAB | PA0002336977 | January 3, 2022 |
| Wagle Ki Duniya, Ep. 256 | January 24, 2022 | SAB | PA0002340106 | January 26, 2022 |
| Wagle Ki Duniya, Ep. 388 | June 27, 2022 | SAB | PA0002364320 | June 29, 2022 |
| Wagle Ki Duniya, Ep. 414 | July 27, 2022 | SAB | PA0002368184 | July 28, 2022 |
| Wagle Ki Duniya, Ep. 442 | August 29, 2022 | SAB | PA0002373623 | September 2, 2022 |
| Wagle Ki Duniya, Ep. 492 | October 28, 2022 | SAB | PA0002388780 | November 29, 2022 |
| Wagle Ki Duniya, Ep. 518 | November 28, 2022 | SAB | PA0002389284 | December 6, 2022 |
| Wagle Ki Duniya, Ep. 544 | December 28, 2022 | SAB | PA0002394645 | January 9, 2023 |
| Wagle Ki Duniya, Ep. 572 | January 30, 2023 | SAB | PA0002401208 | February 2, 2023 |
| Wagle Ki Duniya, Ep. 620 | March 27, 2023 | SAB | PA0002409100 | March 28, 2023 |
| Wagle Ki Duniya, Ep. 649 | April 29, 2023 | SAB | PA0002416848 | May 4, 2023 |
| Wagle Ki Duniya, Ep. 674 | May 29, 2023 | SAB | PA0002420335 | May 31, 2023 |

Exhibit 1 to Plaintiff's Complaint            7

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

| | | | | |
|---|---|---|---|---|
| Wagle Ki Duniya, Ep. 698 | June 26, 2023 | SAB | PA0002426467 | June 29, 2023 |
| Wagle Ki Duniya, Ep. 727 | July 31, 2023 | SAB | PA0002430278 | August 2, 2023 |
| Wagle Ki Duniya, Ep. 753 | August 30, 2023 | SAB | PA0002436140 | September 5, 2023 |
| Wagle Ki Duniya, Ep. 759 | September 6, 2023 | SAB | PA0002437944 | September 21, 2023 |
| Wagle Ki Duniya, Ep. 805 | October 30, 2023 | SAB | PA0002443547 | November 2, 2023 |
| Wagle Ki Duniya, Ep. 830 | November 28, 2023 | SAB | PA0002448282 | November 30, 2023 |
| Wagle Ki Duniya, Ep. 935 | March 29, 2024 | SAB | PA0002468765 | April 4, 2024 |
| Ziddi Dil Maane Na, Ep. 44 | October 25, 2021 | SAB | PA0002324858 | October 27, 2021 |
| Ziddi Dil Maane Na, Ep. 74 | November 29, 2021 | SAB | PA0002330430 | November 30, 2021 |
| Ziddi Dil Maane Na, Ep. 90 | December 17, 2021 | SAB | PA0002336975 | January 3, 2022 |
| Ziddi Dil Maane Na, Ep. 122 | January 24, 2022 | SAB | PA0002340107 | January 26, 2022 |
| Ziddi Dil Maane Na, Ep. 148 | February 23, 2022 | SAB | PA0002345761 | February 24, 2022 |
| Appnapan, Ep. 9 | June 27, 2022 | SAB | PA0002365357 | June 29, 2022 |
| Appnapan, Ep. 31 | July 27, 2022 | SAB | PA0002368295 | July 28, 2022 |
| Appnapan, Ep. 54 | August 29, 2022 | SAB | PA0002373614 | September 2, 2022 |
| Appnapan, Ep. 98 | October 28, 2022 | SAB | PA0002388796 | November 29, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 42 | October 26, 2021 | SET | PA0002324859 | October 27, 2021 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 66 | November 29, 2021 | SET | PA0002330901 | November 30, 2021 |
| Bade Ache Lagte Hain-Ye Dharti Ye | December 17, 2021 | SET | PA0002336980 | January 3, 2022 |

| | | | | |
|---|---|---|---|---|
| Nadiya Ye Raina Aur Tum-2, Ep. 80 | | | | |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 106 | January 24, 2022 | SET | PA0002340103 | January 26, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 128 | February 23, 2022 | SET | PA0002344971 | February 24, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 151 | March 28, 2022 | SET | PA0002350068 | March 29, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 173 | April 27, 2022 | SET | PA0002357044 | May 2, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 194 | May 26, 2022 | SET | PA0002361247 | June 1, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 216 | June 27, 2022 | SET | PA0002365365 | June 29, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 238 | July 27, 2022 | SET | PA0002368284 | July 28, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 261 | August 29, 2022 | SET | PA0002373615 | September 2, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 305 | October 28, 2022 | SET | PA0002388789 | November 29, 2022 |

| | | | | |
|---|---|---|---|---|
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 326 | November 28, 2022 | SET | PA0002389736 | December 6, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 348 | December 28, 2022 | SET | PA0002394870 | January 9, 2023 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 371 | January 30, 2023 | SET | PA0002401200 | February 3, 2023 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 411 | March 27, 2023 | SET | PA0002409091 | March 28, 2023 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 435 | April 28, 2023 | SET | PA0002416210 | May 3, 2023 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-3, Ep. 3 | May 29, 2023 | SET | PA0002420333 | May 31, 2023 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-3, Ep. 23 | June 26, 2023 | SET | PA0002426465 | June 29, 2023 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-3, Ep. 48 | July 31, 2023 | SET | PA0002430263 | August 2, 2023 |
| Barsatein-Mausam Pyar Ka, Ep. 16 | July 31, 2023 | SET | PA0002430264 | August 2, 2023 |
| Barsatein-Mausam Pyar Ka, Ep. 38 | August 30, 2023 | SET | PA0002436062 | September 5, 2023 |
| Barsatein-Mausam Pyar Ka, Ep. 81 | October 30, 2023 | SET | PA0002443599 | November 2, 2023 |

| Barsatein-Mausam Pyar Ka, Ep. 102 | November 28, 2023 | SET | PA0002448204 | November 30, 2023 |
|---|---|---|---|---|
| Barsatein-Mausam Pyar Ka, Ep. 125 | December 29, 2023 | SET | PA0002452946 | January 8, 2024 |
| Barsatein-Mausam Pyar Ka, Ep. 146 | January 29, 2024 | SET | PA0002458076 | February 2, 2024 |
| Crime Patrol 2.0, Ep. 190 | November 28, 2022 | SET | PA0002393665 | January 13, 2023 |
| Crime Patrol 2.0, Ep. 212 | December 28, 2022 | SET | PA0002399846 | January 13, 2023 |
| Crime Patrol 48 Hours, Ep. 39 | August 30, 2023 | SET | PA0002436064 | September 5, 2023 |
| Crime Patrol 48 Hours, Ep. 44 | September 6, 2023 | SET | PA0002440134 | October 11, 2023 |
| Crime Patrol Satark, Ep. 530 | October 26, 2021 | SET | PA0002324860 | October 28, 2021 |
| Crime Patrol Satark, Ep. 554 | November 29, 2021 | SET | PA0002330902 | November 30, 2021 |
| Dabangi, Ep. 1 | October 30, 2023 | SET | PA0002443592 | November 2, 2023 |
| Dabangi, Ep. 22 | November 28, 2023 | SET | PA0002447516 | November 30, 2023 |
| Dabangi, Ep. 45 | December 29, 2023 | SET | PA0002452735 | January 8, 2024 |
| Dabangi, Ep. 66 | January 29, 2024 | SET | PA0002458056 | February 2, 2024 |
| Dabangi, Ep. 88 | February 28, 2024 | SET | PA0002460330 | February 29, 2024 |
| Dabangi, Ep. 110 | March 29, 2024 | SET | PA0002468759 | April 4, 2024 |
| Dhadkan Zindaggi Kii, Ep. 10 | December 17, 2021 | SET | PA0002337137 | January 4, 2022 |
| Dhadkan Zindaggi Kii, Ep. 36 | January 24, 2022 | SET | PA0002340109 | January 26, 2022 |
| Dhadkan Zindaggi Kii, Ep. 60 | February 23, 2022 | SET | PA0002345046 | February 24, 2022 |
| Dhadkan Zindaggi Kii, Ep. 117 | July 27, 2022 | SET | PA0002368252 | July 28, 2022 |
| Hum Rahe Na Rahe Hum, Ep. 15 | April 28, 2023 | SET | PA0002416209 | May 3, 2023 |
| Hum Rahe Na Rahe Hum, Ep. 36 | May 29, 2023 | SET | PA0002421781 | May 31, 2023 |

Exhibit 1 to Plaintiff's Complaint

11

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

| | | | | |
|---|---|---|---|---|
| Hum Rahe Na Rahe Hum, Ep. 56 | June 26, 2023 | SET | PA0002426599 | June 29, 2023 |
| Hum Rahe Na Rahe Hum, Ep. 81 | July 31, 2023 | SET | PA0002430270 | August 2, 2023 |
| Hum Rahe Na Rahe Hum, Ep. 103 | August 30, 2023 | SET | PA0002436128 | September 5, 2023 |
| Hum Rahe Na Rahe Hum, Ep. 108 | September 6, 2023 | SET | PA0002440139 | September 21, 2023 |
| India's Got Talent, Ep. 4 | January 24, 2022 | SET | PA0002340105 | January 26, 2022 |
| Indian Idol, Season 13, Ep. 42 | January 29, 2023 | SET | PA0002401202 | February 3, 2023 |
| Indian Idol, Season 13, Ep. 58 | March 26, 2023 | SET | PA0002409094 | March 28, 2023 |
| Indian Idol, Season 14, Ep. 8 | October 29, 2023 | SET | PA0002443590 | November 2, 2023 |
| Indian Idol, Season 14, Ep. 25 | December 30, 2023 | SET | PA0002452711 | January 8, 2024 |
| Jagannath Aur Purvi Ki Dosti Anokhi, Ep. 13 | February 23, 2022 | SET | PA0002345048 | February 24, 2022 |
| Jagannath Aur Purvi Ki Dosti Anokhi, Ep. 36 | March 28, 2022 | SET | PA0002350061 | March 29, 2022 |
| Jagannath Aur Purvi Ki Dosti Anokhi, Ep. 58 | April 27, 2022 | SET | PA0002357045 | May 2, 2022 |
| Jagannath Aur Purvi Ki Dosti Anokhi, Ep. 79 | May 26, 2022 | SET | PA0002360931 | June 1, 2022 |
| Kaamnaa, Ep. 11 | November 29, 2021 | SET | PA0002330746 | November 30, 2021 |
| Kaamnaa, Ep. 25 | December 17, 2021 | SET | PA0002336982 | January 3, 2022 |
| Kaamnaa, Ep. 51 | January 24, 2022 | SET | PA0002340100 | January 26, 2022 |
| Kaamnaa, Ep. 73 | February 23, 2022 | SET | PA0002345054 | February 24, 2022 |
| Kaamnaa, Ep. 96 | March 28, 2022 | SET | PA0002350065 | March 29, 2022 |
| Kaamnaa, Ep. 118 | April 27, 2022 | SET | PA0002357046 | May 2, 2022 |

| Kaamnaa, Ep. 139 | May 26, 2022 | SET | PA0002360943 | June 1, 2022 |
| Kaamnaa, Ep. 161 | June 27, 2022 | SET | PA0002364546 | June 29, 2022 |
| Kaamnaa, Ep. 183 | July 27, 2022 | SET | PA0002368265 | July 28, 2022 |
| Katha Ankahee, Ep. 18 | December 28, 2022 | SET | PA0002395812 | January 9, 2023 |
| Katha Ankahee, Ep. 41 | January 30, 2023 | SET | PA0002401203 | February 3, 2023 |
| Katha Ankahee, Ep. 81 | March 27, 2023 | SET | PA0002409095 | March 28, 2023 |
| Katha Ankahee, Ep. 105 | April 28, 2023 | SET | PA0002415695 | May 3, 2023 |
| Katha Ankahee, Ep. 126 | May 29, 2023 | SET | PA0002421600 | May 31, 2023 |
| Katha Ankahee, Ep. 146 | June 26, 2023 | SET | PA0002426601 | June 29, 2023 |
| Katha Ankahee, Ep. 171 | July 31, 2023 | SET | PA0002430271 | August 2, 2023 |
| Katha Ankahee, Ep. 193 | August 30, 2023 | SET | PA0002436131 | September 5, 2023 |
| Katha Ankahee, Ep. 199 | September 7, 2023 | SET | PA0002440144 | September 21, 2023 |
| Katha Ankahee, Ep. 236 | October 30, 2023 | SET | PA0002443586 | November 2, 2023 |
| Katha Ankahee, Ep. 257 | November 28, 2023 | SET | PA0002448227 | November 30, 2023 |
| Kavya, Ep. 26 | October 30, 2023 | SET | PA0002443543 | November 2, 2023 |
| Kavya, Ep. 47 | November 28, 2023 | SET | PA0002448184 | November 30, 2023 |
| Kavya, Ep. 70 | December 29, 2023 | SET | PA0002452730 | January 8, 2024 |
| Kavya, Ep. 91 | January 29, 2024 | SET | PA0002458062 | February 2, 2024 |
| Kavya, Ep. 113 | February 28, 2024 | SET | PA0002460332 | February 29, 2024 |
| Kavya, Ep. 135 | March 29, 2024 | SET | PA0002467684 | April 4, 2024 |
| Kaun Banega Crorepati, Season 13, Ep. 85 | December 17, 2021 | SET | PA0002337136 | January 3, 2022 |
| Kaun Banega Crorepati, Season 14, Ep. 17 | August 29, 2022 | SET | PA0002373617 | September 2, 2022 |

| Kaun Banega Crorepati, Season 15, Ep. 17 | September 6, 2023 | SET | PA0002440114 | September 21, 2023 |
|---|---|---|---|---|
| Kaun Banega Crorepati, Season 15, Ep. 19 | September 9, 2023 | SET | PA0002440154 | September 21, 2023 |
| Kaun Banega Crorepati, Season 15, Ep. 77 | November 28, 2023 | SET | PA0002447517 | November 30, 2023 |
| Kaun Banega Crorepati, Season 15, Ep. 99 | December 28, 2023 | SET | PA0002452725 | January 8, 2024 |
| Kuch Rang Pyaar Ke Aise Bhi-Nayi Kahaani, Ep. 77 | October 26, 2021 | SET | PA0002324876 | October 27, 2021 |
| Kuch Reet Jagat Ki Aisi Hai, Ep. 8 | February 28, 2024 | SET | PA0002460333 | February 29, 2024 |
| Kuch Reet Jagat Ki Aisi Hai, Ep. 30 | March 29, 2024 | SET | PA0002468748 | April 4. 2024 |
| Mehndi Wala Ghar, Ep. 5 | January 29, 2024 | SET | PA0002458066 | February 2, 2024 |
| Mehndi Wala Ghar, Ep. 27 | February 28, 2024 | SET | PA0002461256 | February 29, 2024 |
| Mehndi Wala Ghar, Ep. 48 | March 29, 2024 | SET | PA0002468762 | April 4, 2024 |
| Mere Sai, Ep. 989 | October 26, 2021 | SET | PA0002324879 | October 27, 2021 |
| Mere Sai, Ep. 1013 | November 29, 2021 | SET | PA0002330745 | November 30, 2021 |
| Mere Sai, Ep. 1252 | October 28, 2022 | SET | PA0002388798 | November 29, 2022 |
| Mere Sai, Ep. 1273 | November 28, 2022 | SET | PA0002389277 | December 6, 2022 |
| Mere Sai, Ep. 1295 | December 28, 2022 | SET | PA0002395809 | January 9, 2023 |
| Mere Sai, Ep. 1318 | January 30, 2023 | SET | PA0002401204 | February 3, 2023 |
| Mere Sai, Ep. 1358 | March 27, 2023 | SET | PA0002409097 | March 28, 2023 |
| Mose Chhal Kiye Jaaye, Ep. 13 | February 23, 2022 | SET | PA0002345363 | February 24, 2022 |
| Mose Chhal Kiye Jaaye, Ep. 36 | March 28, 2022 | SET | PA0002350066 | March 29, 2022 |
| Mose Chhal Kiye Jaaye, Ep. 58 | April 27, 2022 | SET | PA0002357050 | May 2, 2022 |

Exhibit 1 to Plaintiff's Complaint                    14                    Preg O'Donnell & Gillett PLLC

| Mose Chhal Kiye Jaaye, Ep. 79 | May 26, 2022 | SET | PA0002360934 | June 1, 2022 |
|---|---|---|---|---|
| Mose Chhal Kiye Jaaye, Ep. 98 | June 27, 2022 | SET | PA0002364308 | June 29, 2022 |
| Mose Chhal Kiye Jaaye, Ep. 120 | July 27, 2022 | SET | PA0002368261 | July 28, 2022 |
| Punyashlok Ahilyabaii, Ep. 212 | October 26, 2021 | SET | PA0002324864 | October 27, 2021 |
| Punyashlok Ahilyabaii, Ep. 236 | November 29, 2023 | SET | PA0002330985 | November 30, 2023 |
| Punyashlok Ahilyabaii, Ep. 250 | December 17, 2021 | SET | PA0002336979 | January 3, 2022 |
| Punyashlok Ahilyabaii, Ep. 276 | January 24, 2022 | SET | PA0002340104 | January 26, 2022 |
| Punyashlok Ahilyabaii, Ep. 321 | March 28, 2022 | SET | PA0002350067 | March 29, 2022 |
| Punyashlok Ahilyabaii, Ep. 343 | April 27, 2022 | SET | PA0002357049 | May 2, 2022 |
| Punyashlok Ahilyabaii, Ep. 364 | May 26, 2022 | SET | PA0002360932 | June 1, 2022 |
| Punyashlok Ahilyabaii, Ep. 431 | August 29, 2022 | SET | PA0002373618 | September 2, 2022 |
| Punyashlok Ahilyabaii, Ep. 475 | October 28, 2022 | SET | PA0002388797 | November 29, 2022 |
| Punyashlok Ahilyabaii, Ep. 496 | November 28, 2022 | SET | PA0002389279 | December 6, 2022 |
| Punyashlok Ahilyabaii, Ep. 518 | December 28, 2022 | SET | PA0002395091 | January 9, 2023 |
| Punyashlok Ahilyabaii, Ep. 541 | January 30, 2023 | SET | PA0002401205 | February 3, 2023 |
| Punyashlok Ahilyabaii, Ep. 581 | March 27, 2023 | SET | PA0002409098 | March 28, 2023 |
| Punyashlok Ahilyabaii, Ep. 605 | April 28, 2023 | SET | PA0002418960 | May 3, 2023 |
| Punyashlok Ahilyabaii, Ep. 626 | May 29, 2023 | SET | PA0002421593 | May 31, 2023 |
| Punyashlok Ahilyabaii, Ep. 646 | June 26, 2023 | SET | PA0002426603 | June 29, 2023 |

Exhibit 1 to Plaintiff's Complaint

15

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

| Punyashlok Ahilyabaii, Ep. 693 | August 30, 2023 | SET | PA0002436134 | September 5, 2023 |
|---|---|---|---|---|
| Sapno Ki Chhalaang, Ep. 15 | April 28, 2023 | SET | PA0002418964 | May 3, 2023 |
| Sapno Ki Chhalaang, Ep. 36 | May 29, 2023 | SET | PA0002420332 | May 31, 2023 |
| Sapno Ki Chhalaang, Ep. 56 | June 26, 2023 | SET | PA0002426606 | June 29, 2023 |
| Sapno Ki Chhalaang, Ep. 81 | July 31, 2023 | SET | PA0002430276 | August 2, 2023 |
| Shrimad Ramayan, Ep. 37 | January 29, 2024 | SET | PA0002458696 | February 7, 2024 |
| Shrimad Ramayan, Ep. 59 | February 28, 2024 | SET | PA0002461442 | February 29, 2024 |
| Shrimad Ramayan, Ep. 82 | March 29, 2024 | SET | PA0002467682 | April 4, 2024 |
| Yashomati Maiyya Ke Nandlala, Ep. 14 | June 27, 2022 | SET | PA0002364321 | June 29, 2022 |
| Yashomati Maiyya Ke Nandlala, Ep. 36 | July 27, 2022 | SET | PA0002368182 | July 28, 2022 |
| Yashomati Maiyya Ke Nandlala, Ep. 59 | August 29, 2022 | SET | PA0002373625 | September 2, 2022 |
| Yashomati Maiyya Ke Nandlala, Ep. 103 | October 28, 2022 | SET | PA0002388794 | November 29, 2022 |
| Yashomati Maiyya Ke Nandlala, Ep. 1124 | November 28, 2022 | SET | PA0002389285 | December 6, 2022 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| DISH NETWORK L.L.C., | ) | No. 2:24-cv-01683 |
| | ) | |
| Plaintiff, | ) | **EXHIBIT 2 TO PLAINTIFF'S** |
| | ) | **COMPLAINT** |
| v. | ) | |
| | ) | |
| VIRTUAL SYSTEMS, LLC and | ) | |
| VYACHESLAV SMYRNOV, | ) | |
| | ) | |
| Defendants. | ) | |

**WORKS HAVING EPISODES NOT SUBJECT TO REGISTRATION**

| Work | Channel |
|---|---|
| El Hayah el Yom | Al Hayah 1 |
| Fill In/News | ART Aflam 1 |
| Fill In/News | ART Aflam 2 |
| Fill In/News | ART Cima |
| ATN Business & Finance | ATN Bangla |
| News Hour Xtra | ATN News |
| Flash | B4U Movies |
| Bollywood Minute | B4U Movies |
| Hadret El Omda | CBC |
| Hadret El Omda | CBC Drama |
| El Kebir | Hekayat |
| Maktoub Alaya | Hekayat |
| Arabwood | LBC |
| Aswad | LBCI |

Exhibit 2 to Plaintiff's Complaint                        1

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

| El Nar Bel Nar | LBCI |
|---|---|
| Al Arbaji | LBCI |
| Laylet Soqot Baghdad | Melody Aflam |
| Fill In/News | Melody Classic |
| Apnar Jiggasha | NTV Bangla |
| Ei Somoy | NTV Bangla |
| Ek Shobday Quran | NTV Bangla |
| Glamour World | NTV Bangla |
| Moddh Rater Khabor | NTV Bangla |
| NTV Evening News | NTV Bangla |
| Rater Khabor | NTV Bangla |
| Shashtho Protidin | NTV Bangla |
| Shironam | NTV Bangla |
| Shondhar Khabor | NTV Bangla |
| Al Rahel | Rotana America |
| Laylat Al Soqooq | Rotana America |
| Maddam Sir | SAB |
| Ghar ek Sapnaa | Sahara One |
| Haunted Nights | Sahara One |
| News Bulletin | Sahara Samay |
| Prime 9 | Sahara Samay |
| Heroine Zindagi Ke Panno Se | SET |
| India's Best Dancer | SET |
| Extraa Shots Special | SET MAX |
| Breaking Ground | Times Now |
| India Upfront | Times Now |
| The Newshour | Times Now |
| The Newshour First | Times Now |
| Times Now Live | Times Now |
| Planet Bollywood News | Zoom |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| DISH NETWORK L.L.C., | ) | No. 2:24-cv-01683 |
| | ) | |
| Plaintiff, | ) | **EXHIBIT 3 TO PLAINTIFF'S** |
| | ) | **COMPLAINT** |
| v. | ) | |
| | ) | |
| VIRTUAL SYSTEMS, LLC and | ) | |
| VYACHESLAV SMYRNOV, | ) | |
| | ) | |
| Defendants. | ) | |

**PIRATE SERVICES**

| Virtual Systems IP Address[1] | URL Domain Name[2] |
|---|---|
| 31.42.184.159 | mtsiptv.com, sharkytv.com |
| 31.42.184.163 | dominoiptv.com |
| 31.42.185.54 | mohdtv.com |
| 31.42.187.33 | pro-ott.com |
| 31.42.187.97 | xviptv.com |
| 31.42.187.100 | viponetv.com |
| 31.42.187.118 | sansat.net |

[1] IP addresses correspond with Virtual Systems' servers and network the Pirate Services used to transmit the Works. Such IP addresses were at times masked through the use of services provided by non-party Cloudflare.

[2] URLs correspond with the Pirate Services' transmissions of the Works from Virtual Systems' servers and network. Any domain name incorporated in the URL is identified, along with any STB that was used to access the Works.

Exhibit 3 to Plaintiff's Complaint                    1

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

| 31.42.187.234 | bestott.net (atlas) |
|---|---|
| 45.11.57.127 | herogayab.net |
| 45.11.58.181 | tektv.co (iptv sam) |
| 45.11.58.199 | procajaiptv.com (dima) |
| 45.12.3.119 | symphonycdn.me (zumm) |
| 45.89.245.65 | ----- (great bee, super arab) |
| 45.89.245.66 | ----- (great bee, super arab) |
| 45.89.245.67 | ----- (great bee, joytv, lool, super arab) |
| 45.89.245.68 | ----- (great bee, joytv, lool, super arab) |
| 45.89.245.69 | ----- (lool, super arab) |
| 45.89.245.71 | ----- (great bee, joytv, super arab) |
| 45.95.235.118 | videoapne.co |
| 62.182.83.71 | vkcdn5.com |
| 62.182.83.91 | l1iptv.xyz; lionboxiptv.xyz |
| 62.182.85.20 | ----- (eagle) |
| 62.182.85.148 | pro-ott.com |
| 62.182.85.153 | itvdom.com |
| 62.182.85.155 | webvps.de |
| 62.182.85.159 | xviptv.com |
| 62.182.86.80 | imlie.net |
| 62.182.86.121 | snipemedia.net (snipe) |
| 79.124.41.28 | ----- (great bee, joytv, super arab) |
| 79.124.41.29 | ----- (great bee, joytv, super arab) |
| 79.124.41.30 | ----- (great bee, joytv, lool) |
| 79.124.41.32 | ----- (lool) |
| 79.124.41.39 | ----- (great bee, joytv, super arab) |
| 91.208.115.151 | rktv-ott.com (dima) |
| 91.208.115.170 | sansat.net |
| 91.235.143.17 | procajaiptv.com (dima) |
| 95.214.232.234 | tptv.cz (iptv sam) |
| 95.214.234.7 | atg100.xyz (atlas) |
| 95.214.234.104 | videoapne.co |
| 95.214.234.243 | ----- (zumm) |

| 95.214.235.1 | viponetv.com |
|---|---|
| 95.214.235.96 | wanicelife.com |
| 103.211.101.124 | mmastertv.xyz (atlas) |
| 103.211.101.131 | mmastertv.xyz (atlas), msuperab.xyz (digitalizard) |
| 103.211.101.137 | msuperab.xyz (digitalizard) |
| 103.211.101.166 | msuperab.xyz (digitalizard) |
| 103.211.101.174 | msuperab.xyz (digitalizard) |
| 103.211.101.175 | msuperab.xyz (digitalizard) |
| 152.89.61.127 | sansat.net |
| 152.89.61.130 | tektv.co (iptv sam) |
| 152.89.61.137 | tvsertop.com (atlas) |
| 152.89.61.141 | sansat.net |
| 152.89.61.181 | getmax.cx (woob) |
| 152.89.62.34 | tvlogy.to |
| 152.89.62.76 | wanicelife.com |
| 152.89.63.69 | saturne.one (iptv sam) |
| 152.89.63.177 | procajaiptv.com (dima) |
| 176.119.29.14 | livebypass.com (gogo) |
| 176.119.29.17 | ----- (gogo) |
| 176.119.29.35 | ----- (gogo) |
| 176.119.29.42 | ----- (gogo) |
| 176.119.29.47 | ----- (gogo) |
| 176.119.29.78 | ----- (gogo) |
| 185.66.89.216 | atg100.xyz (atlas) |
| 185.66.90.155 | viponetv.com |
| 185.66.90.205 | xviptv.com |
| 185.66.90.247 | pro-ott.com |
| 185.233.186.33 | 3mlive.com (desi) |
| 185.254.196.8 | netmos.ovh |
| 185.254.196.31 | vkcdn5.com |
| 185.254.197.141 | atg100.xyz (atlas) |
| 185.254.197.149 | atg100.xyz (atlas) |
| 185.254.197.154 | atg100.xyz (atlas) |

Exhibit 3 to Plaintiff's Complaint                    3

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

| 185.254.197.156 | atg100.xyz (atlas) |
|---|---|
| 185.254.197.164 | atg100.xyz (atlas) |
| 185.254.197.166 | atg100.xyz (atlas) |
| 185.254.197.221 | mtsiptv.com |
| 185.254.197.223 | dominoiptv.com |
| 185.255.122.88 | 3mlive.com, realtv-hd.com (desi) |
| | driptvs.com |

## ПРОХАННЯ
### про вручення за кордоном судових або позасудових документів
REQUEST / DEMANDE

for service abroad of judicial or extrajudicial documents / aux fins de signification ou de notification à l'étranger d'un acte judiciaire ou extrajudiciaire

### відповідно до Гаазької Конвенції про вручення за кордоном судових або позасудових документів у цивільних або комерційних справах 1965 року

Hague Service Convention of 1965 / Convention Notification de La Haye de 1965

| | |
|---|---|
| Назва і адреса запитуючого органу:<br>Identity and address of the applicant / Identité et adresse du requérant.<br><br>DISH Network L.L.C.<br>c/o counsel, Timothy Frank, Hagan Noll & Boyle, LLC<br>820 Gessner, Suite 940, Houston, Texas 77024<br>Email: timothy.frank@hnbllc.com<br>Phone: +1 713-343-0478 | Адреса запитуваного органу:<br>Address of receiving authority / Adresse de l'autorité destinataire:<br><br>Ministry of Justice of Ukraine<br>Directorate on International Law and Co-operation<br>Department on International Law<br>13, Horodetskogo St.<br>Kyiv 01001, Ukraine |

Запитуючий орган, що підписався нижче, має честь передати - у двох примірниках – перераховані нижче документи та відповідно до статті 5 зазначеної Конвенції просить забезпечити без відкладне вручення одного примірника одержувачу:

The undersigned applicant has the honour to transmit – in duplicate – the documents listed below and, in conformity with Article 5 of the above-mentioned Convention, requests prompt service of one copy thereof on the addressee, i.e.:

Le requérant soussigné a l'honneur de faire parvenir – en double exemplaire – à l'autorité destinataire les documents ci-dessous énumérés, en la priant, conformément à l'article 5 de la Convention précitée, d'en faire remettre sans retard un exemplaire au destinataire, à savoir :

*(дані про особу і адреса)* / identity and address / identité et adresse

Virtual Systems, LLC

33/37 Laboratorna St., Kyiv 03150, Ukraine

- ◉ a)  відповідно до підпункту (а) частини першої статті 5 Конвенції. *
  in accordance with the provisions of sub-paragraph (a) of the first paragraph of Article 5 of the Convention. *
  selon les formes légales (article 5, alinéa premier, lettre a). *

- ○ b)  відповідно до наступного спеціального способу (підпункт (b) частини першої ст.5): *
  in accordance with the following particular method (sub-paragraph (b) of the first paragraph of Article 5): *
  selon la forme particulière suivante (article 5, alinéa premier, lettre b): *

- ○ c)  шляхом безпосередньо доставки адресату, якщо він приймає його добровільно (друга частина статті 5). *
  by delivery to the addressee, if the addressee accepts it voluntarily (second paragraph of Article 5). *
  le cas échéant, par remise simple (article 5, alinéa 2) *

Прохання до запитуваного органу повертати або повернути запитуючому органу один примірник документів і його додатків * із підтвердженням на зворотному боці.

The authority is requested to return or to have returned to the applicant a copy of the documents – and of the annexes * – with a certificate as provided on the next page. / Cette autorité est priée de renvoyer ou de faire renvoyer au requérant un exemplaire de l'acte – et de ses annexes * – avec l'attestation figurant à la page 2.

Перелік документів:
List of documents: / Énumération des pièces :

Court Issued Summons for Virtual Systems LLC
DISH Network L.L.C.'s Complaint with Exhibits 1-3

Складено у м./ Done at / Fait à  Houston, TX, United States    - дата / the / le  October 22, 2024
Підпис та/або печатка.
Signature and/or stamp.
Signature et/ou cachet.

## ПІДТВЕРДЖЕННЯ
### CERTIFICATE / ATTESTATION

Орган, що підписався нижче, має честь підтвердити відповідно до статті 6 Конвенції,
The undersigned authority has the honour to certify, in conformity with Article 6 of the Convention,
L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,

1) *  що документ був вручений / that the document has been served/ que la demande a été exécutée

  - (дата) / the (date)/ le (date)

  - у (місце, вулиця, номер) / at (place, street, number)/ à (localité, rue, numéro)

  - одним із способів, передбачених у статті 5:
    in one of the following methods authorised by Article 5:
    dans une des formes suivantes prévues à l'article 5:

    a)  відповідно до підпункту (a) частини першої статті 5 Конвенції. *
        in accordance with the provisions of sub-paragraph (a) of the first paragraph of Article 5 of the Convention *
        selon les formes légales (article 5, alinéa premier, lettre a). *
    b)  відповідно до наступного спеціального способу: *
        in accordance with the following particular method: *
        selon la forme particulière suivante: *

    c)  шляхом безпосередньої доставки адресату, який прийняв його добровільно. *
        by delivery to the addressee, who accepted it voluntarily *
        par remise simple. *

Документи, зазначені у проханні, були вручені особі:
The documents referred to in the request have been delivered to:
Les documents mentionnés dans la demande ont été remis à:
  - (ім'я та дані про особу)/ (identity and description of person) (identité et qualité de la personne)

  - стосунки з одержувачем (родинні, ділові або інші):
    relationship to the addressee (family, business or other):
    liens de parenté, de subordination ou autres, avec le destinataire de l'acte:

2) *  що документ не був вручений з таких причин:
       that the document has not been served, by reason of the following facts:
       que la demande n'a pas été exécutée, en raison des faits suivants:

Відповідно до частини другої статті 12 Конвенції, прохання запитуючого органу сплатити або відшкодувати витрати, викладені у додатку. *
In conformity with the second paragraph of Article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement. *
Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint. *

### Додатки
Annexes / Annexes

Документи, що повертаються: / Documents returned: / Pièces renvoyées.

У разі необхідності, документи, які підтверджують вручення:
In appropriate cases, documents establishing the service / Le cas échéant, les documents justificatifs de l'exécution

Складено у м./ Done at / Fait à                    , дата / the / le

Підпис та/або печатка.
Signature and/or stamp.
Signature et/ou cachet.

**Короткий виклад документа, що підлягає врученню**
Summary of the document to be served / Éléments essentiels de l'acte

**відповідно до Гаazької Конвенції про вручення за кордоном судових або позасудових документів у цивільних або комерційних 1965 року**
Hague Service Convention of 1965 / Convention Notification de La Haye de 1965

**(Частина четверта статті 5)**
(Article 5, fourth paragraph) / (article 5, alinéa 4)

**Ім'я і адреса одержувача** / Identity and address of the addressee / Identité et adresse du destinataire/——:

Virtual Systems, LLC
33/37 Laboratorna St., Kyiv 03150, Ukraine

## ВАЖЛИВО

Документ, що додається, має юридичний характер і може вплинути на Ваші права і обов'язки. „Короткий виклад документа, що підлягає врученню" надає Вам деяку інформацію щодо виду і предмету документа. Однак, Вам обов'язково слід уважно ознайомитись безпосередньо з текстом документу. Можливо, буде необхідно отримати юридичну консультацію.

Якщо Ви не маєте достатніх фінансових засобів, зверніться за інформацією про одержання безплатної правової допомоги у державі свого проживання або у державі, звідки надійшов документ.

Інформацію щодо можливості одержання безплатної правової допомоги у державі, звідки надійшов документ, можна одержати за адресою:

### IMPORTANT

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS. LES «ELEMENTS ESSENTIELS DE L'ACTE» VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET. IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MEME DU DOCUMENT. IL PEUT ETRE NECESSAIRE DE DEMANDER UN AVIS JURIDIQUE.

SI VOS RESSOURCES SONT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSSIBILITE D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE SOIT DANS VOTRE PAYS SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT.

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITES D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSULTATION JURIDIQUE DANS LE PAYS D'ORIGINE PEUVENT ETRE ADRESSEES A :

### IMPORTANT

THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE 'SUMMARY OF THE DOCUMENT TO BE SERVED' WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE. YOU SHOULD HOWEVER READ THE DOCUMENT ITSELF CAREFULLY. IT MAY BE NECESSARY TO SEEK LEGAL ADVICE.

IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED.

ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO:

При заповненні цієї форми рекомендується вкладати стандартні положення англійською та французькою, а також у відповідних випадках також офіційною мовою або однією з офіційних мов держави, звідки надійшов документ. Заповнювати цей бланк можна мовою держави, у яку надсилається документ, або англійською чи французькою мовою.

Il est recommandé que les mentions imprimées dans cette note soient rédigées en langue française et en langue anglaise et le cas échéant, en outre, dans la langue ou l'une des langues officielles de l'Etat d'origine de l'acte. Les blancs pourraient être remplis soit dans la langue de l'Etat où le document doit être adressé, soit en langue française, soit en langue anglaise.

It is recommended that the standard terms in the notice be written in English and French and where appropriate also in the official language, or one of the official languages of the State in which the document originated. The blanks could be completed either in the language of the State to which the documents is to be sent, or in English or French

Назва та адреса запитуючого органу:
Name and address of the requesting authority:
Nom et adresse de l'autorité requérante:

DISH Network L.L.C.

c/o counsel, Timothy Frank, Hagan Noll & Boyle, LLC

820 Gessner, Suite 940, Houston, Texas 77024, United States

Інформація щодо сторін: *
Particulars of the parties: *
Identité des parties: *

Plaintiff: DISH Network L.L.C.

Defendants: Virtual Systems, LLC and Vycheslav Smyrnov

## СУДОВИЙ ДОКУМЕНТ **
### JUDICIAL DOCUMENT / ACTE JUDICIAIRE

Вид і предмет документа:
Nature and purpose of the document:
Nature et objet de l'acte :

To notify Virtual Systems, LLC and Vycheslav Smyrnov that a legal action was filed against them and to summon them to respond.

Вид і предмет судового провадження та, у разі необхідності, сума спору:
Nature and purpose of the proceeding and, where appropriate, the amount in dispute:
Nature et objet de l'instance, le cas échéant, le montant du litige:

Virtual Systems, LLC and Vycheslav Smyrnov are named as defendants in a civil lawsuit for copyright infringement.

Дата і місце постання перед судом: **
Date and place for entering appearance: **
Date et lieu de la comparution : **

Virtual Systems, LLC and Vycheslav Smyrnov are required to respond to the complaint within 21 days of being served.

Суд, що постановив рішення: **
Court which has given judgment : **
Juridiction qui a rendu la décision : **

Judgment has not yet been entered.

Дата рішення: **
Date of judgment : **
Date de la décision : **

Judgment has not yet been entered.

Строки, визначені у документі: **

Time limits stated in the document: **
Indication des délais figurant dans l'acte: **

Virtual Systems, LLC and Vycheslav Smyrnov are required to respond to the complaint within 21 days of being served.

## ПОЗАСУДОВИЙ ДОКУМЕНТ **
### EXTRAJUDICIAL DOCUMENT / ACTE EXTRAJUDICIAIRE

Вид і предмет документа:
Nature and purpose of the document:
Nature et objet de l'acte:

Строки, визначені у документі: **

Time limits stated in the document **
Indication des délais figurant dans l'acte **

reset form    print form



## Certified Translation

# Certificate of Accuracy

Ekaterina Kovaleva
Translator/Interpreter

Translated document: Complaint with Exhibits 1-3; Summons as to Virtual Systems LLC; Summons as to Vyacheslav Smyrnov.

As a translator for Day Translations, Inc., I, Ekaterina Kovaleva, declare that I am a bilingual translator who is thoroughly familiar with the Ukrainian and English languages. I have translated the attached document to the best of my knowledge from English into Ukrainian and the Ukrainian text is an accurate and true translation of the original document presented to the best of my knowledge and belief.

Signed on October 20, 2020

Ekaterina Kovaleva

*Professional Translator for Day Translations, Inc.*

    

 118 Vintage Park Blvd. #W716 Houston, Tx 77070|Toll Free: 1-800-969-6853  Fax: 1-800-856-2759
E-mail: contact@daytranslations.com | www.daytranslations.com 

## Короткий виклад документа, що підлягає врученню
Summary of the document to be served / Éléments essentiels de l'acte

### відповідно до Гаазької Конвенції про вручення за кордоном судових або позасудових документів у цивільних або комерційних 1965 року
Hague Service Convention of 1965 / Convention Notification de La Haye de 1965

(Частина четверта статті 5)
(Article 5, fourth paragraph) / (article 5, alinéa 4)

**Ім'я і адреса одержувача** / Identity and address of the addressee / Identité et adresse du destinataire/ -----:

Vyacheslav Smyrnov
33/37 Laboratorna St., Kyiv 03150, Ukraine (work)
1V Vadyma Hetmana St., Apt. 46, Kyiv 03057, Ukraine (home)

## ВАЖЛИВО

Документ, що додається, має юридичний характер і може вплинути на Ваші права і обов'язки. „Короткий виклад документа, що підлягає врученню" надає Вам деяку інформацію щодо виду і предмету документа. Однак, Вам обов'язково слід уважно ознайомитись безпосередньо з текстом документу. Можливо, буде необхідно отримати юридичну консультацію.

Якщо Ви не маєте достатніх фінансових засобів, зверніться за інформацією про одержання безплатної правової допомоги у держави свого проживання або у держави, звідки надійшов документ.

Інформацію щодо можливості одержання безплатної правової допомоги у держави, звідки надійшов документ, можна одержати за адресою:

IMPORTANT

LE DOCUMENT CI-JOINT EST DE NATURE JURIDIQUE ET PEUT AFFECTER VOS DROITS ET OBLIGATIONS. LES «ELEMENTS ESSENTIELS DE L'ACTE» VOUS DONNENT QUELQUES INFORMATIONS SUR SA NATURE ET SON OBJET. IL EST TOUTEFOIS INDISPENSABLE DE LIRE ATTENTIVEMENT LE TEXTE MEME DU DOCUMENT. IL PEUT ETRE NECESSAIRE DE DEMANDER UN AVIS JURIDIQUE

SI VOS RESSOURCES SONT INSUFFISANTES, RENSEIGNEZ-VOUS SUR LA POSSIBILITE D'OBTENIR L'ASSISTANCE JUDICIAIRE ET LA CONSULTATION JURIDIQUE SOIT DANS VOTRE PAYS SOIT DANS LE PAYS D'ORIGINE DU DOCUMENT.

LES DEMANDES DE RENSEIGNEMENTS SUR LES POSSIBILITES D'OBTENIR L'ASSISTANCE JUDICIAIRE OU LA CONSULTATION JURIDIQUE DANS LE PAYS D'ORIGINE PEUVENT ETRE ADRESSEES A :

IMPORTANT

THE ENCLOSED DOCUMENT IS OF A LEGAL NATURE AND MAY AFFECT YOUR RIGHTS AND OBLIGATIONS. THE 'SUMMARY OF THE DOCUMENT TO BE SERVED' WILL GIVE YOU SOME INFORMATION ABOUT ITS NATURE AND PURPOSE. YOU SHOULD HOWEVER READ THE DOCUMENT ITSELF CAREFULLY. IT MAY BE NECESSARY TO SEEK LEGAL ADVICE.

IF YOUR FINANCIAL RESOURCES ARE INSUFFICIENT YOU SHOULD SEEK INFORMATION ON THE POSSIBILITY OF OBTAINING LEGAL AID OR ADVICE EITHER IN THE COUNTRY WHERE YOU LIVE OR IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED

ENQUIRIES ABOUT THE AVAILABILITY OF LEGAL AID OR ADVICE IN THE COUNTRY WHERE THE DOCUMENT WAS ISSUED MAY BE DIRECTED TO:

При заповненні цієї форми рекомендується викладати стандартні положення англійською та французькою, а також у відповідних випадках також офіційною мовою або однією з офіційних мов держави, звідки надійшов документ. Заповнювати цей бланк можна мовою держави, у яку надсилається документ, або англійською чи французькою мовою

Il est recommandé que les mentions imprimées dans cette note soient rédigées en langue française et en langue anglaise et le cas échéant, en outre, dans la langue ou l'une des langues officielles de l'Etat d'origine de l'acte. Les blancs pourraient être remplis soit dans la langue de l'Etat où le document doit être adressé, soit en langue française, soit en langue anglaise.

It is recommended that the standard terms in the notice be written in English and French and where appropriate also in the official language, or one of the official languages of the State in which the document originated. The blanks could be completed either in the language of the State to which the documents is to be sent, or in English or French

Назва та адреса запитуючого органу:
Name and address of the requesting authority:
Nom et adresse de l'autorité requérante:

DISH Network L.L.C.

c/o counsel, Timothy Frank, Hagan Noll & Boyle, LLC

820 Gessner, Suite 940, Houston, Texas 77024, United States

Інформація щодо сторін: *
Particulars of the parties: *
Identité des parties: *

Plaintiff: DISH Network L.L.C.

Defendants: Virtual Systems, LLC and Vycheslav Smyrnov

## СУДОВИЙ ДОКУМЕНТ **
### JUDICIAL DOCUMENT / ACTE JUDICIAIRE

Вид і предмет документа:
Nature and purpose of the document:
Nature et objet de l'acte :

To notify Virtual Systems, LLC and Vycheslav Smyrnov that a legal action was filed against them and to summon them to respond.

Вид і предмет судового провадження та, у разі необхідності, сума спору:
Nature and purpose of the proceeding and, where appropriate, the amount in dispute:
Nature et objet de l'instance, le cas échéant, le montant du litige:

Virtual Systems, LLC and Vycheslav Smyrnov are named as defendants in a civil lawsuit for copyright infringement.

Дата і місце постання перед судом: **
Date and place for entering appearance: **
Date et lieu de la comparution : **

Virtual Systems, LLC and Vycheslav Smyrnov are required to respond to the complaint within 21 days of being served.

Суд, що постановив рішення: **
Court which has given judgment : **
Juridiction qui a rendu la décision : **

Judgment has not yet been entered.

Дата рішення: **
Date of judgment : **
Date de la décision : **

Judgment has not yet been entered.

Строки, визначені у документі: **

Time limits stated in the document: **
Indication des délais figurant dans l'acte: **

Virtual Systems, LLC and Vycheslav Smyrnov are required to respond to the complaint within 21 days of being served.

## ПОЗАСУДОВИЙ ДОКУМЕНТ **
### EXTRAJUDICIAL DOCUMENT / ACTE EXTRAJUDICIAIRE

Вид і предмет документа:
Nature and purpose of the document:
Nature et objet de l'acte:

Строки, визначені у документі: **

Time limits stated in the document: **
Indication des délais figurant dans l'acte **

AO 440 (Пер. 12.06) Позов у громадській справі

ОКРУЖНИЙ СУД СПОЛУЧЕНИХ ШТАТІВ

для

Західного округу штату Вашингтон

| | |
|---|---|
| ТОВ DISH NETWORK | ) |
| | ) |
| | ) |
| | ) |
| Позивач(і) | ) |
| проти | ) |
| | ) |
| ТОВ VIRTUAL SYSTEMS та В'ЯЧЕСЛАВ СМИРНОВ | ) |
| | ) |
| | ) |
| Відповідач(і) | ) |

Громадська справа № 2:24-cv-01683

ПОЗОВ У ГРОМАДСЬКІЙ СПРАВІ

До: (Ім'я та адреса відповідача) В'ячеслава Смирнова
вул. Вадима Гетьмана, б. 1В, кв. 46
м. Київ, Україна
03057

Проти вас складений судовий позов.

Протягом 21 дня від вручення вам цього виклику (не враховуючи день вручення) - або 60 днів, якщо ви є агентом Сполучених Штатів або офіційною особою, або працівником Сполучених Штатів, описаних у Фед. Р. Цив. С. 12 (а)(2) або (3) — ви маєте відправити позивачу відповідь на додану скаргу або клопотання згідно Правила 12 Федеральних Правил Громадського Процесу. Відповідь має бути спрямована позивачу або адвокату позивача, ім'я та адреса якого:

Грегорі Латендрес
ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101

Якщо ви не надаєте відповідь, рішення буде винесене проти вас за умовчанням для задоволення вимог за скаргою. Ви маєте скласти свою відповідь або клопотання в суді.

СУДОВИЙ КЛЕРК

Дата: 18 жовтня 2024 р.

Підпис судового клерка або помічника клерка

AO 440 (Пер. 12.06) Позов у громадській справі (Сторінка 2)

Громадська справа № 2:24-cv-01683

## ПІДТВЕРДЖЕННЯ ВРУЧЕННЯ
(Цю частину не потрібно заповнювати в суді, якщо не передбачено Фед. Р. Цив. С. 4 (I))

Цей позов до (ім'я та посада особи, якщо існує) отриманий мною (дата)

☐    Мною особисто був вручений позов до особи у (місце) (дата)                                           ; або

☐    Я залишив цей позов у місці проживання або знаходження особи з (ім'я), довірчою особою придатного віку, що проживає там (дата), а також вислано копію за останньою відомою адресою особи; або

        ☐                                                                                                          Мною

вручений позов до (ім'я особи), що є законним представником вповноваженим отримувати процедурні позови від особи (назва організації)

Під загрозою відповідальності за лжесвідчення я стверджую, що ця інформація є вірною.

Дата:

                                                            Підпис особи, що вручила позов


                                                            Ім'я та посада печатними буквами



                                                            Адреса особи, що вручила позов

Додаткова інформація стосовно спробу вручення і т.д.:

ОКРУЖНИЙ СУД СПОЛУЧЕНИХ ШТАТІВ
ЗАХІДНИЙ ОКРУГ ШТАТУ ВАШИНГТОН
У СІЄТЛІ

| | | |
|---|---|---|
| ТОВ DISH NETWORK, | ) | № 2:24-cv-01683 |
| | ) | |
| Позивач, | ) | **СКАРГА ПОЗИВАЧА** |
| | ) | |
| проти | ) | |
| | ) | |
| ТОВ VIRTUAL SYSTEMS та | ) | |
| В'ЯЧЕСЛАВ СМИРНОВ, | ) | |
| | ) | |
| Відповідачі. | ) | |

**Тип справи**

1.        Позивач, ТОВ DISH Network ("DISH") є одним з найбільших провайдерів платного телебачення в Сполучених Штатах, та має мільйони споживачів по всій країні. Ця справа стосується порушення авторського права DISH у програмі ("Робота"), що вийшла на 23 міжнародних каналах, ексклюзивно ліцензованих DISH на передачу у Сполучених Штатах ("Канали").

2.        Авторське право DISH в Роботі було прямо порушено, тому що Роботи передавалися без авторизації DISH за допомогою піратських сервісів стримінгу ("Піратські сервіси") споживачам на території Сполучених Штатів ("Споживачі"). Піратські сервіси залежать від надання провайдерами хостингу послуг та мережі, потрібної для передачі Роботи за допомогою мережі інтернет Споживачам.

3.        Відповідач, ТОВ Virtual Systems (Віртуальні системи) матеріально запобігли та викликали пряме порушення авторського права Робіт Піратськими сервісами тим, що надали послуги та мережу  ПТОВ Preg O'Donnell & Gillett, вул. Юніон Стріт. б. 401, оф. 1900, Сієтл, Вашингтон, 98101 (206) 287-1775, що були використані

СКАРГА ПОЗИВАЧА

Піратськими сервісами для передачі Робот, включно з серверами дата центру Віртуальних систем у Сієтлі. Віртуальні системі відкрито рекламують, що не дотримуються законів щодо авторського права Сполучених Штатів, а також не вимагають своїх клієнтів, як Піратські сервіси, дотримуватися таких законів.

4.    Віртуальні системи знали, що Піратські сервіси порушують авторське право Робіт, тому що за сотнями випадків DISH просили Віртуальні системи припинити це специфічне порушення, що відбувалося на цих серверах та у цій мережі. Віртуальні системи мали можливість прийняти прості міри для припинення порушення – за допомогою видалення або виключення стримів, що порушують права, або закрити рахунки Піратських сервісів через їх повторні порушення, – але Віртуальні системи відмовилися прийняти такі міри, та вирішили продовжити отримувати доходи від прямого порушення Піратськими сервісами.

5.    Віртуальні системи є відповідальними за допоміжне та опосередковане порушення авторського права. Їх власник та Голова, відповідач В'ячеслав Смирнов ("Смирнов"), також несе особисту відповідальність через те, що він авторизував, керував та приймав участь у порушенні Віртуальними системами, включно з управлінням серверами та мережею Піратських сервісів, що були використані для порушення прав Робіт, а також, незважаючи на повідомлення DISH про це порушення, нездатністю припинити його.

## Сторони

6.    Позивач DISH є товариством з обмеженою відповідальністю, зареєстрованим за законом штату Колорадо з основною адресою ведення бізнесу на бульварі Саус Мерідіан, б. 9601, Енгельвуд, штат Колорадо, 80112.

7.    Відповідач Віртуальні системі є товариством з обмеженою відповідальністю, зареєстрованим за законом України з основною адресою ведення бізнесу на вул. Лабораторній, б. 33/37, м. Київ, Україна.

8    Відповідач Смирнов є приватною особою, адреса якої відома на вул. Вадима Гетьмана, б. 1В, кв. 46, м. Київ, Україна.

## Юрисдикція та місце проведення

9.    Суд має юрисдикцію суб'єкту за статтею 28 U.S.C. §§ 1331, 1338 та 1400 (коду

США), тому що DISH надає скаргу за законом про захист Авторського права, статті 17 U.S.C. § 101 *та наступні*.

10.     Суд має особисту юрисдикцію над Віртуальними системами згідно Федерального закону про Громадський процес 4(k)(1)(A), тому що Віртуальні системи здійснили правопорушення у штаті Вашингтон, Скарга позивача     2     ПТОВ     PREG O'DONNELL & GILLETT

вул. Юніон Стріт, б. 401, оф. 1900, м. Сієтл, штат Вашингтон, 98101 (206) 287-1775

Справа 2:24-cv-01683 Документ 1 Внесений 15.10.2024 Сторінка 4 з 20

включно з роботою їх центру даних та серверів в районі м. Сієтл, що приймають або приймали участь у порушенні прав Робіт Піратськими сервісами.[1] Віртуальні системі не припинили правопорушення, що відбувалося з їх центру даних та серверів у м. Сієтл, після того, як були повідомлені про це порушення. DISH понесли збитки у штаті Вашингтон, тому що принаймні частина правопорушення Віртуальними системами відбувалося в цьому штаті, що пошкоджує цінність ексклюзивного авторського права DISH, а також, тому що за інформацією та переконанням, Роботи передавалися Споживачам в штаті Вашингтон, що уникали плати за підписку на DISH.

## ПОКРИТТЯ ВСИС

ВСИС Хост - це провайдер хостингу, що має інфраструктуру в м. Київ, м. Амстердам та м.

Сієтл, всі з яких є центрами даних III Ступеня. Ці ЦД є приходом високопродуктивної

мережі, що включає декілька несідних ліній зв'язку та потужність більш ніж 2 Тб/с.

Ми продовжуємо розширювати географію нашого покриття!

ВСИС ХОСТ ПРАЦЮЄ З ЦЕНТРАМИ ДАНИХ III СТУПЕНІ:

М. КИЇВ, УКРАЇНА
АМСТЕРДАМ, НІДЕРЛАНДИ
М. СІЄТЛ. США

11.    Суд, альтернативно, має особисту юрисдикцію над Віртуальними системами за Федеральним законом про Громадський процес 4(k)(2) у обсязі, що не є достатнім базисом для юрисдикції в штаті Вашингтон 4(k)(1)(A). Віртуальні системі визнають штат Вашингтон

---

[1] https://vsys.host/ (зображення мапи центру даних нижче). За інформацією та переконанням, центр даних Віртуальних систем знаходиться на вул. Саус 120 Плейс, б. 3355. Тукуіла, штат Вашингтон. Посилання, вказані в цій скарзі, відвідувалися останній раз 6 серпня 2024 року.

СКАРГА ПОЗИВАЧА                    3                    ПТОВ PREG O'DONNELL &
GILLETT

вул. Юніон Стріт, б. 401, оф. 1900, м. Сієтл, штат Вашингтон, 98101 (206) 287-1775

єдиною місцевістю, де вони функціонують в Сполучених Штатах, і тому, за інформацією та переконанням, не є суб'єктом юрисдикції у суді будь-якого іншого штату, або загальної юрисдикції.

12.    Віртуальні системи мають достатні контакти в Сполучених Штатах для підтримання особистої юрисдикції за законом 4(k)(2), що включає додатково до центрів даних та серверів в м. Сієтл, маркетингову кампанію, спрямовану на сервіси стримінгу, що бажають надавати контент з правопорушеннями для аудиторії Сполучених Штатів, уникаючи відповідальності за законом про захист авторського права Сполучених Штатів; таких, як Піратські сервіси. DISH понесли збитки у Сполучених Штатах згідно з викладеними вище причинами, а також

ця шкода посилена тим, що, за інформацією та переконанням, порушення щодо Робіт відбувалося в Сполучених Штатах та Споживачами по всій країні, що уникали сплати за підписки на DISH. DISH також понесли збитки в Сполучених Штатах, тому що це компанія, зареєстрована в Сполучених Штатах, та має авторське право, що поширюється тільки на Сполучені Штати.

13.    Суд має особисту юрисдикцію над Смирновим за законом 4(k)(1)(A), або альтернативно за законом 4(k)(2), тому що Смирнов є основним учасником правопорушень Віртуальними системами, або має контроль та щонайменше приймав пряму участь в таких діях. Смирнов є власником, директором та головою Віртуальних систем. Смирнов ідентифікує свої основні обов'язки у Віртуальних системах, як "управління мережею та обладнанням серверів" і "відділом з 10 людей."[2] Смирнов отримав особисте повідомлення про порушення авторського права Робіт, що відбувалося у цій мережі та серверах, якими він керував, але він не припинив це правопорушення. Смирнов отримав фінансову вигоду від цього правопорушення в якості власника, директора та голови Віртуальних систем.

14.    Суди виконують особисту юрисдикцію над Віртуальним системами та Смирновим, згідно з тим, де закон 4(k)(1)(A) або 4(k)(2) є раціональними та сумісними з Конституцією Сполучених Штатів та Законом Сполучених Штатів, тому що їх спрямована дія в штаті Вашингтон та Сполучених Штатах є істотною, тяжкість необхідності захисту у цьому суді є мінімальною, а цей Суд є найвідповіднішим форумом для винесення рішення за цією справою. У додаток до знаходження центрів даних та серверів у м. Сіетл, Віртуальні системі використовують компанії Сполучених Штатів для підтримки та реклами свого бізнесу та послуг, включно з Facebook, Twitter/X, LinkedIn, Reddit, YouTube, GitHub та Публічним Реєстром Доменів, де зареєстровано їх вебсайт. Віртуальні системи - це відома компанія, що генерує прибуток у десятки мільйонів доларів США щороку. Сполучені Штати мають інтерес у захисті своїх законів про авторське право у федеральних судах, а DISH має

---

[2]https://www.linkedin.com/in/slavikbutch/?originalSubdomain=ua Скарга позивача ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

інтерес у захисті себе у федеральному суді Сполучених Штатів, мабуть єдиному форумі, де DISH може примушувати виконання захисту свого авторського права в Сполучених Штатах.

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

15.    Місце проведення є належним в цьому Суді згідно статті 28 U.S.C. § 1391(b)(2) (коду США), тому що основна частина подій, що спричинили скаргу DISH відбулася в цьому окрузі; § 1391(b)(3), тому що Віртуальні системі та Смирнов є суб'єктами особистої юрисдикції в цьому окрузі; а також згідно § 1391(c)(3), тому що нерезиденти Сполучених Штатів можуть бути осуджені у будь-якому окрузі. Місце проведення також є належним згідно статті 28 U.S.C. § 1400(a) (коду США), тому що ця справа стосується порушення Закону про захист авторського права.

## Авторське право DISH

16.    DISH надає доступ на Канали своїм підписникам згідно договорів, що були складені з власниками цих Каналів, або їх агентами ("Мережі"). Мережі та Канали включають: B4U U.S., Inc. (*B4U Movies*); Bennett, Coleman та Company Limited (*Times Now* та *Zoom*); GloboSat Entertainment LLC (*Sahara One* та *Sahara Samay*); International Media Distribution (Luxembourg) S.A.R.L. (*Al Hayah 1, ART Aflam 1, ART Aflam 2, ART Cima, Hekayat, LBC, LBCI,* та *Rotana America*); MSM Asia Limited (*SET, SET MAX,* та *SAB*); Soundview ATN LLC (*ATN Bangla*); Soundview Broadcasting, L.L.C. (*ATN News* та *NTV Bangla*); та World Span Media Consulting, Inc. (*CBC, CBC Drama, Melody Aflam,* та *Melody Classic*).

17.    Ця Мережа отримує авторські права на Роботи, що виходять на її відповідних Каналах, включно з виготовленням Робіт та за призначенням. Матеріали з авторським правом включають Роботи, зареєстровані у Відділі Авторського Права Сполучених Штатів, а також додаткові незареєстровані Роботи.[3] Декілька Робіт включають серіали, кожний епізод яких складає окреме авторське право на Роботу.

18.    DISH склали підписаний, письмовий договір ліцензування з Мережами, гарантуючи ексклюзивне право на поширення та публічне виконання Робіт у ефірі та на Каналах в Сполучених Штатах, засобами, що включають супутникове, over-the-top (OTT) та

---

[3]Приклад 1 (ілюстрований список Робіт, що були зареєстровані) та Приклад 2 (ілюстрований список незареєстрованих Робіт).

вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документ 1 Внесений 15.10.2024 Сторінка 9 з 20

інтернет протокольне телебачення (IPTV), а також інтернет.

19.     Ексклюзивні права DISH на поширення та публічне виконання Робіт мали дію під час передачі Піратськими сервісами за допомогою серверів та мережі Віртуальних систем. Ексклюзивні права на поширення та публічне виконання Робіт DISH залишаються дійсними стосовно Робіт, що вийшли у ефір на багатьох Каналах.

### Правопорушення Піратськими сервісами

20.     Електронне відео піратство визнане причиною втрати економікою Сполучених Штатів щонайменше $29.2 мільярдів прибутку щороку, а більш ніж 80% такого піратства приходиться на незаконні сервіси стримінгу, як Піратські сервіси.[4] Піратські сервіси мали змогу надавати Споживачам тисячі каналів та десятки тисяч відео програм за вимогою (ВЗВ) за меншу частину коштів ніж офіційні провайдери, як DISH, щонайменше частково, тому що Піратські сервіси не сплачували збори на ліцензування контенту, який вони надавали.

21.     Піратські сервіси передавали Роботи Споживачам за допомогою мережі інтернет, використовуючи сервери та мережу Віртуальних систем, як основну частину їх лінійних стримів Каналів або ВЗВ. Споживачі отримували доступ до Робіт через накладний прилад (СТП) або веб-сайт, що зв'язує з Роботами або надає плейлист для доступу до Робіт. Споживачі часто мали придбати підписку для перегляду контенту Піратських сервісів додатково до придбання СТП. DISH не надавали Піратським сервісам дозволу на поширення або публічне виконання Робіт, та не отримували ніякої компенсації від них.

22.     Піратські сервіси загалом спричиняли правопорушення за допомогою мережі інтернет, так вживали заходи для приховання дійсних осіб їх операторів. За інформацією та переконанням, більшість Піратських сервісів виконувалася правопорушниками поза Сполученими Штатами. У цій скарзі Піратські сервіси ідентифіковані за одним або більше IP адресами, що пов'язані з серверами та мережею Віртуальних систем, з яких йшла передача Робіт, сумісно із будь-якою назвою домену, включеною до URL, що використовувався у

---

[4] Центр глобальної інтелектуальної власності. Вплив електронного піратства на економіку Сполучених Штатів (червень 2019) доступна за
https://www.uschamber.com/assets/documents/Digital_Video_Piracy_June_2019.pdf.

передачі Робіт, а також будь-яким СТП, що було використано для доступу до них; все це формує ілюстративний список Піратських сервісів, що використовували сервери та мережу Віртуальних систем для прямого порушення авторського права DISH.[5]

23.    Масштаб прямого правопорушення Піратськими сервісами щодо Робіт є обширним. Піратські сервіси, що передавали лінійні стріми Каналів, що передавали у ефірі Роботи, часто функціонували 24 години на день 7 днів на тиждень, а в деяких випадках - декілька років, що означає, що тільки Піратські сервіси здійснили порушення прав великої кількості Робіт. Піратські сервіси, що передавали Роботи за допомогою ВЗВ також додають до великого обсягу правопорушень.

24.    Піратські сервіси були повідомлені про правопорушення багато раз, але не припинили здійснення порушення авторського права DISH. DISH отримали вирішення суду та постійну заборону сторонам, що знаходяться за кордоном, що приймали участь в роботі щонайменше трьох Піратських сервісів, але і ці міри виявилися недійсними у припиненні ними правопорушень. Після винесення заборони, один Піратський сервіс переніс свої передачі Каналів, що передавали у ефірі Роботи, до серверів та мережі Віртуальних систем, де порушення авторського права DISH не лише допускається, але і заохочується.[6] Інші два Піратські сервіси використовували сервери та мережу Віртуальних систем для порушення авторського права DISH під час, коли судові позови були складені проти них, та продовжували робити це, незважаючи на заборону.[7] Через знаходження поза Сполученими Штатами, та через те, що Піратські сервіси не володіють майном на території Сполучених Штатів, вони не мають жодної мотивації дотримуватися повідомлень про виклик до суду у Сполучених Штатах.

---

[5]Приклад 3 (ілюстративний список Піратських сервісів).

[6]ТОВ DISH Network проти компанії Lool Tech  № 4:16-cv-01771 (S.D. Tex.).

[7]ТОВ DISH Network проти Alghafir  № 4:20-cv-01678 (S.D. Tex.); ТОВ DISH Network проти корпорації 786 Wireless World №21-cv-05730 (E.D.N.Y.)

СКАРГА ПОЗИВАЧА                                    6                            ПТОВ PREG O'DONNELL &
GILLETT

вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

### Вирішення для потокового стримінгу Віртуальних систем

25.     Віртуальні системи використовують сервери у м. Сіетл, в Україні, Нідерландах та Сінгапурі, за допомогою "тільки їх особистої техніки та мережевого обладнання."[8] Віртуальні системи надають значення контролю, коли описують свій центр даних у м. Сіетл, заявляючи: "Ми не перепродаємо виділені сервери у США, - ми використовуємо свою особисту техніку та мережеве обладнання."[9]

26.     Віртуальні системи надають своїм клієнтам різноманітні типи виділених серверів та частково виділених серверів (що вказуються як віртуальні приватні сервери або ВПС) для передачі контенту за допомогою мережі інтернет. Віртуальні системі стверджують, що "їх успіх у бізнесі стримінгу залежить від їх можливості надавати медіа-інтенсивні послуги разом з мінімальними затримками", а також, що "сервери Віртуальних систем надають достатню пропускну можливість, пам'ять та ресурси сховища для досягнення вашої мети."[10] Віртуальні системи отримують сплату за використання їх серверів та мережі на основі обраних клієнтом опцій, включно із особистостями серверів та центрів даних, де такі сервери знаходяться.

27.     Віртуальні системи також надають своїм клієнтам за додаткову сплату сервери сховищ ("найліпше рішення для збереження великого обсягу відео"), [11] сервери ПГ ("найкращий інструмент кодування та де-кодування відео файлів та стримів в режимі реального часу"), [12] та допоміжне обладнання Xtream-UI (послуга програмного забезпечення, що надає клієнту можливість "налагоджувати їх послуги IPTV та ВЗВ, а також

---

[8] https://vsys.host/
[9] https://vsys.host/dedicated-servers-usa

вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

[10] https://vsys.host/streaming-servers
[11] *Id.*
[12] *Id.*

клієнтську базу").[13] Віртуальні системі заохочують своїх клієнтів поєднувати ці пропозиції та використовувати вигідні вирішення для поточного стримінгу, тому що "це зручно[,] вигідно", а також "бистру передачу даних", тому що "всі ваші сервери є частиною швидкісної мережі."[14]

28.    Віртуальні системи мають прикладний підхід до керування серверами та мережею, стверджуючи, що   "наші команди розробляють, встановлюють та керують нашими виділеними серверами в США" та "ми постійно перевіряємо виділені сервери у США на функціональність та середу."[15] Віртуальні системи також стверджують, що "лише спеціалісти з високим рівнем кваліфікації можуть отримати доступ до обладнання серверів та мережі в США" та пропонують дозволити їх "ввічливим та освіченим командам . . . допомогти вам із будь-якими питаннями щодо хостингу у США."[16] Віртуальні системи роблять схожі ствердження щодо їх активної ролі у керуванні серверами в їх центрах даних поза Сполученими Штатами.[17]

29.    Віртуальні системи позиціонують свої послуги у м. Сієтл як "найкращий вибір для будь-кого . . . з аудиторією у Північній Америці," стверджуючи, що "їх центри даних поєднані із найбільшими каналами інтернету у Сполучених Штатах, що сприяє швидкій передачі даних."[18] Центр даних Віртуальних систем в Україні рекламуються таким самим чином, як провайдер "відмінного зв'язку зі Східним узбережжям США, . . . встановленим для отримання найменшої затримки та безперебійних каналів мережі."[19] Стверджується також, що центри даних Віртуальних систем у Нідерландах пропонують "безпрецедентну швидкість зв'язку зі Східним узбережжям

[13]https://vsys.host/xtreme-codes-panel-saas
[14]https://vsys.host/streaming-servers
[15]https://vsys.host/dedicated-servers-usa
[16]Id.
[17]https://vsys.host/dedicated-server-hosting; https://vsys.host/dedicated-servers-netherlands
[18]https://vsys.host/dedicated-servers-usa
[19]https://vsys.host/streaming-servers; https://vsys.host/dmca-ignored-dedicated-server

СКАРГА ПОЗИВАЧА
GILLETT

ПТОВ PREG O'DONNELL &

вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документ 1 Внесений 15.10.2024 Сторінка 13 з

США."[20] Віртуальні системи рекламують свої сервери та мережу як "смачну для сервісів стримінгу", та стверджують, що "великі проекти IPTV та сайти з контентом для дорослих більш ніж бажані тут."[21]

30.      Віртуальні системи надали Піратським сервісам сервери та мережу, що були використані для передачі Робіт Споживачам, включно із серверами центрів даних Віртуальних систем, розташованими у м. Сієтл, Україні та Нідерландах. Віртуальні системи також могли надавати Піратським сервісам додаткові сервери та послуги, що використовувалися в передачі Робіт, як сервери сховищ, сервери кодування відео та допоміжне обладнання Xtream-UI, зазначені вище.

### Політика "ігнорування DMCA" Віртуальних систем

31.      Віртуальні системи є цікавими для сервісів стримінгу, що порушують Закон про авторське право США, таких, як Піратські сервіси, завдяки їх політиці "ігнорування DMCA", за якою Віртуальні системі стверджують, що "ми ігноруємо повідомлення про видалення DMCA" у зв'язку із центрами даних в Україні, а тому клієнти "користуються повним захистом від повідомлень про видалення DMCA."[22] Віртуальні системі рекламують свої сервери у м. Сієтл та Нідерландах таким самим чином, стверджуючи, що "всі повідомлення про видалення DMCA обробляються нашими юристами, але ми ставимося привітливо до наших цінних клієнтів, що можуть мати випадкові проблеми з авторським правом."[23]

---

[20]https://vsys.host/10gbps-servers
[21]https://vsys.host/20gbps-servers; https://vsys.host/streaming-servers
[22]https://vsys.host/dmca-ignored-dedicated-server (часткове зображення веб-сторінки нижче).
[23]https://vsys.host/10gbps-servers

СКАРГА ПОЗИВАЧА                                      9                          ПІТОВ PREG O'DONNELL &
GILLETT

вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

32. Віртуальні системи рекламують, що їх політика "ігнорування DMCA" також покриває закриття повідомлення щодо їх серверів сховищ ("Ми ігноруємо закриття DMCA, за виключенням випадків, коли умови ситуації примушують нас до цього")[24] та допоміжне обладнання Xtream-UI ("Ми не реагуємо на повідомлення про закриття DMCA, та не перенаправляємо такі повідомлення клієнту, за виключенням випадків, коли умови ситуації примушують нас

---

[24]https://vsys.host/storage-servers

14                    ПТОВ PREG O'DONNELL & GILLETT
                      вул. Юніон Стріт, б. 401, оф. 1900
                      Сієтл, Вашингтон, 98101
                      (206) 287-1775

до цього").[25]

33.    Віртуальні системи та Смирнов отримували такі письмові повідомлення із закликом видалити або виключити доступ до Робіт, що передавалися Піратськими сервісами з серверів та мережі Віртуальних систем, що порушувало авторське право DISH ("Повідомлення про правопорушення"). За інформацією та переконанням, Повідомлення про правопорушення були доставлені електронною поштою та поштою за дійсною адресою, що використовувалася Віртуальними системами та Смирновим. Віртуальні системи та Смирнов разом отримали більше ніж 512 Повідомлень про правопорушення. Віртуальні системи та Смирнов отримували додаткові повідомлення про правопорушення щодо Робіт іншими клієнтами, не тільки Піратськими сервісами.

34.    Повідомлення про правопорушення відповідали Закону про авторське право міленіуму, 17 U.S.C. § 512 (коду США). Повідомлення про правопорушення включали, сумісно з іншими пунктами, інформацію достатню для того, щоб Віртуальні системи могли виявити правопорушуючі матеріали, включно з IP адресами, пов'язаними з сервером Віртуальних систем, з якого передавалися ці матеріали, або URL правопорушуючої передачі. Віртуальним система направлялися повідомлення про Канали, які виводили в ефір Роботи, до моменту передачі Робіт Піратськими сервісами.

35.    Віртуальні системи не відповіли на Повідомлення про правопорушення та не прийняли ніяких мір для припинення правопорушення Піратськими сервісами на своїх серверах та мережі. Піратські сервіси продовжили порушення авторського права DISH щодо Робіт, що виходили в ефір на Каналах, і навіть використовували такі ж самі IP адресу та URL, що були попередньо зазначені у повідомленнях до Віртуальних систем. Віртуальні системи дійсно придержувалися їх політики "ігнорування DMCA" шляхом зневажання Повідомлень про правопорушення та закриваючи очі на порушення авторського права DISH Піратськими сервісами.

---

[25]https://vsys.host/xtreme-codes-panel-saas
СКАРГА ПОЗИВАЧА

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

36.    Віртуальні системи також не дотримувалися наказів судів Сполучених Штатів, викладених у трьох судових позивах до Піратських систем, що забороняли Віртуальним системам на постійній основі надавати свої сервери та мережу таким Піратським сервісам, тому що вони використовували їх для порушення авторського права DISH.[26] Два вирішення суду специфічно включають заборону Віртуальним системам, а третє приєднує Віртуальні системи до заборони через їх роль у наданні серверів та мережі, що використовувалися у цьому правопорушенні. Віртуальні системи було повідомлено про постійну заборону, але вони не припинили надання своїх серверів та мережі Піратським сервісам, що продовжило порушення авторського права DISH, включно з авторським правом на Роботи.

37.    Віртуальні системи не можуть стверджувати про ніякий захист від DMCA, тому що не впроваджують та не виконують розумно політику, що потребує припинення надання послуг повторним правопорушникам. Віртуальні системи також не мають права на будь-який захист від DMCA, тому що не має особливого агента з DMCA, що приймав би повідомлення про правопорушення; тому що, коли такі повідомлення отримані, або іншим чином визнається правопорушення, Віртуальні системи не відкликаються на них у якнайкоротший термін шляхом видалення або припинення доступу до матеріалів, що порушують авторське право; а також, тому що Віртуальні системи отримують фінансову вигоду, що прямо пов'язана з правопорушенням, що контролюється ними.

---

[26]Помітки 6-7 (ідентифікуючі справи). СКАРГА ПОЗИВАЧА

16

ІТТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

## Політика "Непримітності" Віртуальних систем

38.     Віртуальні системи також заохочують Піратські сервіси до порушення авторського права DISH шляхом підтримки анонімності осіб правопорушників. Віртуальні системи повідомляють своїх клієнтів, що "ваша сторінка завжди зберігається непримітно" та "тому що ми про вас маємо мінімальну інформацію, ваша анонімність гарантована."[27] Віртуальні системи вихваляється тим, що не дотримуються потреб політики ЗСК (Знай Свого Клієнта), стверджуючи, що "не потребують внесення особистої інформації для купівлі."[28] Також Віртуальні системи стверджують, що вони спілкуватимуться зі своїми клієнтами за допомогою "анонімної електронної пошти" і "не зберігатимуть ніяких записів."[29]

39.     Віртуальні системи також заохочують клієнтів тримати свої особи скритими шляхом сплати крипто валютою, стверджуючи, що "ми любимо та приймаємо крипто валюту" та що такі платежі "можуть здійснюватися анонімно."[30] Віртуальні системи радять своїм клієнтам "знаходити спокій у тому факті, що ви є повністю захищеними тут, і що ваша особиста приватність є найбільшим пріоритетом."[31]

---

[27] https://vsys.host/
[28] https://vsys.host/10gbps-servers
[29] https://www.linkedin.com/company/vsyshost; https://vsys.host/vps-usa
[30] https://vsys.host/dedicated-servers-usa (часткове зображення веб-сторінки нижче); https://vsys.host/vps-usa
[31] https://vsys.host/vps-usa

СКАРГА ПОЗИВАЧА                    12                    ПТОВ PREG O'DONNELL &
GILLETT

вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775



### Контроль Віртуальних систем за правопорушенням

40. Віртуальні системи могли б прийняти прості міри для припинення правопорушень щодо Робіт Піратськими сервісами, але відмовилися їх прийняти. Віртуальні системи могли б визначити, чи мають Піратські сервіси законний дозвіл на передачу Робіт, шляхом вимоги до них про підтвердження їх прав на Каналах. Віртуальні системи також могли б видаляти або припиняти доступ до визначених у Повідомленнях про правопорушення матеріалів, що передавалися через їх сервери та мережу. Віртуальні системи могли б запровадити політику багатьох порушень, таку як тимчасове припинення дії рахунку Піратських сервісів, після отримання одного повідомлення про правопорушення проти такого рахунку, і після того назавжди припиняти дію такого рахунку, якщо отримали б додаткові повідомлення про правопорушення.

41. Віртуальні системи також мають законне право на припинення порушення Піратськими сервісами авторського права Робіт. Договір про надання послуг Віртуальних систем з їх клієнтами надає право на "виключення будь-яких матеріалів" і "право блокувати та тимчасово припиняти дію" таких послуг, або "прийняття будь-яких мір . . . необхідних" у випадках, коли клієнт "порушує права на інтелектуальну власність будь-якої третьої сторони або іншою мірою є учасником спору."[32] Віртуальні системи мають право на виконання своєї можливості "за особистим переконанням, невідкладно та буз попередження" своїх клієнтів.[33] Замість того, щоб виконувати такі свої права та припиняти правопорушення Піратськими сервісами, Віртуальні системи закрили на це очі, роблячи свої сервери та мережу безпечним місцем для здійснення правопорушень Піратськими сервісами.

### Пряма фінансова заінтересованість Віртуальних систем у правопорушеннях

42. Піратські сервіси притягнулися до серверів та мережі Віртуальних систем, тому що вони не припинили їх правопорушень та запропонували тримати їх анонімними.

---

[32]https://vsys.host/legal/term-of-service
[33]Id.

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Піратські сервіси розглядали сервери та мережу Віртуальних систем, як місце, де правопорушення щодо Робіт допускається, тому що Віртуальні сервіси рекламували їх таким чином, і багато інших Піратських сервісів робили так само. Постійний доступ до Робіт через відмову Віртуальних систем від прийняття мір проти Піратських сервісів притягувало такі Піратські сервіси залишатися клієнтами Віртуальних систем, а також притягнули інші Піратські сервіси стати клієнтами Віртуальних систем.

43. Ціна на послуги Віртуальних систем частково основана на пропускній можливості, що обирає клієнт, типово пропонованій у гіга-бітах за секунду (Гб/с).[34] Наприклад, Віртуальні системи отримують більшу сплату за 20Гб/с сервер, що рекомендований для додатків "високої пропускної можливості", як "стримінг або ВЗВ", ніж сплата за 1Гб/с сервер, що надає меншу пропускну можливість. Віртуальні системи також надають можливість клієнтам, що використовують певні типи серверів та додаткове обладнання Xtream-UI, можливість посилювати пропускну можливість, ціна на яку складається за 1 додатковий Гб/с. Віртуальні системи стверджують, що "відео понукає потребу на високу пропускну можливість, і ми пропонуємо її за дуже вигідною ціною."[35]

44. Віртуальні системи оповіщають своїх клієнтів, що належна пропускна можливість є "життєво необхідною для забезпечення швидкого, постійного постачання", а також заохочують їх "обирати обсяг пропускної можливості залежно від їх потреби."[36] За інформацією та переконанням, потреби Піратських сервісів у пропускній можливості зіграли роль у купівлі ними дорожчих серверів для здобуття підвищеної пропускної можливості, додаткової пропускної можливості за вимогою або додаткових серверів для передачі Робіт та іншого контенту. Віртуальні системи відмовилися прийняти міри для припинення правопорушень Робіт Піратськими сервісами, тому що це б вплинуло на потребу Піратських сервісів у пропускній можливості, тим самим - на потребу купувати її у

[34] https://vsys.host/streaming-servers
[35] https://vsys.host/xtreme-codes-panel-saas
[36] https://vsys.host/streaming-servers

СКАРГА ПОЗИВАЧА                14                ПТОВ PREG O'DONNELL & GILLETT
                                                вул. Юніон Стріт, б. 401, оф. 1900
                                                Сієтл, Вашингтон, 98101
                                                (206) 287-1775

Віртуальних систем.

## Претензії для полегшення

### Пункт I

### (Матеріальне сприяння порушенню авторського права за 17 U.S.C. § 501 (коду США)

45.    DISH повторює та підтверджує всі звинувачення, викладені у параграфах 1-44.

46.    DISH є власником авторського права за 17 U.S.C. § 106 (коду США), тому що за весь описаний час, DISH володіли ексклюзивним правом на поширення та публічне виконання Робіт у Сполучених Штатах за допомогою супутників, OTT, IPTV та мережі інтернет.

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документ 1 Внесений 15.10.2024 Сторінка 22 з 20

47.     Роботи підлягають під авторське право, тому що вони є оригінальними аудіо-візуальними роботами, що зафіксовані у матеріальній формі вираження. Авторське право на Роботи DISH існує за законами націй поза Сполучених Штатів, що є учасниками угод про авторське право зі Сполученими Штатами, включно з Єгиптом, Ліваном, Саудівською Аравією, Індією та Бангладеш, де такі Роботи буле вперше створені та опубліковані.

48.     Роботи являються роботами не Сполучених Штатів за 17 U.S.C. §§ 101 та 411 (коду США), а тому реєстрація у Відділені Авторського права Сполучених Штатів не є попередньою вимогою для подачі скарги щодо порушення авторського права цих Робіт. Незважаючи на це, декілька Робіт зареєстровані у Відділені Авторського права Сполучених Штатів.

49.     Ексклюзивне право DISH публічно виконувати Роботи було прямо порушено Піратськими сервісами шляхом неавторизованої передачі Робіт Споживачам, Роботи передавалися Споживачам під час, коли ексклюзивне право на публічне виконання Робіт DISH мало силу.

50.     Віртуальні системі матеріально допомогли Піратським сервісам порушити ексклюзивне право DISH на публічне виконання шляхом надання Піратським сервісам серверів та мережі, що використовувалися для передачі Робіт. Віртуальні системи також пропонували сервери сховищ, сервери кодування відео та додаткове обладнання Xtream-UI, що рекламувалося та продавалося Піратським сервісам як рекомендовані додатки до пакетів серверів та мережі. За інформацією та переконанням, Віртуальні системи надавали ці додаткові типи серверів та обладнання щонайменше деяким з Піратських сервісів.

51.     Віртуальні системи знали, що передача Робіт Споживачам порушує ексклюзивне право DISH на публічне виконання, і що їх сервери та мережа використовуються для здійснення такого правопорушення у великому обсязі. Повідомлення про правопорушення інформували Віртуальні системи про специфічні правопорушення, включно з IP адресами та URL пов'язаними із серверами та мережею Віртуальних систем, що використовувалися для передачі Робіт.

52.     Віртуальні системи могли б прийняти прості міри запобігання порушення

Піратськими сервісами ексклюзивного права DISH на публічне виконання Робіт, включно з видаленням або Скарга Позивача                    15                    ПТОВ PREG O'DONNELL & GILLETT

вул. Юніон Стріт, б. 401, оф. 1900, м. Сіетл, штат Вашингтон, 98101 (206) 287-1775

виключенням доступу до Робіт або припиненням дії рахунків Піратських сервісів. Віртуальні системи відмовилися прийняти такі міри та продовжили надання доступу до Робіт.

53.    Смирнов надавав дозвіл, керував та приймав участь у правопорушеннях щодо Робіт Віртуальними системами. Смирнов керував серверами та мережею, що використовувалася Піратськими сервісами для правопорушень щодо Робіт. Смирнов був повідомлений про здійснення правопорушення на серверах та мережі, якими він керував, але відмовився припинити це правопорушення. Смирнов володіє Віртуальними системами, займає роль голови та директора, а також отримує фінансову вигоду від їх протиправних дій. Смирнов є керівним духом та центральною фігурою у правопорушеннях Віртуальних систем проти Робіт, і тим самим Смирнов несе особисту відповідальність за такі правопорушення.

54.    Дії Віртуальних систем та Смирнова були вольовими, злочинними, цілеспрямованими та навмисними, а також йшли проти та незважаючи на права DISH. Дії Віртуальних систем та Смирнова продовжуються стосовно багатьох Піратських сервісів.

55.    Без заборони суду Віртуальні системи та Смирнов продовжать брати участь у діях, що спричиняють велику та непоправну шкоду DISH, включно з втратами продаж, пошкодженню репутації, втратою доброї волі, що неможливо відшкодувати за допомогою закону.

### Пункт II

### (Спонукання порушення авторського права за 17 U.S.C. § 501 (коду США))

56.    DISH повторює та підтверджує всі звинувачення, викладені у параграфах 1-44, 46-49 та 53.

57.    Віртуальні системи надавали сервери та мережу, що були використані для порушення ексклюзивного права DISH на публічне виконання Робіт. Віртуальні системи рекламували свої сервери та мережу для таких правопорушень сумісно із їх політикою "ігнорування DMCA", згідно якої Віртуальні системи повідомляли Піратські сервіси, що вони не дотримуються закону про авторське право Сполучених Штатів, але не приймали

ПTOВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документ 1 Внесений 15.10.2024 Сторінка 25 з 20

жодних мір по запобіганню порушенню ними прав Робіт.

58.    Віртуальні системи також рекламували свої сервери та мережу для правопорушень Робіт за допомогою своєї політики "непримітності", за якою Віртуальні системи повідомляли Піратські сервіси

Скарга    позивача    ,    що    їх    особи    не  16
поширюватимуться власникам авторських прав, як
DISH, і що ніякі записи щодо їх протиправного використання серверів та мережі Віртуальних систем не зберігатимуться.

59.    Віртуальні системи не розвили інструментів фільтрування або інших механізмів для зниження правопорушень Піратськими сервісами щодо Робіт, але могли прийняти прості міри для припинення таких правопорушень, наприклад, шляхом видалення або припинення доступу до Робіт, або закриття рахунків Піратських сервісів. Віртуальні системи відмовилися припинити правопорушення щодо Робіт Піратськими сервісами, тому що ці правопорушення додавали до їх фінансового успіху.

60.    Смирнов давав дозвіл, керував та брав участь у порушенні прав Робіт Віртуальними системами, що викладено вище, а тому несе особисту відповідальність за такі правопорушення.

61.    Дії Віртуальних систем та Смирнова були вольовими, злочинними, цілеспрямованими та навмисними, а також йшли проти та незважаючи на права DISH. Дії Віртуальних систем та Смирнова продовжуються стосовно багатьох Піратських сервісів.

62.    Без заборони суду Віртуальні системи та Смирнов продовжать брати участь у діях, що спричиняють велику та непоправну шкоду DISH, включно з втратами продаж, пошкодженню репутації, втратою доброї волі, що неможливо відшкодувати за допомогою закону.

### Пункт III

### (Опосередковане порушення авторського права за 17 U.S.C. § 501 (коду США)

63.    DISH повторює та підтверджує всі звинувачення, викладені у параграфах 1-44, 46-49 та 53.

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

64.    Віртуальні системи мали законне право та практичну можливість припинити або обмежити правопорушення щодо Робіт Піратськими сервісами. Віртуальні системи могли б видалити або припинити доступ до Робіт, що передавалися через їхні сервери та мережу, або закрити рахунки Піратських сервісів та припинити їх дію зовсім. Віртуальні системи мали дозвіл на прийняття таких простих мір для припинення правопорушень щодо Робіт за умовами свого договору з Піратськими сервісами. Віртуальні системи відмовилися від виконання свого права та можливості контролювати правопорушення Піратських сервісів щодо Робіт.

СКАРГА ПОЗИВАЧА                              17

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документ 1 Внесений 15.10.2024 Сторінка 27 з 20

65.     Віртуальні системи отримували прямий фінансовий інтерес від правопорушень Піратськими сервісами щодо Робіт, та отримали пряму фінансову вигоду від таких правопорушень. Піратські сервіси були мотивовані бути клієнтами Віртуальних систем, тому що знали, що можуть публічно виконувати Роботи без втручання Віртуальних систем. Відмова Віртуальних систем припинити правопорушення Робіт Піратськими сервісами притягувала такі Піратські сервіси залишатися клієнтами Віртуальних систем, а також притягувала інші Піратські сервіси до серверів та мережі Віртуальних систем. Нездатність видалити або припинити доступ до Робіт або закрити рахунки Піратських сервісів спричинила отримання Віртуальними системами прибутку, який іншим чином вони б не отримали.

66.     Віртуальні системи заохочували Піратські сервіси купувати достатню пропускну можливість для передачі контенту шляхом використання серверів та мережі Віртуальних систем. За інформацією та переконанням, Піратські сервіси придбали таку пропускну можливість у формі більш дорогих серверів, додаткових серверів або за вимогою. Передача Робіт Піратськими сервісами допомагала підтримувати їх потребу у підвищеній пропускній можливості, а Віртуальні системи могли продавати їм таку потрібну пропускну можливість. Віртуальні системи не припинили передачу Робіт Піратськими сервісами, тому що це б зменшило особисті прибутки Віртуальних систем.

67.     Смирнов давав дозвіл, керував та брав участь у порушенні прав Робіт Віртуальними системами, що викладено вище, а тому несе особисту відповідальність за такі правопорушення.

68.     Дії Віртуальних систем та Смирнова були вольовими, злочинними, цілеспрямованими та навмисними, а також йшли проти та незважаючи на права DISH. Дії Віртуальних систем та Смирнова продовжуються стосовно багатьох Піратських сервісів.

69.     Без заборони суду Віртуальні системи та Смирнов продовжать брати участь у діях, що спричиняють велику та непоправну шкоду DISH, включно з втратами продаж, пошкодженню репутації, втратою доброї волі, що неможливо відшкодувати за допомогою

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документ 1 Внесений 15.10.2024 Сторінка 28 з 20

закону.

## Прохання про задоволення

Рішення суду проти Віртуальних систем та Смирнова мають включати:

СКАРГА ПОЗИВАЧА                                    18

26

Справа 2:24-cv-01683 Документ 1 Внесений 15.10.2024 Сторінка 29 з 20

A.  Постійну заборону за 17 U.S.C. § 502 (коду США) Віртуальним системам, Смирнову та будь-яким офіційним особам, агентам, службовцям, співробітникам або будь-яким іншим особам, що діють сумісно або приймають участь у діях таких осіб, здійснювати порушення авторського права DISH щодо Робіт, що виходять у ефір на Каналах, включно з (1) поширенням або публічним виконанням цих матеріалів у Сполучених Штатах, що включає стримінг та передачу цих матеріалів; (2) допомагати, ініціювати та відмовлятися припиняти або обмежувати поширення або публічне виконання цих матеріалів, що включає заборону на надання будь-яких серверів та мережі, що використовувалася б у стримінгу або передачі матеріалів, а також потребує закриття будь-яких існуючих або майбутніх рахунків Піратських сервісів;

B.  Встановити законом збитки у 150 000 доларів США за кожне зареєстроване правопорушення (включно з 279 зареєстрованими Роботами, викладеними у Прикладі 1) за 17 U.S.C. § 504(c) (коду США), або у розмірі прибутків Віртуальних систем та Смирнова, пов'язаних з правопорушеннями щодо цих зареєстрованих Робіт за 17 U.S.C. § 504(b) (коду США);

C.  Прибутки Віртуальних систем та Смирнова, пов'язаних з правопорушеннями щодо кожної незареєстрованої Роботи за 17 U.S.C. § 504(b) (коду США);

D.  Сплату послуг та витрат адвоката DISH за 17 U.S.C. § 505 (коду США);

E.  Конфіскувати та позбутися усіх протиправних статей за 17 U.S.C. § 503 (коду США);

F.  Відсотки від грошових прибутків, отриманих до та після винесення рішення суду, з найпершої дати, дозволеної за законом і за максимальною ставкою, дозволеною законом;

G.  Інші додаткові вимоги, які Суд вважатиме справедливими та законними.

Дата: 15 жовтня 2024 р.

**ПTOB PREG O'DONNELL & GILLETT**

СКАРГА ПОЗИВАЧА
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

19

ПTOB PREG O'DONNELL & GILLETT

Складено: Грегорі Латендрес
Грегорі Латендрес, WSBA # 32787
98101, штат Вашингтон, м. Сієтл, вул. Юніон
Стріт, б. 401, оф. 1900 Тел: (206) 287-1775 Факс:
(206) 287-9113 glatendresse@pregodonnell.com

СКАРГА ПОЗИВАЧА
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

19

ПТОВ PREG O'DONNELL & GILLETT

**ТОВ HAGAN NOLL & BOYLE**

Джозеф Х. Бойл (*pro hac vice* (одноразово) наближений)

Тимоти М. Френк (*pro hac vice* (одноразово) наближений)

Стивен М. Фергюсон  (*pro hac vice* (одноразово) наближений) вул. Гесснер, б. 820, оф. 940

Хьюстон, Техас, 77024

Тел: (713) 343-0478

Факс: (713) 758-0146

joseph.boyle@hnbllc.com

timothy.frank@hnbllc.com

stephen.ferguson@hnbllc.com

Адвокати позивача ТОВ DISH Network

ПТОВ PREG O'DONNELL & GILLETT

вул. Юніон Стріт, б. 401, оф. 1900

Сієтл, Вашингтон, 98101

(206) 287-1775

СКАРГА
ПОЗИВАЧА

20

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

Справа2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 1 з 16

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

## ОКРУЖНИЙ СУД СПОЛУЧЕНИХ ШТАТІВ
## ЗАПАДНИЙ ОКРУГ ШТАТУ ВАШИНГТОН
### У СІЄТЛІ

TOB DISH NETWORK,

    Позивач, ) ) проти

TOB VIRTUAL SYSTEMS та
В'ЯЧЕСЛАВ СМИРНОВ,

    Відповідачі. )

№ 2:24-cv-01683

**ПРИКЛАД 1 СКАРГИ ПОЗИВАЧА**

## РОБОТИ, ЩО ПІДЛЯГАЮТЬ РЕЄСТРАЦІЇ

| Робота | Дата першої публікації | Канал | Реєстрація Номер | Дата набуття чинності реєстрації |
|---|---|---|---|---|
| Aangan Aapno Kaa, серія 18 | 30 грудня 2023 р. | SAB | PA0002452164 | 12 січня 2024 р. |
| Aangan Aapno Kaa, серія 43 | 29 січня 2024 р. | SAB | PA0002458039 | 2 лютого 2024 р. |
| Aangan Aapno Kaa, серія 69 | 28 лютого 2024 р. | SAB | PA0002460329 | 29 лютого 2024 р. |
| Aangan Aapno Kaa, серія 95 | 29 березня 2024 р. | SAB | PA0002467108 | 4 квітня 2024 р. |
| Ali Baba Dastaan E Kabul, серія 7 | 29 серпня 2022 р. | SAB | PA0002373613 | 2 вересня 2022 р. |
| Ali Baba Dastaan E | 28 жовтня 2022 р. | SAB | PA0002388793 | 29 листопада 2022 р. |

Приклад 1 до Скарги позивача

17
18
19
20
21
22
23
24
25

26

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 35 of 16

| | | | | |
|---|---|---|---|---|
| Kabul, серія 59 | | | | |
| Ali Baba Dastaan E Kabul, серія 85 | 28 листопада 2022 р. | SAB | PA0002389478 | 6 грудня 2022 р. |
| Ali Baba Dastaan E Kabul, серія 111 | 28 грудня 2022 р. | SAB | PA0002394869 | 9 січня 2023 р. |
| Ali Baba Ek Andaaz Andekha, серія 185 | 27 березня 2023 р. | SAB | PA0002411326 | 28 березня 2023 р. |
| Ali Baba Ek Andaaz Andekha, серія 230 | 29 травня 2023 р. | SAB | PA0002421487 | 31 травня 2023 р. |
| Baalveer 3, серія 13 | 29 квітня 2023 р. | SAB | PA0002415647 | 3 травня 2023 р. |
| Dharam Yoddha Garud, серія 13 | 28 березня 2022 р. | SAB | PA0002350051 | 29 березня 2022 р. |
| Dharam Yoddha Garud, серія 39 | 27 квітня 2022 р. | SAB | PA0002357041 | 2 травня 2022 р. |
| Dharam Yoddha Garud, серія 64 | 26 травня 2022 р. | SAB | PA0002361309 | 1 червня 2022 р. |
| Dharam Yoddha Garud, серія 91 | 27 червня 2022 р. | SAB | PA0002365385 | 29 червня 2022 р. |
| Dharam Yoddha Garud, серія 145 | 29 серпня 2022 р. | SAB | PA0002373616 | 2 вересня 2022 р. |
| Dharam Yoddha Garud, серія 197 | 28 жовтня 2022 р. | SAB | PA0002388777 | 29 листопада 2022 р. |
| Dharam Yoddha Garud, серія 223 | 28 листопада 2022 р. | SAB | PA0002389274 | 6 грудня 2022 р. |
| Dhruv Tara, серія 25 | 27 березня 2023 р. | SAB | PA0002409092 | 28 березня 2023 р. |
| Dhruv Tara, серія 54 | 29 квітня 2023 р. | SAB | PA0002416206 | 3 травня 2023 р. |
| Dhruv Tara, серія 79 | 29 травня 2023 р. | SAB | PA0002420330 | 31 травня 2023 р. |
| Dhruv Tara, серія 103 | 26 червня 2023 р. | SAB | PA0002426466 | 29 червня 2023 р. |
| Dhruv Tara, серія 133 | 31 липня 2023 р. | SAB | PA0002430266 | 2 серпня 2023 р. |
| Dhruv Tara, серія 159 | 30 серпня 2023 р. | SAB | PA0002436068 | 5 вересня 2023 р. |
| Dhruv Tara, серія 165 | 6 вересня 2023 р. | SAB | PA0002439053 | 21 вересня 2023 р. |
| Dhruv Tara, серія 167 | 8 вересня 2023 р. | SAB | PA0002437946 | 21 вересня 2023 р. |
| Dhruv Tara, серія 211 | 30 жовтня 2023 р. | SAB | PA0002443591 | 2 листопада 2023 р. |
| Dhruv Tara, серія 236 | 28 листопада 2023 р. | SAB | PA0002448235 | 30 листопада 2023 р. |
| Dhruv Tara, серія 264 | 30 грудня 2023 р. | SAB | PA0002452737 | 8 січня 2024 р. |
| Dhruv Tara, серія 289 | 29 січня 2024 р. | SAB | PA0002458067 | 2 лютого 2024 р. |
| Dhruv Tara, серія 315 | 28 лютого 2024 р. | SAB | PA0002460331 | 29 лютого 2024 р. |
| Dhruv Tara, серія 341 | 29 березня 2024 р. | SAB | PA0002467683 | 4 квітня 2024 р. |

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 36 of 16

ПТОВ PREG O'DONNELL & GILLETT
вул. ІOніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 37 of 16

| № | | | | | |
|---|---|---|---|---|---|
| 1 | Dil Diyaan Gallan, серія 15 | 28 грудня 2022 р. | SAB | PA0002395076 | 9 січня 2023 р. |
| 2 | | | | | |
| 3 | Dil Diyaan Gallan, серія 43 | 30 січня 2023 р. | SAB | PA0002401201 | 3 лютого 2023 р. |
| 4 | Dil Diyaan Gallan, серія 91 | 27 березня 2023 р. | SAB | PA0002409093 | 28 березня 2023 р. |
| 5 | Dil Diyaan Gallan, серія 120 | 29 квітня 2023 р. | SAB | PA0002416207 | 3 травня 2023 р. |
| 6 | Dil Diyaan Gallan, серія 145 | 29 травня 2023 р. | SAB | PA0002420331 | 31 травня 2023 р. |
| 7 | Dil Diyaan Gallan, серія 169 | 26 червня 2023 р. | SAB | PA0002426597 | 29 червня 2023 р. |
| 8 | Dil Diyaan Gallan, серія 199 | 31 липня 2023 р. | SAB | PA0002430268 | 2 серпня 2023 р. |
| 9 | Dil Diyaan Gallan, серія 225 | 30 серпня 2023 р. | SAB | PA0002436070 | 5 вересня 2023 р. |
| 10 | Dil Diyaan Gallan, серія 231 | 6 вересня 2023 р. | SAB | PA0002440119 | 21 вересня 2023 р. |
| 11 | | | | | |
| 12 | Good Night India-Raatwala Сімейне Шоу, серія 21 | 23 лютого 2022 р. | SAB | PA0002344848 | 24 лютого 2022 р. |
| 13 | | | | | |
| 14 | Good Night India-Raatwala Сімейне Шоу, серія 49 | 28 березня 2022 р. | SAB | PA0002350038 | 29 березня 2022 р. |
| 15 | | | | | |
| 16 | Good Night India-Raatwala Сімейне Шоу, серія 75 | 27 квітня 2022 р. | SAB | PA0002357043 | 2 травня 2022 р. |
| 17 | | | | | |
| 18 | Good Night India-Raatwala Сімейне Шоу, серія 100 | 26 травня 2022 р. | SAB | PA0002360259 | 1 червня 2022 р. |
| 19 | | | | | |
| 20 | Hero-Gayab Mode On, серія 231 | 25 жовтня 2021 р. | SAB | PA0002324878 | 27 жовтня 2021 р. |
| 21 | Pashminna, серія 5 | 30 жовтня 2023 р. | SAB | PA0002443544 | 2 листопада 2023 р. |
| 22 | Pashminna, серія 30 | 28 листопада 2023 р. | SAB | PA0002448168 | 30 листопада 2023 р. |
| 23 | Pashminna, серія 58 | 30 грудня 2023 р. | SAB | PA0002452333 | 8 січня 2024 р. |
| 24 | Pashminna, серія 83 | 29 січня 2024 р. | SAB | PA0002458074 | 2 лютого 2024 р. |
| | Pashminna, серія 109 | 28 лютого 2024 р. | SAB | PA0002461439 | 29 лютого 2024 р. |
| 25 | Pushpa Impossible, | 27 червня 2022 р. | SAB | PA0002364309 | 29 червня 2022 р. |

Приклад 1 до Скарги позивача            3

26

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

ПГОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 39 of 16

| | | | | | |
|---|---|---|---|---|---|
| 1 | серія 19 | | | | |
| 2 | Pushpa Impossible, серія 45 | 27 липня 2022 р. | SAB | PA0002368227 | 28 липня 2022 р. |
| 3 | Pushpa Impossible, серія 73 | 29 серпня 2022 р. | SAB | PA0002373619 | 2 вересня 2022 р. |
| 4 | Pushpa Impossible, серія 123 | 28 жовтня 2022 р. | SAB | PA0002388792 | 29 листопада 2022 р. |
| 5 | Pushpa Impossible, серія 149 | 28 листопада 2022 р. | SAB | PA0002389281 | 6 грудня 2022 р. |
| 6 | | | | | |
| 7 | Pushpa Impossible, серія 175 | 28 грудня 2022 р. | SAB | PA0002395074 | 9 січня 2023 р. |
| 8 | Pushpa Impossible, серія 203 | 30 січня 2023 р. | SAB | PA0002401206 | 3 лютого 2023 р. |
| 9 | Pushpa Impossible, серія 251 | 27 березня 2023 р. | SAB | PA0002409099 | 28 березня 2023 р. |
| 10 | | | | | |
| 11 | Pushpa Impossible, серія 280 | 29 квітня 2023 р. | SAB | PA0002418961 | 3 травня 2023 р. |
| 12 | Pushpa Impossible, серія 305 | 29 травня 2023 р. | SAB | PA0002420334 | 31 травня 2023 р. |
| 13 | Pushpa Impossible, серія 329 | 26 червня 2023 р. | SAB | PA0002426605 | 29 червня 2023 р. |
| 14 | | | | | |
| 15 | Pushpa Impossible, серія 359 | 31 липня 2023 р. | SAB | PA0002430275 | 2 серпня 2023 р. |
| 16 | Pushpa Impossible, серія 385 | 30 серпня 2023 р. | SAB | PA0002436137 | 5 вересня 2023 р. |
| 17 | Pushpa Impossible, серія 437 | 30 жовтня 2023 р. | SAB | PA0002443545 | 2 листопада 2023 р. |
| 18 | | | | | |
| 19 | Pushpa Impossible, серія 462 | 28 листопада 2023 р. | SAB | PA0002448254 | 30 листопада 2023 р. |
| 20 | Pushpa Impossible, серія 490 | 30 грудня 2023 р. | SAB | PA0002452337 | 8 січня 2024 р. |
| 21 | Pushpa Impossible, серія 519 | 29 січня 2024 р. | SAB | PA0002458072 | 2 лютого 2024 р. |
| 22 | Pushpa Impossible, серія 541 | 28 лютого 2024 р. | SAB | PA0002461440 | 29 лютого 2024 р. |
| 23 | | | | | |
| 24 | Pushpa Impossible, серія 567 | 29 березня 2024 р. | SAB | PA0002468763 | 4 квітня 2024 р. |
| 25 | Sab Satrangi, серія 15 | 23 лютого 2024 р. | SAB | PA0002345141 | 24 лютого 2024 р. |

Приклад 1 до Скарги позивача      4

26

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 40 of 16

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 41 of 16

| | | | | | |
|---|---|---|---|---|---|
| Sab Satrangi, серія 43 | 28 березня 2022 р. | SAB | PA0002350057 | 29 березня 2022 р. |
| Sab Satrangi, серія 69 | 27 квітня 2022 р. | SAB | PA0002357053 | 2 травня 2022 р. |
| Sab Satrangi, серія 94 | 26 травня 2022 р. | SAB | PA0002360924 | 1 червня 2022 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 34 | 25 жовтня 2021 р. | SAB | PA0002324869 | 27 жовтня 2021 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 64 | 29 листопада 2021 р. | SAB | PA0002330984 | 30 листопада 2021 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 80 | 17 грудня 2021 р. | SAB | PA0002336978 | 3 січня 2022 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 111 | 24 січня 2022 р. | SAB | PA0002340108 | 26 січня 2022 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 137 | 23 лютого 2022 р. | SAB | PA0002345407 | 24 лютого 2022 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 165 | 28 березня 2022 р. | SAB | PA0002350069 | 29 березня 2022 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 191 | 27 квітня 2022 р. | SAB | PA0002357047 | 2 травня 2022 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 216 | 26 травня 2022 р. | SAB | PA0002360937 | 1 червня 2022 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 243 | 27 червня 2022 р. | SAB | PA0002364315 | 29 червня 2022 р. |
| Shubh Labh-Aapkey Ghar Mein, серія 269 | 27 липня 2022 р. | SAB | PA0002368196 | 28 липня 2022 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3285 | 25 жовтня 2021 р. | SAB | PA0002324875 | 27 жовтня 2021 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3315 | 29 листопада 2021 р. | SAB | PA0002330983 | 30 листопада 2021 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3331 | 17 грудня 2021 р. | SAB | PA0002337300 | 3 січня 2022 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3363 | 24 січня 2022 р. | SAB | PA0002340102 | 26 січня 2022 р. |
| Taraak Mehta Ka Ooltah Chashmah, серія 3389 | 23 лютого 2022 р. | SAB | PA0002345421 | 24 лютого 2022 р. |

Приклад 1 до Скарги позивача

5

ПІТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 42 of 16

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

| | | | | | |
|---|---|---|---|---|---|
| 1 2 | Taraak Mehta Ka Ooltah Chashmah, серія 3417 | 28 березня 2022 р. | SAB | PA0002350030 | 29 березня 2022 р. |
| 3 4 | Taraak Mehta Ka Ooltah Chashmah, серія 3443 | 27 квітня 2022 р. | SAB | PA0002357040 | 2 травня 2022 р. |
| 5 6 | Taraak Mehta Ka Ooltah Chashmah, серія 3468 | 26 травня 2022 р. | SAB | PA0002361258 | 1 червня 2022 р. |
| 7 8 | Taraak Mehta Ka Ooltah Chashmah, серія 3495 | 27 червня 2022 р. | SAB | PA0002364316 | 29 червня 2022 р. |
| 9 10 | Taraak Mehta Ka Ooltah Chashmah, серія 3521 | 27 липня 2022 р. | SAB | PA0002368185 | 28 липня 2022 р. |
| 11 12 | Taraak Mehta Ka Ooltah Chashmah, серія 3549 | 29 серпня 2022 р. | SAB | PA0002373620 | 2 вересня 2022 р. |
| 13 14 | Taraak Mehta Ka Ooltah Chashmah, серія 3601 | 28 жовтня 2022 р. | SAB | PA0002388790 | 29 листопада 2022 р. |
| 15 16 | Taraak Mehta Ka Ooltah Chashmah, серія 3627 | 28 листопада 2022 р. | SAB | PA0002389282 | 6 грудня 2022 р. |
| 17 18 | Taraak Mehta Ka Ooltah Chashmah, серія 3653 | 28 грудня 2022 р. | SAB | PA0002395073 | 9 січня 2023 р. |
| 19 | Taraak Mehta Ka Ooltah Chashmah, серія 3681 | 30 січня 2023 р. | SAB | PA0002401207 | 3 лютого 2023 р. |
| 20 21 | Taraak Mehta Ka Ooltah Chashmah, серія 3869 | 6 вересня 2023 р. | SAB | PA0002437945 | 21 вересня 2023 р. |
| 22 23 | Tera Yaar Hoon Main, серія 326 | 29 листопада 2021 р. | SAB | PA0002330982 | 30 листопада 2021 р. |
| 24 | Tera Yaar Hoon Main, серія 342 | 17 грудня 2021 р. | SAB | PA0002337301 | 3 січня 2022 р. |
| 25 | Tera Yaar Hoon | 24 січня 2022 р. | SAB | PA0002340101 | 26 січня 2022 р. |

Приклад 1 до Скарги позивача

6

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. ІОніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 8 of 16

| | | | | |
|---|---|---|---|---|
| Main, серія 373 | | | | |
| Vanshaj, серія 13 | 26 червня 2023 р. | SAB | PA0002426607 | 29 червня 2023 р. |
| Vanshaj, серія 43 | 31 липня 2023 р. | SAB | PA0002430277 | 2 серпня 2023 р. |
| Vanshaj, серія 69 | 30 серпня 2023 р. | SAB | PA0002436138 | 5 вересня 2023 р. |
| Vanshaj, серія 121 | 30 жовтня 2023 р. | SAB | PA0002443546 | 2 листопада 2023 р. |
| Vanshaj, серія 146 | 28 листопада 2023 р. | SAB | PA0002448219 | 30 листопада 2023 р. |
| Vanshaj, серія 174 | 30 грудня 2023 р. | SAB | PA0002452295 | 8 січня 2024 р. |
| Vanshaj, серія 199 | 29 січня 2024 р. | SAB | PA0002458070 | 2 лютого 2024 р. |
| Vanshaj, серія 225 | 28 лютого 2024 р. | SAB | PA0002461260 | 29 лютого 2024 р. |
| Vanshaj, серія 251 | 29 березня 2024 р. | SAB | PA0002467659 | 4 квітня 2024 р. |
| Wagle Ki Duniya, серія 178 | 25 жовтня 2021 р. | SAB | PA0002324866 | 27 жовтня 2021 р. |
| Wagle Ki Duniya, серія 208 | 29 листопада 2021 р. | SAB | PA0002330980 | 30 листопада 2021 р. |
| Wagle Ki Duniya, серія 224 | 17 грудня 2021 р. | SAB | PA0002336977 | 3 січня 2022 р. |
| Wagle Ki Duniya, серія 256 | 24 січня 2022 р. | SAB | PA0002340106 | 26 січня 2022 р. |
| Wagle Ki Duniya, серія 388 | 27 червня 2022 р. | SAB | PA0002364320 | 29 червня 2022 р. |
| Wagle Ki Duniya, серія 414 | 27 липня 2022 р. | SAB | PA0002368184 | 28 липня 2022 р. |
| Wagle Ki Duniya, серія 442 | 29 серпня 2022 р. | SAB | PA0002373623 | 2 вересня 2022 р. |
| Wagle Ki Duniya, серія 492 | 28 жовтня 2022 р. | SAB | PA0002388780 | 29 листопада 2022 р. |
| Wagle Ki Duniya, серія 518 | 28 листопада 2022 р. | SAB | PA0002389284 | 6 грудня 2022 р. |
| Wagle Ki Duniya, серія 544 | 28 грудня 2022 р. | SAB | PA0002394645 | 9 січня 2023 р. |
| Wagle Ki Duniya, серія 572 | 30 січня 2023 р. | SAB | PA0002401208 | 2 лютого 2023 р. |
| Wagle Ki Duniya, серія 620 | 27 березня 2023 р. | SAB | PA0002409100 | 28 березня 2023 р. |
| Wagle Ki Duniya, серія 649 | 29 квітня 2023 р. | SAB | PA0002416848 | 4 травня 2023 р. |
| Wagle Ki Duniya, серія 674 | 29 травня 2023 р. | SAB | PA0002420335 | 31 травня 2023 р. |

Приклад 1 до Скарги позивача

7

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 9 of 16

26

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 10 of 16

| | | | | |
|---|---|---|---|---|
| Wagle Ki Duniya, серія 698 | 26 червня 2023 р. | SAB | PA0002426467 | 29 червня 2023 р. |
| Wagle Ki Duniya, серія 727 | 31 липня 2023 р. | SAB | PA0002430278 | 2 серпня 2023 р. |
| Wagle Ki Duniya, серія 753 | 30 серпня 2023 р. | SAB | PA0002436140 | 5 вересня 2023 р. |
| Wagle Ki Duniya, серія 759 | 6 вересня 2023 р. | SAB | PA0002437944 | 21 вересня 2023 р. |
| Wagle Ki Duniya, серія 805 | 30 жовтня 2023 р. | SAB | PA0002443547 | 2 листопада 2023 р. |
| Wagle Ki Duniya, серія 830 | 28 листопада 2023 р. | SAB | PA0002448282 | 30 листопада 2023 р. |
| Wagle Ki Duniya, серія 935 | 29 березня 2024 р. | SAB | PA0002468765 | 4 квітня 2024 р. |
| Ziddi Dil Maane Na, серія 44 | 25 жовтня 2021 р. | SAB | PA0002324858 | 27 жовтня 2021 р. |
| Ziddi Dil Maane Na, серія 74 | 29 листопада 2021 р. | SAB | PA0002330430 | 30 листопада 2021 р. |
| Ziddi Dil Maane Na, серія 90 | 17 грудня 2021 р. | SAB | PA0002336975 | 3 січня 2022 р. |
| Ziddi Dil Maane Na, серія 122 | 24 січня 2022 р. | SAB | PA0002340107 | 26 січня 2022 р. |
| Ziddi Dil Maane Na, серія 148 | 23 лютого 2022 р. | SAB | PA0002345761 | 24 лютого 2022 р. |
| Appnapan, серія 9 | 27 червня 2022 р. | SAB | PA0002365357 | 29 червня 2022 р. |
| Appnapan, серія 31 | 27 липня 2022 р. | SAB | PA0002368295 | 28 липня 2022 р. |
| Appnapan, серія 54 | 29 серпня 2022 р. | SAB | PA0002373614 | 2 вересня 2022 р. |
| Appnapan, серія 98 | 28 жовтня 2022 р. | SAB | PA0002388796 | 29 листопада 2022 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 42 | 26 жовтня 2021 р. | SET | PA0002324859 | 27 жовтня 2021 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 66 | 29 листопада 2021 р. | SET | PA0002330901 | 30 листопада 2021 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye | 17 грудня 2021 р. | SET | PA0002336980 | 3 січня 2022 р. |

Приклад 1 до Скарги позивача                    8

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 12 of 16

| | | | | |
|---|---|---|---|---|
| Nadiya Ye Raina Aur Tum-2, серія 80 | | | | |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 106 | 24 січня 2022 р. | SET | PA0002340103 | 26 січня 2022 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 128 | 23 лютого 2022 р. | SET | PA0002344971 | 24 лютого 2022 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 151 | 28 березня 2022 р. | SET | PA0002350068 | 29 березня 2022 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 173 | 27 квітня 2022 р. | SET | PA0002357044 | 2 травня 2022 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 194 | 26 травня 2022 р. | SET | PA0002361247 | 1 червня 2022 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 216 | 27 червня 2022 р. | SET | PA0002365365 | 29 червня 2022 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 238 | 27 липня 2022 р. | SET | PA0002368284 | 28 липня 2022 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 261 | 29 серпня 2022 р. | SET | PA0002373615 | 2 вересня 2022 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 305 | 28 жовтня 2022 р. | SET | PA0002388789 | 29 листопада 2022 р. |

Приклад 1 до Скарги позивача

9

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

| | | | | |
|---|---|---|---|---|
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 326 | 28 листопада 2022 р. | SET | PA0002389736 | 6 грудня 2022 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 348 | 28 грудня 2022 р. | SET | PA0002394870 | 9 січня 2023 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 371 | 30 січня 2023 р. | SET | PA0002401200 | 3 лютого 2023 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 411 | 27 березня 2023 р. | SET | PA0002409091 | 28 березня 2023 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, серія 435 | 28 квітня 2023 р. | SET | PA0002416210 | 3 травня 2023 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-3, серія 3 | 29 травня 2023 р. | SET | PA0002420333 | 31 травня 2023 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-3, серія 23 | 26 червня 2023 р. | SET | PA0002426465 | 29 червня 2023 р. |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-3, серія 48 | 31 липня 2023 р. | SET | PA0002430263 | 2 серпня 2023 р. |
| Barsatein-Mausam Pyar Ka, серія 16 | 31 липня 2023 р. | SET | PA0002430264 | 2 серпня 2023 р. |
| Barsatein-Mausam Pyar Ka, серія 38 | 30 серпня 2023 р. | SET | PA0002436062 | 5 вересня 2023 р. |
| Barsatein-Mausam Pyar Ka, серія 81 | 30 жовтня 2023 р. | SET | PA0002443599 | 2 листопада 2023 р. |

Приклад 1 до Скарги позивача

10

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 16 of 16

| | | | | | |
|---|---|---|---|---|---|
| 1 | Barsatein-Mausam Pyar Ka, серія 102 | 28 листопада 2023 р. | SET | PA0002448204 | 30 листопада 2023 р. |
| 2 | Barsatein-Mausam Pyar Ka, серія 125 | 29 грудня 2023 р. | SET | PA0002452946 | 8 січня 2024 р. |
| 3 | Barsatein-Mausam Pyar Ka, серія 146 | 29 січня 2024 р. | SET | PA0002458076 | 2 лютого 2024 р. |
| 4 | Кримінальний патруль 2.0, серія 190 | 28 листопада 2022 р. | SET | PA0002393665 | 13 січня 2023 р. |
| 5 | Кримінальний патруль 2.0, серія 212 | 28 грудня 2022 р. | SET | PA0002399846 | 13 січня 2023 р. |
| 6 | Кримінальний патруль 48 | 30 серпня 2023 р. | SET | PA0002436064 | 5 вересня 2023 р. |
| 7 | Кримінальний патруль 48 | 6 вересня 2023 р. | SET | PA0002440134 | 11 жовтня 2023 р. |
| 8 | Кримінальний патруль Satark, серія | 26 жовтня 2021 р. | SET | PA0002324860 | 28 жовтня 2021 р. |
| 9 | Кримінальний патруль Satark, серія | 29 листопада 2021 р. | SET | PA0002330902 | 30 листопада 2021 р. |
| 10 | Dabangi, серія 1 | 30 жовтня 2023 р. | SET | PA0002443592 | 2 листопада 2023 р. |
| 11 | Dabangi, серія 22 | 28 листопада 2023 р. | SET | PA0002447516 | 30 листопада 2023 р. |
| 12 | Dabangi, серія 45 | 29 грудня 2023 р. | SET | PA0002452735 | 8 січня 2024 р. |
| 13 | Dabangi, серія 66 | 29 січня 2024 р. | SET | PA0002458056 | 2 лютого 2024 р. |
| 14 | Dabangi, серія 88 | 28 лютого 2024 р. | SET | PA0002460330 | 29 лютого 2024 р. |
| 15 | Dabangi, серія 110 | 29 березня 2024 р. | SET | PA0002468759 | 4 квітня 2024 р. |
| 16 | Dhadkan Zindaggi Kii, серія 10 | 17 грудня 2021 р. | SET | PA0002337137 | 4 січня 2022 р. |
| 17 | Dhadkan Zindaggi Kii, серія 36 | 24 січня 2022 р. | SET | PA0002340109 | 26 січня 2022 р. |
| 18 | Dhadkan Zindaggi Kii, серія 60 | 23 лютого 2022 р. | SET | PA0002345046 | 24 лютого 2022 р. |
| 19 | Dhadkan Zindaggi Kii, серія 117 | 27 липня 2022 р. | SET | PA0002368252 | 28 липня 2022 р. |
| 20 | Hum Rahe Na Rahe Hum, серія 15 | 28 квітня 2023 р. | SET | PA0002416209 | 3 травня 2023 р. |
| 21 | Hum Rahe Na Rahe Hum, серія 36 | 29 травня 2023 р. | SET | PA0002421781 | 31 травня 2023 р. |

Приклад 1 до Скарги позивача          11

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 18 of 16

| | | | | |
|---|---|---|---|---|
| Hum Rahe Na Hum, серія 56 | 26 червня 2023 р. | SET | PA0002426599 | 29 червня 2023 р. |
| Hum Rahe Na Hum, серія 81 | 31 липня 2023 р. | SET | PA0002430270 | 2 серпня 2023 р. |
| Hum Rahe Na Hum, серія 103 | 30 серпня 2023 р. | SET | PA0002436128 | 5 вересня 2023 р. |
| Hum Rahe Na Hum, серія 108 | 6 вересня 2023 р. | SET | PA0002440139 | 21 вересня 2023 р. |
| Індія має талант, серія 4 | 24 січня 2022 р. | SET | PA0002340105 | 26 січня 2022 р. |
| Індійській ідол, сезон 13, серія 42 | 29 січня 2023 р. | SET | PA0002401202 | 3 лютого 2023 р. |
| Індійській ідол, сезон 13, серія 58 | 26 березня 2023 р. | SET | PA0002409094 | 28 березня 2023 р. |
| Індійській ідол, сезон 14, серія 8 | 29 жовтня 2023 р. | SET | PA0002443590 | 2 листопада 2023 р. |
| Індійській ідол, сезон 14, серія 25 | 30 грудня 2023 р. | SET | PA0002452711 | 8 січня 2024 р. |
| Jagannath Aur Purvi Ki Dosti Anokhi, серія 13 | 23 лютого 2022 р. | SET | PA0002345048 | 24 лютого 2022 р. |
| Jagannath Aur Purvi Ki Dosti Anokhi, серія 36 | 28 березня 2022 р. | SET | PA0002350061 | 29 березня 2022 р. |
| Jagannath Aur Purvi Ki Dosti Anokhi, серія 58 | 27 квітня 2022 р. | SET | PA0002357045 | 2 травня 2022 р. |
| Jagannath Aur Purvi Ki Dosti Anokhi, серія 79 | 26 травня 2022 р. | SET | PA0002360931 | 1 червня 2022 р. |
| Kaamnaa, серія 11 | 29 листопада 2021 р. | SET | PA0002330746 | 30 листопада 2021 р. |
| Kaamnaa, серія 25 | 17 грудня 2021 р. | SET | PA0002336982 | 3 січня 2022 р. |
| Kaamnaa, серія 51 | 24 січня 2022 р. | SET | PA0002340100 | 26 січня 2022 р. |
| Kaamnaa, серія 73 | 23 лютого 2022 р. | SET | PA0002345054 | 24 лютого 2022 р. |
| Kaamnaa, серія 96 | 28 березня 2022 р. | SET | PA0002350065 | 29 березня 2022 р. |
| Kaamnaa, серія 118 | 27 квітня 2022 р. | SET | PA0002357046 | 2 травня 2022 р. |

Приклад 1 до Скарги позивача                    12

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 19 of 16

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

| | | | | |
|---|---|---|---|---|
| Kaamnaa, серія 139 | 26 травня 2022 р. | SET | PA0002360943 | 1 червня 2022 р. |
| Kaamnaa, серія 161 | 27 червня 2022 р. | SET | PA0002364546 | 29 червня 2022 р. |
| Kaamnaa, серія 183 | 27 липня 2022 р. | SET | PA0002368265 | 28 липня 2022 р. |
| Katha Ankahee, серія 18 | 28 грудня 2022 р. | SET | PA0002395812 | 9 січня 2023 р. |
| Katha Ankahee, серія 41 | 30 січня 2023 р. | SET | PA0002401203 | 3 лютого 2023 р. |
| Katha Ankahee, серія 81 | 27 березня 2023 р. | SET | PA0002409095 | 28 березня 2023 р. |
| Katha Ankahee, серія 105 | 28 квітня 2023 р. | SET | PA0002415695 | 3 травня 2023 р. |
| Katha Ankahee, серія 126 | 29 травня 2023 р. | SET | PA0002421600 | 31 травня 2023 р. |
| Katha Ankahee, серія 146 | 26 червня 2023 р. | SET | PA0002426601 | 29 червня 2023 р. |
| Katha Ankahee, серія 171 | 31 липня 2023 р. | SET | PA0002430271 | 2 серпня 2023 р. |
| Katha Ankahee, серія 193 | 30 серпня 2023 р. | SET | PA0002436131 | 5 вересня 2023 р. |
| Katha Ankahee, серія 199 | 7 вересня 2023 р. | SET | PA0002440144 | 21 вересня 2023 р. |
| Katha Ankahee, серія 236 | 30 жовтня 2023 р. | SET | PA0002443586 | 2 листопада 2023 р. |
| Katha Ankahee, серія 257 | 28 листопада 2023 р. | SET | PA0002448227 | 30 листопада 2023 р. |
| Kavya, серія 26 | 30 жовтня 2023 р. | SET | PA0002443543 | 2 листопада 2023 р. |
| Kavya, серія 47 | 28 листопада 2023 р. | SET | PA0002448184 | 30 листопада 2023 р. |
| Kavya, серія 70 | 29 грудня 2023 р. | SET | PA0002452730 | 8 січня 2024 р. |
| Kavya, серія 91 | 29 січня 2024 р. | SET | PA0002458062 | 2 лютого 2024 р. |
| Kavya, серія 113 | 28 лютого 2024 р. | SET | PA0002460332 | 29 лютого 2024 р. |
| Kavya, серія 135 | 29 березня 2024 р. | SET | PA0002467684 | 4 квітня 2024 р. |
| Kaun Banega Crorepati, сезон 13, серія 85 | 17 грудня 2021 р. | SET | PA0002337136 | 3 січня 2022 р. |
| Kaun Banega Crorepati, сезон 14, серія 17 | 29 серпня 2022 р. | SET | PA0002373617 | 2 вересня 2022 р. |

Приклад 1 до Скарги позивача

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

ПГОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 22 of 16

| | | | | |
|---|---|---|---|---|
| Kaun Banega Crorepati, сезон 15, серія 17 | 6 вересня 2023 р. | SET | PA0002440114 | 21 вересня 2023 р. |
| Kaun Banega Crorepati, сезон 15, серія 19 | 9 вересня 2023 р. | SET | PA0002440154 | 21 вересня 2023 р. |
| Kaun Banega Crorepati, сезон 15, серія 77 | 28 листопада 2023 р. | SET | PA0002447517 | 30 листопада 2023 р. |
| Kaun Banega Crorepati, сезон 15, серія 99 | 28 грудня 2023 р. | SET | PA0002452725 | 8 січня 2024 р. |
| Kuch Rang Pyaar Ke Aise Bhi-Nayi Kahaani, серія 77 | 26 жовтня 2021 р. | SET | PA0002324876 | 27 жовтня 2021 р. |
| Kuch Reet Jagat Ki Aisi Hai, серія 8 | 28 лютого 2024 р. | SET | PA0002460333 | 29 лютого 2024 р. |
| Kuch Reet Jagat Ki Aisi Hai, серія 30 | 29 березня 2024 р. | SET | PA0002468748 | 4 квітня 2024 р. |
| Mehndi Wala Ghar, серія 5 | 29 січня 2024 р. | SET | PA0002458066 | 2 лютого 2024 р. |
| Mehndi Wala Ghar, серія 27 | 28 лютого 2024 р. | SET | PA0002461256 | 29 лютого 2024 р. |
| Mehndi Wala Ghar, серія 48 | 29 березня 2024 р. | SET | PA0002468762 | 4 квітня 2024 р. |
| Mere Sai, серія 989 | 26 жовтня 2021 р. | SET | PA0002324879 | 27 жовтня 2021 р. |
| Mere Sai, серія 1013 | 29 листопада 2021 р. | SET | PA0002330745 | 30 листопада 2021 р. |
| Mere Sai, серія 1252 | 28 жовтня 2022 р. | SET | PA0002388798 | 29 листопада 2022 р. |
| Mere Sai, серія 1273 | 28 листопада 2022 р. | SET | PA0002389277 | 6 грудня 2022 р. |
| Mere Sai, серія 1295 | 28 грудня 2022 р. | SET | PA0002395809 | 9 січня 2023 р. |
| Mere Sai, серія 1318 | 30 січня 2023 р. | SET | PA0002401204 | 3 лютого 2023 р. |
| Mere Sai, серія 1358 | 27 березня 2023 р. | SET | PA0002409097 | 28 березня 2023 р. |
| Mose Chhal Kiye Jaaye, серія 13 | 23 лютого 2022 р. | SET | PA0002345363 | 24 лютого 2022 р. |
| Mose Chhal Kiye Jaaye, серія 36 | 28 березня 2022 р. | SET | PA0002350066 | 29 березня 2022 р. |
| Mose Chhal Kiye Jaaye, серія 58 | 27 квітня 2022 р. | SET | PA0002357050 | 2 травня 2022 р. |

Приклад 1 до Скарги позивача

14

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. IОніон Стріт, б. 401, оф. 1900
Сістл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-2 Складені 15.10.24 Сторінка 24 of 16

| | | | | | |
|---|---|---|---|---|---|
| 1 | Mose Chhal Kiye Jaaye, серія 79 | 26 травня 2022 р. | SET | PA0002360934 | 1 червня 2022 р. |
| 2 | Mose Chhal Kiye Jaaye, серія 98 | 27 червня 2022 р. | SET | PA0002364308 | 29 червня 2022 р. |
| 3 | | | | | |
| 4 | Mose Chhal Kiye Jaaye, серія 120 | 27 липня 2022 р. | SET | PA0002368261 | 28 липня 2022 р. |
| 5 | Punyashlok Ahilyabaii, серія 212 | 26 жовтня 2021 р. | SET | PA0002324864 | 27 жовтня 2021 р. |
| 6 | Punyashlok Ahilyabaii, серія 236 | 29 листопада 2023 р. | SET | PA0002330985 | 30 листопада 2023 р. |
| 7 | Punyashlok Ahilyabaii, серія 250 | 17 грудня 2021 р. | SET | PA0002336979 | 3 січня 2022 р. |
| 8 | | | | | |
| 9 | Punyashlok Ahilyabaii, серія 276 | 24 січня 2022 р. | SET | PA0002340104 | 26 січня 2022 р. |
| 10 | Punyashlok Ahilyabaii, серія 321 | 28 березня 2022 р. | SET | PA0002350067 | 29 березня 2022 р. |
| 11 | Punyashlok Ahilyabaii, серія 343 | 27 квітня 2022 р. | SET | PA0002357049 | 2 травня 2022 р. |
| 12 | | | | | |
| 13 | Punyashlok Ahilyabaii, серія 364 | 26 травня 2022 р. | SET | PA0002360932 | 1 червня 2022 р. |
| 14 | Punyashlok Ahilyabaii, серія 431 | 29 серпня 2022 р. | SET | PA0002373618 | 2 вересня 2022 р. |
| 15 | Punyashlok Ahilyabaii, серія 475 | 28 жовтня 2022 р. | SET | PA0002388797 | 29 листопада 2022 р. |
| 16 | Punyashlok Ahilyabaii, серія 496 | 28 листопада 2022 р. | SET | PA0002389279 | 6 грудня 2022 р. |
| 17 | | | | | |
| 18 | Punyashlok Ahilyabaii, серія 518 | 28 грудня 2022 р. | SET | PA0002395091 | 9 січня 2023 р. |
| 19 | Punyashlok Ahilyabaii, серія 541 | 30 січня 2023 р. | SET | PA0002401205 | 3 лютого 2023 р. |
| 20 | Punyashlok Ahilyabaii, серія 581 | 27 березня 2023 р. | SET | PA0002409098 | 28 березня 2023 р. |
| 21 | | | | | |
| 22 | Punyashlok Ahilyabaii, серія 605 | 28 квітня 2023 р. | SET | PA0002418960 | 3 травня 2023 р. |
| 23 | Punyashlok Ahilyabaii, серія 626 | 29 травня 2023 р. | SET | PA0002421593 | 31 травня 2023 р. |
| 24 | Punyashlok Ahilyabaii, серія 646 | 26 червня 2023 р. | SET | PA0002426603 | 29 червня 2023 р. |
| 25 | | | | | |

Приклад 1 до Скарги позивача

15

26

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

| | | | | |
|---|---|---|---|---|
| 1 | Punyashlok Ahilyabaii, серія 693 | 30 серпня 2023 р. | SET | PA0002436134 | 5 вересня 2023 р. |
| 2 | Sapno Ki Chhalaang, серія 15 | 28 квітня 2023 р. | SET | PA0002418964 | 3 травня 2023 р. |
| 3 | Sapno Ki Chhalaang, серія 36 | 29 травня 2023 р. | SET | PA0002420332 | 31 травня 2023 р. |
| 4 | Sapno Ki Chhalaang, серія 56 | 26 червня 2023 р. | SET | PA0002426606 | 29 червня 2023 р. |
| 5 | Sapno Ki Chhalaang, серія 81 | 31 липня 2023 р. | SET | PA0002430276 | 2 серпня 2023 р. |
| 6 | Shrimad Ramayan, серія 37 | 29 січня 2024 р. | SET | PA0002458696 | 7 лютого 2024 р. |
| 7 | Shrimad Ramayan, серія 59 | 28 лютого 2024 р. | SET | PA0002461442 | 29 лютого 2024 р. |
| 8 | Shrimad Ramayan, серія 82 | 29 березня 2024 р. | SET | PA0002467682 | 4 квітня 2024 р. |
| 9 | Yashomati Maiyya Ke Nandlala, серія 14 | 27 червня 2022 р. | SET | PA0002364321 | 29 червня 2022 р. |
| 10 | Yashomati Maiyya Ke Nandlala, серія 36 | 27 липня 2022 р. | SET | PA0002368182 | 28 липня 2022 р. |
| 11 | Yashomati Maiyya Ke Nandlala, серія 59 | 29 серпня 2022 р. | SET | PA0002373625 | 2 вересня 2022 р. |
| 12 | Yashomati Maiyya Ke Nandlala, серія 103 | 28 жовтня 2022 р. | SET | PA0002388794 | 29 листопада 2022 р. |
| 13 | Yashomati Maiyya Ke Nandlala, серія 1124 | 28 листопада 2022 р. | SET | PA0002389285 | 6 грудня 2022 р. |

Приклад 1 до Скарги позивача

16

ПTOB PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

ОКРУЖНИЙ СУД СПОЛУЧЕНИХ ШТАТІВ
ЗАПАДНИЙ ОКРУГ ШТАТУ ВАШИНГТОН
У СІЄТЛІ

| | | |
|---|---|---|
| ТОВ DISH NETWORK, | ) | № 2:24-cv-01683 |
| | ) | |
| Позивач, | ) | **ПРИКЛАД 2 СКАРГИ** |
| | ) | **ПОЗИВАЧА** |
| проти | | |
| | ) ) | |
| ТОВ VIRTUAL SYSTEMS та | ) | |
| В'ЯЧЕСЛАВ СМИРНОВ, | ) | |
| | ) | |
| Відповідачі. | ) | |

**РОБОТИ З ЕПІЗОДАМИ, ЩО НЕ ПІДЛЯГАЮТЬ РЕЄСТРАЦІЇ**

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-3 Складені 15.10.24 Сторінка2 of 2

| Робота | Канал |
|---|---|
| El Hayah el Yom | Al Hayah 1 |
| Вставки/Новини | ART Aflam 1 |
| Вставки/Новини | ART Aflam 2 |
| Вставки/Новини | ART Cima |
| ATN Business & Finance | ATN Bangla |
| News Hour Xtra | ATN News |
| Flash | B4U Movies |
| Bollywood Minute | B4U Movies |
| Hadret El Omda | CBC |
| Hadret El Omda | Драма на CBC |
| El Kebir | Hekayat |
| Maktoub Alaya | Hekayat |
| Arabwood | LBC |
| Aswad | LBCI |

Приклад 2 до Скарги позивача

1

2        ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-3 Складені 15.10.24 Сторінка3 of 2

| El Nar Bel Nar | LBCI |
|---|---|
| Al Arbaji | LBCI |
| Laylet Soqot Baghdad | Melody Aflam |
| Вставки/Новини | Класичні мелодії |
| Apnar Jiggasha | NTV Bangla |
| Ei Somoy | NTV Bangla |
| Ek Shobday Quran | NTV Bangla |
| Гламурний світ | NTV Bangla |
| Moddh Rater Khabor | NTV Bangla |
| NTV Вечірні новини | NTV Bangla |
| Rater Khabor | NTV Bangla |
| Shashtho Protidin | NTV Bangla |
| Shironam | NTV Bangla |
| Shondhar Khabor | NTV Bangla |
| Al Rahel | Rotana America |
| Laylat Al Soqooq | Rotana America |
| Мадам Сер | SAB |
| Ghar ek Sapnaa | Sahara One |
| Ночі з привідами | Sahara One |
| Бюлетень новин | Sahara Samay |
| Prime 9 | Sahara Samay |
| Heroine Zindagi Ke Panno Se | SET |
| Найкращій танцівник Індії | SET |
| Extraa Shots Special | SET MAX |
| Breaking Ground | Times Now |
| India Upfront | Times Now |
| The Newshour | Times Now |
| The Newshour First | Times Now |
| Times Now Live | Times Now |
| Planet Bollywood News | Zoom |

Приклад 2 до Скарги позивача

ОКРУЖНИЙ СУД СПОЛУЧЕНИХ ШТАТІВ
ЗАХІДНИЙ ОКРУГ ШТАТУ ВАШИНГТОН
У СІЄТЛІ

| | | |
|---|---|---|
| ТОВ DISH NETWORK, | ) | № 2:24-cv-01683 |
| | ) | |
| Позивач, | ) | **ПРИКЛАД 3 ДО СКАРГИ** |
| | ) | **ПОЗИВАЧА** |
| проти | ) | |
| | ) | |
| ТОВ VIRTUAL SYSTEMS та | ) | |
| В'ЯЧЕСЛАВ СМИРНОВ, | ) | |
| | ) | |
| Відповідачі. | ) | |

**ПІРАТСЬКІ СЕРВІСИ**

| IP адреса Віртуальних систем [1] | Назва домену URL [2] |
|---|---|
| 31.42.184.159 | mtsiptv.com, sharkytv.com |
| 31.42.184.163 | dominoiptv.com |
| 31.42.185.54 | mohdtv.com |
| 31.42.187.33 | pro-ott.com |
| 31.42.187.97 | xviptv.com |
| 31.42.187.100 | viponetv.com |
| 31.42.187.118 | sansat.net |

[1] IP адреса відповідає серверам та мережі Віртуальних систем, що використовувалися Піратськими сервісами для передачі Робіт. Така IP адреса іноді маскувалася шляхом використання послуг не учасника Cloudflare.
[2] URL відповідають передачам Робіт Піратськими сервісами з серверів та мережі Віртуальних систем. Назва будь-якого домену за URL виявлена, разом із будь-яким STB, що використовувалися для доступу до Робіт.

Приклад 3 до Скарги позивача                     1                ПТОВ PREG O'DONNELL &
GILLETT

вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-4 Складені 15.10.24 Сторінка 2 of 4

| | |
|---|---|
| 31.42.187.234 | bestott.net (atlas) |
| 45.11.57.127 | herogayab.net |
| 45.11.58.181 | tektv.co (iptv sam) |
| 45.11.58.199 | procajaiptv.com (dima) |
| 45.12.3.119 | symphonycdn.me (zumm) |
| 45.89.245.65 | ----(great bee, super arab) |
| 45.89.245.66 | ----(great bee, super arab) |
| 45.89.245.67 | ----(great bee, joytv, lool, super arab) |
| 45.89.245.68 | ----(great bee, joytv, lool, super arab) |
| 45.89.245.69 | ----(lool, super arab) |
| 45.89.245.71 | ----(great bee, joytv, super arab) |
| 45.95.235.118 | videoapne.co |
| 62.182.83.71 | vkcdn5.com |
| 62.182.83.91 | l1iptv.xyz; lionboxiptv.xyz |
| 62.182.85.20 | ---- (eagle) |
| 62.182.85.148 | pro-ott.com |
| 62.182.85.153 | itvdom.com |
| 62.182.85.155 | webvps.de |
| 62.182.85.159 | xviptv.com |
| 62.182.86.80 | imlie.net |
| 62.182.86.121 | snipemedia.net (snipe) |
| 79.124.41.28 | ----(great bee, joytv, super arab) |
| 79.124.41.29 | ----(great bee, joytv, super arab) |
| 79.124.41.30 | ----(great bee, joytv, lool) |
| 79.124.41.32 | ---- (lool) |
| 79.124.41.39 | ----(great bee, joytv, super arab) |
| 91.208.115.151 | rktv-ott.com (dima) |
| 91.208.115.170 | sansat.net |
| 91.235.143.17 | procajaiptv.com (dima) |
| 95.214.232.234 | tptv.cz (iptv sam) |
| 95.214.234.7 | atg100.xyz (atlas) |
| 95.214.234.104 | videoapne.co |
| 95.214.234.243 | ---- (zumm) |

ПІТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-4 Складені 15.10.24 Сторінка 3 of 4

| 95.214.235.1 | viponetv.com |
|---|---|
| 95.214.235.96 | wanicelife.com |
| 103.211.101.124 | mmastertv.xyz (atlas) |
| 103.211.101.131 | mmastertv.xyz (atlas), msuperab.xyz (digitalizard) |
| 103.211.101.137 | msuperab.xyz (digitalizard) |
| 103.211.101.166 | msuperab.xyz (digitalizard) |
| 103.211.101.174 | msuperab.xyz (digitalizard) |
| 103.211.101.175 | msuperab.xyz (digitalizard) |
| 152.89.61.127 | sansat.net |
| 152.89.61.130 | tektv.co (iptv sam) |
| 152.89.61.137 | tvsertop.com (atlas) |
| 152.89.61.141 | sansat.net |
| 152.89.61.181 | getmax.cx (woob) |
| 152.89.62.34 | tvlogy.to |
| 152.89.62.76 | wanicelife.com |
| 152.89.63.69 | saturne.one (iptv sam) |
| 152.89.63.177 | procajaiptv.com (dima) |
| 176.119.29.14 | livebypass.com (gogo) |
| 176.119.29.17 | ---- (gogo) |
| 176.119.29.35 | ---- (gogo) |
| 176.119.29.42 | ---- (gogo) |
| 176.119.29.47 | ---- (gogo) |
| 176.119.29.78 | ---- (gogo) |
| 185.66.89.216 | atg100.xyz (atlas) |
| 185.66.90.155 | viponetv.com |
| 185.66.90.205 | xviptv.com |
| 185.66.90.247 | pro-ott.com |
| 185.233.186.33 | 3mlive.com (desi) |
| 185.254.196.8 | netmos.ovh |
| 185.254.196.31 | vkcdn5.com |
| 185.254.197.141 | atg100.xyz (atlas) |
| 185.254.197.149 | atg100.xyz (atlas) |
| 185.254.197.154 | atg100.xyz (atlas) |

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сіетл, Вашингтон, 98101
(206) 287-1775

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

Справа 2:24-cv-01683 Документи 1-4 Складені 15.10.24 Сторінка 5 of 4

| 185.254.197.156 | atg100.xyz (atlas) |
| 185.254.197.164 | atg100.xyz (atlas) |
| 185.254.197.166 | atg100.xyz (atlas) |
| 185.254.197.221 | mtsiptv.com |
| 185.254.197.223 | dominoiptv.com |
| 185.255.122.88 | 3mlive.com, realtv-hd.com (desi) |
| ----- | driptvs.com |

Приклад 3 до Скарги позивача

ПТОВ PREG O'DONNELL & GILLETT
вул. Юніон Стріт, б. 401, оф. 1900
Сієтл, Вашингтон, 98101
(206) 287-1775

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Western District of Washington

| | | |
|---|---|---|
| DISH NETWORK L.L.C. | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Plaintiff(s)* | ) | |
| v. | ) | Civil Action No.  2:24-cv-01683 -GJL |
| | ) | |
| VIRTUAL SYSTEMS, LLC and | ) | |
| VYACHESLAV SMYRNOV | ) | |
| | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Vyacheslav Smyrnov
1V Vadyma Hetmana Street, Apt. 46
Kyiv, Ukraine
03057

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Gregory Latendresse
> PREG O'DONNELL & GILLETT PLLC
> 401 Union Street, Suite 1900
> Seattle, Washington 98101

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:   10/18/2024

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  2:24-cv-01683-GJL

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____
was received by me on *(date)* _____

☐ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___

I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                           *Server's signature*

                                       _____
                                           *Printed name and title*

                                       _____
                                           *Server's address*

Additional information regarding attempted service, etc:

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| DISH NETWORK L.L.C., | ) | No. 2:24-cv-01683 |
| | ) | |
| Plaintiff, | ) | **PLAINTIFF'S COMPLAINT** |
| | ) | |
| v. | ) | |
| | ) | |
| VIRTUAL SYSTEMS, LLC and | ) | |
| VYACHESLAV SMYRNOV, | ) | |
| | ) | |
| Defendants. | ) | |

**Nature of the Action**

1.     Plaintiff DISH Network L.L.C. ("DISH") is one of the largest pay-tv providers in the United States and has millions of subscribers nationwide. This case concerns the infringement of DISH's copyrights in programming ("Works") that aired on 23 international channels that DISH exclusively licensed for transmission in the United States ("Channels").

2.     DISH's copyrights in the Works were directly infringed because, without DISH's authorization, the Works were transmitted on pirate streaming services ("Pirate Services") to users of those services in the United States ("Users"). The Pirate Services depend on hosting providers to lease them the servers and network needed to transmit the Works over the internet to their Users.

3.     Defendant Virtual Systems, LLC ("Virtual Systems") materially contributed to and induced the Pirate Services' direct infringement of the Works by providing the servers and network

Plaintiff's Complaint                                        1

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

1    that the Pirate Services used to transmit the Works, including servers in Virtual Systems' Seattle

2    data center. Virtual Systems openly advertises that it does not comply with United States copyright

3    law and does not require its customers, such as the Pirate Services, to abide by such law.

4        4.    Virtual Systems knew that the Pirate Services were infringing the Works because,

5    on hundreds of occasions, DISH asked Virtual Systems to stop this specific infringement that was

6    taking place on its servers and network. Virtual Systems could have taken simple measures to stop

7    the infringement – such as removing or disabling the infringing streams or terminating the Pirate

8    Services' accounts because of their repeated infringement – but Virtual Systems refused to take

9    such measures and elected to continue profiting from the Pirate Services' direct infringement.

10       5.    Virtual Systems is liable for contributory and vicarious copyright infringement. Its

11   owner and CEO, Defendant Vyacheslav Smyrnov ("Smyrnov"), is also personally liable because

12   he authorized, directed, and participated in Virtual Systems' infringement, including by managing

13   the servers and network the Pirate Services used to infringe the Works and, despite DISH notifying

14   him of this infringement, failing to exercise his ability to stop it.

15                                      **Parties**

16       6.    Plaintiff DISH is a limited liability company organized under Colorado law, with

17   its principal place of business at 9601 South Meridian Blvd., Englewood, Colorado 80112.

18       7.    Defendant Virtual Systems is a limited liability company organized under Ukraine

19   law, with its principal place of business at 33/37 Laboratorna St., Kyiv, Ukraine.

20       8.    Defendant Smyrnov is an individual believed to reside at 1V Vadyma Hetmana St., -

21   Apt. 46, Kyiv, Ukraine.

22                              **Jurisdiction and Venue**

23       9.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338, and

24   1400 because DISH asserts claims under the Copyright Act, 17 U.S.C. § 101 *et seq.*

25       10.   The Court has personal jurisdiction over Virtual Systems pursuant to Federal Rule

26   of Civil Procedure 4(k)(1)(A) because Virtual Systems committed infringing acts in Washington,

Plaintiff's Complaint                          2                    Preg O'Donnell & Gillett PLLC
                                                                    401 Union Street, Suite 1900
                                                                    Seattle, Washington 98101
                                                                    (206) 287-1775

1   including through its operation of a data center and servers in the Seattle area with which it

2   contributes or contributed to the Pirate Services' infringement of the Works.[1] Virtual Systems did

3   not stop the infringement taking place from its Seattle data center and servers when notified of that

4   infringement. DISH was harmed in Washington because at least part of Virtual Systems' infringing

5   conduct occurred there, damaging the value of DISH's exclusive copyrights, and because, on

6   information and belief, the Works were transmitted to Users in Washington that avoided paying

7   subscription fees to DISH.

## VSYS COVERAGE



9   VSYS Host is a hosting services provider that boast its infrastructure in
    Kyiv, Amsterdam, and Seattle, all of which are Tier III data center
    facilities. These DCs are the embodiment of a high-performance
    network, including several nerves and a capacity of more than 2 Tbit.

    We are continuing to expand our geographical coverage[.]

    VSYS HOST UPTIMES IN THE STATES:

    ▸ KYIV, UKRAINE
    ▸ AMSTERDAM, THE NETHERLANDS
    ▸ SEATTLE, THE USA

15      11.     The Court, alternatively, has personal jurisdiction over Virtual Systems pursuant to

16   Federal Rule of Civil Procedure 4(k)(2), to the extent there is an insufficient basis to exercise

17   personal jurisdiction in Washington under Rule 4(k)(1)(A). Virtual Systems identifies Washington

18   as the only location from which it operates in the United States and therefore, on information and

19   belief, it is not subject to personal jurisdiction in any other state's courts of general jurisdiction.

20      12.     Virtual Systems has sufficient contacts with the United States to support personal

21   jurisdiction under Rule 4(k)(2) that include, in addition to its data center and servers in Seattle, a

22   marketing campaign directed towards streaming services seeking to provide infringing content to

23   a United States audience while avoiding the implications of United States copyright law, such as

24   the Pirate Services. DISH was harmed in the United States for the reasons identified above, and

25

26   [1]https://vsys.host/ (image of data center map below). On information and belief, Virtual Systems' Seattle-area data
    center is located at 3355 South 120th Place, Tukwila, Washington. Website URLs identified in this complaint were
    last visited on or after September 6, 2024.

Plaintiff's Complaint                    3                    Preg O'Donnell & Gillett PLLC
                                                             401 Union Street, Suite 1900
                                                             Seattle, Washington 98101
                                                             (206) 287-1775

1    that harm is amplified because, on information and belief, the Works were infringed throughout

2    the United States and Users nationwide avoided paying subscription fees to DISH. DISH was also

3    harmed in the United States because it is a United States company and holds the copyrights at issue

4    only for the United States.

5        13.    The Court has personal jurisdiction over Smyrnov pursuant to Rule 4(k)(1)(A), or

6    alternatively Rule 4(k)(2), because Smyrnov is a primary participant in Virtual Systems' infringing

7    conduct or had control of and at least direct participation in such activities. Smyrnov is the owner,

8    director, and CEO of Virtual Systems. Smyrnov identifies his primary responsibilities at Virtual

9    Systems to include "[m]anaging network and server equipment" and a "department of 10 people."[2]

10   Smyrnov was personally notified of the infringement of the Works taking place on the network

11   and servers that he managed, but he failed to stop the infringement. Smyrnov financially benefitted

12   from that infringement as owner, director, and CEO of Virtual Systems.

13       14.    The Court's exercise of personal jurisdiction over Virtual Systems and Smyrnov,

14   whether pursuant to Rule 4(k)(1)(A) or 4(k)(2), is reasonable and consistent with the United States

15   Constitution and United States law because their purposeful interjection into Washington and the

16   United States is substantial, the burden of them having to defend in this Court is minimal, and this

17   Court is the most appropriate forum to decide this case. Virtual Systems, in addition to its Seattle

18   data center and advertising that targets the United States, uses United States companies to support

19   its business and promote its services, including Facebook, Twitter/X, LinkedIn, Reddit, YouTube,

20   GitHub, and Public Domain Registry through which its website is registered. Virtual Systems is

21   an established company that generates tens of millions of dollars in revenues annually. The United

22   States has an interest in having its copyright laws enforced in its federal courts, while DISH has

23   an interest in protecting itself in a United States federal court, perhaps the only forum where DISH

24   can enforce its United States copyrights for infringement that occurred in the United States.

25

26

---

[2]https://www.linkedin.com/in/slavikbutch/?originalSubdomain=ua

Plaintiff's Complaint                          4                    Preg O'Donnell & Gillett PLLC
                                                                   401 Union Street, Suite 1900
                                                                   Seattle, Washington 98101
                                                                   (206) 287-1775

15.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to DISH's claims occurred in this district; under § 1391(b)(3) because Virtual Systems and Smyrnov are each subject to personal jurisdiction in this district; and under § 1391(c)(3) because as nonresidents of the United States they may be sued in any district. Venue is also proper under 28 U.S.C. § 1400(a) because the case involves Copyright Act violations.

### DISH's Copyrights

16.     DISH provides the Channels to its subscribers pursuant to agreements that it entered into with the Channels' owners or their agents ("Networks"). The Networks and Channels include: B4U U.S., Inc. (*B4U Movies*); Bennett, Coleman and Company Limited (*Times Now* and *Zoom*); GloboSat Entertainment LLC (*Sahara One* and *Sahara Samay*); International Media Distribution (Luxembourg) S.A.R.L. (*Al Hayah 1, ART Aflam 1, ART Aflam 2, ART Cima, Hekayat, LBC, LBCI,* and *Rotana America*); MSM Asia Limited (*SET, SET MAX,* and *SAB*); Soundview ATN LLC (*ATN Bangla*); Soundview Broadcasting, L.L.C. (*ATN News* and *NTV Bangla*); and World Span Media Consulting, Inc. (*CBC, CBC Drama, Melody Aflam,* and *Melody Classic*).

17.     The Networks acquire copyrights in the Works that air on their respective Channels, including by producing the Works and by assignment. The copyrighted material includes Works registered with the United States Copyright Office and additional unregistered Works.[3] Several of the Works involve series, for which each episode constitutes a separate copyrighted Work.

18.     DISH entered into signed, written licensing agreements with the Networks granting DISH the exclusive right to distribute and publicly perform the Works that air on the Channels in the United States, by means that include satellite, over-the-top (OTT), internet protocol television (IPTV), and internet.

19.     DISH's exclusive rights to distribute and publicly perform the Works were in effect when the Pirate Services transmitted them through Virtual Systems' servers and network. DISH's

---

[3] Exhibit 1 (illustrative list of Works subject to registration) and Exhibit 2 (illustrative list of unregistered Works).

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

1    exclusive distribution and public performance rights remain in effect with respect to Works aired

2    on many of the Channels.

3                                **The Pirate Services' Infringement**

4         20.      Digital video piracy was found to cause the United States economy to lose at least

5    $29.2 billion in revenue each year, with more than 80% of this piracy being attributable to illegal

6    streaming services such as the Pirate Services.[4] The Pirate Services were able to provide Users

7    thousands of channels, and tens of thousands of video-on-demand (VOD) programs, at a fraction

8    of the cost charged by legal providers such as DISH, at least in part, because the Pirate Services

9    did not pay fees to license the content they provide.

10        21.      The Pirate Services transmitted the Works to Users over the internet using Virtual

11    Systems' servers and network as part of linear streams of the Channels or on a VOD basis. Users

12    accessed the Works through a set-top box (STB) or a website that links to the Works or provides

13    a playlist used to access the Works. Users often had to purchase a subscription to view the Pirate

14    Services' content, in addition to purchasing any required STB. DISH did not authorize the Pirate

15    Services to distribute or publicly perform the Works and received no compensation from them.

16        22.      The Pirate Services largely conducted their infringing businesses over the internet

17    and engaged in efforts to disguise the true identities of their operators. On information and belief,

18    most of the Pirate Services were operated by infringers located outside the United States. For this

19    complaint, the Pirate Services are identified by one or more IP addresses associated with Virtual

20    Systems' servers and network from which the Works were transmitted, along with any domain

21    name incorporated in the URL that was used in transmitting the Works and any STB that was used

22    in accessing them, which forms an illustrative list of Pirate Services that used Virtual Systems'

23    servers and network to directly infringe DISH's copyrights.[5]

24

25

26    [4] Global Intellectual Property Center, Impacts of Digital Piracy on the United States Economy (June 2019), available
at https://www.uschamber.com/assets/documents/Digital_Video_Piracy_June_2019.pdf.
[5] Exhibit 3 (illustrative list of Pirate Services).

Plaintiff's Complaint                        6                     Preg O'Donnell & Gillett PLLC
                                                              401 Union Street, Suite 1900
                                                               Seattle, Washington 98101
                                                                   (206) 287-1775

23.     The scale of the Pirate Services' direct infringement of the Works is extensive. The Pirate Services that transmitted linear streams of the Channels that aired the Works often did so 24 hours per day and 7 days per week, in some cases for several years, meaning these Pirate Services alone infringed a substantial number of Works. The Pirate Services that transmitted the Works on a VOD basis add to this already significant amount of infringement.

24.     The Pirate Services were notified of their infringement multiple times but have not stopped infringing DISH's copyrights. DISH was awarded a judgment and permanent injunction against parties located abroad that were involved in operating at least three of the Pirate Services, but even that has proven ineffective in stopping their infringement. After being enjoined, one Pirate Service moved its transmissions of the Channels that aired the Works to Virtual Systems' servers and network, where the infringement of DISH's copyrights is not only tolerated but encouraged.[6] The other two Pirate Services were using Virtual Systems' servers and network to infringe DISH's copyrights around the time the lawsuits were filed and continued doing so, despite being enjoined.[7] Residing outside the United States, and having no assets in the United States, the Pirate Services have little incentive to comply with infringement notices or United States court orders.

**Virtual Systems' End-to-End Streaming Solutions**

25.     Virtual Systems operates data centers located in Seattle, Ukraine, the Netherlands, and Singapore, using "only its own hardware and network equipment."[8] Virtual Systems stresses this control when describing its Seattle data center, stating "we aren't reselling dedicated servers in the USA – we provide our own hardware and network equipment."[9]

26.     Virtual Systems provides its customers with various types of dedicated servers and partially dedicated servers (referred to as virtual private servers or VPS) to transmit content over the internet. Virtual Systems states "that the very success of streaming businesses depends on their

---

[6] *DISH Network L.L.C. v. Lool Tech Co.*, No. 4:16-cv-01771 (S.D. Tex.).
[7] *DISH Network L.L.C. v. Alghafir*, No. 4:20-cv-01678 (S.D. Tex.); *DISH Network L.L.C. v. 786 Wireless World, Inc.*, No. 21-cv-05730 (E.D.N.Y.).
[8] https://vsys.host/
[9] https://vsys.host/dedicated-servers-usa

Plaintiff's Complaint                             7                    Preg O'Donnell & Gillett PLLC
                                                                       401 Union Street, Suite 1900
                                                                       Seattle, Washington 98101
                                                                       (206) 287-1775

1    ability to deliver media-intensive services paired with minimum latency" and that Virtual Systems'

2    "servers provide enough bandwidth, memory, and storage resources you need to meet that goal."[10]

3    Virtual Systems charges customers to use its servers and network based upon options the customer

4    selects, including the server features and the data center where the server is located.

5            27.    Virtual Systems also provides its customers, for an additional cost, storage servers

6    ("an excellent solution for stocking lots of videos"),[11] GPU servers ("a perfect tool for encoding

7    and decoding video files or streams in real time"),[12] and Xtream-UI middleware (a software service

8    that enables customers "to manage their IPTV and VOD service and customer database").[13] Virtual

9    Systems encourages customers to combine these offerings and take advantage of this end-to-end

10   streaming solution because "it's convenient[,] cost-effective," and "fast to transfer data" because

11   "all your servers are in the same super-fast network."[14]

12           28.    Virtual Systems takes a hands-on approach to operating its servers and network,

13   stating that "[o]ur teams develop, install, and manage our dedicated servers in the USA" and "we

14   continually check US dedicated servers['] health and the environment."[15] Virtual Systems also

15   states that "only highly qualified specialists can access US dedicated server hardware and network

16   equipment" and offers to have its "courteous and educated team . . . help you with any dedicated

17   hosting USA concerns."[16] Virtual Systems makes similar statements concerning its active role in

18   operating the servers located in its data centers outside the United States.[17]

19           29.    Virtual Systems markets its Seattle servers as "a perfect choice for anyone . . . with

20   a North American audience," stating that "[o]ur data center is directly linked to the major internet

21   routes in the United States, allowing for fast data transfers."[18] Virtual Systems' data center in

22

---

23   [10] https://vsys.host/streaming-servers
     [11] Id.
     [12] Id.

24   [13] https://vsys.host/xtreme-codes-panel-saas
     [14] https://vsys.host/streaming-servers

25   [15] https://vsys.host/dedicated-servers-usa
     [16] Id.

26   [17] https://vsys.host/dedicated-server-hosting; https://vsys.host/dedicated-servers-netherlands
     [18] https://vsys.host/dedicated-servers-usa

Plaintiff's Complaint                                8                    Preg O'Donnell & Gillett PLLC
                                                                          401 Union Street, Suite 1900
                                                                          Seattle, Washington 98101
                                                                          (206) 287-1775

1   Ukraine is similarly advertised as providing "[e]xcellent connectivity to the East Coast of the US[,]

2   . . . built to get the lowest latency and zero-loss network routes."[19] Virtual Systems' data center in

3   the Netherlands is said to offer "an unprecedented rate of overall connectivity to the US."[20] Virtual

4   Systems promotes its servers and network as "tasty for streaming services" and states that "large

5   IPTV streaming projects and adult tube sites are more than welcome here."[21]

6       30.     Virtual Systems provided the Pirate Services the servers and network that were used

7   to transmit the Works to Users, which included servers in Virtual Systems' data centers located in

8   Seattle, Ukraine, and the Netherlands. Virtual Systems may have also provided the Pirate Services

9   additional servers and services used in transmitting the Works, such as the storage servers, video

10   encoding servers, and Xtream-UI middleware identified above.

11                          **Virtual Systems' "DMCA Ignored" Policy**

12       31.     Virtual Systems appeals to streaming services that violate United States copyright

13   law, such as the Pirates Services, with its "DMCA Ignored" policy, under which Virtual Systems

14   states that "we ignore DMCA takedown notices" concerning servers in its Ukraine data center and

15   therefore customers "[e]njoy full protection against DMCA takedown notices."[22] Virtual Systems

16   promotes its servers in Seattle and the Netherlands similarly, stating "all DMCA notices we receive

17   are processed by our legal team, but we do act courteously towards our valued clients, who might

18   be having occasional issues with copyrights."[23]

19

20

21

22

23

24
     ---
     [19]https://vsys.host/streaming-servers; https://vsys.host/dmca-ignored-dedicated-server
25   [20]https://vsys.host/10gbps-servers
     [21]https://vsys.host/20gbps-servers; https://vsys.host/streaming-servers
26   [22]https://vsys.host/dmca-ignored-dedicated-server (partial image of webpage below).
     [23]https://vsys.host/10gbps-servers

Plaintiff's Complaint                        9                 Preg O'Donnell & Gillett PLLC
                                                               401 Union Street, Suite 1900
                                                               Seattle, Washington 98101
                                                               (206) 287-1775



32.     Virtual Systems advertises that its "DMCA Ignored" policy extends to take down notices concerning its storage servers ("We ignore DMCA dismissal unless the conditions of the situation force us to")[24] and Xtream-UI middleware ("We do not react to DMCA shutdown notices and redirect such notices to the client unless the situation conditions force us to").[25]

33.     Virtual Systems and Smyrnov were sent written notices asking that they remove or disable access to Works that the Pirate Services were transmitting from Virtual Systems' servers and network, thereby infringing DISH's copyrights ("Infringement Notices"). On information and belief, the Infringement Notices were received because they were delivered by mail and email to valid addresses used by Virtual Systems and Smyrnov. Virtual Systems and Smyrnov, collectively, were the recipients of at least 512 Infringement Notices. Virtual Systems and Smyrnov received additional notices concerning infringements of Works by customers other than the Pirate Services.

34.     The Infringement Notices complied with the Digital Millennium Copyright Act, 17 U.S.C. § 512. The Infringement Notices contained, among other things, information reasonably sufficient for Virtual Systems to locate the infringing material, including the IP address associated

---

[24]https://vsys.host/storage-servers
[25]https://vsys.host/xtreme-codes-panel-saas
Plaintiff's Complaint

10

1   with Virtual Systems' server from which the material was transmitted or the URL of the infringing
2   transmission. Virtual Systems was sent Infringement Notices regarding the Channels on which the
3   Works aired, prior to the Pirate Services transmitting the Works.

4         35.    Virtual Systems did not respond to the Infringement Notices and did not take any
5   measures to stop the Pirate Services' infringement occurring on its servers and network. The Pirate
6   Services kept infringing DISH's copyrights in Works aired on the Channels, even using the same
7   IP addresses and URLs previously reported to Virtual Systems. Virtual Systems acted true to its
8   "DMCA Ignored" policy by disregarding the Infringement Notices and turning a blind eye to the
9   Pirate Services' infringement of DISH's copyrights.

10        36.    Virtual Systems also did not comply with orders from United States courts, entered
11  in lawsuits involving three of the Pirate Services, that permanently enjoined Virtual Systems from
12  providing its servers and network to those Pirate Services because they were using them to infringe
13  DISH's copyrights.[26] Two court orders specifically identified Virtual Systems as being enjoined,
14  while a third court order enjoined Virtual Systems by virtue of its role in providing the servers and
15  network used in the infringement. Virtual Systems was notified of the permanent injunctions but
16  did not cease providing its servers and network to the Pirate Services, which continued infringing
17  DISH's copyrights, including its copyrights in the Works.

18        37.    Virtual Systems is not entitled to assert any DMCA safe harbor defense because it
19  does not adopt and reasonably implement a policy that provides for the termination of its services
20  to repeat infringers. Virtual Systems is also not entitled to assert most DMCA safe harbor defenses
21  because it does not have a designated DMCA agent to receive infringement notices; because when
22  such notices are received or it otherwise has knowledge of infringement, Virtual Systems does not
23  respond expeditiously to remove or disable access to the infringing material; and because Virtual
24  Systems receives financial benefits directly attributable to infringement that is under its control.

25
26
---
[26]Footnotes 6-7 (identifying cases).
Plaintiff's Complaint                              11

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

**Virtual Systems' "Under The Radar" Policy**

38.     Virtual Systems also encourages the Pirate Services to infringe DISH's copyrights by keeping their identities anonymous. Virtual Systems informs its customers that "[y]our profile is always kept under the radar" and "[s]ince our knowledge of you is kept to a minimum, your anonymity is guaranteed."[27] Virtual Systems touts that it does not comply with KYC (Know Your Customer) requirements, stating that "we do not require personal data to make a purchase."[28] And Virtual Systems states that it will communicate with its customers "via anonymous e-mail" and it "do[es] not save any records."[29]

39.     Virtual Systems also encourages customers to keep their identifies undiscoverable by paying with cryptocurrency, stating that "we do love and accept cryptocurrencies" and that such payments "may be made anonymously."[30] Virtual Systems advises customers to "[t]ake comfort in the fact that you are completely protected here if your personal privacy is a top priority."[31]



---

[27]https://vsys.host/
[28]https://vsys.host/10gbps-servers
[29]https://www.linkedin.com/company/vsyshost; https://vsys.host/vps-usa
[30]https://vsys.host/dedicated-servers-usa (partial image of webpage below); https://vsys.host/vps-usa
[31]https://vsys.host/vps-usa

Plaintiff's Complaint                                    12

**Virtual Systems' Control Over the Infringement**

40.     Virtual Systems could have taken simple measures to stop the Pirate Services from infringing the Works but refused to take them. Virtual Systems could have determined whether the Pirate Services were legally authorized to transmit the Works by first requiring them to verify their rights in the Channels. Virtual Systems also could have removed or disabled access to the particular material identified in the Infringement Notices that was transmitted from its servers and network. Virtual Systems could have implemented a multi-strike policy, such as by temporarily suspending a Pirate Services' account on receipt of one notice advising of infringement against that account and then permanently terminating the account on receipt of additional notices.

41.     Virtual Systems also had the legal right to stop the Pirate Services from infringing the Works. Virtual Systems' service agreement with its customers gives it the "right to disable any materials" and the "right to block or suspend" its service or "take any other action . . . necessary" where a customer "violates the intellectual property rights of any third party or is otherwise the subject of a dispute."[32] Virtual Systems is entitled to exercise these rights "in [its] sole discretion, immediately and without notice" to the customer.[33] Rather than exercise this right and ability to stop the Pirate Services' infringement, Virtual Systems turned a blind eye, making its servers and network a safe haven for the Pirate Services' infringement.

**Virtual Systems' Direct Financial Interest in the Infringement**

42.     The Pirate Services were drawn to Virtual Systems' servers and network because it did not stop their infringement and offered to keep them anonymous. The Pirate Services perceived Virtual Systems' servers and network as a place where infringement of the Works was tolerated because Virtual Systems advertised them as such and many other Pirate Services did just that. The ongoing availability of the Works resulting from Virtual Systems' failure to take any action against the Pirate Services served as a draw for those Pirate Services to remain paying customers of Virtual

---

[32]https://vsys.host/legal/term-of-service
[33]Id.

Plaintiff's Complaint                                13                    Preg O'Donnell & Gillett PLLC
                                                                          401 Union Street, Suite 1900
                                                                          Seattle, Washington 98101
                                                                          (206) 287-1775

1    Systems and attracted other Pirate Services to become paying customers of Virtual Systems.

2          43.    Virtual Systems' pricing is based in part on the bandwidth that the customer selects,

3    typically offered in gigabits per second (Gbps).[34] Virtual Systems, for example, charges more for

4    a 20 Gbps server, which it recommends for "high bandwidth" applications such as "streaming [or]

5    VOD," than it charges for a 1 Gbps server that provides less bandwidth. Virtual Systems also gives

6    customers using certain types of servers and Xtream-UI middleware the option to purchase more

7    bandwidth, priced per additional 1 Gbps. Virtual Systems states that "[v]ideo is driving demand

8    for bandwidth usage, and we have it at a very competitive price."[35]

9          44.    Virtual Systems informed customers that adequate bandwidth is "vital in ensuring

10   fast[,] constant delivery" and encouraged them to "choose the amount of bandwidth depending on

11   your needs."[36] On information and belief, the Pirate Services' bandwidth needs factored into their

12   purchases from Virtual Systems, in terms of purchasing more expensive servers to acquire greater

13   bandwidth, additional bandwidth al-a-carte, or additional servers to transmit the Works and other

14   content. Virtual Systems refused to take any measures to stop the Pirate Services from infringing

15   the Works because that would have worked to reduce the Pirate Services' bandwidth requirements

16   and in turn their need to purchase bandwidth from Virtual Systems.

17                                    **Claims for Relief**

18                                        **Count I**

19        **(Materially Contributing to Copyright Infringement under 17 U.S.C. § 501)**

20         45.    DISH repeats and realleges the allegations in paragraphs 1-44.

21         46.    DISH is a copyright owner under 17 U.S.C. § 106 because, at all relevant times,

22   DISH held the exclusive rights to distribute and publicly perform the Works in the United States,

23   by means that include satellite, OTT, IPTV, and internet.

24

25

26   [34]https://vsys.host/streaming-servers
     [35]https://vsys.host/xtreme-codes-panel-saas
     [36]https://vsys.host/streaming-servers
     Plaintiff's Complaint                          14                  Preg O'Donnell & Gillett PLLC
                                                                        401 Union Street, Suite 1900
                                                                        Seattle, Washington 98101
                                                                        (206) 287-1775

47.     The Works are copyrightable subject matter because they are original audiovisual works fixed in a tangible medium of expression. DISH's copyrights in the Works arise under laws of nations other than the United States that are parties to copyright treaties with the United States, including Egypt, Lebanon, Saudi Arabia, India, and Bangladesh, where the Works were authored and first published.

48.     The Works constitute non-United States works under 17 U.S.C. §§ 101 and 411, and therefore registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action for the Works. Nonetheless, several Works are registered with the United States Copyright Office.

49.     DISH's exclusive rights to publicly perform the Works were directly infringed by the Pirate Services' unauthorized transmission of the Works to Users. The Works were transmitted to Users when DISH's exclusive rights to publicly perform the Works were in effect.

50.     Virtual Systems materially contributed to the Pirate Services' direct infringement of DISH's exclusive public performance rights by providing the Pirate Services the servers and network used to transmit the Works. Virtual Systems also offered storage servers, video encoding servers, and Xtream-UI middleware, which it marketed and sold to streaming services such as the Pirate Services as a recommended add-on to its server and network packages. On information and belief, Virtual Systems provided these additional types of servers and middleware to at least some of the Pirate Services.

51.     Virtual Systems had actual knowledge that the transmission of the Works to Users infringes DISH's exclusive public performance rights and that its servers and network were being used to commit such infringement on a massive scale. The Infringement Notices informed Virtual Systems of this specific infringement, including the IP addresses and URLs that correspond with Virtual Systems' servers and network that were used to transmit the Works.

52.     Virtual Systems could have taken simple measures to prevent the Pirate Services from infringing DISH's exclusive rights to publicly perform the Works, including by removing or

Plaintiff's Complaint                              15                    Preg O'Donnell & Gillett PLLC
                                                                        401 Union Street, Suite 1900
                                                                        Seattle, Washington 98101
                                                                        (206) 287-1775

1  disabling access to the Works or terminating the Pirate Services' accounts. Virtual Systems failed

2  to take such measures and continued to provide access to the Works.

3      53.    Smyrnov authorized, directed, and participated in Virtual Systems' infringement of

4  the Works. Smyrnov managed the servers and network that the Pirate Services used to infringe the

5  Works. Smyrnov was notified of the infringement taking place on the servers and network that he

6  managed and he failed to stop the infringement. Smyrnov owns Virtual Systems, serves as its CEO

7  and director, and receives direct financial benefits from its infringing acts. Smyrnov is a guiding

8  spirit and central figure in Virtual Systems' infringement of the Works and therefore Smyrnov is

9  personally liable for such infringement.

10     54.    The actions of Virtual Systems and Smyrnov were willful, malicious, intentional,

11  and purposeful, and in disregard of and with indifference to the rights of DISH. The actions of

12  Virtual Systems and Smyrnov are continuing with respect to many of the Pirate Services.

13     55.    Unless enjoined by the Court, Virtual Systems and Smyrnov will continue engaging

14  in acts that cause substantial and irreparable injury to DISH that includes lost sales, damage to its

15  reputation, and loss of goodwill, for which there is no adequate remedy at law.

16                                    **Count II**

17                **(Inducing Copyright Infringement under 17 U.S.C. § 501)**

18     56.    DISH repeats and realleges the allegations in paragraphs 1-44, 46-49, and 53.

19     57.    Virtual Systems provided the servers and network that the Pirate Services used to

20  infringe DISH's exclusive rights to publicly perform the Works. Virtual Systems promoted the use

21  of its servers and network for such infringement with its "DMCA Ignored" policy, under which

22  Virtual Systems informed the Pirate Services that it would not comply with United States copyright

23  law and would not take any measures to stop them from infringing the Works.

24     58.    Virtual Systems also promoted the use of its servers and network to infringe the

25  Works through its "Under the Radar" policy, where Virtual Systems informed the Pirate Services

26

1    that their identities will not be disclosed to copyright holders such as DISH and that no records of

2    their infringing use of Virtual Systems' servers and networks will be kept.

3        59.    Virtual Systems did not develop filtering tools or any other mechanisms to diminish

4    the Pirate Services' infringement of the Works, but could have taken simple measures to stop that

5    infringement such as by removing or disabling access to the Works or by terminating the Pirate

6    Services' accounts. Virtual Systems failed to stop the Pirate Services' infringement of the Works

7    because that infringement contributed to its own financial success.

8        60.    Smyrnov authorized, directed, and participated in Virtual Systems' infringement of

9    the Works, as explained above, and therefore he is personally liable for such infringement.

10       61.    The actions of Virtual Systems and Smyrnov were willful, malicious, intentional,

11   and purposeful, and in disregard of and with indifference to the rights of DISH. The actions of

12   Virtual Systems and Smyrnov are continuing with respect to many of the Pirate Services.

13       62.    Unless enjoined by the Court, Virtual Systems and Smyrnov will continue engaging

14   in acts that cause substantial and irreparable injury to DISH that includes lost sales, damage to its

15   reputation, and loss of goodwill, for which there is no adequate remedy at law.

16                                    **Count III**

17                 **(Vicarious Copyright Infringement under 17 U.S.C. § 501)**

18       63.    DISH repeats and realleges the allegations in paragraphs 1-44, 46-49, and 53.

19       64.    Virtual Systems had the legal right and practical ability to stop or limit the Pirate

20   Services' infringement of the Works. Virtual Systems could have removed or disabled access to

21   the Works transmitted from its servers and network or terminated the Pirate Services' accounts

22   and shut them down completely. Virtual Systems was authorized to take these simple measures to

23   stop the infringement of the Works under its service agreements with the Pirate Services. Virtual

24   Systems failed to exercise its right and ability to control the Pirate Services' infringement of the

25   Works.

26

Plaintiff's Complaint                    17              Preg O'Donnell & Gillett PLLC
                                                          401 Union Street, Suite 1900
                                                          Seattle, Washington 98101
                                                          (206) 287-1775

65.    Virtual Systems had a direct financial interest in the Pirate Services' infringement of the Works and received direct financial benefits from such infringement. The Pirate Services were motivated to become Virtual Systems' customers because they knew that they could publicly perform the Works without interference from Virtual Systems. Virtual Systems' failure to stop the Pirate Services' infringement of the Works served as a draw for those Pirate Services to remain paying customers of Virtual Systems and attracted other Pirate Services to Virtual Systems' servers and network. By failing to remove or disable access to the Works or terminate the Pirate Services' accounts, Virtual Systems received illicit revenue that it would not otherwise have received.

66.    Virtual Systems encouraged the Pirate Services to purchase sufficient bandwidth to transmit content using Virtual Systems' servers and network. On information and belief, the Pirate Services purchased this bandwidth from Virtual Systems in the form of more expensive servers, additional servers, or on an al-a-carte basis. The Pirate Services' transmission of the Works helped to keep their bandwidth needs elevated and Virtual Systems was able to sell them that necessary bandwidth. Virtual Systems did not stop the Pirate Services from transmitting the Works because it would have worked to reduce Virtual Systems' own profits.

67.    Smyrnov authorized, directed, and participated in Virtual Systems' infringement of the Works, as explained above, and therefore he is personally liable for such infringement.

68.    The actions of Virtual Systems and Smyrnov were willful, malicious, intentional, and purposeful, and in disregard of and with indifference to the rights of DISH. The actions of Virtual Systems and Smyrnov are continuing with respect to many of the Pirate Services.

69.    Unless enjoined by the Court, Virtual Systems and Smyrnov will continue engaging in acts that cause substantial and irreparable injury to DISH that includes lost sales, damage to its reputation, and loss of goodwill, for which there is no adequate remedy at law.

### Prayer for Relief

Judgment against Virtual Systems and Smyrnov should include:

A.     A permanent injunction under 17 U.S.C. § 502 that prohibits Virtual Systems and Smyrnov, and any officer, agent, servant, employee, attorney, or any other person acting in active concert or participation with either of them, from infringing DISH's copyrights in the Works that air the Channels, including by (1) distributing or publicly performing this material in the United States, which includes streaming or transmitting the material; (2) contributing to, inducing, or failing to stop or limit the distribution or public performance of this material, which includes a prohibition on providing any servers or network used in streaming or transmitting the material and requires termination of any current or future accounts of the Pirate Services;

B.     Statutory damages up to $150,000 for each registered Work infringed (including the 279 registered Works identified by example in Exhibit 1) under 17 U.S.C. § 504(c), or Virtual Systems' and Smyrnov's profits that are attributable to the infringement of those registered Works under 17 U.S.C. § 504(b);

C.     Virtual Systems' and Smyrnov's profits that are attributable to the infringement of each unregistered Work under 17 U.S.C. § 504(b);

D.     DISH's attorneys' fees and costs under 17 U.S.C. § 505;

E.     Impoundment and disposition of all infringing articles under 17 U.S.C. § 503;

F.     Pre-judgment and post-judgment interest on all monetary relief, from the earliest date permitted by law at the maximum rate permitted by law;

G.     Such additional relief as the Court deems just and equitable.

Dated: October 15, 2024

**PREG O'DONNELL & GILLETT PLLC**


By: s/ Gregory Latendresse
Gregory Latendresse, WSBA # 32787
401 Union Street, Suite 1900
Seattle, Washington 98101
Tel: (206) 287-1775
Fax: (206) 287-9113
glatendresse@pregodonnell.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**HAGAN NOLL & BOYLE LLC**
Joseph H. Boyle (*pro hac vice* forthcoming)
Timothy M. Frank (*pro hac vice* forthcoming)
Stephen M. Ferguson (*pro hac vice* forthcoming)
820 Gessner, Suite 940
Houston, Texas 77024
Tel: (713) 343-0478
Fax: (713) 758-0146
joseph.boyle@hnbllc.com
timothy.frank@hnbllc.com
stephen.ferguson@hnbllc.com

Attorneys for Plaintiff DISH Network L.L.C.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DISH NETWORK L.L.C.,                        )    No. 2:24-cv-01683
                                            )
                        Plaintiff,          )    **EXHIBIT 1 TO PLAINTIFF'S**
                                            )    **COMPLAINT**
        v.                                  )
                                            )
VIRTUAL SYSTEMS, LLC and                    )
VYACHESLAV SMYRNOV,                         )
                                            )
                        Defendants.         )

**WORKS SUBJECT TO REGISTRATION**

| Work | Date of First Publication | Channel | Registration Number | Effective Date of Registration |
|------|---------------------------|---------|---------------------|--------------------------------|
| Aangan Aapno Kaa, Ep. 18 | December 30, 2023 | SAB | PA0002452164 | January 12, 2024 |
| Aangan Aapno Kaa, Ep. 43 | January 29, 2024 | SAB | PA0002458039 | February 2, 2024 |
| Aangan Aapno Kaa, Ep. 69 | February 28, 2024 | SAB | PA0002460329 | February 29, 2024 |
| Aangan Aapno Kaa, Ep. 95 | March 29, 2024 | SAB | PA0002467108 | April 4, 2024 |
| Ali Baba Dastaan E Kabul, Ep. 7 | August 29, 2022 | SAB | PA0002373613 | September 2, 2022 |
| Ali Baba Dastaan E | October 28, 2022 | SAB | PA0002388793 | November 29, 2022 |

| | | | | |
|---|---|---|---|---|
| Kabul, Ep. 59 | | | | |
| Ali Baba Dastaan E Kabul, Ep. 85 | November 28, 2022 | SAB | PA0002389478 | December 6, 2022 |
| Ali Baba Dastaan E Kabul, Ep. 111 | December 28, 2022 | SAB | PA0002394869 | January 9, 2023 |
| Ali Baba Ek Andaaz Andekha, Ep. 185 | March 27, 2023 | SAB | PA0002411326 | March 28, 2023 |
| Ali Baba Ek Andaaz Andekha, Ep. 230 | May 29, 2023 | SAB | PA0002421487 | May 31, 2023 |
| Baalveer 3, Ep. 13 | April 29, 2023 | SAB | PA0002415647 | May 3, 2023 |
| Dharam Yoddha Garud, Ep. 13 | March 28, 2022 | SAB | PA0002350051 | March 29, 2022 |
| Dharam Yoddha Garud, Ep. 39 | April 27, 2022 | SAB | PA0002357041 | May 2, 2022 |
| Dharam Yoddha Garud, Ep. 64 | May 26, 2022 | SAB | PA0002361309 | June 1, 2022 |
| Dharam Yoddha Garud, Ep. 91 | June 27, 2022 | SAB | PA0002365385 | June 29, 2022 |
| Dharam Yoddha Garud, Ep. 145 | August 29, 2022 | SAB | PA0002373616 | September 2, 2022 |
| Dharam Yoddha Garud, Ep. 197 | October 28, 2022 | SAB | PA0002388777 | November 29, 2022 |
| Dharam Yoddha Garud, Ep. 223 | November 28, 2022 | SAB | PA0002389274 | December 6, 2022 |
| Dhruv Tara, Ep. 25 | March 27, 2023 | SAB | PA0002409092 | March 28, 2023 |
| Dhruv Tara, Ep. 54 | April 29, 2023 | SAB | PA0002416206 | May 3, 2023 |
| Dhruv Tara, Ep. 79 | May 29, 2023 | SAB | PA0002420330 | May 31, 2023 |
| Dhruv Tara, Ep. 103 | June 26, 2023 | SAB | PA0002426466 | June 29, 2023 |
| Dhruv Tara, Ep. 133 | July 31, 2023 | SAB | PA0002430266 | August 2, 2023 |
| Dhruv Tara, Ep. 159 | August 30, 2023 | SAB | PA0002436068 | September 5, 2023 |
| Dhruv Tara, Ep. 165 | September 6, 2023 | SAB | PA0002439053 | September 21, 2023 |
| Dhruv Tara, Ep. 167 | September 8, 2023 | SAB | PA0002437946 | September 21, 2023 |
| Dhruv Tara, Ep. 211 | October 30, 2023 | SAB | PA0002443591 | November 2, 2023 |
| Dhruv Tara, Ep. 236 | November 28, 2023 | SAB | PA0002448235 | November 30, 2023 |
| Dhruv Tara, Ep. 264 | December 30, 2023 | SAB | PA0002452737 | January 8, 2024 |
| Dhruv Tara, Ep. 289 | January 29, 2024 | SAB | PA0002458067 | February 2, 2024 |
| Dhruv Tara, Ep. 315 | February 28, 2024 | SAB | PA0002460331 | February 29, 2024 |
| Dhruv Tara, Ep. 341 | March 29, 2024 | SAB | PA0002467683 | April 4, 2024 |

| | | | | |
|---|---|---|---|---|
| Dil Diyaan Gallan, Ep. 15 | December 28, 2022 | SAB | PA0002395076 | January 9, 2023 |
| Dil Diyaan Gallan, Ep. 43 | January 30, 2023 | SAB | PA0002401201 | February 3, 2023 |
| Dil Diyaan Gallan, Ep. 91 | March 27, 2023 | SAB | PA0002409093 | March 28, 2023 |
| Dil Diyaan Gallan, Ep. 120 | April 29, 2023 | SAB | PA0002416207 | May 3, 2023 |
| Dil Diyaan Gallan, Ep. 145 | May 29, 2023 | SAB | PA0002420331 | May 31, 2023 |
| Dil Diyaan Gallan, Ep. 169 | June 26, 2023 | SAB | PA0002426597 | June 29, 2023 |
| Dil Diyaan Gallan, Ep. 199 | July 31, 2023 | SAB | PA0002430268 | August 2, 2023 |
| Dil Diyaan Gallan, Ep. 225 | August 30, 2023 | SAB | PA0002436070 | September 5, 2023 |
| Dil Diyaan Gallan, Ep. 231 | September 6, 2023 | SAB | PA0002440119 | September 21, 2023 |
| Good Night India-Raatwala Family Show, Ep. 21 | February 23, 2022 | SAB | PA0002344848 | February 24, 2022 |
| Good Night India-Raatwala Family Show, Ep. 49 | March 28, 2022 | SAB | PA0002350038 | March 29, 2022 |
| Good Night India-Raatwala Family Show, Ep. 75 | April 27, 2022 | SAB | PA0002357043 | May 2, 2022 |
| Good Night India-Raatwala Family Show, Ep. 100 | May 26, 2022 | SAB | PA0002360259 | June 1, 2022 |
| Hero-Gayab Mode On, Ep. 231 | October 25, 2021 | SAB | PA0002324878 | October 27, 2021 |
| Pashminna, Ep. 5 | October 30, 2023 | SAB | PA0002443544 | November 2, 2023 |
| Pashminna, Ep. 30 | November 28, 2023 | SAB | PA0002448168 | November 30, 2023 |
| Pashminna, Ep. 58 | December 30, 2023 | SAB | PA0002452333 | January 8, 2024 |
| Pashminna, Ep. 83 | January 29, 2024 | SAB | PA0002458074 | February 2, 2024 |
| Pashminna, Ep. 109 | February 28, 2024 | SAB | PA0002461439 | February 29, 2024 |
| Pushpa Impossible, | June 27, 2022 | SAB | PA0002364309 | June 29, 2022 |

Exhibit 1 to Plaintiff's Complaint    3    Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

| | | | | |
|---|---|---|---|---|
| Ep. 19 | | | | |
| Pushpa Impossible, Ep. 45 | July 27, 2022 | SAB | PA0002368227 | July 28, 2022 |
| Pushpa Impossible, Ep. 73 | August 29, 2022 | SAB | PA0002373619 | September 2, 2022 |
| Pushpa Impossible, Ep. 123 | October 28, 2022 | SAB | PA0002388792 | November 29, 2022 |
| Pushpa Impossible, Ep. 149 | November 28, 2022 | SAB | PA0002389281 | December 6, 2022 |
| Pushpa Impossible, Ep. 175 | December 28, 2022 | SAB | PA0002395074 | January 9, 2023 |
| Pushpa Impossible, Ep. 203 | January 30, 2023 | SAB | PA0002401206 | February 3, 2023 |
| Pushpa Impossible, Ep. 251 | March 27, 2023 | SAB | PA0002409099 | March 28, 2023 |
| Pushpa Impossible, Ep. 280 | April 29, 2023 | SAB | PA0002418961 | May 3, 2023 |
| Pushpa Impossible, Ep. 305 | May 29, 2023 | SAB | PA0002420334 | May 31, 2023 |
| Pushpa Impossible, Ep. 329 | June 26, 2023 | SAB | PA0002426605 | June 29, 2023 |
| Pushpa Impossible, Ep. 359 | July 31, 2023 | SAB | PA0002430275 | August 2, 2023 |
| Pushpa Impossible, Ep. 385 | August 30, 2023 | SAB | PA0002436137 | September 5, 2023 |
| Pushpa Impossible, Ep. 437 | October 30, 2023 | SAB | PA0002443545 | November 2, 2023 |
| Pushpa Impossible, Ep. 462 | November 28, 2023 | SAB | PA0002448254 | November 30, 2023 |
| Pushpa Impossible, Ep. 490 | December 30, 2023 | SAB | PA0002452337 | January 8, 2024 |
| Pushpa Impossible, Ep. 519 | January 29, 2024 | SAB | PA0002458072 | February 2, 2024 |
| Pushpa Impossible, Ep. 541 | February 28, 2024 | SAB | PA0002461440 | February 29, 2024 |
| Pushpa Impossible, Ep. 567 | March 29, 2024 | SAB | PA0002468763 | April 4, 2024 |
| Sab Satrangi, Ep. 15 | February 23, 2024 | SAB | PA0002345141 | February 24, 2024 |

Exhibit 1 to Plaintiff's Complaint          4

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

| | | | | |
|---|---|---|---|---|
| Sab Satrangi, Ep. 43 | March 28, 2022 | SAB | PA0002350057 | March 29, 2022 |
| Sab Satrangi, Ep. 69 | April 27, 2022 | SAB | PA0002357053 | May 2, 2022 |
| Sab Satrangi, Ep. 94 | May 26, 2022 | SAB | PA0002360924 | June 1, 2022 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 34 | October 25, 2021 | SAB | PA0002324869 | October 27, 2021 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 64 | November 29, 2021 | SAB | PA0002330984 | November 30, 2021 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 80 | December 17, 2021 | SAB | PA0002336978 | January 3, 2022 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 111 | January 24, 2022 | SAB | PA0002340108 | January 26, 2022 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 137 | February 23, 2022 | SAB | PA0002345407 | February 24, 2022 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 165 | March 28, 2022 | SAB | PA0002350069 | March 29, 2022 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 191 | April 27, 2022 | SAB | PA0002357047 | May 2, 2022 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 216 | May 26, 2022 | SAB | PA0002360937 | June 1, 2022 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 243 | June 27, 2022 | SAB | PA0002364315 | June 29, 2022 |
| Shubh Labh-Aapkey Ghar Mein, Ep. 269 | July 27 2022 | SAB | PA0002368196 | July 28, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3285 | October 25, 2021 | SAB | PA0002324875 | October 27, 2021 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3315 | November 29, 2021 | SAB | PA0002330983 | November 30, 2021 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3331 | December 17, 2021 | SAB | PA0002337300 | January 3, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3363 | January 24, 2022 | SAB | PA0002340102 | January 26, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3389 | February 23, 2022 | SAB | PA0002345421 | February 24, 2022 |

| | | | | |
|---|---|---|---|---|
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3417 | March 28, 2022 | SAB | PA0002350030 | March 29, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3443 | April 27, 2022 | SAB | PA0002357040 | May 2, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3468 | May 26, 2022 | SAB | PA0002361258 | June 1, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3495 | June 27, 2022 | SAB | PA0002364316 | June 29, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3521 | July 27, 2022 | SAB | PA0002368185 | July 28, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3549 | August 29, 2022 | SAB | PA0002373620 | September 2, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3601 | October 28, 2022 | SAB | PA0002388790 | November 29, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3627 | November 28, 2022 | SAB | PA0002389282 | December 6, 2022 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3653 | December 28, 2022 | SAB | PA0002395073 | January 9, 2023 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3681 | January 30, 2023 | SAB | PA0002401207 | February 3, 2023 |
| Taraak Mehta Ka Ooltah Chashmah, Ep. 3869 | September 6, 2023 | SAB | PA0002437945 | September 21, 2023 |
| Tera Yaar Hoon Main, Ep. 326 | November 29, 2021 | SAB | PA0002330982 | November 30, 2021 |
| Tera Yaar Hoon Main, Ep. 342 | December 17, 2021 | SAB | PA0002337301 | January 3, 2022 |
| Tera Yaar Hoon | January 24, 2022 | SAB | PA0002340101 | January 26, 2022 |

| Main, Ep. 373 | | | | |
|---|---|---|---|---|
| Vanshaj, Ep. 13 | June 26, 2023 | SAB | PA0002426607 | June 29, 2023 |
| Vanshaj, Ep. 43 | July 31, 2023 | SAB | PA0002430277 | August 2, 2023 |
| Vanshaj, Ep. 69 | August 30, 2023 | SAB | PA0002436138 | September 5, 2023 |
| Vanshaj, Ep. 121 | October 30, 2023 | SAB | PA0002443546 | November 2, 2023 |
| Vanshaj, Ep. 146 | November 28, 2023 | SAB | PA0002448219 | November 30, 2023 |
| Vanshaj, Ep. 174 | December 30, 2023 | SAB | PA0002452295 | January 8, 2024 |
| Vanshaj, Ep. 199 | January 29, 2024 | SAB | PA0002458070 | February 2, 2024 |
| Vanshaj, Ep. 225 | February 28, 2024 | SAB | PA0002461260 | February 29, 2024 |
| Vanshaj, Ep. 251 | March 29, 2024 | SAB | PA0002467659 | April 4, 2024 |
| Wagle Ki Duniya, Ep. 178 | October 25, 2021 | SAB | PA0002324866 | October 27, 2021 |
| Wagle Ki Duniya, Ep. 208 | November 29, 2021 | SAB | PA0002330980 | November 30, 2021 |
| Wagle Ki Duniya, Ep. 224 | December 17, 2021 | SAB | PA0002336977 | January 3, 2022 |
| Wagle Ki Duniya, Ep. 256 | January 24, 2022 | SAB | PA0002340106 | January 26, 2022 |
| Wagle Ki Duniya, Ep. 388 | June 27, 2022 | SAB | PA0002364320 | June 29, 2022 |
| Wagle Ki Duniya, Ep. 414 | July 27, 2022 | SAB | PA0002368184 | July 28, 2022 |
| Wagle Ki Duniya, Ep. 442 | August 29, 2022 | SAB | PA0002373623 | September 2, 2022 |
| Wagle Ki Duniya, Ep. 492 | October 28, 2022 | SAB | PA0002388780 | November 29, 2022 |
| Wagle Ki Duniya, Ep. 518 | November 28, 2022 | SAB | PA0002389284 | December 6, 2022 |
| Wagle Ki Duniya, Ep. 544 | December 28, 2022 | SAB | PA0002394645 | January 9, 2023 |
| Wagle Ki Duniya, Ep. 572 | January 30, 2023 | SAB | PA0002401208 | February 2, 2023 |
| Wagle Ki Duniya, Ep. 620 | March 27, 2023 | SAB | PA0002409100 | March 28, 2023 |
| Wagle Ki Duniya, Ep. 649 | April 29, 2023 | SAB | PA0002416848 | May 4, 2023 |
| Wagle Ki Duniya, Ep. 674 | May 29, 2023 | SAB | PA0002420335 | May 31, 2023 |

| | | | | |
|---|---|---|---|---|
| Wagle Ki Duniya, Ep. 698 | June 26, 2023 | SAB | PA0002426467 | June 29, 2023 |
| Wagle Ki Duniya, Ep. 727 | July 31, 2023 | SAB | PA0002430278 | August 2, 2023 |
| Wagle Ki Duniya, Ep. 753 | August 30, 2023 | SAB | PA0002436140 | September 5, 2023 |
| Wagle Ki Duniya, Ep. 759 | September 6, 2023 | SAB | PA0002437944 | September 21, 2023 |
| Wagle Ki Duniya, Ep. 805 | October 30, 2023 | SAB | PA0002443547 | November 2, 2023 |
| Wagle Ki Duniya, Ep. 830 | November 28, 2023 | SAB | PA0002448282 | November 30, 2023 |
| Wagle Ki Duniya, Ep. 935 | March 29, 2024 | SAB | PA0002468765 | April 4, 2024 |
| Ziddi Dil Maane Na, Ep. 44 | October 25, 2021 | SAB | PA0002324858 | October 27, 2021 |
| Ziddi Dil Maane Na, Ep. 74 | November 29, 2021 | SAB | PA0002330430 | November 30, 2021 |
| Ziddi Dil Maane Na, Ep. 90 | December 17, 2021 | SAB | PA0002336975 | January 3, 2022 |
| Ziddi Dil Maane Na, Ep. 122 | January 24, 2022 | SAB | PA0002340107 | January 26, 2022 |
| Ziddi Dil Maane Na, Ep. 148 | February 23, 2022 | SAB | PA0002345761 | February 24, 2022 |
| Appnapan, Ep. 9 | June 27, 2022 | SAB | PA0002365357 | June 29, 2022 |
| Appnapan, Ep. 31 | July 27, 2022 | SAB | PA0002368295 | July 28, 2022 |
| Appnapan, Ep. 54 | August 29, 2022 | SAB | PA0002373614 | September 2, 2022 |
| Appnapan, Ep. 98 | October 28, 2022 | SAB | PA0002388796 | November 29, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 42 | October 26, 2021 | SET | PA0002324859 | October 27, 2021 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 66 | November 29, 2021 | SET | PA0002330901 | November 30, 2021 |
| Bade Ache Lagte Hain-Ye Dharti Ye | December 17, 2021 | SET | PA0002336980 | January 3, 2022 |

Exhibit 1 to Plaintiff's Complaint    8    Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

| Nadiya Ye Raina Aur Tum-2, Ep. 80 | | | | |
|---|---|---|---|---|
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 106 | January 24, 2022 | SET | PA0002340103 | January 26, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 128 | February 23, 2022 | SET | PA0002344971 | February 24, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 151 | March 28, 2022 | SET | PA0002350068 | March 29, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 173 | April 27, 2022 | SET | PA0002357044 | May 2, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 194 | May 26, 2022 | SET | PA0002361247 | June 1, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 216 | June 27, 2022 | SET | PA0002365365 | June 29, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 238 | July 27, 2022 | SET | PA0002368284 | July 28, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 261 | August 29, 2022 | SET | PA0002373615 | September 2, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 305 | October 28, 2022 | SET | PA0002388789 | November 29, 2022 |

| | | | | |
|---|---|---|---|---|
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 326 | November 28, 2022 | SET | PA0002389736 | December 6, 2022 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 348 | December 28, 2022 | SET | PA0002394870 | January 9, 2023 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 371 | January 30, 2023 | SET | PA0002401200 | February 3, 2023 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 411 | March 27, 2023 | SET | PA0002409091 | March 28, 2023 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-2, Ep. 435 | April 28, 2023 | SET | PA0002416210 | May 3, 2023 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-3, Ep. 3 | May 29, 2023 | SET | PA0002420333 | May 31, 2023 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-3, Ep. 23 | June 26, 2023 | SET | PA0002426465 | June 29, 2023 |
| Bade Ache Lagte Hain-Ye Dharti Ye Nadiya Ye Raina Aur Tum-3, Ep. 48 | July 31, 2023 | SET | PA0002430263 | August 2, 2023 |
| Barsatein-Mausam Pyar Ka, Ep. 16 | July 31, 2023 | SET | PA0002430264 | August 2, 2023 |
| Barsatein-Mausam Pyar Ka, Ep. 38 | August 30, 2023 | SET | PA0002436062 | September 5, 2023 |
| Barsatein-Mausam Pyar Ka, Ep. 81 | October 30, 2023 | SET | PA0002443599 | November 2, 2023 |

Exhibit 1 to Plaintiff's Complaint                    10

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

| | | | | |
|---|---|---|---|---|
| Barsatein-Mausam Pyar Ka, Ep. 102 | November 28, 2023 | SET | PA0002448204 | November 30, 2023 |
| Barsatein-Mausam Pyar Ka, Ep. 125 | December 29, 2023 | SET | PA0002452946 | January 8, 2024 |
| Barsatein-Mausam Pyar Ka, Ep. 146 | January 29, 2024 | SET | PA0002458076 | February 2, 2024 |
| Crime Patrol 2.0, Ep. 190 | November 28, 2022 | SET | PA0002393665 | January 13, 2023 |
| Crime Patrol 2.0, Ep. 212 | December 28, 2022 | SET | PA0002399846 | January 13, 2023 |
| Crime Patrol 48 Hours, Ep. 39 | August 30, 2023 | SET | PA0002436064 | September 5, 2023 |
| Crime Patrol 48 Hours, Ep. 44 | September 6, 2023 | SET | PA0002440134 | October 11, 2023 |
| Crime Patrol Satark, Ep. 530 | October 26, 2021 | SET | PA0002324860 | October 28, 2021 |
| Crime Patrol Satark, Ep. 554 | November 29, 2021 | SET | PA0002330902 | November 30, 2021 |
| Dabangi, Ep. 1 | October 30, 2023 | SET | PA0002443592 | November 2, 2023 |
| Dabangi, Ep. 22 | November 28, 2023 | SET | PA0002447516 | November 30, 2023 |
| Dabangi, Ep. 45 | December 29, 2023 | SET | PA0002452735 | January 8, 2024 |
| Dabangi, Ep. 66 | January 29, 2024 | SET | PA0002458056 | February 2, 2024 |
| Dabangi, Ep. 88 | February 28, 2024 | SET | PA0002460330 | February 29, 2024 |
| Dabangi, Ep. 110 | March 29, 2024 | SET | PA0002468759 | April 4, 2024 |
| Dhadkan Zindaggi Kii, Ep. 10 | December 17, 2021 | SET | PA0002337137 | January 4, 2022 |
| Dhadkan Zindaggi Kii, Ep. 36 | January 24, 2022 | SET | PA0002340109 | January 26, 2022 |
| Dhadkan Zindaggi Kii, Ep. 60 | February 23, 2022 | SET | PA0002345046 | February 24, 2022 |
| Dhadkan Zindaggi Kii, Ep. 117 | July 27, 2022 | SET | PA0002368252 | July 28, 2022 |
| Hum Rahe Na Rahe Hum, Ep. 15 | April 28, 2023 | SET | PA0002416209 | May 3, 2023 |
| Hum Rahe Na Rahe Hum, Ep. 36 | May 29, 2023 | SET | PA0002421781 | May 31, 2023 |

Exhibit 1 to Plaintiff's Complaint

| | | | | |
|---|---|---|---|---|
| Hum Rahe Na Rahe Hum, Ep. 56 | June 26, 2023 | SET | PA0002426599 | June 29, 2023 |
| Hum Rahe Na Rahe Hum, Ep. 81 | July 31, 2023 | SET | PA0002430270 | August 2, 2023 |
| Hum Rahe Na Rahe Hum, Ep. 103 | August 30, 2023 | SET | PA0002436128 | September 5, 2023 |
| Hum Rahe Na Rahe Hum, Ep. 108 | September 6, 2023 | SET | PA0002440139 | September 21, 2023 |
| India's Got Talent, Ep. 4 | January 24, 2022 | SET | PA0002340105 | January 26, 2022 |
| Indian Idol, Season 13, Ep. 42 | January 29, 2023 | SET | PA0002401202 | February 3, 2023 |
| Indian Idol, Season 13, Ep. 58 | March 26, 2023 | SET | PA0002409094 | March 28, 2023 |
| Indian Idol, Season 14, Ep. 8 | October 29, 2023 | SET | PA0002443590 | November 2, 2023 |
| Indian Idol, Season 14, Ep. 25 | December 30, 2023 | SET | PA0002452711 | January 8, 2024 |
| Jagannath Aur Purvi Ki Dosti Anokhi, Ep. 13 | February 23, 2022 | SET | PA0002345048 | February 24, 2022 |
| Jagannath Aur Purvi Ki Dosti Anokhi, Ep. 36 | March 28, 2022 | SET | PA0002350061 | March 29, 2022 |
| Jagannath Aur Purvi Ki Dosti Anokhi, Ep. 58 | April 27, 2022 | SET | PA0002357045 | May 2, 2022 |
| Jagannath Aur Purvi Ki Dosti Anokhi, Ep. 79 | May 26, 2022 | SET | PA0002360931 | June 1, 2022 |
| Kaamnaa, Ep. 11 | November 29, 2021 | SET | PA0002330746 | November 30, 2021 |
| Kaamnaa, Ep. 25 | December 17, 2021 | SET | PA0002336982 | January 3, 2022 |
| Kaamnaa, Ep. 51 | January 24, 2022 | SET | PA0002340100 | January 26, 2022 |
| Kaamnaa, Ep. 73 | February 23, 2022 | SET | PA0002345054 | February 24, 2022 |
| Kaamnaa, Ep. 96 | March 28, 2022 | SET | PA0002350065 | March 29, 2022 |
| Kaamnaa, Ep. 118 | April 27, 2022 | SET | PA0002357046 | May 2, 2022 |

| Kaamnaa, Ep. 139 | May 26, 2022 | SET | PA0002360943 | June 1, 2022 |
|---|---|---|---|---|
| Kaamnaa, Ep. 161 | June 27, 2022 | SET | PA0002364546 | June 29, 2022 |
| Kaamnaa, Ep. 183 | July 27, 2022 | SET | PA0002368265 | July 28, 2022 |
| Katha Ankahee, Ep. 18 | December 28, 2022 | SET | PA0002395812 | January 9, 2023 |
| Katha Ankahee, Ep. 41 | January 30, 2023 | SET | PA0002401203 | February 3, 2023 |
| Katha Ankahee, Ep. 81 | March 27, 2023 | SET | PA0002409095 | March 28, 2023 |
| Katha Ankahee, Ep. 105 | April 28, 2023 | SET | PA0002415695 | May 3, 2023 |
| Katha Ankahee, Ep. 126 | May 29, 2023 | SET | PA0002421600 | May 31, 2023 |
| Katha Ankahee, Ep. 146 | June 26, 2023 | SET | PA0002426601 | June 29, 2023 |
| Katha Ankahee, Ep. 171 | July 31, 2023 | SET | PA0002430271 | August 2, 2023 |
| Katha Ankahee, Ep. 193 | August 30, 2023 | SET | PA0002436131 | September 5, 2023 |
| Katha Ankahee, Ep. 199 | September 7, 2023 | SET | PA0002440144 | September 21, 2023 |
| Katha Ankahee, Ep. 236 | October 30, 2023 | SET | PA0002443586 | November 2, 2023 |
| Katha Ankahee, Ep. 257 | November 28, 2023 | SET | PA0002448227 | November 30, 2023 |
| Kavya, Ep. 26 | October 30, 2023 | SET | PA0002443543 | November 2, 2023 |
| Kavya, Ep. 47 | November 28, 2023 | SET | PA0002448184 | November 30, 2023 |
| Kavya, Ep. 70 | December 29, 2023 | SET | PA0002452730 | January 8, 2024 |
| Kavya, Ep. 91 | January 29, 2024 | SET | PA0002458062 | February 2, 2024 |
| Kavya, Ep. 113 | February 28, 2024 | SET | PA0002460332 | February 29, 2024 |
| Kavya, Ep. 135 | March 29, 2024 | SET | PA0002467684 | April 4, 2024 |
| Kaun Banega Crorepati, Season 13, Ep. 85 | December 17, 2021 | SET | PA0002337136 | January 3, 2022 |
| Kaun Banega Crorepati, Season 14, Ep. 17 | August 29, 2022 | SET | PA0002373617 | September 2, 2022 |

| Kaun Banega Crorepati, Season 15, Ep. 17 | September 6, 2023 | SET | PA0002440114 | September 21, 2023 |
|---|---|---|---|---|
| Kaun Banega Crorepati, Season 15, Ep. 19 | September 9, 2023 | SET | PA0002440154 | September 21, 2023 |
| Kaun Banega Crorepati, Season 15, Ep. 77 | November 28, 2023 | SET | PA0002447517 | November 30, 2023 |
| Kaun Banega Crorepati, Season 15, Ep. 99 | December 28, 2023 | SET | PA0002452725 | January 8, 2024 |
| Kuch Rang Pyaar Ke Aise Bhi-Nayi Kahaani, Ep. 77 | October 26, 2021 | SET | PA0002324876 | October 27, 2021 |
| Kuch Reet Jagat Ki Aisi Hai, Ep. 8 | February 28, 2024 | SET | PA0002460333 | February 29, 2024 |
| Kuch Reet Jagat Ki Aisi Hai, Ep. 30 | March 29, 2024 | SET | PA0002468748 | April 4. 2024 |
| Mehndi Wala Ghar, Ep. 5 | January 29, 2024 | SET | PA0002458066 | February 2, 2024 |
| Mehndi Wala Ghar, Ep. 27 | February 28, 2024 | SET | PA0002461256 | February 29, 2024 |
| Mehndi Wala Ghar, Ep. 48 | March 29, 2024 | SET | PA0002468762 | April 4, 2024 |
| Mere Sai, Ep. 989 | October 26, 2021 | SET | PA0002324879 | October 27, 2021 |
| Mere Sai, Ep. 1013 | November 29, 2021 | SET | PA0002330745 | November 30, 2021 |
| Mere Sai, Ep. 1252 | October 28, 2022 | SET | PA0002388798 | November 29, 2022 |
| Mere Sai, Ep. 1273 | November 28, 2022 | SET | PA0002389277 | December 6, 2022 |
| Mere Sai, Ep. 1295 | December 28, 2022 | SET | PA0002395809 | January 9, 2023 |
| Mere Sai, Ep. 1318 | January 30, 2023 | SET | PA0002401204 | February 3, 2023 |
| Mere Sai, Ep. 1358 | March 27, 2023 | SET | PA0002409097 | March 28, 2023 |
| Mose Chhal Kiye Jaaye, Ep. 13 | February 23, 2022 | SET | PA0002345363 | February 24, 2022 |
| Mose Chhal Kiye Jaaye, Ep. 36 | March 28, 2022 | SET | PA0002350066 | March 29, 2022 |
| Mose Chhal Kiye Jaaye, Ep. 58 | April 27, 2022 | SET | PA0002357050 | May 2, 2022 |

Exhibit 1 to Plaintiff's Complaint

14

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

| | | | | |
|---|---|---|---|---|
| Mose Chhal Kiye Jaaye, Ep. 79 | May 26, 2022 | SET | PA0002360934 | June 1, 2022 |
| Mose Chhal Kiye Jaaye, Ep. 98 | June 27, 2022 | SET | PA0002364308 | June 29, 2022 |
| Mose Chhal Kiye Jaaye, Ep. 120 | July 27, 2022 | SET | PA0002368261 | July 28, 2022 |
| Punyashlok Ahilyabaii, Ep. 212 | October 26, 2021 | SET | PA0002324864 | October 27, 2021 |
| Punyashlok Ahilyabaii, Ep. 236 | November 29, 2023 | SET | PA0002330985 | November 30, 2023 |
| Punyashlok Ahilyabaii, Ep. 250 | December 17, 2021 | SET | PA0002336979 | January 3, 2022 |
| Punyashlok Ahilyabaii, Ep. 276 | January 24, 2022 | SET | PA0002340104 | January 26, 2022 |
| Punyashlok Ahilyabaii, Ep. 321 | March 28, 2022 | SET | PA0002350067 | March 29, 2022 |
| Punyashlok Ahilyabaii, Ep. 343 | April 27, 2022 | SET | PA0002357049 | May 2, 2022 |
| Punyashlok Ahilyabaii, Ep. 364 | May 26, 2022 | SET | PA0002360932 | June 1, 2022 |
| Punyashlok Ahilyabaii, Ep. 431 | August 29, 2022 | SET | PA0002373618 | September 2, 2022 |
| Punyashlok Ahilyabaii, Ep. 475 | October 28, 2022 | SET | PA0002388797 | November 29, 2022 |
| Punyashlok Ahilyabaii, Ep. 496 | November 28, 2022 | SET | PA0002389279 | December 6, 2022 |
| Punyashlok Ahilyabaii, Ep. 518 | December 28, 2022 | SET | PA0002395091 | January 9, 2023 |
| Punyashlok Ahilyabaii, Ep. 541 | January 30, 2023 | SET | PA0002401205 | February 3, 2023 |
| Punyashlok Ahilyabaii, Ep. 581 | March 27, 2023 | SET | PA0002409098 | March 28, 2023 |
| Punyashlok Ahilyabaii, Ep. 605 | April 28, 2023 | SET | PA0002418960 | May 3, 2023 |
| Punyashlok Ahilyabaii, Ep. 626 | May 29, 2023 | SET | PA0002421593 | May 31, 2023 |
| Punyashlok Ahilyabaii, Ep. 646 | June 26, 2023 | SET | PA0002426603 | June 29, 2023 |

| Punyashlok Ahilyabaii, Ep. 693 | August 30, 2023 | SET | PA0002436134 | September 5, 2023 |
|---|---|---|---|---|
| Sapno Ki Chhalaang, Ep. 15 | April 28, 2023 | SET | PA0002418964 | May 3, 2023 |
| Sapno Ki Chhalaang, Ep. 36 | May 29, 2023 | SET | PA0002420332 | May 31, 2023 |
| Sapno Ki Chhalaang, Ep. 56 | June 26, 2023 | SET | PA0002426606 | June 29, 2023 |
| Sapno Ki Chhalaang, Ep. 81 | July 31, 2023 | SET | PA0002430276 | August 2, 2023 |
| Shrimad Ramayan, Ep. 37 | January 29, 2024 | SET | PA0002458696 | February 7, 2024 |
| Shrimad Ramayan, Ep. 59 | February 28, 2024 | SET | PA0002461442 | February 29, 2024 |
| Shrimad Ramayan, Ep. 82 | March 29, 2024 | SET | PA0002467682 | April 4, 2024 |
| Yashomati Maiyya Ke Nandlala, Ep. 14 | June 27, 2022 | SET | PA0002364321 | June 29, 2022 |
| Yashomati Maiyya Ke Nandlala, Ep. 36 | July 27, 2022 | SET | PA0002368182 | July 28, 2022 |
| Yashomati Maiyya Ke Nandlala, Ep. 59 | August 29, 2022 | SET | PA0002373625 | September 2, 2022 |
| Yashomati Maiyya Ke Nandlala, Ep. 103 | October 28, 2022 | SET | PA0002388794 | November 29, 2022 |
| Yashomati Maiyya Ke Nandlala, Ep. 1124 | November 28, 2022 | SET | PA0002389285 | December 6, 2022 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| DISH NETWORK L.L.C., | ) | No. 2:24-cv-01683 |
| | ) | |
| Plaintiff, | ) | **EXHIBIT 2 TO PLAINTIFF'S** |
| | ) | **COMPLAINT** |
| v. | ) | |
| | ) | |
| VIRTUAL SYSTEMS, LLC and | ) | |
| VYACHESLAV SMYRNOV, | ) | |
| | ) | |
| Defendants. | ) | |

**WORKS HAVING EPISODES NOT SUBJECT TO REGISTRATION**

| Work | Channel |
|---|---|
| El Hayah el Yom | Al Hayah 1 |
| Fill In/News | ART Aflam 1 |
| Fill In/News | ART Aflam 2 |
| Fill In/News | ART Cima |
| ATN Business & Finance | ATN Bangla |
| News Hour Xtra | ATN News |
| Flash | B4U Movies |
| Bollywood Minute | B4U Movies |
| Hadret El Omda | CBC |
| Hadret El Omda | CBC Drama |
| El Kebir | Hekayat |
| Maktoub Alaya | Hekayat |
| Arabwood | LBC |
| Aswad | LBCI |

Exhibit 2 to Plaintiff's Complaint                          1

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

| El Nar Bel Nar | LBCI |
|---|---|
| Al Arbaji | LBCI |
| Laylet Soqot Baghdad | Melody Aflam |
| Fill In/News | Melody Classic |
| Apnar Jiggasha | NTV Bangla |
| Ei Somoy | NTV Bangla |
| Ek Shobday Quran | NTV Bangla |
| Glamour World | NTV Bangla |
| Moddh Rater Khabor | NTV Bangla |
| NTV Evening News | NTV Bangla |
| Rater Khabor | NTV Bangla |
| Shashtho Protidin | NTV Bangla |
| Shironam | NTV Bangla |
| Shondhar Khabor | NTV Bangla |
| Al Rahel | Rotana America |
| Laylat Al Soqooq | Rotana America |
| Maddam Sir | SAB |
| Ghar ek Sapnaa | Sahara One |
| Haunted Nights | Sahara One |
| News Bulletin | Sahara Samay |
| Prime 9 | Sahara Samay |
| Heroine Zindagi Ke Panno Se | SET |
| India's Best Dancer | SET |
| Extraa Shots Special | SET MAX |
| Breaking Ground | Times Now |
| India Upfront | Times Now |
| The Newshour | Times Now |
| The Newshour First | Times Now |
| Times Now Live | Times Now |
| Planet Bollywood News | Zoom |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DISH NETWORK L.L.C.,                    )    No. 2:24-cv-01683
                                        )
                        Plaintiff,      )    **EXHIBIT 3 TO PLAINTIFF'S**
                                        )    **COMPLAINT**
        v.                              )
                                        )
VIRTUAL SYSTEMS, LLC and                )
VYACHESLAV SMYRNOV,                     )
                                        )
                        Defendants.     )

**PIRATE SERVICES**

| Virtual Systems IP Address[1] | URL Domain Name[2] |
|---|---|
| 31.42.184.159 | mtsiptv.com, sharkytv.com |
| 31.42.184.163 | dominoiptv.com |
| 31.42.185.54 | mohdtv.com |
| 31.42.187.33 | pro-ott.com |
| 31.42.187.97 | xviptv.com |
| 31.42.187.100 | viponetv.com |
| 31.42.187.118 | sansat.net |

[1]IP addresses correspond with Virtual Systems' servers and network the Pirate Services used to transmit the Works. Such IP addresses were at times masked through the use of services provided by non-party Cloudflare.
[2]URLs correspond with the Pirate Services' transmissions of the Works from Virtual Systems' servers and network. Any domain name incorporated in the URL is identified, along with any STB that was used to access the Works.

Exhibit 3 to Plaintiff's Complaint                    1                    Preg O'Donnell & Gillett PLLC
                                                                          401 Union Street, Suite 1900
                                                                          Seattle, Washington 98101
                                                                          (206) 287-1775

| 31.42.187.234 | bestott.net (atlas) |
|---|---|
| 45.11.57.127 | herogayab.net |
| 45.11.58.181 | tektv.co (iptv sam) |
| 45.11.58.199 | procajaiptv.com (dima) |
| 45.12.3.119 | symphonycdn.me (zumm) |
| 45.89.245.65 | ----- (great bee, super arab) |
| 45.89.245.66 | ----- (great bee, super arab) |
| 45.89.245.67 | ----- (great bee, joytv, lool, super arab) |
| 45.89.245.68 | ----- (great bee, joytv, lool, super arab) |
| 45.89.245.69 | ----- (lool, super arab) |
| 45.89.245.71 | ----- (great bee, joytv, super arab) |
| 45.95.235.118 | videoapne.co |
| 62.182.83.71 | vkcdn5.com |
| 62.182.83.91 | l1iptv.xyz; lionboxiptv.xyz |
| 62.182.85.20 | ----- (eagle) |
| 62.182.85.148 | pro-ott.com |
| 62.182.85.153 | itvdom.com |
| 62.182.85.155 | webvps.de |
| 62.182.85.159 | xviptv.com |
| 62.182.86.80 | imlie.net |
| 62.182.86.121 | snipemedia.net (snipe) |
| 79.124.41.28 | ----- (great bee, joytv, super arab) |
| 79.124.41.29 | ----- (great bee, joytv, super arab) |
| 79.124.41.30 | ----- (great bee, joytv, lool) |
| 79.124.41.32 | ----- (lool) |
| 79.124.41.39 | ----- (great bee, joytv, super arab) |
| 91.208.115.151 | rktv-ott.com (dima) |
| 91.208.115.170 | sansat.net |
| 91.235.143.17 | procajaiptv.com (dima) |
| 95.214.232.234 | tptv.cz (iptv sam) |
| 95.214.234.7 | atg100.xyz (atlas) |
| 95.214.234.104 | videoapne.co |
| 95.214.234.243 | ----- (zumm) |

Exhibit 3 to Plaintiff's Complaint

Preg O'Donnell & Gillett PLLC
401 Union Street, Suite 1900
Seattle, Washington 98101
(206) 287-1775

| | |
|---|---|
| 95.214.235.1 | viponetv.com |
| 95.214.235.96 | wanicelife.com |
| 103.211.101.124 | mmastertv.xyz (atlas) |
| 103.211.101.131 | mmastertv.xyz (atlas), msuperab.xyz (digitalizard) |
| 103.211.101.137 | msuperab.xyz (digitalizard) |
| 103.211.101.166 | msuperab.xyz (digitalizard) |
| 103.211.101.174 | msuperab.xyz (digitalizard) |
| 103.211.101.175 | msuperab.xyz (digitalizard) |
| 152.89.61.127 | sansat.net |
| 152.89.61.130 | tektv.co (iptv sam) |
| 152.89.61.137 | tvsertop.com (atlas) |
| 152.89.61.141 | sansat.net |
| 152.89.61.181 | getmax.cx (woob) |
| 152.89.62.34 | tvlogy.to |
| 152.89.62.76 | wanicelife.com |
| 152.89.63.69 | saturne.one (iptv sam) |
| 152.89.63.177 | procajaiptv.com (dima) |
| 176.119.29.14 | livebypass.com (gogo) |
| 176.119.29.17 | ----- (gogo) |
| 176.119.29.35 | ----- (gogo) |
| 176.119.29.42 | ----- (gogo) |
| 176.119.29.47 | ----- (gogo) |
| 176.119.29.78 | ----- (gogo) |
| 185.66.89.216 | atg100.xyz (atlas) |
| 185.66.90.155 | viponetv.com |
| 185.66.90.205 | xviptv.com |
| 185.66.90.247 | pro-ott.com |
| 185.233.186.33 | 3mlive.com (desi) |
| 185.254.196.8 | netmos.ovh |
| 185.254.196.31 | vkcdn5.com |
| 185.254.197.141 | atg100.xyz (atlas) |
| 185.254.197.149 | atg100.xyz (atlas) |
| 185.254.197.154 | atg100.xyz (atlas) |

| 185.254.197.156 | atg100.xyz (atlas) |
|---|---|
| 185.254.197.164 | atg100.xyz (atlas) |
| 185.254.197.166 | atg100.xyz (atlas) |
| 185.254.197.221 | mtsiptv.com |
| 185.254.197.223 | dominoiptv.com |
| 185.255.122.88 | 3mlive.com, realtv-hd.com (desi) |
| ----- | driptvs.com |

**МІНІСТЕРСТВО ЮСТИЦІЇ
УКРАЇНИ**

Мін'юст

вул. Архітектора Городецького, 13, м. Київ, 01001
тел.: (044) 364-23-93, факс: (044) 271-17-83
E-mail: callcentre@minjust.gov.ua,
themis@minjust.gov.ua,
Web: http://www.minjust.gov.ua,
код згідно з ЄДРПОУ 00015622

**Hagan Noll & Boyle, LLC
820 Gessner, Suite 940
Houston, Texas 77024
USA**

**12-2049-24**

*RE: Convention on the Service Abroad of Judicial and Extrajudicial Documents in
Civil or Commercial Matters of 15 November, 1965.*

The Ministry of Justice of Ukraine forwards the documents drawn up during
execution of the request concerning **Vyacheslav Smyrnov**.

This letter is performed in e-form and signed with the qualified electronic
signature, which by its legal validity is equivalent to the handwritten signature
according to the Law of Ukraine «On Electronic Trust Services».

Enclosure: package of documents.

**Deputy Head of the
International Legal Assistance
in Civil Matters Unit of the
International Law and
Representation Department**

Rudovska L. 278-11-76



**Tetyana Ryabet**




СЕД АСКОД
Міністерство юстиції України
№ 32308/34721-32-25/12.1.3 від 05.03.2025
Підписувач Рябець Тетяна Володимирівна

# CERTIFICATE
## ПІДТВЕРДЖЕННЯ

The undersigned authority has the honour to certify, in conformity with article 6 of the Convention,

**Орган, що підписався нижче, має честь підтвердити відповідно до положень статті 6 Конвенції,**

1) that the document has been served *

що документ був вручений*

(date)
**(дата)** 06.02.2025

at (place, street, number)
**(місце, вулиця, номер)** Солом'янський районний суд м. Києва (адреса:  м. Київ, вул.Грушецька, 1).
- in one of the following methods authorised by article 5:
**- одним із способів, передбачених в статті 5:**

a) in accordance with the provisions of sub-paragraph a) of the first paragraph of article 5 of the Convention *
**відповідно до положень підпункту (а) частини першої статті 5 Конвенції*;**

b) in accordance with the following particular method *
**відповідно до наступного спеціального способу***_____

c) by delivery to the addressee, who accepted it voluntarily *
**шляхом безпосередньої доставки адресату, який прийняв його добровільно***
The documents referred to in the request have been delivered to:
**Документи, зазначені в проханні, були вручені:**
(identity and description of person)
**(прізвище, ім'я та дані про особу)**
Представник одержувача (Смирнова В.В.) – адвокат Дементьєв Тарас Михайлович, ████1981 року народження, на підставі Ордеру про надання правової допомоги Смирнову В.В. № 1109287 від 18.06.2021 року. Документ, що посвідчує особу: адвокатське свідоцтво КВ № 3012 від 11.03.2019 року.

relationship to the addressee (family, business or other) _____
2) that the document has not been served, by reason of the following facts *
**що документ не був вручений з таких причин*:**
In conformity with the second paragraph of article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement *
**Відповідно до частини другої статті 12 Конвенції, прохання до запитуючого органу сплатити або відшкодувати витрати, викладені в додатку***
Annexes
**Додатки**
Documents returned:
**Документи, що повертаються:**_____
In appropriate cases, documents establishing the service:
**У разі необхідності, документи, які підтверджують вручення:**_____

Done at/**Складено в м. Києві, the/дата**_____

Signature and/or stamp
**Підпис та/або печатка**

**В.о. начальника**
**Центрального міжрегіонального управління**
**Міністерства юстиції (м. Київ)**                    Дмитро СТРУЦЬ



**06 102 252 413 36**

**РЕКОМЕНДОВАНЕ ПОВІДОМЛЕННЯ**
**ПРО ВРУЧЕННЯ ПОШТОВОГО ВІДПРАВЛЕННЯ,**
**ВИПЛАТУ ПОШТОВОГО ПЕРЕКАЗУ**

№ відправлення

Ф.119    УКРПОШТА
головна пошта країни

| Місце подання | 03057 | Дата подання | 20.01.2025 16:59 | | Київ | | 03113 |
|---|---|---|---|---|---|---|---|
| | | | | | Направлення сортування | | Індекс одержувача |

| Найменування адресата | **Смирнов В'ячеслав** |
|---|---|

| Поштова адреса | **вул. Вадима Гетьмана, 1-В, кв. 46,** |
|---|---|
| | **Київ, Київ р-н, Київ обл., 03057** |

| | Київ |
|---|---|
| Сортувальний центр | Район одержувача |

**Вид та категорія відправлення**
☑ рекомендований лист    ☐ поштовий переказ    ☐ інші відправлення

**Заповнюється в об'єкті поштового зв'язку за місцем призначення**

**Вищезазначене поштове відправлення, поштовий переказ**

☐ вручено    ☐ виплачено    22.01.25
(дата)
☐ особисто
☐ згідно з заявою/договором вкладеного до абонементної скриньки
☐ за довіреністю
Розписка про одержання*
Підпис працівника об'єкта поштового зв'язку

**Підлягає поверненню**

Найменування відправника
**Солом'янський районний суд міста**
**Києва**

Номер телефону
Поштова адреса
**вул. Грушецька 1, Київ, Київ р-н,**
**Київ обл., 03113**

Прим.:  **№ 760/30143/24 (2-д/760/4/25), Коробенко С. В.,**

№ повідомлення про вручення

**06 902 858 178 26**

* Для відправлень з відміткою «Вручити особисто», «Судова повістка» — особисто одержувачем або уповноваженою особою учиняється підпис та зазначається прізвище

**Солом'янський районний суд**
**міста Києва**
03113, м.Київ, вул. Полковника
Шутова, 1

**Заявник**
СМИРНОВ В'ЯЧЕСЛАВ
ВАЛЕНТИНОВИЧ
ел. пошта slavik.butch@gmail.com
тел. 380674428258
адреса 03057, м. Київ, вул.
Вадима Гетьмана, буд. 1В, кв. 46
РНОКПП ███████

**Представник заявника**
Дементьєв Тарас Михайлович
(адвокат)
ел. пошта
kmkdka.3012@gmail.com
тел. 380936024422
адреса 03039, м. Київ, вул.
Голосіївська, буд. 7, корп. 2, п/с
0067
РНОКПП ███████

**Інша особа**
Управління судової роботи та
міжнародної правової допомоги
Центрального міжрегіонального
управління Міністерства юстиції
(м. Київ)
ел. пошта vp-
kyiv@ki.ininjust.gov.ua
тел. 380442786323
адреса 01001, м. Київ, пров.
Музейний, буд. 2-Д
ЄДРПОУ 43315602

**Заява про ознайомлення з матеріалами справи в електронному вигляді (
внесення РНОКПП / коду ЄДРПОУ до додаткових відомостей про учасника
справи та надання доступу до електронної справи )**

Суддя Коробенко С.В.

Цивільна справа 760/30143/24

Я є адвокатом (представником) громадянина України Смирнова В.В. Відомості про мене, як про адвоката, містяться у ЄРАУ: https://erau.unba.org.ua/profile/46862.

На розгляді Шановного суду перебуває судове доручення іноземного суду про вручення виклику до суду чи інших документів, в порядку ст.501 ЦПК України.

Повістку про виклик в судове засідання на 17.01.2025р. на 10:00 Смирнов В.В. отримав лише 22.01.2025р., відтак, звісно ж не зміг прибути вчасно.

Згідно ст.27 Правил адвокатської етики, при виконанні доручення адвокат зобов'язаний використати всі розумію необхідні і доступні йому законні засоби для надання ефективної професійної правничої (правової) допомоги клієнту, здійснення його захисту або представництва.

Згідно положень, п.п.2, 7, 8 ч.1 ст.20 Закону України «Про адвокатуру та адвокатську діяльність», під час здійснення адвокатської діяльності адвокат має право представляти і захищати права, свободи та інтереси фізичних осіб, права та інтереси юридичних осіб у суді,, отримувати і вилучати речі, документи, їх копії, ознайомлюватися з ними, застосовувати технічні засоби, у тому числі для копіювання матеріалів справи, в якій адвокат здійснює захист, представництво або надає інші види правової допомоги.

Звертаю увагу Шановного суду – по причини відсутності РНОКПП мого довірителя у базі даних суду по цій справі або його некоректного внесення, <u>я наразі не маю можливості створити в установленому порядку електронний ордер та самостійно підключити дану справу до свого кабінету в «Електронному суді»</u>, як це передбачено п.11.1.8. Інструкції Користувача підсистеми «Електронний суд» ЄСІТС, затвердженої Наказом ДП «ЦСС» № 74-ОД від 22.08.2021р.

27.01.2025р. Смирнов В.В. в установленому порядку надав мені електронну довіреність в системі «Електронний суд», але доступу до даної справи наша сторона не має.

<u>Відтак, станом на сьогоднішній день, з матеріалами справи наша сторона не ознайомлена.</u>

<u>За вищевказаних обставин я не маю можливості підготуватись належним чином, подати обгрунтовані письмові пояснення в інтересах Смирнова В.В. тощо.</u>

24.02.2022р. Указом Президента України № 64/2022 «Про введення воєнного стану в Україні» на території України було введено воєнний стан. Даний Указ було затверджено Законом від 24.02.2022р. № 2102-IX, і згодом неодноразово продовжено.

РСУ Рішенням від 05.08.2022р. № 23 звернула увагу керівників органів та установ системи правосуддя, суддів на недопустимість ігнорування сигналів повітряної тривоги або інших сповіщень про небезпеку, які надходять від органів управління цивільного захисту.

Система «Електронний суд», при цьому, є ефективним способом дистанційного судочинства, особливо актуальним під час війни, коли повітряні тривоги, загрози ракетного обстрілу, значно ускладнюють прибуття учасників процесу до приміщення суду та подання документів у паперовій формі, ознайомлення з матеріалами справ

Відповідно до положень ст.3 Конституції України, людина, її життя і здоров'я, недоторканність і безпека визнаються в Україні найвищою соціальною цінністю.

Згідно п.124 Положення про порядок функціонування окремих підсистем (модулів) ЄСІТС, затвердженого Рішенням ВРП від 17.08.2021р. №1845/0/15-21, у разі надходження заяви учасника справи щодо ознайомлення з матеріалами справи чи окремими документами в електронному вигляді через підсистему «Електронний суд» суд, який отримав таку заяву, забезпечує сканування відповідних матеріалів справи чи окремих документів у паперовій формі, що перебувають у такому суді, та долучає їх до матеріалів електронної судової справи.

Згідно положень п.4 ч.5 ст.12 ЦПК України, суд, зберігаючи об'єктивність і неупередженість, сприяє учасникам судового процесу в реалізації ними прав, передбачених цим Кодексом.

Відповідно до положень ч.2 ст.9 Закону України «Про судоустрій і статус суддів», суд створює такі умови, за яких кожному учаснику судового процесу гарантується рівність у реалізації наданих процесуальних прав та у виконанні процесуальних обов'язків, визначених процесуальним законом.

Тому, згідно положень ст.ст.59, 63, 131-2 Конституції України, п.1 ч.1 ст.43, ч.1 ст.60, ч.4, 6 ст.62 ЦПК України, Інструкції з діловодства в місцевих та апеляційних судах України, затвердженої Наказом ДСА України від 20.08.2019р. № 814, мені наразі необхідно ознайомитись з матеріалами даної справи *(у т.ч., в електронному вигляді)*, підготуватись належним чином.

**Враховуючи вищевикладене, з урахуванням положень ст.6 Конвенції про захист прав людини і основоположних свобод (Європейська конвенція з прав людини) щодо права кожного на справедливий суд, вимог Положення про порядок функціонування окремих підсистем (модулів) ЄСІТС, затвердженого Рішенням ВРП від 17.08.2021р. №1845/0/15-21, прошу Шановний суд:**

- для забезпечення права на доступ до електронної справи та для можливості реалізації прав та обов'язків через підсистему «Електронний суд» – невідкладно внести мій РНОКПП ▮▮▮▮▮ і додати дану справу до системи «Електронного суду»;

- забезпечити сканування матеріалів даної справи, що перебувають у суді, та долучити їх до матеріалів електронної судової справи, або ж невідкладно направити мені електронну копію вказаних матеріалів на мою адресу електронної пошти kmkdka.3012@gmail.com;

- надати мені матеріали даної справи на ознайомлення з можливістю здійснити їх відображення у разі мого прибуття до суду.

**Додатки** *(електронні копії, посвідчені адвокатом за допомогою електронного підпису)*:

- Свідоцтва про право на заняття адвокатською діяльністю № 3012 (дублікат), Посвідчення, Договору про надання правової допомоги, Ордера *(згенерованого згідно п.6 та заповненого згідно п.12 Положення про ордер на надання правничої (правової) допомоги у новій редакції, затвердженого Рішенням РАУ від 12.04.2019р. № 41)*;

**З повагою,**

**Адвокат**


Додатки:
1. Довіреність на Дементьєв Тарас Михайлович.pdf.
2. Свідоцтво Договір Ордер.pdf.
3. Квитанція про надсилання стороні ЦЕНТРАЛЬНЕ МІЖРЕГІОНАЛЬНЕ
УПРАВЛІННЯ МІНІСТЕРСТВА ЮСТИЦІЇ (М. КИЇВ) 43315602.pdf.


27.01.2025, **Дементьєв Тарас Михайлович**

**ДОВІРЕНІСТЬ**

27.01.2025 р.

Я, СМИРНОВ В'ЯЧЕСЛАВ ВАЛЕНТИНОВИЧ (РНОКПП – ⬛⬛⬛⬛⬛⬛),
уповноважую Дементьєв Тарас Михайлович (РНОКПП – ⬛⬛⬛⬛⬛⬛) представляти
мої інтереси в судах України (в тому числі в апеляційній та касаційній інстанціях) з
усіма правами, які надано законом стороні по справі, в тому числі з правом
підписувати, подавати, доповнювати позовні заяви та інші передбачені законом
процесуальні документи, а також пред'являти виконавчі документи, видані у формі
електронного документа, на примусове виконання до органів державної виконавчої
служби (приватних виконавців)

Довіреність видана без права передоручення іншим особам.

Довіреність дійсна до моменту її скасування.

НАЦІОНАЛЬ**НА АСОЦІАЦІЯ**
**АДВОКАТІВ УКРАЇНИ**

# СВІДОЦТВО
**ПРО ПРАВО НА ЗАНЯТТЯ АДВОКАТСЬКОЮ ДІЯЛЬНІСТЮ**

Серія КВ № 3012

Відповідно до Закону України "Про адвокатуру та адвокатську діяльність"

гр. **Дементьєв Тарас Михайлович**
має право на заняття адвокатською діяльністю

Підстава: рішення Київської міської кваліфікаційно-дисциплінарної комісії адвокатури від 27.09.2007 року № 12-12-12

Підстава заміни/видачі дублікату: рішення Ради адвокатів міста Києва від 04.02.2019 року № 95

Голова Ради адвокатів міста Києва



11.03.2019 року                                    П.К. Рябенко

Договір про надання правової допомоги
Case 2:24-cv-01683-BJR     Document 13     Filed 05/13/25     Page 322 of 370
30/лютня 2021 р

### 1. Предмет Договору.

1. Адвокат надає Клієнту (у т.ч., як ФОП) <u>правову допомогу</u>, а саме: зобов'язується здійснити <u>захист</u>, <u>представництво</u> та надати <u>будь-які</u> <u>інші види правової допомоги, не заборонені законом</u>, на умовах і в порядку, що визначені Договором, а Клієнт зобов'язується оплатити Адвокату гонорар та фактичні витрати Адвоката, уноджені з Клієнтом, необхідні для виконання Договору.

<u>Захист</u>, зокрема (але не виключно), полягає в забезпеченні захисту прав, свобод і законних інтересів Клієнта, як затриманого підозрюваного, обвинуваченого, підсудного, засудженого, виправданого, особи, стосовно якої передбачається застосування примусових заходів медичного чи виховного характеру або вирішується питання про їх застосування у кримінальному провадженні, особи, стосовно якої розглядається питання про видачу іноземній державі (екстрадицію), а також особи, яка притягається до адміністративної відповідальності під час розгляду справи про адміністративне правопорушення тощо.

<u>Представництво</u>, зокрема (але не виключно), полягає в забезпеченні реалізації прав і обов'язків Клієнта в цивільному, господарському, адміністративному та конституційному судочинстві, виконавчому провадженні, в усіх без винятку органах державної влади та місцевого самоврядування, перед фізичними особами та юридичними особами усіх форм власності, прав і обов'язків потерпілого, свідка, заявника під час розгляду справ про адміністративні правопорушення, прав і обов'язків понятого, свідка, заявника, потерпілого, заставодавця, поручителя, цивільного позивача, цивільного відповідача, юридичної особи, щодо якої здійснюється провадження, третьої особи, щодо майна якої вирішується питання про арешт, іншої особи, права чи законні інтереси якої обмежуються під час досудового розслідування у кримінальному провадженні тощо.

<u>Інші види правової допомоги</u> включають будь-які види адвокатської діяльності, не заборонені законом, у т.ч., з надання правової інформації, консультацій і роз'яснень з правових питань, правового супроводу діяльності Клієнта, складення заяв, скарг, процесуальних та інших документів правового характеру, спрямованих на забезпечення реалізації прав, свобод і законних інтересів Клієнта, недопущення їх порушень, а також на сприяння їх відновленню в разі порушення тощо.

### 2. Права і обов'язки Адвоката.

2.1. Адвокат надає Клієнту правову допомогу відповідно до вимог чинного законодавства України, міжнародних договорів, та Договору, на вимогу (за дорученням) Клієнта. При цьому, Адвокат керується також чинними Правилами адвокатської етики.

### 3. Права і обов'язки Клієнта.

3.1. <u>Клієнт</u>, для отримання належної правової допомоги, зобов'язаний надати Адвокату на його вимогу всю необхідну інформацію, яка йому відома, необхідні для захисту документи, їх копії, речі, інші матеріали тощо, <u>підписуючи Договір – надає згоду на здійснення в установленому порядку усіх дій, не заборонених законодавством, та спрямованих на виконання Договору, помічнику Адвоката, а також надає згоду на обробку і використання персональних даних та іншої інформації з обмеженим доступом, банківської, лікарської таємниці тощо.</u>

3.2. Клієнт зобов'язується оплатити Адвокату гонорар та фактичні витрати, необхідні для виконання Договору.

3.3. Клієнт погоджує позицію Адвоката в справі залежно від обставин, та відповідно до вимог законодавства. Клієнт не вправі вимагати від Адвоката засобів, способів і методів захисту та представництва інтересів, які заборонені законодавством.

### 4. Повноваження Адвоката.

4.1. Договором права Адвоката не обмежуються. Адвокат, на виконання Договору, має право вчиняти в інтересах Клієнта на всій території України та за її межами будь-які дії, не заборонені законом та Правилами адвокатської етики, здійснює свою професійну діяльність та представляє інтереси Клієнта, згідно Договору, чинного законодавства України, міжнародних договорів (у т.ч., законодавства відповідної країни), в усіх без винятку питань, В УСІХ БЕЗ ВИНЯТКУ – ОРГАНАХ ДЕРЖАВНОЇ ВЛАДИ ТА МІСЦЕВОГО САМОВРЯДУВАННЯ, їх структурних, територіальних та інших утвореннях, УСТАНОВАХ, ПІДПРИЄМСТВАХ, ОРГАНІЗАЦІЯХ, НЕЗАЛЕЖНО ВІД ФОРМИ ВЛАСНОСТІ ТА ПІДПОРЯДКУВАННЯ, СУДАХ (в усіх інстанціях), ПРАВООХОРОННИХ ОРГАНАХ, органах нотаріату, перед органами та особами, які здійснюють примусове виконання судових рішень і рішень інших органів, у т.ч. ДВС та приватними виконавцями, закладах охорони здоров'я, банках, посольствах, консульствах, дипломатичних установах, перед фізичними особами тощо, зокрема, має право складати, підписувати, подавати, отримувати і використовувати в інтересах Клієнта будь-які належні Клієнту будь-які документи, речі, кошти, інформацію тощо, здійснювати будь-які інші види адвокатської діяльності, не заборонені законом.

### 5. Виплата гонорару та компенсація витрат Адвоката.

5.1. Розмір та порядок оплати гонорару (фіксована сума за певну дію або стадію) визначається за попереднім погодженням Адвоката з Клієнтом. Адвокат визначає розмір гонорару, виходячи із власних міркувань. При цьому, враховуються складність справи, кваліфікація, досвід і завантаженість Адвоката та інші обставини. В разі виникнення особливих по складності доручень Клієнта або у випадку об'єктивного збільшення затрат часу чи обсягу роботи Адвоката на фактичне виконання доручення (підготовку до виконання), розмір гонорару може бути збільшено за домовленістю Сторін, і не погодження Клієнтом збільшення розміру гонорару є підставою для відмови Адвоката від прийняття доручення або розірвання Договору на вимогу Адвоката. Адвокат має право вимагати від Клієнта попередньої виплати гонорару та/або компенсації можливих витрат. З вказаних та з усіх інших питань Сторони можуть укладати додаткові угоди до Договору, які є його невід'ємними частинами.

### 6. Конфіденційність.

6.1. Адвокат зберігає адвокатську таємницю. Клієнт, в свою чергу, зобов'язаний не розголошувати відомості, які йому стали відомі від Адвоката та інформацію, яка забезпечує безпеку самого Адвоката.

### 7. Дія Договору.

7.1. Цей Договір набирає чинності з моменту його підписання Сторонами (при цьому втрачає чинність Договір про надання правової допомоги № 04/09/17 від 03.10.2017р.) та діє протягом одного року. Якщо жодна Сторона не повідомить письмово іншу Сторону про своє бажання розірвати Договір, у строк не пізніше, ніж 10 днів до його закінчення, Договір вважається продовженим на такий самий строк.

7.2. Договір може бути достроково розірваний за взаємною згодою Сторін або розірваний на вимогу однієї з Сторін за умови повідомлення про це іншої Сторони не пізніше, ніж за 3 календарних дні. Зокрема, як Адвокат так і Клієнт мають право односторонньо розірвати Договір у випадках, передбачених законом та чинними Правилами адвокатської етики. При цьому Клієнт зобов'язаний оплатити Адвокату гонорар (винагороду) за всю роботу, що була виконана чи підготовлена до виконання, а Адвокат зобов'язаний повідомити Клієнта про можливі наслідки та ризики, пов'язані з достроковим розірванням Договору.

7.3. Адвокат, у т.ч., після використання всіх національних засобів правового характеру, в разі необхідності, здійснює захист прав та інтересів Клієнта в Європейському Суді з Прав Людини та усіх інших відповідних міжнародних інстанціях в установленому порядку.

7.4. Договір укладено українською мовою у двох примірниках, що мають однакову юридичну силу, по одному для кожної із Сторін.

### 8. Підписи Сторін.

АДВОКАТ:                                                                     КЛІЄНТ:

Дементьєв Т.М.                                                        Смирнов В.В.

**Квитанція № 2551519**
про доставку документів до зареєстрованого Електронного кабінету
Користувача ЄСІТС

Дата, час доставки: **27.01.2025 22:52**

Кому доставлено: Юридична особа,
ЄДРПОУ: **43315602**,
Назва: **ЦЕНТРАЛЬНЕ МІЖРЕГІОНАЛЬНЕ УПРАВЛІННЯ
МІНІСТЕРСТВА ЮСТИЦІЇ (М. КИЇВ)**

Від кого доставлено: Фізична особа,
РНОКПП: █████████
ПІБ: **Дементьєв Тарас Михайлович**

Перелік (опис) документів, що надіслані:

| № | Найменування документу | К-ть сторінок (для pdf-файлу) |
|---|---|---|
| 1 | Заява про внесення РНОКПП та надання доступу до електронної справи (файл у2025/2-2-791fbe80-dcf0-11ef-8b2e-35ee1ed2e96c.pdf, підпис у файлі у2025/2-2-791fbe80-dcf0-11ef-8b2e-35ee1ed2e96c.pdf.p7s) | 4 |
| 2 | Додаток 1. Довіреність на Дементьєв Тарас Михайлович.pdf (файл у2025/2-2-1b2a2280-dccc-11ef-9ede-bf2eac0da8a4.pdf, підпис у файлі у2025/2-2-1b2a2280-dccc-11ef-9ede-bf2eac0da8a4.pdf.p7s) | 1 |
| 3 | Додаток 2. Свідоцтво Договір Ордер.pdf (файл у2025/2-2-764b41c0-dcf0-11ef-822f-c5bf2707338e.pdf, підпис у файлі у2025/2-2-764b41c0-dcf0-11ef-822f-c5bf2707338e.pdf.p7s) | 3 |

Сформовано засобами підсистеми ЄСІТС «Електронний суд»
27.01.2025 22:52

**СЕРІЯ АА**



№ 1109287



## НАЦІОНАЛЬНА АСОЦІАЦІЯ АДВОКАТІВ УКРАЇНИ

# ОРДЕР

### НА НАДАННЯ ПРАВНИЧОЇ (ПРАВОВОЇ) ДОПОМОГИ

## Смирнов В'ячеслав Валентинович

(прізвище, ім'я, по батькові або найменування особи, якій надається правова допомога)

на підставі:

договору про надання правової допомоги/
доручення органу (установи), уповноваженого законом на надання безоплатної
правової допомоги №    04/05/21    від " 20 "    травня    2021   р.

У судах, правоохоронних органах, органах держ.влади та місц.самовряд., підприємст., устан., організац
незалежно від форм.власн., громадськ.формуваннях, ДВС та приватн.виконавц., перед фіз.особами

(назва органу, у якому надається правова допомога)

Адвокат

Дементьєв Тарас Михайлович

(прізвище, ім'я, по батькові адвоката, який надає правову допомогу)

Свідоцтво про право на заняття адвокатською діяльністю № 3012 від 11 березня 2019 р.
Рада адвокатів міста Києва на підставі
№ 12-12 від 27 вересня 2007 р.

Посвідчення № вересня 2007 р.

Виданий адвокатом, що здійснює адвокатську діяльність індивідуально:

03143, Київ обл., Київ, р-н Голосіївський, вул. Метрологічна, буд. 14, корп. 3, кв. 204

(адреса робочого місця адвоката)

Договором про надання правової (правничої) допомоги
права адвоката не обмежуються.

" 18 "   червня   20 21 р.           Адвокат

1 8 ЧЕР 2021

## ПІДТВЕРДЖЕННЯ
CERTIFICATE / ATTESTATION

Орган, що підписався нижче, має честь підтвердити відповідно до статті 6 Конвенції,
The undersigned authority has the honour to certify, in conformity with Article 6 of the Convention,
L'autorité soussignée a l'honneur d'attester conformément à l'article 6 de ladite Convention,

1)  *  що документ був вручений / that the document has been served/ que la demande a été exécutée

 - (*дата*) / the (date)/ le (date)
   06.02.2025
 - у (*місце, вулиця, номер*) / at (place, street, number)/ à (localité, rue, numéro)
   Солом'янський районний суд м. Києва (м. Київ, вул. Грушевська, 1)
 - одним із способів, передбачених у статті 5:
   in one of the following methods authorised by Article 5:
   dans une des formes suivantes prévues à l'article 5:

   a) відповідно до підпункту (а) частини першої статті 5 Конвенції. *
      in accordance with the provisions of sub-paragraph (a) of the first paragraph of Article 5 of the Convention. *
      selon les formes légales (article 5, alinéa premier, lettre a). *
   b) відповідно до наступного спеціального способу: *
      in accordance with the following particular method: *
      selon la forme particulière suivante: *

   c) шляхом безпосередньої доставки адресату, який прийняв його добровільно. *
      by delivery to the addressee, who accepted it voluntarily. *
      par remise simple. *

   Документи, зазначені у проханні, були вручені особі:
   The documents referred to in the request have been delivered to:
   Les documents mentionnés dans la demande ont été remis à:
    - (*ім'я та дані про особу*)/ (identity and description of person) (identité et qualité de la personne)
      Дементьєву Тарасу Михайловичу, ▇▇▇ 1981 р.н.
    - стосунки з одержувачем (родинні, ділові або інші):
      relationship to the addressee (family, business or other):
      liens de parenté, de subordination ou autres, avec le destinataire de l'acte:
      представник одержувача Смирнова В.В. (адвокат, свідоцтво КВ 3012)

2)  *  що документ не був вручений з таких причин:
       that the document has not been served, by reason of the following facts:
       que la demande n'a pas été exécutée, en raison des faits suivants:


Відповідно до частини другої статті 12 Конвенції, прохання запитуючого органу сплатити або відшкодувати витрати, викладені у додатку. *
In conformity with the second paragraph of Article 12 of the Convention, the applicant is requested to pay or reimburse the expenses detailed in the attached statement. *
Conformément à l'article 12, alinéa 2, de ladite Convention, le requérant est prié de payer ou de rembourser les frais dont le détail figure au mémoire ci-joint. *

### Додатки
Annexes / Annexes
Документи, що повертаються: / Documents returned: / Pièces renvoyées:



У разі необхідності, документи, які підтверджують вручення:
In appropriate cases, documents establishing the service: / Le cas échéant, les documents justificatifs de l'exécution:



Складено у м./ Done at / Fait à  м. Київ          , дата / the / le

Підпис та/або печатка.
Signature and/or stamp.
Signature et/ou cachet.

Суддя
Солом'янського районного суду
м. Києва                                              Коваленко С.В.

Справа № 760/30143/24
Провадження №2-д/760/4/25

**Протокол**
**судового засідання**

06.02.2025

Солом'янський районний суд міста Києва

У складі:
Головуючого судді                                          Коробенка С.В.
Секретаря судового засідання                          Семененко А.Д.
За участі:
адвоката                                                          Дементьєва Т.М.

розглянув у відкритому судовому засіданні в залі суду 21 в місті Києві справу щодо виконання доручення американського суду про вручення судових документів Смирнову В'ячеславу.

| № з/п | Час вчинення запису | Дія, дійова особа | Інші відомості |
|---|---|---|---|
| 1 | 10:00:30 | Відкриття судового засідання | Оголошення справи, що підлягає розгляду |
| 2 | 10:00:35 | Оголошення складу суду | |
| 3 | 10:00:40 | Головуючий суддя: Коробенко С.В. | |
| 4 | 10:01:00 | Секретар судового засідання Семененко А.Д. | Доповідає, що до суду з'явився адвокат Дементьєв Т.М., який діє в інтересах Смирнова В'ячеслава Валентиновича. |
| 5 | 10:01:40 | | Встановлення особи |
| 6 | 10:01:58 | Адвокат: Дементьєв Т.М. | |
| 7 | 10:02:40 | Роз'яснення права заявляти відводи | Відводів не надійшло |
| 8 | 10:03:30 | Головуючий суддя: Коробенко С.В. | Вручає адвокату Дементьєв Т.М., який діє в інтересах Смирнова В'ячеслава Валентиновича документи американського суду |
| 9 | 10:04:50 | Адвокат: Дементьєв Т.М. | Отримує документи американського суду та підписує підтвердження. Клопоче про оголошення перерви для ознайомлення із врученими документами американського суду та підготовки письмових пояснень |
| 10 | 10:05:58 | Головуючий суддя: Коробенко С.В. | Суд на місці ухвалив оголосити перерву в засіданні та призначенні його на інший день для забезпечення прав сторони |
| 11 | 10:07:30 | Закриття судового засідання | |

Секретар судового засідання                                          Семененко А.Д.



Головуючий суддя                                                        Коробенко С.В.



Провадження № 2 п/60/ 4

в справі № 760/ 20143

**РОЗПИСКА**

Повідомлений (- на) про слухання справи призначене на 11.02. 20 25 10 30

_____
(Процесуальний статус)

_____
(Прізвище ім'я по батькові)

0 6 ЛЮТ 2025
(Дата  місяць    рік)

_____
(Підпис)

**КОПІЯ**

**Солом'янський районний суд
міста Києва**
03113, м.Київ, вул. Полковника
Шутова, 1

**Заявник**
СМИРНОВА В'ячеслава
Валентиновича
ел. пошта slavik.butch@gmail.com
тел. 380674428258
адреса 03057, м. Київ, вул.
Вадима Гетьмана, буд. 1В, кв. 46
(електронний кабінет наявний)
РНОКПП ▉▉▉▉▉▉

**Представник заявника**
Дементьєв Тарас Михайлович
(адвокат)
ел. пошта
kmkdka.3012@gmail.com
тел. 380936024422
адреса 03039, м. Київ, вул.
Голосіївська, буд. 7, корп. 2, п/с
0067
РНОКПП ▉▉▉▉▉▉

**Інша особа**
Управління судової роботи та
міжнародної правової допомоги
Центрального міжрегіонального
управління Міністерства юстиції
(м. Київ)
ел. пошта vp-
kyiv@ki.ininjust.gov.ua
тел. 380442786323
адреса 01001, м. Київ, пров.
Музейний, буд. 2-Д (електронний
кабінет наявний)
ЄДРПОУ 43315602

Справа № **760/30143/24**
Провадження № **2-д/760/4/25**
Суддя **Коробенко Сергій
Віталійович**



Додаткові пояснення у справі

*«Boni justicis est ampliare justitiam»*

*(обов'язок доброчесного судді – приймати рішення,*

*які сприяють розвитку правосуддя)*

Я є представником громадянина України Смирнова В.В. Відомості про мене, як про адвоката, містяться у ЄРАУ: https://erau.unba.org.ua/profile/46862. Належним чином посвідчені копії документів, що підтверджують мої повноваження (у т.ч., англійською мовою) додаю.

На розгляді Шановного суду перебуває судове доручення (запит) Окружного суду США Західного округу Штату Вашингтон у Сієтлі від 18.10.2024р. про вручення документів у справі Смирнову В.В., в порядку ст.501 ЦПК України.

Засідання Шановного суду призначене на 11.02.2025р. на 10:30.

При цьому, вказані матеріали я, як представник Смирнова В.В., отримав від Шановного суду під розпис 06.02.2025р.

Згідно ст.ст.59, 63 Конституції України, до прав людини віднесено право на професійну правничу допомогу та право на захист, а ст.131-2 Конституції України встановлює, що для надання професійної правничої допомоги в Україні діє адвокатура.

Згідно ст.27 Правил адвокатської етики, при виконанні доручення адвокат зобов'язаний використати всі розумію необхідні і доступні йому законні засоби для надання ефективної професійної правничої (правової) допомоги клієнту, здійснення його захисту або представництва.

Згідно положень, п.п.2, 7, 8 ч.1 ст.20 Закону України «Про адвокатуру та адвокатську діяльність», під час здійснення адвокатської діяльності адвокат має право представляти і захищати права, свободи та інтереси фізичних осіб, права та інтереси юридичних осіб у суді,, отримувати і вилучати речі, документи, їх копії, ознайомлюватися з ними, застосовувати технічні засоби, у тому числі для копіювання матеріалів справи, в якій адвокат здійснює захист, представництво або надає інші види правової допомоги.

Згідно ч.1 ст.58 ЦПК України, сторона може брати участь у судовому процесі особисто (самопредставництво) та (або) через представника.

Згідно ч.1 ст.60 ЦПК України, представником у суді може бути, зокрема, адвокат.

Невід'ємне право учасника справи надавати пояснення суду встановлене положеннями ч.4 ст.9, п.3 ч.1, п.5 ч.2 ст.43, ч.5 ст.174, ч.1 ст.182, ч.1, 5 ст.229 ЦПК України.

Тому, для забезпечення врахування правової позиції Смирнова В.В. при розгляді Окружним судом США вказаної справи за позовом до нього, подаю Шановному суду дані Додаткові пояснення у справі, до яких додаю надану Смирновим В.В. Відповідь відповідача на скаргу за встановленою формою Pro Se 3 (Rev. 12/16) від 12.12.2024р.,

українською мовою, через Документ13м на якому Смирнов В.В. детально і аргументовано викладає свою позицію щодо заявлених вимог.

Вказана Відповідь відповідача на скаргу також подавалась мною 17.12.2024р. в інтересах ТОВ «Віртуальні системи» (директором якого є Смирнов В.В.) до Господарського суду м. Києва у справі 910/14408/24 у межах виконання аналогічного доручення в частині позову до ТОВ «Віртуальні системи».

Згідно ч.5 ст.500 ЦПК України, <u>виконання судового доручення підтверджується</u> протоколом судового засідання, <u>іншими документами</u>, складеними чи <u>отриманими під час виконання доручення</u>, що засвідчуються підписом судді та скріплюються гербовою печаткою.

Згідно положень ч.7, 8 ст.501 ЦПК України, доручення іноземного суду про вручення виклику до суду чи інших документів вважається виконаним у день, коли особа або її представник отримали такі документи. <u>Виконання доручення іноземного суду про вручення виклику до суду чи інших документів підтверджується</u> протоколом судового засідання, у якому зазначаються заяви чи повідомлення, зроблені особами у зв'язку з отриманням документів, а також підтвердженням про повідомлення особи про необхідність явки до суду для отримання документів та <u>іншими документами</u>, складеними чи <u>отриманими під час виконання доручення</u>, що засвідчуються підписом судді та скріплюються гербовою печаткою.

Згідно положень п.4 ч.5 ст.12 ЦПК України, суд, зберігаючи об'єктивність і неупередженість, сприяє учасникам судового процесу в реалізації ними прав, передбачених цим Кодексом.

Відповідно до положень ч.2 ст.9 Закону України «Про судоустрій і статус суддів», суд створює такі умови, за яких кожному учаснику судового процесу гарантується рівність у реалізації наданих процесуальних прав та у виконанні процесуальних обов'язків, визначених процесуальним законом.

**Враховуючи вищевикладене, керуючись також Конвенцією про вручення за кордоном судових та позасудових документів у цивільних або комерційних справах, з урахуванням положень ст.6 Конвенції про захист прав людини і основоположних свобод (Європейська конвенція з прав людини) щодо права кожного на справедливий суд, вимог Положення про порядок функціонування окремих підсистем (модулів) ЄСІТС, затвердженого Рішенням ВРП від 17.08.2021р. №1845/0/15-21, прошу Шановний суд:**

- розглянути вказане питання за відсутності нашої сторони, наше нез'явлення вважати таким, що не перешкоджає розгляду вказаного питання;

- для забезпечення повного, всебічного та об'єктивного з'ясування Окружним судом США обставин вказаної справи і прийняття законного і обґрунтованого судового рішення за результатом її розгляду:

1. долучити до матеріалів справи та вказаного судового доручення дані Додаткові пояснення у справі з додатками;

2. відобразити вказане в протоколі судового засідання та інших документах, складених в ході виконання доручення;

3. забезпечити надсилання даних Додаткових пояснень у справі з додатками

**Додатки** *(електронні копії, посвідчені адвокатом за допомогою електронного підпису):*

- Витягу з ЄРАУ, Свідоцтва про право на заняття адвокатською діяльністю № 3012 *(дублікат)*, Посвідчення, Договору про надання правової допомоги, Ордера *(згенерованого згідно п.6 та заповненого згідно п.12 Положення про ордер на надання правничої (правової) допомоги, затвердженого Рішенням РАУ від 12.04.2019р. № 41);*

- документів, що підтверджують мої повноваження, англійською мовою;

- Відповіді відповідача на скаргу за встановленою формою Pro Se 3 (Rev. 12/16) від 12.12.2024р., українською мовою а також з перекладом на англійську мову;

- Докази надсилання Управлінню судової роботи та міжнародної правової допомоги Центрального міжрегіонального управління Міністерства юстиції (м. Київ) копії даних Додаткових пояснень у справі з додатками в електронній формі з використанням ЄСІТС *(квитанції про доставку документів до зареєстрованого Електронного кабінету користувача ЄСІТС, сформована в автоматичному режимі – для Шановного суду).*

**З повагою,**

**Адвокат**

Додатки:
1. ДОГОВІР.pdf.
2. Витяг з ЄРАУ 27.12.2024р.pdf.
3. Свідоцтво посвідчення.pdf.
4. Certificate of Good Standing.pdf.
5. ID card of Advocate of Ukraine.pdf.
6. переклад_the_defendants_answer_to_the_complaint _DISH_VSYS (1).pdf.
7. The defendants answer to the complaint DISH VSYS.pdf.
8. Квитанція про надсилання стороні ЦЕНТРАЛЬНЕ МІЖРЕГІОНАЛЬНЕ УПРАВЛІННЯ МІНІСТЕРСТВА ЮСТИЦІЇ (М. КИЇВ) 43315602.pdf.

10.02.2025, **Дементьєв Тарас Михайлович**

**СЕРІЯ АА**                                                    **№ 1109287**





## НАЦІОНАЛЬНА АСОЦІАЦІЯ АДВОКАТІВ УКРАЇНИ

# ОРДЕР

### НА НАДАННЯ ПРАВНИЧОЇ (ПРАВОВОЇ) ДОПОМОГИ

## Смирнов В'ячеслав Валентинович

(прізвище, ім'я, по батькові або найменування особи, якій надається правова допомога)

на підставі:

договору про надання правової допомоги/
**доручення** органу (установи), уповноваженого законом на надання безоплатної
правової допомоги № ___04/05/21___ від " _20_ " ___травня___ _2021_ р.

У судах, правоохоронних органах, органах держ.влади та місц.самовряд., підприємст., устан., організаї
незалежно від форм.власн., громадськ.формуваннях, ДВС та привати.виконавц., перед фіз.особами
(назва органу, у якому надається правова допомога)

Адвокат

## Дементьєв Тарас Михайлович

(прізвище, ім'я, по батькові адвоката, який надає правову допомогу)

Свідоцтво про право на заняття адвокатською діяльністю № 3012 від 11 березня 2019 р.
видане радою адвокатів міста Києва на підставі
рішення № 12-12-12 від 27 вересня 2007 р.

Посвідчення адвоката № ___3012___ видане " _11_ " ___вересня___ _2007_ р.
Радою адвокатів міста Києва (серія АА 017274)

Виданий адвокатом, що здійснює адвокатську діяльність індивідуально:

03143, Київ обл., Київ, р-н Голосіївський, вул. Метрологічна, буд. 14, корп. 3, кв. 204
(адреса робочого місця адвоката)

Договором про надання правової (правничої) допомоги
**права адвоката не обмежуються.**

" _18_ " ___червня___ 20 _21_ р.                          Адвокат

**1 8 ЧЕР 2021**

Сканировано с CamScanner

Договір про надання правової допомоги
м. Київ                                                                        "20" травня 2021 р
№ 01/05/21

**1. Предмет Договору.**

1. Адвокат надає Клієнту (у т.ч., як ФОП) правову допомогу, а саме: зобов'язується здійснити захист, представництво та надати будь-які інші види правової допомоги, не заборонені законом, на умовах і в порядку, що визначені Договором, а Клієнт зобов'язується оплатити Адвокату гонорар та фактичні витрати Адвоката, узгоджені з Клієнтом, необхідні для виконання Договору.

Захист, зокрема (але не виключно), полягає в забезпеченні захисту прав, свобод і законних інтересів Клієнта, як затриманого підозрюваного, обвинуваченого, підсудного, засудженого, виправданого, особи, стосовно якої передбачається застосування примусових заходів медичного чи виховного характеру або вирішується питання про їх застосування у кримінальному провадженні, особи, стосовно якої розглядається питання про видачу іноземній державі (екстрадиція), а також особи, яка притягається до адміністративної відповідальності під час розгляду справи про адміністративне правопорушення тощо.

Представництво, зокрема (але не виключно), полягає в забезпеченні реалізації прав і обов'язків Клієнта в цивільному, господарському, адміністративному та конституційному судочинстві, виконавчому провадженні, в усіх без винятку органах державної влади та місцевого самоврядування, перед фізичними особами та юридичними особами усіх форм власності, прав і обов'язків потерпілого, свідка, заявника під час розгляду справ про адміністративні правопорушення, прав і обов'язків понятого, свідка, заявника, потерпілого, заставодавця, поручителя, цивільного позивача, цивільного відповідача, юридичної особи, щодо якої здійснюється провадження, третьої особи, щодо майна якої вирішується питання про арешт, іншої особи, права чи законні інтереси якої обмежуються під час досудового розслідування в кримінальному провадженні тощо.

Інші види правової допомоги включають будь-які види адвокатської діяльності, не заборонені законом, у т.ч., з надання правової інформації, консультацій і роз'яснень з правових питань, правового супроводу діяльності Клієнта, складання заяв, скарг, процесуальних та інших документів правового характеру, спрямованих на забезпечення реалізації прав, свобод і законних інтересів Клієнта, недопущення їх порушень, а також на сприяння їх відновленню в разі порушення тощо.

**2. Права і обов'язки Адвоката.**

2.1. Адвокат надає Клієнту правову допомогу відповідно до вимог чинного законодавства України, міжнародних договорів, та Договору, на вимогу (за дорученням) Клієнта. При цьому, Адвокат керується також чинними Правилами адвокатської етики.

**3. Права і обов'язки Клієнта.**

3.1. Клієнт, для отримання належної правової допомоги, зобов'язаний надати Адвокату на його вимогу всю необхідну інформацію, яка йому відома, необхідні для захисту документи, їх копії, речі, інші матеріали тощо, підписуючи Договір – надає згоду на здійснення в установленому порядку усіх дій, не заборонених законодавством, та спрямованих на виконання Договору, помічнику Адвоката, а також надає згоду на обробку і використання персональних даних та іншої інформації з обмеженим доступом, банківської, лікарської таємниці тощо.

3.2. Клієнт зобов'язується оплатити Адвокату гонорар та фактичні витрати, необхідні для виконання Договору.

3.3. Клієнт погоджує позицію Адвоката в справі залежно від обставин, та відповідно до вимог законодавства. Клієнт не вправі вимагати від Адвоката засобів, способів і методів захисту та представництва інтересів, які заборонені законодавством.

**4. Повноваження Адвоката.**

4.1. Договором права Адвоката не обмежуються. Адвокат, на виконання Договору, має право вчиняти в інтересах Клієнта на всій території України та за її межами будь-які дії, не заборонені законом та Правилами адвокатської етики, здійснює свою професійну діяльність та представляє інтереси Клієнта, згідно Договору, чинного законодавства України, міжнародних договорів (у т.ч., законодавства відповідної країни), в усіх без винятку питань в УСІХ БЕЗ ВИНЯТКУ - ОРГАНАХ ДЕРЖАВНОЇ ВЛАДИ ТА МІСЦЕВОГО САМОВРЯДУВАННЯ, їх структурних, територіальних та інших утвореннях, УСТАНОВАХ, ПІДПРИЄМСТВАХ, ОРГАНІЗАЦІЯХ, ОБ'ЄДНАННЯХ НЕЗАЛЕЖНО ВІД ФОРМИ ВЛАСНОСТІ ТА ПІДПОРЯДКУВАННЯ, СУДАХ (в усіх інстанціях), ПРАВООХОРОННИХ ОРГАНАХ, органах нотаріусу, перед органами та особами, які здійснюють примусове виконання судових рішень і рішень інших органів, у т.ч. ДВС та приватними виконавцями, закладах охорони здоров'я, банках, посольствах, консульствах, дипломатичних установах, перед фізичними особами тощо, зокрема, має право складати, підписувати, подавати, отримувати і використовувати в інтересах Клієнта та/або належні Клієнту будь-які документи, речі, кошти, інформацію тощо, здійснювати будь-які інші види адвокатської діяльності, не заборонені законом.

**5. Виплата гонорару та компенсація витрат Адвоката.**

5.1. Розмір та порядок оплати гонорару (фіксована сума за певну дію або стадію) визначається за попереднім погодженням Адвоката з Клієнтом. Адвокат визначає розмір гонорару, виходячи із власних міркувань. При цьому, враховуються складність справи, кваліфікація, досвід і завантаженість Адвоката та інші обставини. В разі виникнення особливих по складності доручень Клієнта у випадку об'єктивного збільшення затрат часу і обсягу роботи Адвоката на фактичне виконання доручення (підготовку до виконання), розмір гонорару може бути збільшено за домовленістю Сторін, і не погодження Клієнтом збільшення розміру гонорару є підставою для відмови Адвоката від прийняття доручення або розірвання Договору на вимогу Адвоката. Адвокат має право вимагати від Клієнта попередньої виплати гонорару та/або компенсації можливих витрат. З вказаних та з усіх інших питань Сторони можуть укладати додаткові угоди до Договору, які є його невід'ємними частинами.

**6. Конфіденційність.**

6.1. Адвокат зберігає адвокатську таємницю. Клієнт, в свою чергу, зобов'язаний не розголошувати відомості, які йому стали відомі від Адвоката та інформацію, яка забезпечує безпеку самого Адвоката.

**7. Дія Договору.**

7.1. Цей Договір набирає чинності з моменту його підписання Сторонами (при цьому втрачає чинність Договір про надання правової допомоги № 04/09/17 від 03.10.2017р.) та діє протягом одного року. Якщо жодна Сторона не повідомить письмово іншу Сторону про своє бажання розірвати Договір, у строк не пізніше, ніж 10 днів до його закінчення, Договір вважається продовженим на такий самий строк.

7.2. Договір може бути достроково розірвано за взаємною згодою Сторін або розірваний на вимогу однієї із Сторін за умови повідомлення про це іншої Сторони не пізніше, ніж за 3 календарних дні. Зокрема, як Адвокат так і Клієнт мають право односторонньо розірвати Договір у випадках, передбачених законом та чинними Правилами адвокатської етики. При цьому Клієнт зобов'язаний оплатити Адвокату гонорар (винагороду) за всю роботу, що була виконана чи підготовлена до виконання, а Адвокат зобов'язаний повідомити Клієнта про можливі наслідки та ризики, пов'язані з достроковим розірванням Договору.

7.3. Адвокат, у т.ч. після використання всіх національних засобів правового характеру, в разі необхідності, здійснює захист прав та інтересів Клієнта в Європейському Суді з прав людини та усіх інших відповідних міжнародних інстанціях в установленому порядку.

7.4. Договір укладено українською мовою у двох примірниках, що мають однакову юридичну силу, по одному для кожної із Сторін.

**8. Підписи Сторін.**

АДВОКАТ:                                                              КЛІЄНТ:

_____ Демчішен Т.М.                                          _____ Смірнов В.В.

СЕРІЯ ІІ





№ 1023529

## НАЦІОНАЛЬНА АСОЦІАЦІЯ
## АДВОКАТІВ УКРАЇНИ

### РАДА АДВОКАТІВ УКРАЇНИ

04070, м.Київ, вул. Борисоглібська, буд 3, 5 поверх, тел.: +38(044)392-73-71 факс: +38(044)392-73-70
info@unba.org.ua

## Витяг з Єдиного реєстру адвокатів України

Цей витяг сформовано відповідно до
Розділу ІІ, Статті 17 Закону України «Про адвокатуру та адвокатську діяльність» від 05.07.2012 № 5076-VI.



### Дементьєв Тарас Михайлович

| | | |
|---|---|---|
| Обліковується у: | **Рада адвокатів міста Києва** | |
| № Свідоцтва: | Дата видачі свідоцтва: | Орган, що видав свідоцтво: |
| **3012** | **11.03.2019** | **Рада адвокатів міста Києва** |
| Номер рішення: | Дата прийняття рішення: | Загальний стаж адвоката: |
| **12-12-12** | **27.09.2007** | **З 2007 року** |

| | |
|---|---|
| **Адреса робочого місця та номери засобів зв'язку** | Адреса основна: **03143, Київ, м. Київ, р-н Голосіївський, вул. Метрологічна, буд. 14, корп. 3, кв. 204** |
| | Мобільний: **+38(095)157-35-97** |
| | E-mail: **kmkdka.3012@gmail.com** |

| | |
|---|---|
| **Форми адвокатської діяльності.** | **Індивідуальна адвокатська діяльність** |
| **Найменування, адреса, номери засобів зв'язку** | Адреса: **03143, Київ, м. Київ, р-н Голосіївський, вул. Метрологічна, буд. 14, корп. 3, кв. 204** |
| | Мобільний: **+38(095)157-35-97** |

| | |
|---|---|
| **Інші відомості, передбачені Законом України «Про адвокатуру та адвокатську діяльність» та "Порядком ведення Єдиного реєстру адвокатів України"** | Адреса для листування: 03039, м. Київ, вул. Голосіївська, буд. 7, корп. 2, п/с 0067 |

Підвищення кваліфікації

| | |
|---|---|
| 2019 рік | Виконано |
| 2020 рік | Виконано |
| 2022 рік | Виконано |
| 2024 рік | Виконано |

Голова Ради адвокатів України, Національної
асоціації адвокатів України



Ізовітова Л.П.



* Цей документ підписаний кваліфікованим підписом Голови Національної асоціації адвокатів України (Ради адвокатів України) і печаткою Національної асоціації адвокатів України «Для витягу з Єдиного реєстру адвокатів України» і є юридично значимим.

Час та дата формування витягу: 12:00:38 27.12.2024



НАЦІОНАЛЬНА АСОЦІАЦІЯ
АДВОКАТІВ УКРАЇНИ

# СВІДОЦТВО
### ПРО ПРАВО НА ЗАНЯТТЯ АДВОКАТСЬКОЮ ДІЯЛЬНІСТЮ

Серія КВ № 3012

Відповідно до Закону України "Про адвокатуру та адвокатську діяльність"

гр. Дементьєв Тарас Михайлович
має право на заняття адвокатською діяльністю

Підстава: рішення Київської міської кваліфікаційно-дисциплінарної комісії адвокатури від 27.09.2007 року № 12-12-12

Підстава заміни/видачі дублікату: рішення Ради адвокатів міста Києва від 04.02.2019 року № 95

Голова Ради адвокатів міста Києва

11.03.2019 року                                    П.К. Рябенко

ПОСВІДЧЕННЯ АДВОКАТА УКРАЇНИ
НАЦІОНАЛЬНА АСОЦІАЦІЯ АДВОКАТІВ УКРАЇНИ

Прізвище
ДЕМЕНТЬЄВ
Ім'я
ТАРАС
По батькові
МИХАЙЛОВИЧ
Дата народження
1981

Свідоцтво про право на заняття адвокатською діяльністю № 3012 від 27.09.2007
Видано на підставі рішення Київської міської КДКА
№ 12-12-12 від — 27.09.2007

**НАЦІОНАЛЬНА АСОЦІАЦІЯ
АДВОКАТІВ УКРАЇНИ**



**UKRAINIAN NATIONAL
BAR ASSOCIATION**

04070, м. Київ, вул. Борисоглібська, буд. 3, 5-й поверх,
тел: +38 (044) 392-73-71
email: info@unba.org.ua, веб-сайт: www.unba.org.ua

5th floor, 3 Borysoglibska st., Kyiv, 04070, Ukraine
phone: +38 (044) 392-73-71
email: info@unba.org.ua, web-site: www.unba.org.ua

Attention to:

До уваги:

**CERTIFICATE**

**of Good Standing**

**ДОВІДКА**

**про належний правовий статус**

Dear Mr. or Ms.,

Hereby we would like to confirm that Mr. Taras Dementiev admitted to the Bar as an advocate in Ukraine on September 27, 2007, certificate of right to practice law No. 3012.

Mr. Dementiev is of good character and repute. There have been no proceedings, and there are no proceedings pending against Mr. Dementiev for any professional or other misconduct.

Mr. Dementiev is currently entitled to practice law as an attorney in Ukraine.

Шановний пан/пані,

Цим підтверджуємо, що пан Тарас Дементьєв став адвокатом в Україні 27 вересня 2007 року, свідоцтво № 3012.

Пан Дементьєв має добру репутацію. Проти пана Дементьєва не було відкрито і не має жодних призупинених дисциплінарних проваджень за професійні чи інші проступки.

Пан Дементьєв зараз має право практикувати як адвокат в Україні.

Sincerely,

Vadim Krasnyk

Head of the Secretariat of
Ukrainian National Bar Association,
Bar Council of Ukraine

З повагою,

Вадим Красник

Керівник секретаріату
Національної асоціації адвокатів України,
Ради адвокатів України

Національна асоціація адвокатів України
№ 1657/0/2-23 від 22.09.2023




# ОКРУЖНИЙ СУД США

### Західний округ Вашингтона

### Сіетл

| | |
|---|---|
| | Номер справи    2:24-cv-01683. |
| **DISH NETWORK L. L. C.** | *(заповнюється в діловодстві)* |
| *Позивач(і)* | |
| *(Напишіть повне ім'я кожного позивача, який подає цю скаргу. Якщо імена всіх позивачів не вміщуються в полі вище, будь ласка, напишіть у цьому місці «див. вкладене» та прикріпіть додаткову сторінку з повним списком імен.)* | Суд присяжних :    ☐ так   ☒ ні *(позначте один)* |
| **-v-** | |
| | |
| **ТОВ «ВІРТУАЛЬНІ СИСТЕМИ» та В'ЯЧЕСЛАВ СМИРНОВ.** | |
| *Відповідач(і)* | |
| *(Напишіть повне ім'я кожного відповідача, проти якого порушується позов. Якщо імена всіх відповідачів не вміщуються в полі вище, будь ласка, напишіть у цьому місці «див. вкладене» та додайте додаткову сторінку з повним списком імен.)* | |

## ВІДПОВІДЬ ВІДПОВІДАЧА НА СКАРГУ

**I.    Сторони, що подають цю відповідь на скаргу**

Надайте інформацію нижче для кожного відповідача, який подає цю відповідь або іншу відповідь на твердження у скарзі позивача. За потреби додайте додаткові сторінки.

| | |
|---|---|
| Відповідач | ВІРТУАЛЬНІ СИСТЕМИ, ТОВ |
| Адреса вулиці | Лабораторна 33/37 |
| Місто та округ | Київ, Україна |
| Штат і поштовий індекс | 03150 |
| Номер телефону | +380 (44) 591-5679 |
| Адреса електронної пошти | +380 (44) 591-5679 |
| | |
| Відповідач | В'ячеслав Смирнов |

1

Pro Se 3 (Rev. 12/16) Відповідь відповідача на скаргу

| | |
|---|---|
| Адреса вулиці | Вадима Гетьмана 1в, пов.46 |
| Місто та округ | Київ, Україна |
| Штат і поштовий індекс | 03057 |
| Номер телефону | +3800674428258 |
| Адреса електронної пошти | +3800674428258 |

**II.    Відповідь та захист  відповідача щодо скарги**

3. юрисдикція, де знаходиться суд, є невідповідним для розгляду цієї справи, оскільки *(коротко пояснити)*

Місце розташування суду є невідповідним для розгляду даної справи через :

1. **Відсутність відповідних контактів з Юрисдикцією:** передбачувані дії, включаючи розміщення та передачу спірного контенту, відбувалися повністю за межами Сполучених Штатів, зокрема на серверах, розташованих в Україні. Відповідачі ТОВ «Віртуальні системи) та В'ячеслав Смирнов не мають офісів, приміщень або співробітників у штаті Вашингтон чи будь-де в Сполучених Штатах, які були залучені до ймовірних дій. Між діяльністю відповідачів і юрисдикцією немає суттєвого зв'язку, як того вимагає стандарт «мінімальних контактів» у справі *International Shoe Co. проти Вашингтона* , 326 US 310, 316 (1945). Повісткою не було вказувало на будь-який зв'язок між передбачуваною правопорушною діяльністю та серверами, розташованими в Сполучених Штатах, а також не було продемонстровано, наскільки діяльність відповідачів щодо центра обробки даних у Сіетлі мали відношення до позовів, поданих DISH Network. Дії відповідачів, обмежені наданням послуг хостингу за межами США, не демонструють цілеспрямованої користі чи спрямованості на Вашингтонський округ. Отже, стверджувані дії не встановлюють достатніх контактів, щоб виправдати юрисдикцію цього Суду щодо відповідачів.

2. **Відсутність цілеспрямованого спрямування діяльності на Юристдикцію:** Відповідачі, компанія ТОВ «Віртуальні системи»(VSYS) і В'ячеслав Смирнов не цілеспрямовано спрямовували свою діяльність на Вашингтон чи будь-яку частину Сполучених Штатів. Стандарт «цілеспрямованого керівництва», як роз'яснено у справі *«Calder v. Jones»* , 465 US 783 (1984), вимагає, щоб дії відповідача були чітко спрямовані на державу суду, усвідомлюючи, що шкода, ймовірно, буде заподіяна там. Однак послуги хостингу VSYS доступні в усьому світі й не націлені конкретно на клієнтів із США чи жителів Вашингтона. Ці послуги є нейтральними та глобальними та обслуговують широке коло клієнтів без націлювання на певний географічний регіон. VSYS не рекламує свої послуги спеціально для споживачів у США та не активно залучає бізнес у Вашингтоні. Отже, немає доказів поведінки, прямо спрямованої проти Вашингтонської юрисдикції. Передбачувана правопорушна діяльність приписується сторонам клієнтам VSYS, а не самому VSYS. Навіть якщо діяльність цих клієнтів мала випадковий зв'язок із Сполученими Штатами, така шкода не була передбачуваною або скерованою відповідачами. Діяльність відповідачів повністю базується в Україні, і їх участь обмежується наданням нейтральних послуг хостингу без контролю або участі в контенті, який транслюється клієнтами. У *Walden v. Fiore* , 571 US 277 (2014), Суд постановив, що юрисдикція не може ґрунтуватися на контактах позивача чи третьої сторони з юрисдикцією. Навпаки, власні дії відповідача повинні створювати суттєвий зв'язок із юрисдикцією. Тут поведінка VSYS не пов'язана з Вашингтоном, і ймовірна шкода є виключно результатом дій третіх сторін. У справі *Pebble Beach Co. проти Caddy* , 453 F.3d 1151 (9th Cir. 2006), дев'ятий округ не виявив персональної юрисдикції над іноземним відповідачем, якщо веб-сайт був доступний у всьому світі, але не був спрямований конкретно на Каліфорнію. Так само веб-сайт і послуги VSYS доступні в усьому світі, але не націлені на клієнтів у Вашингтоні чи США.

3. **Невідповідність вимогам до місця проведення суду:** Відповідно до 28 USC § 1391(b), місце проведення суду є належним, лише якщо:
   - Штат, де проживає будь-який відповідач, якщо всі відповідачі проживають в одному штаті: Відповідачі Virtual Systems, LLC, і В'ячеслав Смирнов є іноземними особами, які проживають в Україні. Жоден з відповідачів не проживає в штаті Вашингтон чи будь-де в Сполучених Штатах.
   - Штат, де відбулася значна частина подій або порушень, що стали підставою для претензій: Жодна з подій, що стали підставою для претензій DISH, не відбулася у Вашингтоні чи в Сполучених Штатах. Передбачувані правопорушні дії – розміщення та передача контенту – відбувалися

3

повністю на серверах, розташованих в Україні. Операції, інфраструктура та діяльність відповідачів обмежуються Україною та не мають істотного зв'язку з Вашингтоном.

- Якщо такого округу не існує, будь-який округ, де відповідач підпадає під особисту юрисдикцію: для застосування цього резервного положення відповідачі повинні підпадати під особисту юрисдикцію у Вашингтоні. Відповідно до стандарту «мінімальних контактів» у *справі International Shoe Co. проти Вашингтона* , 326 US 310 (1945) і підкріпленого у *Walden v. Fiore* , 571 US 277 (2014), відповідачі не мають достатніх контактів із Вашингтоном для надання особистої юрисдикції. Таким чином, це положення не застосовується, а місце проведення у Вашингтоні є неналежним.

4. **«Forum Non Conveniens»:** доктрина «forum non conveniens» застосовується, коли суд з юрисдикцією та відповідним місцем все одно відхиляє справу, оскільки інший форум є більш доцільним і зручним для вирішення спору. У цьому випадку Україна є більш доречним форумом з наступних причин:

- Відповідачі ТОВ «Віртуальні системи» та В'ячеслав Смирнов проживають в Україні. Усі їхні операції, сервери, інфраструктура та відповідний персонал базуються в Україні. Передбачувана правопорушна діяльність відбувалася повністю на серверах, розташованих в Україні, і ключові докази, такі як записи серверів, угоди з клієнтами та свідчення співробітників, також знаходяться там.

- Вимога відповідачів вести судовий процес у Вашингтоні накладає значний і невиправданий тягар. Відповідачі зіткнуться з матеріально-технічними проблемами під час транспортування доказів, захисту свідків і орієнтування в іноземній правовій системі.

- Ця суперечка стосується іноземних відповідачів, іноземних серверів і передбачуваних дій, які мали місце повністю за межами Сполучених Штатів. Немає суттєвого зв'язку між заявами та Вашингтоном. Простий факт того, що певна передбачувана шкода могла бути заподіяна у Вашингтоні, не створює достатнього зв'язку для виправдання судового розгляду там, як роз'яснено у *Walden v. Fiore* , 571 US 277 (2014).

- Україна дуже зацікавлена у вирішенні спорів, пов'язаних із зареєстрованими компаніями та діяльністю, що відбувається в її межах. Суди США повинні поважати юрисдикцію українських судів відповідно до принципів міжнародної ввічливості. Крім того, українське законодавство регулює багато аспектів цієї справи, включаючи угоди про хостинг і дотримання місцевих нормативних актів, що робить українські суди більш придатними для вирішення цього питання.

- Українські суди є адекватним і доступним форумом для розгляду цього спору. Правова система України здатна вирішувати позови та забезпечувати засоби правового захисту, включаючи вирішення питань інтелектуальної власності згідно з її законодавством.

4.    Відповідачу було вручено повістку, але процес - форма виклику - був недостатнім, оскільки *(коротко пояснити)*

Відповідачу було вручено повістку, але процес - форма виклику - був недостатнім через:

1. **Недостатня конкретика щодо юрисдикційної основи.** У повістці не було належним чином визначено юридичну чи фактичну підставу для здійснення судом персональної юрисдикції щодо відповідачів, ТОВ «Віртуальні системи» (VSYS) та В'ячеслава Смирнова, які є іноземними особами, які працюють переважно в Україні. Хоча визнається, що VSYS обслуговує сервери в Сполучених Штатах, ці сервери не брали участі в імовірних правопорушних діях, про які йдеться в цій справі. Щоб задовольнити вимоги щодо належної правової процедури згідно з рішенням *International Shoe Co. проти Вашингтона*, 326 US 310 (1945), суд повинен встановити, що відповідачі мають «мінімальні контакти» з державою суду та що претензії випливають із цих контактів або пов'язані з ними. Повістка не вказувала на будь-який зв'язок між передбачуваною правопорушною діяльністю та серверами, розташованими в Сполучених Штатах, а також не демонструвала, наскільки операції відповідачів у центрі обробки даних у Сіетлі мали відношення до позовів, поданих DISH Network. Відсутність зв'язку між претензіями та американською інфраструктурою має вирішальне значення, оскільки особиста юрисдикція вимагає, щоб позов «виникав або стосувався» контактів відповідача з форумом (*Ford Motor Co. v. Montana Eighth Judicial Dist. Суд*, 141 S. Ct. 1017 (2021) Щодо іноземних організацій, таких як VSYS, суд повинен спиратися на докладні та конкретні твердження, які показують, що діяльність, яка стала причиною позовів, відбувалася на території відповідної юрисдикції або була прямо спрямована на таку. Просте обслуговування серверів у Сполучених Штатах, які не були залучені до імовірної поведінки, не задовольняє цю вимогу (*Walden v. Fiore*, 571 US 277 (2014)). У повістці не сформульовано, як зв'язок відповідачів з центром обробки даних у Сіетлі пов'язаний з імовірним порушенням авторських прав. Це упущення позбавляє відповідачів справедливого повідомлення про юрисдикційну основу та можливості належним чином захищатися від позовів, порушуючи їхні належні процесуальні права (*World-Wide Volkswagen Corp. v. Woodson*, 444 US 286 (1980)).

2. **Недолік обґрунтування місця проведення.** У повістці не було належним чином пояснено, чому Західний округ Вашингтона є відповідним місцем для розгляду цієї справи. Відповідачі проживають в Україні, а імовірні дії відбувалися за межами території, на серверах, розташованих в Україні. Щоб відповідати 28 USC § 1391, повістка повинна продемонструвати, що значна частина подій або упущень, які стали підставою для позову, відбулася в районі форуму або що відповідачі там проживають. Такого зв'язку не встановлено. Простих заяв про шкоду, завдану позивачеві, який проживає в США, наприклад DISH Network, недостатньо, щоб виправдати місце проведення судового засідання у Вашингтоні. Процесуальна справедливість вимагає більш чіткого пояснення того, чому форум є належним за обставин цієї справи.

3. **Неоднозначність у термінах відповіді.** Повістка не враховує правильний графік відповіді, застосовний до відповідачів як іноземних організацій, які працюють за межами Сполучених Штатів. Правило 12(a)(1)(A)(ii) Федеральних правил цивільного судочинства чітко передбачає, що відповідачі, які перебувають за межами Сполучених Штатів, мають право на 90 днів для відповіді на скаргу. Однак повістка неоднозначно посилається на 21-денний термін і включає 60-денний термін, застосовний лише до Сполучених Штатів або їхніх установ, посадових осіб або службовців. Це упущення створює плутанину та не інформує відповідачів, ТОВ «Віртуальні системи» та В'ячеслава Смирнова, про їхні процесуальні права. Відсутність ясності може завдати шкоди відповідачам, не надавши їм достатньо часу для оцінки претензій, звернення за юридичною допомогою та підготовки адекватної відповіді, як того вимагає правило 4(a)(1)(A) і правило 12(a)( 1)(A)(ii).

4. **Відсутність чіткого опису судового захисту.** Повісткою не було чітко сформульовано конкретний захист, якого шукав позивач, таким чином залишивши

відповідачів без належного повідомлення про претензії, які вони повинні розглянути. Згідно з правилом 4(a)(1)(C) Федеральних правил цивільного судочинства, повістка повинна «зазначати час, протягом якого відповідач повинен з'явитися та захиститися», і повинна містити достатню кількість деталей, щоб проінформувати відповідача про обсяг і характер шуканої допомоги. Упущення конкретної інформації щодо затребуваного судового захисту – наприклад, суми збитків, характеру будь-якої судової заборони, що вимагається, або інших засобів правового захисту – змушує відповідачів спекулювати щодо повного обсягу вимог позивача. Ця відсутність ясності підриває процесуальну справедливість і позбавляє відповідачів можливості: оцінити правові та фінансові ризики, пов'язані з позовами; Підготувати обґрунтовану відповідь на звинувачення; Оцінити потребу в потенційних дискусіях щодо врегулювання чи оборонних стратегіях.

5. Спосіб вручення відповідачу повістки та скарги був недостатнім, оскільки *(коротко пояснити)*

Порядок вручення відповідачу повістки та скарги був недостатнім через Невідповідність Гаазькій конвенції про вручення: Україна є учасником Гаазької конвенції про вручення за кордоном судових та позасудових документів у цивільних або комерційних справах, яка встановлює офіційні процедури обслуговування процесу на міжнародному рівні. Згідно зі статтею 5 Конвенції, вручення має здійснюватися через Центральний орган, призначений країною-одержувачем, яким у даному випадку є Міністерство юстиції України. Пряма передача документів пану Смирнову через FedEx обходить обов'язкову процедуру, передбачену Гаазькою конвенцією про вручення, і не відповідає формальним вимогам для дійсного міжнародного процесуального вручення. Це недотримання підриває процесуальну справедливість і гарантії, встановлені для забезпечення належного сповіщення та достатнього часу для відповіді іноземного відповідача. Крім того, правило 12(a)(1)(A)(ii) Федеральних правил цивільного судочинства вимагає, щоб іноземні відповідачі, які знаходяться за межами Сполучених Штатів, мали **90 днів** для відповіді на скаргу. Якщо цей подовжений час відповіді не було чітко повідомлено або не було дотримано в поєднанні з неналежним методом надання послуг, права відповідача на належні процесуальні процедури ще більше порушуються.

6. У скарзі не вказано вимогу, на підставі якої може бути надано судовий захист, тому що *(коротко поясніть, чому стверджувані факти, навіть якщо вони правдиві, недостатні, щоб продемонструвати право позивача на відшкодування)*

Скарга позивача є неповноцінною, оскільки стверджувані факти, навіть якщо вони є правдивими, недостатні для створення життєздатної правової основи для стягнення з відповідачів. Зокрема:

1. **Відсутність конкретних звинувачень щодо неправомірних дій відповідачів** : скарга базується на узагальнених твердженнях про те, що Virtual Systems, LLC і В'ячеслав Смирнов надавали послуги хостингу, які нібито використовувалися сторонніми Піратськими Сервісами для порушення авторських прав DISH. Однак вторинна відповідальність за порушення авторських прав вимагає більше, ніж просто надання нейтральної інфраструктури чи послуг. Співучасть у порушенні вимагає фактичних знань про конкретне правопорушну діяльність і істотної допомоги в такому порушенні ( *Sony Corp. of Am. проти Universal City Studios, Inc.* , 464 US 417, 439 (1984)). У скарзі не наводяться факти, які б доводили, що відповідачі свідомо сприяли порушенню або брали активну участь у правопорушних діях. Спонукання вимагає позитивних дій для заохочення до порушення ( *MGM Studios Inc. проти Grokster, Ltd.* , 545 US 913, 930 (2005)). Покладання на маркетингові фрази, такі як «DMCA ігнорується», не доводить наміру чи причинного зв'язку порушення. Ця формулювання, ймовірно, відображає правову природу українського законодавства, а не намір спонукати до порушення авторських прав. Побічна відповідальність вимагає права та здатності контролювати правопорушну діяльність та отримання прямої фінансової вигоди від неї ( *Ellison v. Robertson* , 357 F.3d 1072, 1078 (9th Cir. 2004)). Скарга не встановлює, що відповідачі здійснювали контроль над діями Піратських Сервісів або що їхні доходи були конкретно пов'язані з порушенням.

2. **Нездатність встановити обізнаність або намір** : у скарзі не наводиться достатніх фактів, які б показали, що відповідачі мали фактичні чи конструктивні знання про конкретні випадки порушення або навмисно сприяли такому порушенню. Відповідно до *Sony Corp. Am. проти Universal City Studios, Inc.* , відповідальність за участь вимагає: 1. Фактичних знань про конкретну правопорушну діяльність ; 2. Матеріальний внесок у правопорушну діяльність. В Україні повідомлення про захист авторських прав у цифрову епоху ( особливо автоматизовані ) не мають правової чи процедурної ваги. Такі повідомлення не підлягають виконанню відповідно до законодавства України, яке регулює діяльність відповідачів. Як наслідок, вони не встановлюють знання чи умисел. *Perfect 10, Inc. проти Amazon.com, Inc.* , 508 F.3d 1146, 1171 (9th Cir. 2007), встановлює, що загальна обізнаність про потенційне порушення є недостатньою. Позивач не продемонстрував конкретних знань про правопорушний вміст або навмисне сприяння.

3. **Недостатність тверджень про контроль або фінансову вигоду:** у скарзі не встановлено необхідні елементи для суб'єктивної відповідальності згідно із законодавством США про авторське право, яке вимагає: 1. Право та можливість контролювати: практичний контроль над правопорушною діяльністю ; 2. Пряма фінансова вигода: дохід, безпосередньо пов'язаний із правопорушною діяльністю. Хостинг-провайдери зазвичай надають нейтральні платформи та зазвичай не контролюють певний вміст. У скарзі не стверджується, що відповідачі активно відстежували або контролювали вміст Піратських Сервісів. Договірні права на відключення облікових записів або видалення вмісту є недостатніми без доказів активного примусового виконання чи нагляду ( *Perfect 10, Inc. проти Cybernet Ventures, Inc.* , 213 F. Supp. 2d 1146, 1173 (CD Cal. 2002)). Немає жодних доказів того, що відповідачі отримували пряму вигоду від порушення або що порушення було суттєвим «просуванням» їхніх послуг ( *Fonovisa, Inc. проти Cherry Auction, Inc.* , 76 F.3d 259, 263-64 (9th Cir. 1996)). Плата за хостинг, яку стягують відповідачі, є стандартною та не прив'язана до конкретної правопорушної діяльності ( *Ellison v. Robertson* , 357 F.3d 1072, 1079 (9th Cir. 2004)).

4. **Екстериторіальний характер передбачуваної поведінки:** Передбачувані правопорушні дії відбувалися повністю на серверах, розташованих в Україні. Закон США про авторське право не поширюється на дії, що відбуваються за межами Сполучених Штатів. Закон про авторське право не застосовується екстериторіально (*Subafilms, Ltd. проти MGM-Pathe Commc'ns Co.* , 24 F.3d 1088, 1095-96 (9th Cir. 1994)). Щоб посилатися на закон США про авторське право, Позивач має довести, що

7

правопорушні дії мали місце на території Сполучених Штатів ( *LA News Serv. проти Reuters Television Int'l, Ltd.* , 149 F.3d 987, 990 (9th Cir. 1998)). У скарзі визнається, що ймовірна діяльність відбувалася на серверах, розташованих в Україні. Він не надає доказів того, що сервери відповідачів у США використовувалися для ймовірного порушення. У скарзі не вказано конкретних користувачів або клієнтів із США, які отримали доступ до правопорушного вмісту через служби відповідачів.

5. **Неможливість встановити особисту відповідальність пана Смирнова** : Позивач не надав достатніх фактів для встановлення індивідуальної відповідальності пана Смирнова. Щоб притягнути особу до відповідальності, Позивач повинен довести, що ця особа особисто дозволяла, керувала або брала участь у діях, що порушують авторські права ( *ALS Scan, Inc. проти Steadfast Networks, LLC* , 819 F. App'x 522, 524 (9th Cir. 2020); *Perfect 10, Inc. проти Giganews, Inc.* , 847 F.3d 657, 677 (9-е коло 2017)). Твердження Позивача не свідчать про те, що пан Смирнов особисто брав участь або знав про конкретну правопорушну діяльність. Повідомлення, надіслані компанії, не встановлюють особисту відповідальність, якщо відповідач безпосередньо не брав участі в діях, що порушують права, або керував ними. У скарзі не йдеться про будь-яку поведінку пана Смирнова в США. Закон США про авторське право не поширюється на екстериторіальні дії ( *Subafilms, Ltd. проти MGM-Pathe Commc'ns Co.* , 24 F.3d 1088, 1095-96 (9th Cir. 1994)).

7. Інша сторона *(ім'я)*              сторонні оператори т. зв           потрібно приєднатися
                                      «Піратські Сервіси»                (додати)

у справі. Причина *(коротко поясніть, чому потрібно приєднатися до іншої партії)*

Передбачувана правопорушна діяльність, згадана в скарзі , стосується сторонніх операторів так званих «Піратських Сервісів», які є юридичними або фізичними особами, безпосередньо відповідальними за завантаження, передачу та розповсюдження захищеного авторським правом вмісту. Відповідно до Федерального правила цивільного судочинства 19(а), ці сторони є незамінними, оскільки їхня відсутність погіршує здатність суду винести справедливе та повне рішення у справі.

1. Повнота: Не приєднуючи Піратських Сервісів до справи, суд не може повністю розглянути позов, оскільки вони є безпосередніми порушниками, ймовірно відповідальними за ймовірне несанкціоноване використання та розповсюдження захищених авторським правом матеріалів DISH. Притягнення до відповідальності виключно хостинг-провайдерів, таких як ТОВ «Віртуальні системи» та її директора В'ячеслава Смирнова, призведе до неповного вирішення та може призвести до несправедливої відповідальності відповідачів за дії незалежних третіх сторін.

2. Інтереси відсутніх сторін: оператори Піратських Сервісів мають істотний інтерес у захисті від позовів про порушення авторських прав. Якщо їх не приєднати, їхня відсутність може зашкодити або перешкодити їхній здатності захищати свої інтереси. Їх виключення загрожує існуючим відповідачам отримати непослідовні зобов'язання та потенційно перешкоджає вирішенню претензій через покладання відповідальності на постачальників хостингу без розгляду дій прямих порушників.

      a.      Якщо підставою для предметної юрисдикції є різноманітність громадянства, вкажіть наслідки додавання іншої сторони:

> Друга сторона є громадянином держави *(ім'я)*   п/а                                .
>
> Або є громадянином *(іноземної країни)*   чужі народи                              
>
> Сума відшкодування збитків , яку вимагає ця інша сторона, становить        невизначено           .

*(вказати суму)*

    b. Якщо позов цієї іншої сторони ґрунтується на ймовірному порушенні федерального конституційного чи законного права, вкажіть підставу:

> Претензії проти цих третіх сторін будуть ґрунтуватися на ймовірних порушеннях закону про авторське право США (17 USC § 501 і далі), зокрема, несанкціонованого публічного виконання та розповсюдження матеріалів, захищених авторським правом. Приєднання є необхідним для того, щоб гарантувати, що відповідальність за будь-яке порушення покладено на відповідні сторони.

## C. Застосування позитивних засобів захисту до позовів про судовий захист

      Визначте ствердний захист або відмову, які дають підставу для уникнення відповідачу відповідальності за                   однією або декількома претензіями позивача, навіть якщо підстави для позову є. Будь-який позитивний захист або                   уникнення має бути визначено у відповіді. Включіть будь-яке з наступного, що стосується, а також будь-які                   інші, які можуть бути застосовані.

    Позовні вимоги позивача про *(вказати вимоги)*

    порушення авторських прав відповідно до 17 USC § 501 і далі.

    заборонено *(визначте одне або декілька з наступного, що стосується)* :

    1. Згода та задоволення *(коротко пояснити)*

      п/а

    2. Арбітраж і рішення *(коротко пояснити)*

      п/а

    3. Прийняття ризику *(коротко пояснити)*

      п/а

    4. Спільна або порівняльна недбалість позивача *(коротко поясніть)*

9

n/a

_____

5. Примус *(коротко пояснити)*

n/a

_____

6. Естопель *(коротко пояснити)*

Позивачу заборонено пред'являти претензії до Відповідачів, оскільки він не вжив розумних заходів для усунення ймовірної порушницької поведінки сторонніх операторів Піратських Сервісів перед поданням позову до Відповідачів. Неодноразове використання позивачем загальних повідомлень, а не прямих примусових дій проти основних порушників, створює несправедливу ситуацію, яка несправедливо перекладає відповідальність на нейтрального хостинг-провайдера.

_____

7. Нерозгляд *(коротко пояснити)*

n/a

_____

8. Шахрайство *(коротко пояснити)*

n/a

_____

9. Незаконність *(коротко пояснити)*

Претензії позивача неправомірно намагаються покласти відповідальність у США на дії, які регулюються іноземним законодавством, у тому числі українським. Оскільки передбачувані дії не є незаконними в межах юрисдикції, де вони сталися, Позивач не може отримати відшкодування відповідно до законодавства США .

_____

10. Травма співробітником *(коротко пояснити)*

n/a

_____

11. Laches (затримка) *(коротко пояснити)*

Позивач безпідставно затримував подання претензій, незважаючи на те, що йому було відомо про ймовірне порушення протягом тривалого періоду часу. Ця затримка завдала шкоди Відповідачам, оскільки вони не змогли вирішити проблеми раніше та знайти сторонніх операторів, відповідальних за ймовірне порушення.

_____

12. Ліцензія *(коротко пояснити)*

10

У тій мірі, в якій будь-який вміст, розміщений на серверах Відповідачів, було завантажено або передано уповноваженими сторонами, претензії Позивача забороняються фактичними або неявними ліцензіями, наданими третім особам. Відповідачі, як хостинг-провайдери, не мають засобів визначити статус ліцензування конкретного вмісту без чіткого повідомлення та доказів.

13. Оплата *(коротко пояснити)*

n/a

14. Відпустіть *(коротко пояснити)*

n/a

15. Res judicata *(коротко пояснити)*

n/a

16. Положення про шахрайство *(коротко пояснити)*

n/a

17. Позовна давність *(коротко пояснити)*

n/a

18. Відмова *(коротко пояснити)*

Нездатність Позивача вжити своєчасних і рішучих заходів проти сторонніх операторів Піратських Сервісів, незважаючи на те, що він знав про передбачувану правопорушну діяльність, означає відмову від позовів до Відповідачів. Покладаючись на непрямі та процесуально недостатні повідомлення, Позивач продемонстрував мовчазне погодження з поведінкою третьої сторони. Ця неспроможність застосувати прямі примусові заходи проти фактичних порушників не дозволяє Позивачу заднім числом покласти відповідальність на Відповідачів, які просто надавали нейтральні послуги хостингу, не знаючи або не контролюючи ймовірну діяльність.

19. Інше *(коротко пояснити)*

У скарзі не вказано претензію, на підставі якої може бути надано захист, оскільки Відповідачі, як нейтральні хостинг-провайдери, не володіли необхідними знаннями, ані навмисно сприяли чи контролювали передбачувану правопорушну діяльність. У законодавстві США про авторське право явно відсутнє екстериторіальне застосування до дій, які відбуваються виключно на іноземних серверах, що працюють під іноземною юрисдикцією, наприклад, в Україні. Відповідно, Позивач не може встановити відповідальності відповідно до 17 USC § 501 за поведінку поза межами юрисдикції США, як роз'яснено у *справі Subafilms, Ltd. проти MGM-Pathe Commc'ns Co.* , 24 F.3d 1088, 1095-96 (9th Cir 1994).

**D.    Заявлення претензій до позивача (зустрічний позов) або до іншого відповідача (перехресний позов)**

Щодо зустрічного позову проти позивача чи зустрічного позову проти іншого відповідача, коротко вкажіть факти, які показують, чому відповідач, який заявляє зустрічний позов або зустрічний позов, має право на відшкодування збитків або інше відшкодування. Не наводьте юридичних аргументів. Вкажіть, як була залучена кожна протилежна сторона та що кожна з них зробила, що завдало відповідачу шкоди або порушило права відповідача, включаючи дати та місця цієї участі або поведінки. Якщо висунуто більше одного зустрічного або перехресного позову, пронумеруйте кожну вимогу та напишіть короткий і зрозумілий виклад кожної позову в окремому абзаці. За потреби додайте додаткові сторінки.

1. Відповідач має такі претензії до позивача *(конкретизуйте претензію та поясніть її; за потреби додайте додаткову заяву про юрисдикцію)* :

**Позов: Зустрічний позов про декларативне рішення про відсутність відповідальності**
**Факти:** Відповідачі, ТОВ «Віртуальні системи» та В'ячеслав Смирнов, вимагають винести деклараційне рішення, в якому стверджується, що вони не несуть відповідальності за ймовірне порушення авторських прав, як стверджує Позивач, DISH Networks. Сервери, причетні до ймовірного порушення, розташовані в Україні та регулюються законодавством України. Претензії Позивача мають на меті неправомірне покладання відповідальності на Відповідачів за ймовірні дії сторонніх Піратських Сервісів, над якими Відповідачі не мають контролю. Ці сторонні оператори відповідають за завантаження, керування та розповсюдження вмісту. Позивач не надав належного повідомлення про конкретну правопорушну діяльність або не продемонстрував будь-якого активного сприяння або заохочення до порушення з боку Відповідачів. Відповідачі не брали свідомо чи навмисно участі в будь-якому ймовірному порушенні авторських прав і не несуть відповідальності за дії незалежних сторонніх операторів, які використовують їхні послуги хостингу.
**Юрисдикція** : цей зустрічний позов подано відповідно до: 28 USC § 2201 (Закон про декларативне рішення) з метою роз'яснення законних прав і обов'язків сторін ; 28 USC § 1331 (федеральна юрисдикція), оскільки спір включає претензії, що виникають відповідно до Закону США про авторське право (17 USC § 501 і далі). Деклараційне судове рішення має важливе значення для вирішення поточних спорів щодо відповідальності та запобігання невиправданій шкоді бізнес-операціям та репутації Відповідачів.

2. Відповідач має таку претензію до одного чи кількох інших відповідачів *(вкажіть вимогу та поясніть її; за потреби додайте додаткову заяву про юрисдикцію)* :

п/а

      3.     Коротко й точно вкажіть, які збитки чи інше відшкодування сторона, яка заявляє зустрічний або перехресний позов, просить суд винести. Не наводьте юридичних аргументів. Включіть будь-які підстави для твердження про те, що ймовірні порушення тривають на даний момент. Включіть суми будь-яких фактичних збитків, які вимагаються за стверджувані дії, і підстави для цих сум. Включіть будь-які заявлені штрафні або типові збитки, суми та причини, які ймовірно дають право стороні на фактичні або штрафні грошові збитки.

      a.     Відповідач, який заявляє зустрічний або перехресний позов проти *(вказати хто позов проти)*    **DISH NETWORK L.L.C.**    стверджує наступне отримані травми або збитки *(вказати)* :

     Неправомірними діями Позивача відповідачам завдано наступних збитків:

     1.    **Шкода репутації:** Твердження Позивача завдали суттєвої шкоди професійній репутації Відповідачів як нейтрального та законного хостинг-провайдера. Ці звинувачення, незважаючи на те, що вони безпідставні, зображують Відповідачів як співучасників незаконної діяльності, підриваючи їхній авторитет у бізнес-спільноті та підриваючи довіру між клієнтами та галузевими партнерами.

     2.    **Юридичні та адміністративні витрати:** Захищаючись від необґрунтованих претензій Позивача, відповідачі несуть значні витрати на судові збори, адміністративні ресурси та збої в роботі. Ці витрати продовжують накопичуватися через триваючий характер судового процесу.

     3.    **Економічна шкода:** Твердження Позивача порушили регулярні ділові операції Відповідачів, що призвело до втрати наявних клієнтів і стримування потенційних клієнтів від взаємодії з Відповідачами. Необґрунтовані судові процеси та негативний розголос призвели до фінансових втрат і завадили розвитку бізнесу.

     b. Відповідач вимагає відшкодування наступних збитків або іншого відшкодування *(зазначте)* :

1. **Декларація компенсація:**

Рішення про те, що:

- Відповідачі не несуть відповідальності за сприяння, спонукання чи побічне порушення авторських прав.
- Відповідачі, як хостинг-провайдери, не підпадають під дію законодавства США про авторське право щодо дій, які відбуваються за межами юрисдикції США.

2. **Грошові збитки:**

- Відшкодування шкоди, заподіяної репутації Відповідачів.
- Відшкодування судових та адміністративних витрат, понесених при захисті від позовів.
- Компенсація економічної шкоди внаслідок зриву діяльності та втрати клієнтів.

3. **Штрафні санкції:**

Відповідачі вимагають відшкодування штрафних збитків у розмірі, достатньому для того, щоб утримати позивача від подання подібних безпідставних позовів до нейтральних хостинг-провайдерів у майбутньому.

4. **Судова заборона** :

Розпорядження, яке перешкоджає позивачу робити подальші безпідставні звинувачення або подавати претензії без достовірних і обґрунтованих доказів.

---

## III.     Атестація та закриття

Згідно з Федеральним правилом цивільного судочинства 11, підписавшись нижче, я підтверджую, наскільки мені відомо, інформації та переконання, що ця відповідь: (1) не надається з неналежною метою, наприклад для переслідування, спричинення непотрібної затримки, або без потреби збільшити витрати на судовий процес; (2) підтверджується чинним законодавством або несерйозним аргументом щодо розширення, зміни чи скасування чинного законодавства; (3) фактичні твердження мають доказову підтримку або, якщо це спеціально визначено, ймовірно матимуть доказову підтримку після розумної можливості для подальшого розслідування чи відкриття; і (4) відповідь іншим чином відповідає вимогам Правила 11.

### A. Для сторін без адвоката

Я погоджуюся повідомляти канцелярії про будь-які зміни моєї адреси, куди можуть надсилатися документи, пов'язані зі справою. Я розумію, що моя нездатність зберегти поточну адресу у файлі канцелярії може призвести до закриття моєї справи.

Дата підписання:      12 грудня 2024 р

Підпис відповідача     _____

Ім'я відповідача     В'ячеслав Смирнов

друкованими     _____

14

**Б. Для адвокатів**

Дата підписання: _____ n/a _____

Підпис повіреного         n/a
Ім'я адвоката друкованими   n/a
Номер бару               n/a
Назва юридичної компанії   n/a
Адреса вулиці            n/a
Штат і поштовий індекс    n/a
Номер телефону           n/a
Адреса електронної пошти   n/a

15

Pro Se 3 (Rev. 12/16) The Defendant's Answer to the Complaint

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

Seattle Division

| | | |
|---|---|---|
| DISH NETWORK L.L.C. | ) | Case No. 2:24-cv-01683. |
| *Plaintiff(s)* | ) | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) ) ) | Jury Trial: *(check one)*  ☐ Yes  ☒ No |
| **-v-** | ) ) | |
| | ) | |
| VIRTUAL SYSTEMS, LLC and VYACHESLAV SMYRNOV. | ) ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) ) ) | |

## THE DEFENDANT'S ANSWER TO THE COMPLAINT

**I.    The Parties Filing This Answer to the Complaint**

Provide the information below for each defendant filing this answer or other response to the allegations in the plaintiff's complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | VIRTUAL SYSTEMS, LLC |
| Street Address | Laboratorna 33/37 |
| City and County | Kyiv, Ukraine |
| State and Zip Code | 03150 |
| Telephone Number | +380 (44) 591-5679 |
| E-mail Address | +380 (44) 591-5679 |

| | |
|---|---|
| Name | Vyacheslav Smyrnov |
| Street Address | Vadyma Hetmana 1v street, fl.46 |

1

Pro Se 3 (Rev. 12/16) The Defendant's Answer to the Complaint

| | |
|---|---|
| City and County | Kyiv, Ukraine |
| State and Zip Code | 03057 |
| Telephone Number | +3800674428258 |
| E-mail Address | +3800674428258 |

## II.    The Answer and Defenses to the Complaint

3.    The venue where the court is located is improper for this case because *(briefly explain)*

2

The venue where the court is located is improper for this case because of:

1. **Lack of Relevant Contacts with the Forum:** The alleged acts, including hosting and transmission of the disputed content, occurred entirely outside the United States, specifically on servers located in Ukraine. Defendants Virtual Systems, LLC, and Vyacheslav Smyrnov do not maintain offices, facilities, or employees within Washington State or anywhere in the United States that were engaged in the alleged acts. There is no substantial connection between the defendants' activities and the forum, as required by the "minimum contacts" standard under *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The summons did not specify any connection between the alleged infringing activity and the servers located in the United States, nor did it demonstrate how the defendants' operations at the Seattle data center were relevant to the claims brought by DISH Network. Defendants' actions, limited to providing hosting services outside the U.S., do not demonstrate purposeful availment or direction toward the Washington forum. Consequently, the alleged acts fail to establish sufficient contacts to justify this Court's jurisdiction over the defendants.

2. **Absence of Purposeful Direction Toward the Forum:** Defendants, Virtual Systems, LLC (VSYS), and Vyacheslav Smyrnov, have not purposefully directed their activities toward Washington or any part of the United States. The "purposeful direction" standard, as clarified in *Calder v. Jones*, 465 U.S. 783 (1984), requires that the defendant's actions be expressly aimed at the forum state, with the knowledge that harm would likely be suffered there. VSYS's hosting services, however, are globally accessible and not targeted specifically at U.S. customers or Washington residents. These services are neutral and global, catering to a wide range of clients without targeting any specific geographic region. VSYS does not market its services specifically to U.S. consumers or actively solicit business in Washington. Consequently, there is no evidence of conduct expressly aimed at the Washington forum. The alleged infringing activity is attributed to third-party customers of VSYS, not VSYS itself. Even if those customers' activities had some incidental connection to the United States, such harm was not foreseeable or directed by the defendants. The defendants' operations are based entirely in Ukraine, and their involvement is limited to providing neutral hosting services with no control over or participation in the content streamed by customers. In *Walden v. Fiore*, 571 U.S. 277 (2014), the Court held that jurisdiction cannot be based on a plaintiff's or third party's contacts with the forum. Rather, the defendant's own activities must create a substantial connection to the forum. Here, VSYS's conduct is disconnected from Washington, and the alleged harm is solely the result of third-party actions. In *Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006), the Ninth Circuit found no personal jurisdiction over a foreign defendant where a website was globally accessible but not specifically directed at California. Similarly, VSYS's website and services are globally available but not aimed at Washington or U.S. customers.

3. **Failure to Meet Venue Requirements:** Under 28 U.S.C. § 1391(b), venue is proper only if:

   - A district where any defendant resides, if all defendants reside in the same state: Defendants Virtual Systems, LLC, and Vyacheslav Smyrnov are foreign entities residing in Ukraine. Neither defendant resides in Washington State or anywhere in the United States.
   - A district where a substantial part of the events or omissions giving rise to the claim occurred: None of the events giving rise to DISH's claims occurred in Washington or within the United States. The alleged infringing acts - hosting and transmission of content - took place entirely on servers located in Ukraine. Defendants' operations, infrastructure, and activities are confined to Ukraine and do not have any substantial connection to Washington.
   - If no such district exists, any district where a defendant is subject to personal jurisdiction: For this fallback provision to apply, defendants must be subject to personal jurisdiction in Washington. As established under the "minimum

contacts" standard in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and reinforced in *Walden v. Fiore*, 571 U.S. 277 (2014), defendants lack sufficient contacts with Washington to confer personal jurisdiction. Therefore, this provision does not apply, and venue in Washington is improper.

4. **Forum Non Conveniens:** The doctrine of forum non conveniens applies when a court with jurisdiction and proper venue nonetheless dismisses a case because another forum is more appropriate and convenient for resolving the dispute. In this case, Ukraine is a more appropriate forum for the following reasons:

- Defendants Virtual Systems, LLC, and Vyacheslav Smyrnov are domiciled in Ukraine. All of their operations, servers, infrastructure, and relevant personnel are based in Ukraine. The alleged infringing activity occurred entirely on servers located in Ukraine, and key evidence, such as server records, customer agreements, and employee testimony, is also located there.
- Requiring defendants to litigate in Washington imposes a substantial and unreasonable burden. Defendants would face logistical challenges in transporting evidence, securing witnesses, and navigating a foreign legal system.
- The dispute involves foreign defendants, foreign servers, and alleged actions that took place entirely outside the United States. There is no substantial connection between the claims and Washington. The mere fact that some alleged harm may have been felt in Washington does not create a sufficient nexus to justify litigating there, as clarified in *Walden v. Fiore*, 571 U.S. 277 (2014).
- Ukraine has a strong interest in adjudicating disputes involving its domiciled companies and activities occurring within its borders. U.S. courts should respect the jurisdiction of Ukrainian courts under principles of international comity. Moreover, Ukrainian law governs many aspects of this case, including hosting agreements and compliance with local regulations, making Ukrainian courts better suited to resolve the matter.
- Ukrainian courts provide an adequate and available forum for this dispute. Ukraine's legal system is capable of adjudicating claims and providing remedies, including addressing intellectual property issues under its laws.

4.    The defendant was served but the process—the form of the summons—was insufficient because *(briefly explain)*

The defendant was served but the process - the form of the summons - was insufficient because of:

1. **Insufficient Specificity in Jurisdictional Basis.** The summons failed to adequately specify the legal or factual basis for the court's exercise of personal jurisdiction over the defendants, Virtual Systems, LLC (VSYS) and Vyacheslav Smyrnov, who are foreign entities operating primarily in Ukraine. While it is acknowledged that VSYS maintains servers in the United States, these servers were not engaged in the alleged infringing activities at issue in this case. To satisfy due process requirements under *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), the court must establish that the defendants have "minimum contacts" with the forum state and that the claims arise out of or relate to those contacts. The summons did not specify any connection between the alleged infringing activity and the servers located in the United States, nor did it demonstrate how the defendants' operations at the Seattle data center were relevant to the claims brought by DISH Network. The absence of a connection between the claims and the U.S.-based infrastructure is critical, as personal jurisdiction requires that the claim "arise out of or relate to" the defendant's contacts with the forum (*Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017 (2021)). For foreign entities like VSYS, the court must rely on detailed and specific allegations showing that the activity giving rise to the claims occurred within or was expressly directed at the forum. Merely maintaining servers in the United States, which were not involved in the alleged conduct, does not satisfy this requirement (*Walden v. Fiore*, 571 U.S. 277 (2014)). The summons fails to articulate how the defendants' connections to the Seattle data center relate to the alleged copyright infringement. This omission deprives the defendants of fair notice of the jurisdictional basis and the opportunity to adequately defend against the claims, violating their due process rights (*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980)).

2. **Deficiency in Stating Venue Justification.** The summons failed to adequately explain why the Western District of Washington is an appropriate venue for this case. Defendants are domiciled in Ukraine, and the alleged conduct occurred extraterritorially, primarily on servers located in Ukraine. To comply with 28 U.S.C. § 1391, the summons must demonstrate that a substantial part of the events or omissions giving rise to the claim occurred in the forum district or that defendants reside there. No such connection has been established. Merely alleging harm to a U.S.-based plaintiff, such as DISH Network, is insufficient to justify venue in Washington. Procedural fairness demands a clearer explanation of why the forum is proper under the circumstances of this case.

3. **Ambiguity in Timeline for Responding.** The summons fails to account for the correct response timeline applicable to the defendants as foreign entities served outside the United States. Rule 12(a)(1)(A)(ii) of the Federal Rules of Civil Procedure clearly provides that defendants served outside the United States are entitled to 90 days to respond to a complaint. However, the summons ambiguously references a 21-day deadline and includes a 60-day timeline applicable only to the United States or its agencies, officers, or employees. This omission creates confusion and fails to properly inform the defendants, Virtual Systems, LLC, and Vyacheslav Smyrnov, of their procedural rights. The lack of clarity risks prejudicing the defendants by not granting them sufficient time to assess the claims, seek legal counsel, and prepare an adequate response, as required under Rule 4(a)(1)(A) and Rule 12(a)(1)(A)(ii).

4. **Lack of Clear Description of Relief Sought.** The summons failed to clearly articulate the specific relief sought by the plaintiff, thereby leaving the defendants without adequate notice of the claims they must address. Under Rule 4(a)(1)(C) of the Federal Rules of Civil Procedure, a summons must "state the time within which the defendant must appear and defend," and must include sufficient detail to inform the defendants of the scope and nature of the relief sought. The omission of specific information regarding the relief sought - such as the amount of damages requested, the nature of any injunctive relief, or other remedies - forces the defendants to speculate about the full extent of the plaintiff's demands. This lack of clarity undermines procedural fairness and deprives the defendants

of the ability to: Assess the legal and financial risks associated with the claims; Prepare a well-informed response to the allegations; Evaluate the need for potential settlement discussions or defense strategies.

5.    The manner of serving the defendant with the summons and complaint was insufficient because *(briefly explain)*

The manner of serving the defendant with the summons and complaint was insufficient because of Non-Compliance with the Hague Service Convention: Ukraine is a signatory to the Hague Service Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, which establishes formal procedures for serving process internationally. Under Article 5 of the Convention, service of process must be completed through the Central Authority designated by the recipient country, which in this case is the Ukrainian Ministry of Justice. The direct transmission of documents to Mr. Smyrnov via FedEx bypasses the mandatory procedure required under the Hague Service Convention and fails to meet the formal requirements for valid international service of process. This non-compliance undermines procedural fairness and the safeguards established to ensure proper notice and sufficient time for a foreign defendant to respond. Moreover, the Federal Rules of Civil Procedure Rule 12(a)(1)(A)(ii) require that foreign defendants served outside the United States be afforded **90 days** to respond to a complaint. If this extended response time was not clearly communicated or respected in conjunction with the improper service method, the defendant's due process rights are further compromised.

6.    The complaint fails to state a claim upon which relief can be granted because *(briefly explain why the facts alleged, even if true, are not enough to show the plaintiff's right to recover)*

6

The Plaintiff's complaint is deficient because the facts alleged, even if true, are insufficient to establish a viable legal basis for recovery against the defendants. Specifically:

1. **Lack of Specific Allegations of Defendants' Wrongdoing:** The complaint relies on generalized assertions that Virtual Systems, LLC and Vyacheslav Smyrnov provided hosting services that were allegedly used by third-party Pirate Services to infringe on DISH's copyrights. However, secondary liability for copyright infringement requires more than merely providing neutral infrastructure or services. Contributory Infringement requires actual knowledge of specific infringing activity and substantial assistance in that infringement (*Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 439 (1984)). The complaint does not allege facts demonstrating that the defendants knowingly facilitated infringement or actively participated in infringing acts. Inducement requires affirmative acts to encourage infringement (*MGM Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)). The reliance on marketing phrases such as "DMCA Ignored" does not prove intent or causation of infringement. This language likely reflects Ukrainian legal norms rather than an intent to induce copyright violations. Vicarious Liability requires the right and ability to control the infringing activity and a direct financial benefit from it (*Ellison v. Robertson*, 357 F.3d 1072, 1078 (9th Cir. 2004)). The complaint does not establish that defendants exercised control over the Pirate Services' actions or that their revenue was specifically tied to infringement.

2. **Failure to Establish Knowledge or Intent:** The complaint fails to allege sufficient facts to show that the defendants had actual or constructive knowledge of specific instances of infringement or intentionally facilitated such infringement. Under *Sony Corp. of Am. v. Universal City Studios, Inc.*, contributory liability requires: 1. Actual or constructive knowledge of specific infringing activity; 2. Material contribution to the infringing activity. In Ukraine, DMCA notices - especially automated ones - lack legal or procedural weight. Such notices are unenforceable under Ukrainian law, which governs the defendants' operations. As a result, they do not establish knowledge or intent. *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1171 (9th Cir. 2007), establishes that generalized awareness of potential infringement is insufficient. The Plaintiff has not demonstrated specific knowledge of infringing content or intentional facilitation.

3. **Insufficient Allegations of Control or Financial Benefit:** The complaint fails to establish the necessary elements for vicarious liability under U.S. copyright law, which requires: 1. Right and Ability to Control: Practical control over the infringing activity; 2. Direct Financial Benefit: Revenue directly tied to infringing activity. Hosting providers generally provide neutral platforms and do not typically oversee specific content. The complaint fails to allege that the defendants actively monitored or controlled the Pirate Services' content. Contractual rights to disable accounts or remove content are insufficient without evidence of active enforcement or oversight (*Perfect 10, Inc. v. Cybernet Ventures, Inc.*, 213 F. Supp. 2d 1146, 1173 (C.D. Cal. 2002)). There is no evidence that the defendants profited directly from infringement or that infringement acted as a significant "draw" for their services (*Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263-64 (9th Cir. 1996)). Hosting fees collected by the defendants are standard and not tied to specific infringing activity (*Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004)).

4. **Extraterritorial Nature of the Alleged Conduct:** The alleged infringing acts occurred entirely on servers located in Ukraine. U.S. copyright law does not extend to acts occurring outside the United States. The Copyright Act does not apply extraterritorially (*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1095-96 (9th Cir. 1994)). To invoke U.S. copyright law, the Plaintiff must establish that infringing acts occurred within the United States (*L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 990 (9th Cir. 1998)). The complaint acknowledges that the alleged activities occurred on servers located in Ukraine. It does not provide evidence that the defendants' U.S.-based servers were used for the alleged infringement. The complaint fails to identify specific U.S. users or customers who accessed the infringing content via defendants' services.

5. **Failure to Establish Personal Liability for Mr. Smyrnov:** The Plaintiff has failed to allege sufficient facts to establish individual liability for Mr. Smyrnov. To hold an individual liable, the Plaintiff must show that the individual personally authorized, directed, or participated in the infringing acts (*ALS Scan, Inc. v. Steadfast Networks, LLC*, 819 F. App'x 522, 524 (9th

Cir. 2020); *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 677 (9th Cir. 2017)). The Plaintiff's allegations do not show that Mr. Smyrnov personally engaged in or had knowledge of specific infringing activities. Notices sent to the company do not establish personal liability unless the defendant directly participated in or directed the infringing acts. The complaint does not allege any U.S.-based conduct by Mr. Smyrnov. U.S. copyright law does not apply to extraterritorial acts (*Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1095-96 (9th Cir. 1994)).

7.     Another party *(name)*     third-party operators of the so-called     needs to be joined (added)
                                  "Pirate Services"

in the case.  The reason is *(briefly explain why joining another party is required)*

The alleged infringing activities referenced in the complaint involve third-party operators of the so-called "Pirate Services," which are the entities or individuals directly responsible for uploading, transmitting, and distributing the copyrighted content at issue. Under Federal Rule of Civil Procedure 19(a), these parties are indispensable because their absence impairs the court's ability to deliver fair and complete adjudication of the case.

1. Completeness of Relief: without joining the operators of the Pirate Services, the court cannot fully adjudicate the claims since they are the direct infringers responsible for the alleged unauthorized use and distribution of DISH's copyrighted materials. Adjudicating liability solely against hosting providers like Virtual Systems, LLC and its CEO, Vyacheslav Smyrnov, would result in an incomplete resolution and may expose the defendants to unfair liability for the actions of independent third parties.

2. Interest of Absent Parties: The Pirate Services' operators have a substantial interest in defending themselves against claims of copyright infringement. If not joined, their absence could impair or impede their ability to protect their interests. Excluding them leaves the existing defendants at risk of inconsistent obligations and potentially prejudices the resolution of claims by attributing liability to hosting providers without addressing the actions of the direct infringers.

a.     If the basis for subject-matter jurisdiction is diversity of citizenship, state the effect of adding the other party:

The other party is a citizen of the State of *(name)*     n/a                          .

Or is a citizen of *(foreign nation)*     forein nations

The amount of damages sought from this other party is *(specify the amount)*     undetermined          .

b.     If the claim by this other party is based on an alleged violation of a federal constitutional or statutory right, state the basis:

8

The claims against these third parties would be grounded in alleged violations of U.S. copyright law (17 U.S.C. § 501 et seq.), specifically unauthorized public performance and distribution of copyrighted materials. Joinder is necessary to ensure that liability for any infringement is attributed to the correct parties.

**C.    Asserting Affirmative Defenses to the Claims for Relief**

Identify an affirmative defense or avoidance that provides a basis for the defendant to avoid liability for one or more of the plaintiff's claims even if the basis for the claim is met.  Any affirmative defense or avoidance must be identified in the answer.  Include any of the following that apply, as well as any others that may apply.

The plaintiff's claim for *(specify the claim)*

copyright infringement under 17 U.S.C. § 501 et seq.

is barred by *(identify one or more of the following that apply)*:

1.    Accord and satisfaction *(briefly explain)*
       n/a

2.    Arbitration and award *(briefly explain)*
       n/a

3.    Assumption of risk *(briefly explain)*
       n/a

4.    Contributory or comparative negligence of the plaintiff *(briefly explain)*
       n/a

5.    Duress *(briefly explain)*
       n/a

6.    Estoppel *(briefly explain)*

Plaintiff is estopped from asserting claims against Defendants because it failed to take reasonable steps to address the alleged infringing conduct by the third-party operators of the Pirate Services before pursuing claims against Defendants. Plaintiff's repeated reliance on general notices, rather than direct enforcement actions against primary infringers, creates an inequitable situation that unfairly shifts liability to a neutral hosting provider.

7.    Failure of consideration *(briefly explain)*

n/a

8.    Fraud *(briefly explain)*

n/a

9.    Illegality *(briefly explain)*

Plaintiff's claims improperly attempt to impose U.S. copyright liability on actions governed by foreign laws, including Ukrainian law. Since the alleged acts are not unlawful under the jurisdiction where they occurred, Plaintiff cannot recover under U.S. law.

10.    Injury by fellow employee *(briefly explain)*

n/a

11.    Laches (Delay) *(briefly explain)*

Plaintiff unreasonably delayed filing its claims despite having knowledge of the alleged infringement for an extended period. This delay has prejudiced Defendants by impairing their ability to address the issues earlier and locate third-party operators responsible for the alleged infringement.

12.    License *(briefly explain)*

To the extent that any content hosted on Defendants' servers was uploaded or streamed by authorized parties, Plaintiff's claims are barred by actual or implied licenses granted to third parties. Defendants, as hosting providers, have no means to determine the licensing status of specific content without clear notice and evidence.

13.    Payment *(briefly explain)*

n/a

14.    Release *(briefly explain)*

10

n/a

15.     Res judicata *(briefly explain)*
        n/a

16.     Statute of frauds *(briefly explain)*
        n/a

17.     Statute of limitations *(briefly explain)*
        n/a

18.     Waiver *(briefly explain)*

        Plaintiff's failure to take timely and decisive action against the third-party operators of the Pirate Services, despite being aware of the alleged infringing activities, constitutes a waiver of its claims against Defendants. By relying on indirect and procedurally insufficient notices, Plaintiff has demonstrated a tacit acceptance of third-party conduct. This failure to pursue direct enforcement measures against the actual infringers prevents Plaintiff from now retroactively attributing liability to Defendants, who merely provided neutral hosting services without knowledge or control over the alleged activities.

19.     Other *(briefly explain)*

        The Complaint fails to state a claim upon which relief can be granted because Defendants, as neutral hosting providers, neither possessed the requisite knowledge of nor intentionally facilitated or controlled the alleged infringing activities. U.S. copyright law explicitly lacks extraterritorial application to acts occurring entirely on foreign servers operated under foreign legal jurisdictions, such as those managed in Ukraine. Accordingly, Plaintiff cannot establish liability under 17 U.S.C. § 501 for conduct outside the scope of U.S. jurisdiction, as clarified in *Subafilms, Ltd. v. MGM-Pathe Commc'ns Co.*, 24 F.3d 1088, 1095-96 (9th Cir. 1994).

11

**D.** **Asserting Claims Against the Plaintiff (Counterclaim) or Against Another Defendant (Cross−Claim)**

For either a counterclaim against the plaintiff or a cross−claim against another defendant, state briefly the facts showing why the defendant asserting the counterclaim or cross−claim is entitled to the damages or other relief sought. Do not make legal arguments. State how each opposing party was involved and what each did that caused the defendant harm or violated the defendant's rights, including the dates and places of that involvement or conduct. If more than one counterclaim or cross−claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

1.  The defendant has the following claim against the plaintiff *(specify the claim and explain it; include a further statement of jurisdiction, if needed)*:

    **Claim: Counterclaim for Declaratory Judgment of Non-Liability**
    **Facts:** Defendants, Virtual Systems, LLC, and Vyacheslav Smyrnov, request a declaratory judgment asserting that they are not liable for the alleged copyright infringement as claimed by Plaintiff, DISH Network L.L.C. Defendants operate as neutral hosting providers offering lawful and content-neutral hosting services globally. The servers implicated in the alleged infringement are located in Ukraine and governed by Ukrainian law. Plaintiff's claims seek to improperly impose liability on Defendants for alleged actions of third-party "Pirate Services," over which Defendants have no control. These third-party operators are responsible for uploading, managing, and distributing content. Plaintiff has failed to provide adequate notice of specific infringing activities or demonstrate any active facilitation or encouragement of infringement by Defendants. Defendants did not knowingly or intentionally participate in any alleged copyright infringement and are not responsible for the actions of independent third-party operators utilizing their hosting services.
    **Jurisdiction:** this counterclaim is brought pursuant to: 28 U.S.C. § 2201 (Declaratory Judgment Act) for the purpose of clarifying the legal rights and responsibilities of the parties; 28 U.S.C. § 1331 (federal question jurisdiction), as the dispute involves claims arising under the U.S. Copyright Act (17 U.S.C. § 501 et seq.). The declaratory judgment is essential to resolve ongoing disputes regarding liability and prevent unwarranted harm to Defendants' business operations and reputation.

2.  The defendant has the following claim against one or more of the other defendants *(specify the claim and explain it; include a further statement of jurisdiction, if needed)*:

    n/a

3.  State briefly and precisely what damages or other relief the party asserting a counterclaim or cross−claim asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons that are alleged to entitle the party to actual or punitive money damages.

    a.  The defendant asserting the counterclaim or cross−claim against *(specify who the claim is against)* **DISH Network L.L.C.** alleges that the following injury or damages resulted *(specify)*:

12

Defendants have incurred the following damages due to Plaintiff's wrongful actions:

1.    **Damage to Reputation:** Plaintiff's allegations have significantly harmed Defendants' professional reputation as a neutral and lawful hosting provider. These allegations, despite being baseless, portray Defendants as complicit in illegal activities, undermining their standing in the business community and eroding trust among clients and industry partners.

2.    **Legal and Administrative Costs:** Defendants have incurred substantial expenses in legal fees, administrative resources, and operational disruptions while defending themselves against Plaintiff's unsubstantiated claims. These costs continue to accrue due to the ongoing nature of the litigation.

3.    **Economic Harm:** Plaintiff's allegations have disrupted Defendants' regular business operations, leading to loss of existing clients and deterring prospective clients from engaging with Defendants. The unwarranted legal proceedings and adverse publicity have created financial losses and hindered business growth.

b.    The defendant seeks the following damages or other relief *(specify)*:

1.  **Declaratory Relief:**

A judgment declaring that:

- Defendants are not liable for contributory, inducement, or vicarious copyright infringement.
- Defendants, as hosting providers, are not subject to U.S. copyright law for actions occurring outside U.S. jurisdiction.

2.  **Monetary Damages:**
- Compensation for harm caused to Defendants' reputation.
- Reimbursement of legal and administrative expenses incurred in defending against the claims.
- Compensation for economic harm resulting from disruption of operations and loss of clients.

3.  **Punitive Damages:**
Defendants seek punitive damages in an amount sufficient to deter Plaintiff from pursuing similar baseless claims against neutral hosting providers in the future.

4.  **Injunctive Relief:**
An order preventing Plaintiff from making further baseless allegations or pursuing claims without credible and substantiated evidence.

Pro Se 3 (Rev. 12/16) The Defendant's Answer to the Complaint

## III.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this answer: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the answer otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          December 12, 2024

Signature of Defendant

Printed Name of Defendant          Vyacheslav Smyrnov

### B.    For Attorneys

Date of signing:          n/a

Signature of Attorney          n/a
Printed Name of Attorney          n/a
Bar Number          n/a
Name of Law Firm          n/a
Street Address          n/a
State and Zip Code          n/a
Telephone Number          n/a
E-mail Address          n/a

14

**Квитанція № 2654474**
про доставку документів до зареєстрованого Електронного кабінету
Користувача ЄСІТС

Дата, час доставки: **10.02.2025 14:17**

Кому доставлено: Юридична особа,
ЄДРПОУ: **43315602**,
Назва: **ЦЕНТРАЛЬНЕ МІЖРЕГІОНАЛЬНЕ УПРАВЛІННЯ
МІНІСТЕРСТВА ЮСТИЦІЇ (М. КИЇВ)**

Від кого доставлено: Фізична особа,
РНОКПП: ████████
ПІБ: **Дементьєв Тарас Михайлович**

Перелік (опис) документів, що надіслані:

| № | Найменування документу | К-ть сторінок (для pdf-файлу) |
|---|---|---|
| 1 | Додаткові пояснення у справі (файл y2025/2-2-acc29510-e7a8-11ef-90e6-5bab856317f7.pdf, підпис у файлі y2025/2-2-acc29510-e7a8-11ef-90e6-5bab856317f7.pdf.p7s) | 4 |
| 2 | Додаток 2. ДОГОВІР.pdf (файл y2025/2-2-dfc48e10-e7a7-11ef-8c4e-b5363b575814.pdf, підпис у файлі y2025/2-2-dfc48e10-e7a7-11ef-8c4e-b5363b575814.pdf.p7s) | 1 |
| 3 | Додаток 3. Витяг з ЄРАУ 27.12.2024р.pdf (файл y2025/2-2-ff7c36e0-e7a7-11ef-a409-87e978d3ff24.pdf, підпис у файлі y2025/2-2-ff7c36e0-e7a7-11ef-a409-87e978d3ff24.pdf.p7s) | 2 |
| 4 | Додаток 4. Свідоцтво посвідчення.pdf (файл y2025/2-2-062f9b80-e7a8-11ef-ad8d-bb30dcdcf71b.pdf, підпис у файлі y2025/2-2-062f9b80-e7a8-11ef-ad8d-bb30dcdcf71b.pdf.p7s) | 1 |
| 5 | Додаток 5. Certificate of Good Standing.pdf (файл y2025/2-2-0bce5bd0-e7a8-11ef-b7a0-7b979097c371.pdf, підпис у файлі y2025/2-2-0bce5bd0-e7a8-11ef-b7a0-7b979097c371.pdf.p7s) | 1 |
| 5 | Додаток 6. ID card of Advocate of Ukraine.pdf (файл y2025/2-2-0c5dca90-e7a8-11ef-82ff-674b16c40b4c.pdf, | 1 |

| | | |
|---|---|---|
| 6 | підпис у файлі у2025/2-2-0c5dca90-e7a8-11ef-82ff-674b16c40b4c.pdf.p7s) | |
| 7 | Додаток 7. переклад_the_defendants_answer_to_the_complaint _DISH_VSYS (1).pdf (файл у2025/2-2-18799d40-e7a8-11ef-bdc1-43f08902a858.pdf, підпис у файлі у2025/2-2-18799d40-e7a8-11ef-bdc1-43f08902a858.pdf.p7s) | 15 |
| 8 | Додаток 8. The defendants answer to the complaint DISH VSYS.pdf (файл у2025/2-2-1d409b30-e7a8-11ef-867e-6152651f15a9.pdf, підпис у файлі у2025/2-2-1d409b30-e7a8-11ef-867e-6152651f15a9.pdf.p7s) | 14 |

Сформовано засобами підсистеми ЄСІТС «Електронний суд»
10.02.2025 14:17

Справа № 760/30143/24
Провадження №2-д/760/4/25

**Протокол**
**судового засідання**

11.02.2025

Солом'янський районний суд міста Києва

У складі:
Головуючий суддя                                    Коробенко С.В.
Секретар судового засідання                    Семененко А.Д.

розглянув у відкритому судовому засіданні в залі суду 21 в місті Києві справу щодо виконання доручення американського суду про вручення судових документів Смирнову В'ячеславу.

Фіксування судового процесу за допомогою звукозаписувального технічного засобу не здійснювалось на підставі ч. 2 ст. 247 ЦПК України.

| № з/п | Час вчинення запису | Дія, дійова особа | Інші відомості |
|---|---|---|---|
| 1 | 10:30:00 | Після перерви продовження засідання | Оголошення справи, що підлягає розгляду |
| 2 | 10:30:05 | Оголошення складу суду | |
| 3 | 10:30:11 | Головуючий суддя: Коробенко С.В. | |
| 4 | 10:30:21 | Секретар судового засідання Семененко А.Д. | Доповідає, що Смирнов В.В. та його адвокат Дементьєв Т.М. до суду не з'явились. Через підсистему «Електронний суд» адвокатом Дементьєвим Т.М. подано додаткові пояснення у справі з додатками (Вхідний №10298 від 11.02.2025) |
| 5 | 10:32:00 | Головуючий суддя: Коробенко С.В. | Суд на місці ухвалив повернути доручення після виконання |
| 6 | 10:32:15 | Закриття судового засідання | |

Секретар судового засідання                                    Семененко А.Д.

Головуючий суддя                                                    Коробенко С.В.