The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DISH NETWORK L.L.C.,

    Plaintiff,

v.

VIRTUAL SYSTEMS LLC, *et al.*,

    Defendants.

NO. 24-cv-1683-BJR

**ORDER GRANTING DEFAULT JUDGMENT**

## I. INTRODUCTION

Plaintiff, DISH Network L.L.C., sued a Ukraine company, Virtual Systems, LLC, and its owner and CEO, Vyacheslav Smyrnov, for copyright infringement under 17 U.S.C. § 501. Compl., ECF No. 1. Defendants were served in accordance with Federal Rule of Civil Procedure 4(f)(1), which authorizes service under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163 ("Hague Convention"). *See* Proof of Service, ECF Nos. 11-12. Defendants neither responded nor appeared, and on July 1, 2025, the Clerk's Entry of Default was filed. ECF No. 18. Now pending before the Court is Plaintiff's Motion for Default Judgment Against Defendants, ECF No. 19, to which there has been no response. Having reviewed the materials, the record of the case,

ORDER GRANTING DEFAULT JUDGMENT

- 1

and the relevant legal authorities, the Court will grant the motion. The reasoning for the Court's decision follows.

## II. BACKGROUND

DISH Network L.L.C. is one of the largest pay-tv providers in the United States. Compl. ¶ 1. It has millions of subscribers nationwide and holds copyrights in programming ("the DISH Copyrighted Works") that aired on 23 international channels that DISH exclusively licensed for transmission in the United States ("the Channels"). *Id.* Virtual Systems, LLC is a hosting services provider[1] with a data center in Seattle, Washington. *Id.* ¶¶ 3, 10, 25.

Without DISH's authorization, the DISH Copyrighted Works were transmitted on pirate streaming services to users of those services in the United States. *Id.* ¶ 3. DISH alleges that the pirate streaming services were able to illegally transmit the DISH Copyrighted Works by using a network and servers provided by Virtual Systems, which openly advertises that it does not comply with—and does not require its customers to comply with—United States copyright law. *Id.* DISH made hundreds of requests to Virtual Systems to stop the infringement by pirate streaming services, but, according to DISH, Virtual Systems refused to take simple measures that would stop the infringement. *Id.* ¶ 4. DISH has also notified the pirate streaming services of their infringement multiple times and was awarded a judgment and permanent injunction against parties located abroad that were involved in operating at least three of the pirate streaming services. *Id.* ¶ 24. However, despite being enjoined, the pirate streaming services have continued to use Virtual Systems' servers and networks to infringe DISH's copyrights. *Id.*

---

[1] A hosting services provider is a company that provides computer infrastructure connected to the internet, offering individuals or organizations the ability to deliver online content such as websites or media streaming services.

ORDER GRANTING DEFAULT JUDGMENT

- 2

Virtual Systems charges customers to use its servers and network and provides additional services for a fee, such as storage and software to enable high-speed streaming services. *Id.* ¶¶ 26-27. According to DISH, Virtual Systems appeals to streaming services that violate United States copyright law by promoting in its Ukraine data center that it "ignore[s] DMCA[2] takedown notices." *Id.* ¶ 31. Similarly in Seattle, it states that "all DMCA notices we receive are processed by our legal team, but we do act courteously towards our valued clients, who might be having occasional issues with copyrights." *Id.* Virtual Systems also encourages the pirate streaming services to keep their identities anonymous and undiscoverable. *Id.* ¶¶ 38-39.

DISH alleges that Virtual Systems and its owner, Smyrnov, received at least 512 Infringement Notices delivered by mail and email, but they did not respond, nor did they comply with court orders enjoining Virtual Systems from providing its servers and network to certain pirate streaming services. *Id.* ¶¶ 33-36. DISH filed this lawsuit on October 15, 2024, asserting three claims of willful secondary copyright infringement[3] under 17 U.S.C. § 501: Count I – Materially Contributing to Copyright Infringement; Count II – Inducing Copyright Infringement; and Count III – Vicarious Copyright Infringement. Compl. ¶¶ 45-69. DISH seeks a permanent injunction and damages, including statutory damages up to $150,000 for each registered work infringed. *See* Mot. 15, ECF No. 19.

### III.  LEGAL STANDARD

Obtaining a default judgment under Federal Rule of Civil Procedure 55 is a two-step process. First, a plaintiff must request that the Clerk of the Court enter a default against the party

---

[2] Referring to the Digital Millenium Copyright Act ("DMCA"), 17 U.S.C. § 512.
[3] Secondary copyright infringement is a form of indirect or vicarious infringement, which occurs when someone helps or encourages another person to illegally copy or use copyrighted material. *See* INFRINGEMENT, Black's Law Dictionary (12th ed. 2024).

ORDER GRANTING DEFAULT JUDGMENT

- 3

who has "failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Once default has been entered, the plaintiff may move for default judgment. Fed. R. Civ. P. 55(b).

In deciding motions for default judgment, courts take "the well-pleaded factual allegations in the complaint as true, except those relating to the amount of damages." *Rozario v. Richards*, 687 F. App'x 568, 569 (9th Cir. 2017) (citations omitted); Fed. R. Civ. P. 8(b)(6). "Plaintiff must support a motion for default judgment with a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought." LCR 55(b)(2). Courts also do not accept the truth of statements in the complaint that amount to legal conclusions. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (superseded by statute on other grounds, Pub. L. No. 100-702, 102 Stat. 4669).

It is in the court's discretion to grant or deny a motion for default judgment; however, default is disfavored. *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 616 (9th Cir. 2016). "Cases should be decided upon their merits whenever reasonably possible." *Id.* (quoting *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)). If a court determines that default judgment is appropriate, it then determines the relief that should be given. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54 (c).

ORDER GRANTING DEFAULT JUDGMENT

- 4

## IV. DISCUSSION

DISH requested entry of default by the Clerk of the Court, which was granted, ECF No. 18, and now moves for default judgment under Federal Rule of Civil Procedure 55(b) and LCR 55(b). Mot. 1. When evaluating a motion for default judgment, the Court will first examine whether it has jurisdiction. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). The Court then turns to consideration of the factors weighing in favor or against the entry of default judgment. *See Eitel*, 782 F.2d at 1471-72; *NewGen*, 840 F.3d at 616-17. Finally, if appropriate, the Court will consider DISH's request for a permanent injunction and statutory damages.

### A.     The Court has jurisdiction

The Court has federal question jurisdiction over this subject matter under 28 U.S.C. §§ 1331, 1338, and 1400 because DISH alleges copyright infringement claims pursuant to 17 U.S.C. § 101 *et seq.*

Virtual Systems is organized under Ukraine law and located in Ukraine. The Court has personal jurisdiction over Virtual Systems under Federal Rule of Civil Procedure 4(k)(1)(A) because it committed acts of infringement in Washington State, including through its operation of a data center and servers in the Seattle area with which it contributed to the infringement. *DEX Sys., Inc. v. Deutsche Post AG*, 727 F. App'x 276, 278 (9th Cir. 2018).

Alternatively, the Court has personal jurisdiction over Virtual Systems under Federal Rule of Civil Procedure 4(k)(2), which considers Virtual Systems contacts with the United States as a whole, because, in addition to its Seattle-area data center and servers, Virtual Systems operated a marketing campaign directed at streaming services that sought to provide infringing content to a United States audience while avoiding the effects of United States copyright law. *See, e.g.*, *Doe v.*

ORDER GRANTING DEFAULT JUDGMENT

- 5

*WebGroup Czech Republic, a.s.*, 93 F.4th 442, 452-57 (9th Cir. 2024) (considering server location in finding sufficient minimum contacts); *Will Co. v. Lee*, 47 F.4th 917, 922-27 (9th Cir. 2022) (concluding that the defendants operated their website in a way that was expressly aimed at the United States). Virtual Systems was aware that its infringement harmed DISH in the United States because it received notices and United States court orders notifying them of this infringement.

Smyrnov, Virtual Systems' owner, CEO, and director, also resides in Ukraine. The Court has personal jurisdiction over Smyrnov under Rule 4(k)(1)(A), or alternatively Rule 4(k)(2), because he is a primary participant in Virtual Systems' infringement or had control of and at least direct participation in such activities. *Amazon.com Servs. LLC v. Paradigm Clinical Research Inst., Inc.*, 631 F. Supp. 3d 950, 962 (W.D. Wash. 2022).

Neither Smyrnov nor Virtual Systems filed a pleading that demonstrates the Court's exercise of jurisdiction is unreasonable. Defendants directed their sales and other business conduct toward Washington State, thereby establishing minimum contacts, *see Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945), and a reasonable anticipation of "being haled into court" here. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). The extent of Defendants' purposeful interjection into Washington, and the interests of the United States and DISH in having this dispute decided in a United States court, demonstrate that this Court's exercise of jurisdiction over Defendants is reasonable.

Accordingly, the Court has jurisdiction over the subject matter and the parties.

**B.    DISH is entitled to default judgment**

DISH argues that the *Eitel* factors support granting default judgment. Mot. 2. Courts weigh the following factors ("*Eitel* factors") in deciding motions for default judgment:

ORDER GRANTING DEFAULT JUDGMENT

- 6

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471-72; *also see NewGen*, 840 F.3d at 616-17 (discussing how district courts "weigh" the *Eitel* factors). The Court shall address these factors in turn.

### 1. Possibility of prejudice to the plaintiff

DISH would be prejudiced without entry of default judgment because it would be left without legal remedy given Defendants' lack of response. DISH filed its lawsuit in October 2024, and Defendants are likely to continue infringing DISH's copyrights absent entry of a permanent injunction and award of damages. Therefore, the first *Eitel* factor supports default judgment

### 2. Substantive merits and sufficiency of complaint

The second and third *Eitel* factors, concerning the merits of DISH's claim and the sufficiency of its complaint, are "often analyzed together." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (citing *PepsiCo., Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1175 (C.D.Cal.2002)). The Court considers each of DISH's claims of secondary or indirect copyright liability to determine if DISH has pleaded sufficient factual matter, accepted as true, to state plausible claims. First, the Court must find that DISH pleaded direct copyright infringement by the pirate streaming services because "[s]econdary liability for copyright infringement does not exist in the absence of direct infringement by a third party." *Fox Broad. Co. v. Dish Network L.L.C.*, 747 F.3d 1060, 1068 (9th Cir. 2014) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n. 2 (9th Cir. 2001)).

ORDER GRANTING DEFAULT JUDGMENT

- 7

### a. Direct Copyright Infringement

A *prima facie* case of direct infringement has two elements: (1) plaintiffs must show ownership of the allegedly infringed material, and (2) plaintiffs must demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106; 17 U.S.C. § 501(a). DISH has adequately pleaded that it is a copyright owner in the DISH Copyrighted Works based on its exclusive license to the rights to publicly perform the DISH Copyrighted Works in the United States. *See Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, 795 F.3d 997, 1003 (9th Cir. 2015) ("[A]ny party to whom [a copyright] has been transferred – whether via an assignment or an exclusive license – has standing to bring an infringement action based on that right."). DISH has also adequately pleaded that the pirate streaming services directly infringed DISH's exclusive rights to publicly perform the DISH Copyrighted Works by unauthorized transmissions of the DISH Copyrighted Works over the internet. *See Am. Broad. Cos. v. Aereo, Inc.*, 573 U.S. 431, 439-44 (2014) (streaming broadcast television programming to users directly infringed public performance copyright).

Therefore, direct copyright infringement has been pleaded.

### b. Count I – Materially Contributing to Copyright Infringement

"Contributory liability requires that a party '(1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement.'" *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 745 (9th Cir. 2019) (quoting *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 795 (9th Cir. 2007)). DISH has adequately pleaded that Virtual Systems materially contributed to the pirate streaming services' infringement by providing them the servers and networks used to transmit the DISH Copyrighted Works. Virtual Systems had actual knowledge

ORDER GRANTING DEFAULT JUDGMENT

- 8

regarding the pirate streaming services' infringement because it received at least 512 DCMA-compliant notices of copyright infringement that identified specific infringements. Further, Virtual Systems could have taken simple measures to prevent the pirate streaming services from infringing DISH's exclusive rights to publicly perform the DISH Copyrighted Works, such as by removing or disabling access to the DISH Copyrighted Works or terminating the pirate streaming services' accounts, but Virtual Systems failed to take such measures and continued to provide the pirate streaming services access to the DISH Copyrighted Works. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1172 (9th Cir. 2007) (finding a material contribution may be established where a defendant "substantially assists . . . a worldwide audience of users to access infringing materials").

### c. Count II – Inducing Copyright Infringement

Similarly, DISH has adequately pleaded that Virtual Systems induced copyright infringement by the pirate streaming services. "[O]ne who distributes a device [or service] with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster Ltd.*, 545 U.S. 913, 936-37 (2005). DISH alleged that Virtual Systems promoted infringing use by stating that Virtual Systems ignores DMCA takedown notices and encourages the pirate streaming services to remain anonymous. *See id.* at 937-40 (finding intent to promote or foster infringement may be evidenced by sending "a message designed to stimulate others to commit violations," failing to "develop filtering tools or other mechanisms to diminish the infringing activity," and relying upon infringing activity for the success of the business).

ORDER GRANTING DEFAULT JUDGMENT

- 9

### d. Count III – Vicarious Copyright Infringement

"Vicarious infringement is a concept related to, but distinct from, contributory infringement." *Visa*, 494 F.3d at 802. "To state a claim for vicarious copyright infringement, a plaintiff must allege that the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Id.* (citations omitted). "The ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise." *Napster*, 239 F.3d at 1023. DISH alleged that Virtual Systems could have taken simple measures to stop or limit the pirate streaming services' infringement of the DISH Copyrighted Works but failed to take them because the infringement contributed to Virtual Systems' financial success. Therefore, DISH has adequately pleaded vicarious copyright infringement. *See DISH Network L.L.C. v. Datacamp Ltd.*, No. 22-cv-00993, 2023 WL 4549528, at *4, *6 (N.D. Ill. July 14, 2023) (finding that plaintiff's allegations established that the defendant had the ability to stop or limit the pirate streaming services' infringement and obtained a direct financial benefit from the pirate streaming services' infringement).

### e. Personal Liability

DISH also has adequately alleged personal liability against Smyrnov as the owner, CEO, and a director of Virtual Systems. "[A] corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Comm. for Idaho's High Desert, Inc. v. Yost*, 92 F.3d 814, 823 (9th Cir. 1996).

ORDER GRANTING DEFAULT JUDGMENT

- 10

### 3. Sum of money at stake

Under the next *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. In weighing this factor, courts consider whether large sums of money are involved, and whether "the recovery sought is proportional to the harm caused by defendant's conduct." *Landstar Ranger, Inc. v. Parth Enter., Inc.*, 725 F.Supp.2d 916, 921 (N.D. Cal. 2010). "If the amount of money is large or disproportionate, this factor weighs against default judgment." *Getty Images (US), Inc. v. Virtual Clinics*, No. C13–0626JLR, 2014 WL 358412, at *4 (W.D. Wash. Jan. 31, 2014).

DISH requests the maximum statutory damages of $150,000 for Defendants' willful infringement of each of the 279 registered DISH Copyrighted Works identified in Exhibit 1 to the complaint. Such damages are expressly authorized by the Copyright Act and are commensurate with willful infringement. 17 U.S.C. § 504(c)(2). While the statutory damages amount of $41,850,000 is a significant sum of money, DISH has not requested other damages to which it may be entitled, nor attorneys' fees and costs. Under these circumstances, the Court finds that this factor is neutral, neither weighing in favor of nor against entry of default judgment.

### 4. Possibility of dispute over material facts

This *Eitel* factor favors default judgment because there is no possibility of a dispute over any material fact. The well-pleaded allegations in DISH's complaint concerning Defendants' liability were deemed true when default was entered against them. *TeleVideo*, 826 F.2d at 917-18. DISH's allegations are also supported by evidence from its expert witness that monitored the pirate streaming services and documented the infringement, which Defendants have not refuted.

ORDER GRANTING DEFAULT JUDGMENT

- 11

### 5. Whether default was due to excusable neglect

Here, there is no evidence in the record to support a finding that Defendants' failure to respond is the result of excusable neglect. DISH has provided evidence that Defendants were properly served through Ukraine court proceedings in December 2024 and February 2025, and they neither appeared in this case nor responded in any way to DISH's complaint. *See Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987) (observing that a defendant's conduct is culpable, not excusable, "if he has received actual or constructive notice of the filing of the action and failed to answer").

### 6. Policy favoring a decision on the merits

As noted by DISH, the only reason this case cannot proceed on the merits is because Defendants failed to respond and defend against the claims filed against them. As such, "the preference to decide cases on the merits does not preclude a court from granting default judgment." *PepsiCo*, 238 F. Supp. 2d at 1177.

In sum, the Court finds that the *Eitel* factors weigh in favor of entry of default judgment against Defendants.

### C. DISH is entitled to remedies

As noted above, DISH seeks statutory damages on the basis that Defendants' infringement was willful. Defendants received at least 512 DCMA-compliant notices of infringement as well as United States court orders notifying Defendants about the infringement taking place on their servers and network and enjoining further infringement, but Defendants did not take any actions to stop the infringement. DISH also provided evidence of Defendants' encouragement of ongoing infringement. The Court finds that Defendants willfully infringed DISH's copyrights based on their

ORDER GRANTING DEFAULT JUDGMENT

- 12

"reckless disregard for, or willful blindness to, the copyright holder's rights." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017). Maximum statutory damages are justified to deter willful copyright infringement. *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1218 (W.D. Wash. 2014) ("An award of the statutory maximum protects not only the copyrighted materials at issue, but also the entire entrepreneurial system upon which [a copyright holder] relies." (citation omitted)).

In its complaint, DISH additionally sought Defendants' profits that are attributable to the infringement of each unregistered Work, as well as attorneys' fees and costs, and pre-judgment and post-judgment interest. DISH does not pursue these additional damages in its motion for default judgment, noting that actual damages are difficult to quantify and Defendants' failure to defend this case hinders DISH's calculation of their profits. Under the circumstances, the Court finds it reasonable to award maximum statutory damages for willful infringement of the DISH Copyrighted Works that were registered and will enter judgment against Defendants for $41,850,000.

The Court also finds that DISH has established its entitlement to a permanent injunction under 17 U.S.C. § 502, based on satisfying the requirements set forth in *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). That is, DISH has shown "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.* Additionally, DISH's proposed permanent injunction is narrowly tailored to the DISH Copyrighted Works aired on the Channels in which it continues to hold exclusive rights of public performance, rather than the DISH Copyrighted Works aired on all the Channels at issue in this case, and the Court adopts that limitation.

ORDER GRANTING DEFAULT JUDGMENT

- 13

## V.   CONCLUSION

For the foregoing reasons:

1. The Court orders that Virtual Systems and Smyrnov, and any officer, agent, servant, employee, attorney, or other person acting in active concert or participation with either of them, are permanently enjoined from infringing DISH's copyrights in works that air on the B4U Movies, CBC, CBC Drama, Melody Aflam, Melody Classic, Sahara One, Sahara Samay, Times Now, and Zoom channels, including (1) publicly performing the material in the United States, which includes streaming or transmitting the material; (2) contributing to, inducing, or failing to stop or limit the public performance of this material in the United States, which includes a prohibition on providing any servers or network used in streaming or transmitting the material and requires termination of any current or future accounts of customers that stream or transmit the material.

2. Violation of this permanent injunction will subject Defendants and all other persons bound by this injunction to all applicable damages and penalties, including contempt of Court.

3. The Court retains jurisdiction over this case for two years to enforce this judgment and permanent injunction.

4. The Clerk is directed to enter judgment against Defendants for $41,850,000.

DATED this 12th day of November 2025.

*Barbara J. Rothstein*

Barbara Jacobs Rothstein
United States District Judge

ORDER GRANTING DEFAULT JUDGMENT

- 14